# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| James D. Moses ) | |
| 1662 Cyrene Drive ) | |
| Carson, California 90746 ) | |
| ) | |
|     For himself and ) | |
|     All others similarly situated ) | |
| ) | |
|     Plaintiffs ) | |
| ) | |
|        v. ) | Case No.          (JGP) |
| ) | (Filed 100406) |
| DAVID M. WALKER ) | |
| Comptroller General of the United States, ) | |
| Government Accountability Office (GAO) ) | |
| 441 G St., N.W. ) | |
| Washington, DC 20548 ) | |
| ) | |
|     and ) | |
| ) | |
| Michael Doheny, Chair ) | |
| The Personnel Appeals Board of the GAO, ) | |
| 820 first Street, N.E. ) | |
| Washington, D.C. 20002 ) | |
| ) | |
|     Defendants. ) | |

## COMPLAINT
### (For Injunctive Relief from Employment Discrimination
### by Violation of the Age Discrimination in Employment Act, ADEA;
### Equal Pay Act and Equal Access to the Law)

**Nature of this Case and Parties:**

1       This is an class action, by the Complainant James D. Moses (Moses), for himself and all

other similarly situated employees, who were downgraded and/or denied cost of living increases

by action of the GAO management effective on February 16th, 2006.  Moses is a citizen of the

United States who is employed by defendant as a career professional auditor, analyst, or evaluator.  On information and belief, Moses and each and every person he seeks to represent received satisfactory or better evaluations, or should have received such evaluations had the process been fair, but nevertheless were discriminated against by downgrading and denials of their congressionally approved cost of living increases (COLAS).

Moses brings this action for himself and all similarly situated "evaluators and evaluator support persons" who are classified as being in the newly designated "Band IIA", and/or those upper level Band I analysts, who were downgraded and/or denied cost of living increases (COLAs) which denials of pay increases were effective in their paychecks on or about February 16th, 2006.  He also brings this action as a long-term employee who has been discriminated against because of his age for more than 20 years.  He brings this action alleging a number of prohibited personnel practices and denials of rights in sum amounting to age discrimination in employment in violation of the Age Discrimination in Employment Act (ADEA), and equal treatment under the law against the employer, the United States Government Accountability Office (GAO), through its chief executive, David M. Walker, Comptroller General of the United States.

He alleges that GAO, and the subservient agency the PAB have denied him and all others similarly situated persons equal rights based upon a number of related factors which are readily available for complete scientific analysis as a result of recent disclosures of a hitherto secret statistical data base system maintained by GAO for the past 20 years.  He alleges that this system was used to deprive himself and persons similarly situated on an across the board basis of equal treatment under the laws, and to measure and create methodology to achieve the unequal

2

treatment of some employees based upon their race, age, and gender. Most importantly, the

GAO falsely informed the Court that no such system existed denying access to that information.

Those denials amounted to an illegal obstruction of justice.


**2. Another Necessary Party Defendant, the PAB:**

A second necessary party defendant is The United States Government Accountability

Office Personnel Appeals Board (PAB). PAB has the statutory duty to investigate, and correct

violations which deprive GAO employees of equal protection of the laws and in particular, age

discrimination. Historically, for many years, and continuing, it has not performed its statutory

duty.

For example, information in the hands of the PAB for many years strongly indicated a

universal bias against older workers. Nevertheless, it failed to perform its statutory function to

investigate, follow up and prosecute to correct age discrimination violations which it well knew

existed. It also has failed to follow up results of its own infrequent investigations, and failed to

insure that GAO's administrative process conforms to the law. In fact many violations of GAO's

administrative process exist as ongoing procedural deficiencies with no investigation or

corrective action ever even contemplated by the PAB or its general counsel. All of these

functions are the Statutory responsibility of the PAB. It simply fails to perform any of those

functions in a meaningful manner. Each and every GAO employee who perceives a violation is

therefore deprived of his statutory rights to enter into a meaningful administrative process.

The reason for this is quite simple, GAO totally controls the budget of the PAB, the

Board membership of the PAB, and through pressure upon those Board members, all policies of

the PAB.

And GAO would not tolerate any such investigation or correction. Management of GAO perceived the necessity for age discrimination as a matter of its own national personnel policy. GAO's own procedures are sufficiently deficient, that on July 10th, 2006, unknown to any plaintiff, in on-going EEO cases, or potential cases or its counselors, GAO substituted an entirely new version of its operative Order, Order # 2713.2.

That order which governs all filings and processing of civil rights complaints. No comments were solicited, and no one was notified. Moreover, the administrative procedures to which the plaintiff herein, (Moses) was subjected, were not followed, either in the earlier or later versions of that operative order. The GAO administrative process is sufficiently broken that GAO does not even follow it own mandatory administrative procedures. Moses demands relief in the form of a Writ of Mandamus against the GAO to make it follow the mandatory administrative processes as to notice, confidentiality and relief required by its own operative regulations. To the extent that those regulations differ from the Federal Code, for example as to confidentiality of the initial complaints (which are routinely violated) GAO should be required to follow that law also via the mandamus action.

Moses sues the GAO personnel oversight agency, the United States Government Accountability Office Personnel Appeals Board (The PAB) for its own failure to carry out its mission established by Congress when it created the PAB and its office of general counsel in the GAO personnel act of 1980. GAO employees were guaranteed equal rights to other federal agency employees when the PAB was created. This has not happened.

For example, while it is known that about 14 GAO employees have recently sought the

4

advice and power of the PAB, and its offices of the PAB general counsel seeking administrative

relief of these cola denials, the actions of the PAB have been, on information and belief, woefully

deficient even negligent, in seeking relief for employees seeking their aid.  On information and

belief, no employee was advised of their right to complain for the class, and no employee was

advised to make a complaint of age discrimination, although those actions are supported by the

facts of the case.  Those facts indicate that nearly all, if not all, of the entire class of about 400

persons are over the protected age of 40, and the pattern is nearly universally a denial of rights to

the older persons in the group re-evaluated leading to the denials.

The deficiencies in action by the PAB are not mere accident or happenstance.  The PAB

is entirely in the thrall of the GAO in that GAO controls the budgetary process of the PAB, its

board and its appointments to the office of general counsel.  That process is entirely controlled by

GAO, and not the GAO oversight agency as intended by Congress when it set up the oversight

agency in order to insure that GAO maintained its independence while auditing other federal

agencies..  These violations also involve the failure of GAO's own personnel oversight agency,

the PAB, and the general counsel of that agency, to perform their statutory oversight functions.

The PAB, and its office of PAB General Counsel, is charged with the responsibility to

investigate *on its own[1]* alleged violations of law by the GAO, on information and belief, has been

ordered not to press investigation on allegations of age discrimination.  Thus, to the extent such

interference has occurred, and the complainant so alleges, the PAB, and/or its office of General

Counsel, is an accomplice in the wrongdoings and violations of law and complainant's rights

---

[1]  The investigative power of the PAB Office of General Counsel is, as set out by Congress similar to the power of the EEOC general counsel which furnished the model of the PAB's structure when Congress created the PAB in the United States General Accounting Office Personnel Act of 1980.

complained of herein.

Mr. Moses seeks to become a class representative for a class or classes of employees similarly situated to his own complaints. He invokes the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*. ("ADEA") and seek to make it a class action under the provisions of Federal Rule of Civil Procedure 23, and federal employment law decisions in this Circuit allowing such class actions under the rule of ***Moysey v. Andrus***, 481 F. Supp. 850, 21 FEP 836 (D.D.C. 1979).

Moses also alleges violations of federal regulations and the Constitution to the extent he, and the class he seeks to represent were denied equal protection of the laws and due process of their frustrated complaints by a dysfunctional administrative process. The entire operation of that process, on an across the board basis, is in violation of law and GAO's own regulations to such an extent that the administrative relief process is entirely non-functional and a sham. As an example of the non-functional nature of the oversight agency administrative complaints recently filed by the PAB office of general counsel on behalf of those 14 persons, again on information and belief, never mention ADEA or age discrimination (the strongest complaint) and never requested a class action on behalf of about 400 affected and damaged employees and former employees who resigned to avoid the stigma of the downgrade.

The public interest and outrageous nature of these actions are evidenced by the letter recently sent to the Comptroller General by nine members of congress (Attachment 1, incorporated by this reference). It appears from the letter that the Comptroller General not only violated the law, but misled congress in the process of doing so.

6

**3.  Relationship to Previous Cases:**

This new lawsuit is somewhat duplicative of the facts as stated in the case filed earlier this year by Mr. Moses with two former GAO employees.  However, exhaustion of the administrative process on the new violations (downgrades and cola denials)  have happened since the filing of the previous case.  New facts have been discovered since that time, necessitating this filing.  This has been done since GAO may allege the COLA denials and downgradings are discrete and separate events from the patterns and practices complained of in that earlier lawsuit.

That suit is ***Davis, Moses and Gilbert, et al, v. Walker***, case no **06 1002 (JGP).**  This case is filed in the interest of caution in the event the Court determines that the new events are indeed discrete events and not a part of the original pattern in that earlier case.

Because the facts and events complained of are duplicative and redundant this case is filed as a related case to the previous filing.  Mr. Moses would have no objection to consolidation of the two cases.

**4.  Injunctive Relief Requested:**

By motion accompanying this filing, Mr. Moses requests injunctive relief for himself and all similarly situated employees.  Immediate and irreparable harm is continuing by reason of the cola denials, downgrading, and denials of fair and due process by the failures of processing of administrative complaints in accordance with statutory requirements and GAO's own regulations.  The Court's attention is respectfully directed to the accompanying motion for injunctive relief.

**5.  The Substance of this Complaint:**

These plaintiffs seek to remedy (GAO's) intentional unlawful actions of the use of age of

7

its professional auditors of 45 years of age and older as a determinative detrimental factor in personnel decisions. As a matter of unwritten GAO policy and practice, age is, and has been for many years, used by GAO as an adverse determinative factor in all aspects of professional level employment on an across-the-board basis affecting ratings, advancements, pay scale and terminations. This policy and practice is a continuing violation of ADEA and other federal law.

6. This complaint seeks preliminary and permanent injunctive relief for a number of matters. These are:

(1) A writ of mandamus against the PAB, and the PAB's office of general counsel to require it to adequately perform its statutory function of investigation and stamping out any and all illegal discrimination which occurs at GAO and to cease and desist from all subservient actions to the GAO management in derogation of those duties.

(2) A writ of mandamus against the GAO to cease and desist from budgetary or any other control over the statutory activities and duties of the PAB, including but not limited to:

a. Divestiture of the budgetary control of the PAB by GAO.

b. A mandatory change in the appointment process of PAB members and the office of general counsel of the PAB by the Comptroller General, by a declaration that the actions of the GAO in appointment of those persons is a violation of the civil rights of all GAO employees in that they are thereby deprived of equal treatment of the law. Such control renders the entire administrative process envisioned by Congress when it established the PAB and its Office of General Counsel suspect if not outright subservient.

c. Immediate restoration of the COLA denials on a retroactive basis to the complainant and all persons similarly situated.

8

d.  Cancellation of the "Band II split" personnel action as discriminatory in nature, and effective primarily to deny raises to older protected persons in violation of ADEA.

e.  A declaratory judgment that all persons who resigned or retired or were terminated within one year previous to the effective date of the "band II split" may reapply for reinstatement at their former grade with associated in-grade or other increases restored for all purposes.

f.  An Order, requiring GAO to disclose fully and completely, pursuant to F.R.Civ. P. 26(a)(1) the contents and details of its hitherto secret personnel statistical system, and each and every use thereof, since 1985, as withheld in obstruction of justice and misleading statements to this Court with full expenses thereof, including costs and attorney's fees of the complainant and counsel to be bourne by the GAO.

g.  A declaratory judgment that the GAO and the PAB have acted in concert to deprive all affected GAO employees of equal treatment of the laws, age discrimination, veterans' rights and discrimination based upon race and color to the extent disclosed by the withheld statistical system since 1985.

**7.  Evidentiary Foundation for the Allegations Herein:**

The allegations herein are in part based upon personal observations of the three plaintiffs in the earlier filed case, and by Mr. Moses in the instant violations.  To the extent that the allegations of a pattern and practice has existed since 1985, the previous statistical filings, tables and opinions of Dr. Richard Lurito, Dr. Chennareddy, and the hand compilations by William D. Mullen, former GAO human resources officer filed in case No. 87-3538 in April of 1994 and April of 1995, are incorporated by this reference.

Moses and previous complainants have coined the phrase the "Band II Split and Colas" denials to describe this process. The plaintiff herein and the class Moses seeks to represent each were denied colas and/or downgrades by GAO's recent actions termed the "Band II Split and Colas". These persons are or were "evaluators" or "analysts" the term used at GAO to describe its staff auditors and investigators which comprise the bulk of GAO's professional staff.

The putative class representative, and persons available for witnesses bring to this complaint many man years of observed examples of actual complaints of hostility and discrimination against older protected workers based upon age. In addition they have a combined observation of hundreds of examples of the very type of complaint that ultimately affected their own employment status (once they themselves reached the disfavored age). The statistics submitted in prior related cases disclose a universal pattern. That pattern, Moses alleges will be corroborated by GAO's own statistical system, if and when the Court requires disgorgement of that data in accordance with applicable rules of law. In the meantime, the pattern disclosed by the existing data is unrefuted as the best evidence available as to the age bias at the GAO.

Most recently, the manipulation of the "band system" has been used by management to purportedly justify announced de-facto demotions of persons over 50. The pattern of demotions and dismissals of persons over the age of 50 is consistent and without material exception, also on an across the board basis. Mr. Moses allegations detail those violations of ADEA and its effect upon him.

Attachment 2 is Mr. Moses Declaration.

Attachment 3 is Mr. Davis Affidavit.

Attachment 4 is Dr. Chennareddy's affidavit.

10

The facts set forth in these affidavits and declaration are incorporated as if fully set forth herein.

**8. EXHAUSTION OF ADMINISTRATIVE REMEDIES--**
   **2002 and 2006 COMPLAINTS-CONTINUING VIOLATIONS:**

Moses has given GAO a timely 30 day notice of intent to sue as to these specific violations. However, he avers that the instant violations are a continuation of the same pattern and practice complained of in his previous complaint, ***Davis, Moses and Gilbert, et al, v. Walker***, case no **06 1002 (JGP)** and attempts to intervene into the related case of ***Chennareddy et al v. Walker***, USDC DC case No 87-3538 JGP.  That notice was mailed to the GAO office of opportunity and inclusiveness (OOI).

Also Moses filed an administrative complaint in 2002 and in March of 2006.  Both of those administrative complaints were subjected to an administrative complaint process with a formal investigation but never completed by GAO as required by its own regulations.  More than 180 days have expired from his complaint filing in both instances leading to his right to sue despite the failure of the GAO to timely complete its administrative process as required by its own regulations.

**TIMELY NOTICE OF INTENT TO SUE:**

9.     Exhaustion of Administrative Remedies for ADEA cases is not required.  However, a 30 day notice of intent to sue is required by ADEA and GAO regulations.  The named Plaintiff has filed three notices of intent to sue.  The first was filed in the year 2000 more than 30 days prior to their attempt to intervene in the related case.  The second was served on Defendant on April 6th, 2005 in a letter addressed by their counsel to OOI.  The third, the instant notice was mailed on August 9th, 2006 and received by GAO on August 14th, 2006.  Thus, more than thirty days has

expired since that notice to the filing of this case.  Moses complained on March 26th, 2006 as to

the COLA denials, and thus, as of the date of filing this complaint, more than 180 days have

elapsed without the mandatory completion by GAO of the administrative process.  The result, is

the complainants right to sue.

10.    The procedures followed by OOI do not afford GAO employees with an adequate or

normal administrative process.  GAO does not follow its own regulations and has recently

changed the operative Order, Order # 2713.2, effective July 10th, 2006 without notice to any

employee or counselor (Moses is a former counselor).  For example, Mr. Moses filed

administrative complaints in 2002 and on March 30th, 2006.  Neither have been completed in

accordance with the dictates of GAO's own order requiring completion and notification of

GAO's final decision within 180 days of the complaint.  As of the date of filing this complaint,

more than 180 days have expired, but no results from the investigation has been received, and

GAO has not ruled upon the merits of Moses's complaints, as required by law.  On information

and belief the failures to process Mr. Moses's claims are typical of those applied to the class he

seeks to represent.


**11.  JURISDICTION:**

       At the time of the occurrences complained of herein, plaintiff and the class he seeks to

represent were all over the age of 40 and paid within GAO's "Band II", or the higher ranks of

Band I, as professional evaluators and auditors.  All persons similarly situated are also victims of

the pattern of across the board continuing violations against older professional level auditors and

evaluators.  Those similarly situated persons are, on information and belief all over the age of 40,

and some, about 300, have been or are about to be demoted into the lower strata of "band 2" at the GAO and/or denied colas. That lower strata, or division, is designated Band IIA. In addition there are, on information and belief, about 40 "Band I" analysts who have also been denied Colas. The denials of colas began on February 16th, 2006 for Moses and the class he seeks to represent and has proceeded each payday since that time for himself and all others similarly situated.

12. On information and belief, based upon the pattern and practices observed, about 340 persons either have been recently terminated for reasons involving their age, or are about to be terminated because of the overt and blatant bias against older employees which is a part of the policy at the GAO to lower the median age of its work force for discriminatory reasons.

13. Defendant is an employer within the meaning of the ADEA, 29 U.S.C. § 633a(a).     The defendant, David M. Walker, is the Comptroller General of the United States and the chief executive of the United States Government Accountability Office (GAO).

14. Jurisdiction of this Court is founded on 29 U.S.C. § 633a (c). Jurisdiction is also founded upon the Equal Pay Act and the due process and equal protection of the law clauses of the fifth and fourteenth amendments to the Constitution of the United States of America. On information and belief, jurisdiction will also be found to exist under Title VII, 42 U.S.C. Sec 2000 e, et seq., as amended as reprisals for protected activities of this plaintiff and many if not all of those persons similarly situated. The plaintiffs are contemporaneously filing a motion for a preliminary injunction and a motion for class certification under Rule 23. The allegations in those motions are incorporated by this reference.

15.     As to the jurisdictional amount of plaintiffs claims, although presently inapplicable as a

bar because of federal question jurisdiction, the amount of damages for the plaintiff as

demanded, and as demanded for each class member is $300,000 per person.

16. **VENUE**

The District of Columbia is the proper venue for this matter pursuant to 28 U.S.C. §

1391(e). The centralized actions of the GAO giving rise to the discrimination took place for the

most part in the District of Columbia. The main office of GAO is in the District of Columbia.

The main office of the PAB is in the District of Columbia.


17. **STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S CLAIMS:**

The foregoing paragraphs are hereby incorporated into this statement of facts:

**The Named Plaintiff:**

18. **Mr. Moses**.

Mr. James D. Moses (Moses) is an African American evaluator over the age of 40 in the

Los Angeles office of GAO. Moses always received highly favorable ratings (the foundation for

advancement and promotions in GAO) and was a high level group leader on multiple projects

until he reached his mid 50's. His leadership and accomplishments led to his final promotion, to

GS-14, the second highest line manager position in the field at that time (1984). Not only was

Moses the group manager for a major issue area with 10 people reporting to him, he was also the

Civil Rights Counselor, and Grievance Examiner for the Los Angeles Office. In that position, he

to has observed the age discrimination in process as applied to many persons he has counseled.

19. Moses was performing assigned tasks, receiving high ratings and was generally viewed

by management and his co-workers as a model professional level evaluator. However, with the

passage of time he automatically, with no change in performance, became a member of the disfavored age group. Then, and only then, did his rating fall. Moses was relegated in job assignments to reporting to younger staff. He along with two other African American colleagues attempted to intervene into an ongoing related case alleging age discrimination, ***Chennareddy et al v. Walker***, USDC DC 87-3538. No relief was ever granted in that case. Intervention was heretofore denied.

20.    Frustrated, angered, and damaged by further actions of his superiors, and continuation of the demeaning and intentional mis-treatment, designed to cause his resignation, Mr. Moses filed a discrimination complaint with GAO's civil rights office (now the office of opportunity and inclusiveness). That internal complaint was filed on 1/18/02 on the basis of age and race. In addition he alleged retaliation for having attempted to intervene in the afore-cited ***Chennareddy v. GAO*** case. Investigation of the complaint revealed that Mr. Moses was not treated fairly. The complaint was never resolved and GAO has never issued a final decision. The discrimination continued.

21.    In December 2005 and January 2006, GAO adopted a new series of actions designed to eliminate older persons from the staff. These actions were named "Band II Restructuring". This new plan worked as follows. Band II's were split into two groups, Band II B (the highest) and Band II A. The determining criteria were stated by management using the standard terminology for subjective ratings of personnel with the added factor being considered most important, that of "role model". Since GAO's ongoing policy was to downgrade all older employees, and Moses had been continually subjected to being downgraded in leadership roles to a subservient position (along with all older persons similarly situated) it was inevitable that Moses would be

15

downgraded into the lower category.

22.     In accordance with the intent of the scheme, in December 2005, he was notified that he had been placed in Band II A, the lower group.  Moses appealed to David M. Walker, Comptroller General about being placed in this lower category and asked the Comptroller General (CG) to reconsider his decision.  On 2/7/06, he received the CG's decision not to change his position of placing Moses in Band II A.

23.     Moses next asked Mr. Walker for a meeting in person to discuss his position on this issue.  Mr. Walker did not grant the personal meeting but spoke to Moses by telephone on 2/16/06.  During this 45 minutes telephone meeting, Moses informed Mr. Walker that he believed that he had been treated wrong in being placed in II A.

24.     Moses informed the CG of his history of satisfactory employment and undiminished ability.  Walker was informed that Moses had achieved a GS-14 level prior to being grouped into Band II with younger and less experienced GS-13's; that he was treated wrong then, and, again, unfairly and incorrectly with the split and further downgrading .  Moses stated that he felt hostility, embarrassment and hurt by the demotion, and was psychologically devastated.

25.     With no positive results from Mr. Walker, and knowing he had no chance of relief in normal complaint channels, and knowing that the GAO's own personnel system is dysfunctional, he filed a discrimination complaint with the office of opportunity and inclusiveness on 2/17/05 on the basis on age and race.

26.     Moses alleges based upon his own information and knowledge that the Band II split has had negative impact on him and about 400 hundred others who were and are similarly situated with him on the band II split demotion.  All of those persons are 50 years old or older.  Not only

have virtually all of those older workers been embarrassed, demoted, and psychologically hurt, they were also denied a cost of living increase. That denial, standing alone is a denial of equal treatment of the law and, he believes, a discriminatory event. But the entire continuing process is one that has been of long standing and represents nothing less that overt intentional discrimination based upon age.

27.    Mr. Moses, on information and belief, and his own observations, alleges that the hostility against older employees is uniform among his co-workers, and the extent of the bias is nearly 100%. He believes that available statistics will confirm the universal bias he has personally observed since he reached the age of about 45. Mr. Moses is also aware of the flawed process of GAO's internal personnel oversight agency which has refused to investigate the age discrimination pattern and practices herein alleged as is its statutory duty.

**28. Other Facts:**

Recently, the use of age as a determining factor has been and is being escalated and applied in a scheme to further downgrade virtually all older employees who remain on the staff. The comptroller general has stated in numerous recorded statements his policy, expressed as a necessity,  reduce the average age of persons in Band 2. This statement, standing alone, demonstrates age bias. This is true because in plaintiff's profession, auditors, experience, knowledge of the workplace, and judgment is far more important than youthful physical vigor. Thus, age has no bearing upon the actual work performance of these plaintiffs, or the class they seek to represent. Yet that factor has been used as the most important factor in the rating process.

29.    The methodology of discrimination starts by lowering ratings of older employees, then

17

based upon lower ratings, denying advancements, followed by failure to promote, then denial of

adequate performance, followed by sanctions.  Sanctions include denial of cost of living

increases, forced retirement and/or termination.  This process happens only to the older

employees.

**30.  Continuing Violations of ADEA:**

In the fall of 2005, upper management of GAO decided to separate the band II employees

into groups.  Purportedly these groups were to be reevaluated based upon performance, but in

reality the separation was just another method of attempting to intimidate older employees into

leaving.  Evaluations were biased against older employees, and the resulting separation was to

place virtually all older employees into a lower designation "band IIA".  Those persons, and also

those band I's who had reached the upper limits of their pay scale were placed into a "Hold"

position as to raises.

This failure to pay colas included any statutory cost of living increases granted by

Congress as to the entire federal government workforce.  This had the effect of unequal

protection of the laws as to the predominately older Band I's and Band II's selected for this

special discriminatory treatment.  The failure to pay colas began in Moses's paycheck of

February 16th, 2006 as did, on information and belief, each other putative class member.  Each

new paycheck written contains an element of damage to Moses and each person he seeks to

represent.

31.    These new practices are but a continuation and overt escalation of the ongoing overall

bias against older, more experienced professional level auditors and evaluators has been ongoing

for over 20 years.  The impact of these policies and practices has created a hostile work

environment, well known to exist in application to all of these plaintiffs and the putative class.

The sole exception to these allegations is those employees who were selected earlier in their

careers for upper management level at GAO, the Senior Executive Service (SES).  Using age as a

determinative factor violates ADEA as well as federal rules and regulations involving equal

employment rights and prohibited employment practices.

32.    Through the denial of effective redress to the PAB, a key component of the GAO

Personnel Act of 1980, these plaintiffs have been denied equal status with their counterparts in

the Executive Branch in their rights to appeal perceived discriminatory actions of management.

They have also been denied their constitutional right to equal application of the laws, equal pay,

and veteran's preference rights in promotions and retention.  Administrative denial of appeal

rights occurs because the PAB, the purportedly independent appellate agency for GAO personnel

oversight is in fact totally controlled to the point where it is not allowed to question

administrative actions of GAO designed to thwart equal employment of older employees.  This

denial is by the use of a number of different mechanisms of control over the PAB.  Those

mechanisms include admitted budgetary control and historical failure to appoint administrative

judges who question GAO's discriminatory actions.  At one time the PAB was allowed to

whither on the vine, with no quorum for any activity at all.


**33.  GAO's SECRET STATISTICAL SYSTEM:**

Age discrimination in employment has been intentionally and routinely measured,

controlled and enforced by GAO management for more than 20 years.  This aspect of the

discriminatory mechanism is a hitherto secret centralized statistical measuring system for GAO's

personnel.  That personnel system contains hardware, data and software systems for measuring results of classification of employees by age group, race, sex, disability, veteran's status, and all necessary elements to define and measure any and all employees personnel profile data.  It can be and has been used to measure and plan  resulting personnel actions by management, like those complained of herein based upon age as a determinative factor.

The very existence of that system and its use in the ratings, promotion, and retention process resulting in the age discrimination here alleged was is hidden from all but select high level management officials.  Intentional misinformation of the non-existence of any such system was given to the courts by GAO's counsel in related cases.  That false information was designed to thwart class certification in order to stall the case.  That strategy worked.  The defendant's own personnel oversight agency was denied access to the data in order to hide the availability and use of these powerful tools of discrimination from disclosure, or use to shine the light of truth upon GAO's discriminatory actions.

The foregoing facts and false information have impacted the rights of this plaintiff  this plaintiff and two other similarly situated persons six years earlier through the denial of their intervention into the related case, as well as class certification much earlier when they were, or would have been but for the actions of GAO, class members.

The United States Department of Justice has been misled, and this Court has relied upon this false testimony to deny relief based upon the false denials of the existence of existing comparative data older protected employees.  GAO's own oversight agency, the PAB, has at least passively complicity in the GAO's denials of the very existence of damning statistical files.

34.     All of these actions are illegal and overt denials of the equal employment rights of these

plaintiffs and the class they seek to represent, as well as equal access to the laws, equal treatment under the law and due process of law.

35.    A further part of the scheme to deprive older employees of equal access to the law requiring equal treatment regardless of age involves the control of GAO's sister agency, the United States Government Accountability Office Personnel Appeals Board (PAB).  Access of that agency to the secret system was prevented.  When age discrimination was suggested from an independent analysis by PAB, GAO denied the truth contained in its own (secret and hidden) statistics.  Because of utter control of the PAB in appointments and budget by GAO, it has become an utterly ineffective agency, most particularly in processing age and veteran's claims.

36.    Recent developments in splitting the band system with a stated policy of lowering the average age of the professional level employees, de facto demotions, forced retirements and constructive discharges are now ongoing and continuing.

37.    The result if these policies continue is immediate and irreparable harm for which injunctive relief is not only appropriate but essential to achieve meaningful relief.  Most egregious is the fact that defendant has not been candid either with its own oversight agency or federal courts.

38.    The most recent manifestation of those policies, the band splitting leading to demotions and termination affects about 300 staff members over the age of 50.

39.    The express intent of Congress to afford equal treatment to all GAO employees when it created the independent personnel oversight system (the PAB) for GAO employees has been intentionally evaded and obstructed by the matters outlined foregoing and the continuing pattern and practices complained of herein.

21

40.    This case is a related case to another case before this Court, ***Chennareddy et al v. David Walker***, Case No 87-3538 (JGP) in that Plaintiffs herein have previously complained of the same continuing violations, filed notices of intent to sue with the GAO, and moved to intervene in that case.  Remedial action by the District Court has been frustrated by GAO's obstructionist actions in that case and in continuing control of the PAB which deprives all aggrieved GAO employees of equal access to the law.  Intervention by these three plaintiffs was denied necessitating this lawsuit.

41.    Plaintiffs are entitled to file a class action in this case in that the amount in controversy is over the lower limit set for class actions (in excess of $ 100,000 for each named plaintiff) and federal agency employees may file class actions pursuant to Rule 23 in this court involving federal questions, and in particular ADEA under the authority of ***Moysey v. Andrus,*** 481 F. Supp. 850, 21 FEP 836 (D.D.C. 1979), and later citing cases.

42.    Plaintiffs seek, for themselves and all others similarly situated, immediate injunctive relief stopping the discriminatory process of splitting band 2 into two discriminatory subdivisions using age as a determinative factor, back pay, front pay, revisions of the discriminatory practices complained of herein, and meaningful relief in the form of a writ of mandamus to the PAB and GAO to enjoin the denial of equal access to the law for themselves and all similarly situated persons.

43.    Plaintiffs also seek relief in the form of retroactive damages for denial of relief previously requested by these three plaintiffs and all similarly situated persons who were denied relief by the federal court many years ago because of reliance upon GAO's false pleadings and representations to this Court.  Those misrepresentations  denied existence of the scheme of discrimination based

upon age, and the practical means to prove the results of that scheme, thought to be nearly 100

bias, the personnel data and statistical systems to measure those results.

44.    Plaintiffs also seek a merger with existing the on-going complaint in ***Chennareddy et al***

***v. Walker***, USDC DC No 87-3538 at the appropriate juncture in this litigation.

45.    Plaintiffs also seek costs and attorney's fees as appropriate and as found by a court or jury

to be in the interests of justice under the general powers of this Court and Rule 11, Federal Rules

of Civil Procedure.

46.    Typical of each plaintiff's experience during the later years of his employment was the

fact that employees who received choice assignments, and ultimately advancements and

promotions were disproportionately much younger and much less-qualified than Plaintiffs.

Plaintiffs each suffered degradation in their performance ratings because age was used as an

important if not determinative factor in all of the important personnel decisions, starting with

ratings.

47.  On information and belief, the GAO at all relevant times possessed individual data on age of

persons rated, and used that data in satisfying management's goals in reducing the average age of

the staff.

48.    Promotion panels at GAO are uniformly chaired by an Senior Executive Service person

who has access, whenever the chair wishes, to age and years of service data on all applicants.

The use of that data explains the hitherto inexplicable nearly 100% bias against older (45-55)

employees.  In addition, the chair of each panel has control over other panel members in that the

chair is always senior in regular rank (as an SES member) to the other non-SES members.

Therefore, what the chair wants, the chair dominates to get.  This process is how, using the age

statistics, the discriminatory process is the 100 % effective process that it has become during the time these plaintiffs have served this employer and the public interest as federal employees.

49. **GAO's Disinformation and Cover-Up of the Existence of Personnel Data Base Systems:**

The GAO, in litigation in on-going related cases before this Court, has denied the existence of data and systems to utilize that data containing employee demographic information, including age, of all of its professional level employees for the relevant period of time.  The data base system was denied to exist in statements to this federal Court and to GAO's own personnel oversight agency, the PAB.  Thus, GAO has been materially disingenuous as to ( both) the existence of the data base system, and the substantive content of the discrimination which would be stark and obvious from the data contained in that system.

50.     The result of GAO's disinformation campaign was to intentionally obstruct the flow of information to complainants and its own agency to enable it to continue to violate the ADEA. The matters complained of by these three complainants, for themselves and the class they seek to represent was the direct result of that disinformation and obstruction in that these matters have never been corrected and are on-going for over 20 years.

51.     If age had not been a determinative factor in ratings, by itself a violation of ADEA, these plaintiffs and all others similarly situated would have had qualifications superior or equal to the younger employees who were selected for choice assignments, advancements and promotions. If the available statistics are disclosed those statistics will demonstrate that terminated employees, who were constructively discharged, represented to a large part employees over the age of 50 at a significantly disproportionately greater rate than those under 40 or in their early 40s.

52.     GAO has engaged in prohibited personnel practices, including the use of age as a

determining factor by furnishing the panel chairman a list of ages of applicants when conducting

ratings panels, promotion panels, and terminations during RIF's.  Those practices included

ignoring veterans rights and targeting younger employees for "fast track" preferential treatment

as compared to older more experienced employees.

53.     As a result of defendant's unlawful conduct, Plaintiffs have lost salary, pension

benefits, health insurance coverage and other benefits of employment because of defendant's

unlawful conduct.


**54.  Class Action Allegations (Under L. Civ. R 23.1):**

(1)[2] This case is maintainable as a class action pursuant to Federal Rule of Civil

Procedure 23 (a)(1)-(4) and 23 (b)(1)-(3), and *Moysey v. Andrus*, 481 F. Supp. 850, 21 FEP 836

(D.D.C. 1979) and subsequent cases citing *Moysey* as precedent.

(2) (i) This class action is brought on behalf of 300 +  members of the putative class of

employees in professional level positions at the GAO.  That number has been derived by a count

of similarly situated persons over 40 who have been adversely affected by the GAO's plan to

restructure and/or demote and/or terminate band II employees as described foregoing.  Each new

paycheck written under the improper denial of cola increases is a new violation of equal

protection of the laws, the equal pay act and has been deemed to present a viable claims of a

prohibited personnel practice by the PAB office of general counsel, without being barred by

either the PAB or its office of general counsel.  On information and belief, no steps have been

---

[2]  Numbers correspond to numbers in the local rule, L.Civ.R 23.1.

taken by the PAB as would be appropriate to prohibit the taking of rights and property of older employees by this illegal scheme of age discrimination by GAO.

This is yet another example of the PAB's failure to act to protect the rights of GAO employees as is its statutory duty.

**55.  Class Definitions and Allegations Pursuant to Rule 23, F. R. Civ. P.:**

**Proposed Class Definition:**

The class which this Plaintiff seeks to represent is:

Those employees of the United State Government Accountability Office (GAO) who worked for GAO during a part or all of the period of time from January 18, 1996 to date, (a date three years preceding the date this plaintiffs initially complained to this Court) who were or are employed in positions in GS Grades 11, 12, 13, 14, or 15, or the equivalent "band" at GAO, in Bands I, II, or III, who were at least 40 years of age during a part or all of the time period of their employment at GAO who were denied A. promotions, and/or B. denied correct "pay for performance", and/or C. denied fair employment ratings, and/or D. denied high visibility assignments, and/or E. actually or constructively discharged, and/or suffered *de facto* demotions and/or denial of cost of living increases, in favor of younger equally or lessor qualified persons as the result of the unfair, biased and discriminatory employee rating system using age, and/or a combination of age and race as a determining factor, and/or the integral "quota system" favoring younger applicants for positions and/or advancements and/or any combination thereof, in effect at GAO during the time frame of his/her employment as an evaluator or evaluator support person at GAO.

(ii) **The Plaintiff is an Adequate Representative of the Class (or Classes):**

The Plaintiff, James D. Moses, is a member of the protected age group, i.e., over 40, and has been passed over, or denied fair ratings, and the resulting higher "pay for performance" using age or age and race combined, in the promotion and ratings process in favor of younger, less qualified and far less experienced employees of the United States Government Accountability Office.  Plaintiff Moses has been harmed by both the acts of disparate treatment complained of herein and the adverse impact of the GAO promotion system.  He has been denied a statutory right to a cost of living increase granted by Congress, since February 16th, 2006.  The statute of limitations has not expired on any of these claims.

The Plaintiffs and their counsel have demonstrated by their persistence and patience over the 7 year, period of time from when they first sought to intervene in the related case their dedication to the truth and validity of their claims.  Their counsel has been litigating this case and the related putative class action for more than 20 years.  Large expenditures of funds have been required, in large part resulting from GAO's stonewalling of truthful reporting of its known age discriminatory policies and failure to candidly provide statistics which would long ago have proven these plaintiffs allegations.

These three plaintiffs essentially challenge all aspects of the ratings and promotion system at GAO as biased and unfair and in violation of ADEA.  To undertake such a challenge standing alone demonstrates the adequacy of their representation.  They have pledged to adequately protect the interests of the class, as has their counsel.

(iii) All of the questions of law and fact as claimed in this lawsuit are indeed common to

the class.  The detailed allegations contained throughout this complaint are incorporated by the reference, and in addition those questions are summarized herein as follows:

a.  Whether the GAO maintained a ratings system and policy applicable in hiring, promotion, forced retirement and retention or termination in reduction in force situations for its professional level employees that created a pervasive pattern and practice of discrimination against persons over 40, and particularly those initially over 43, who are now over 50, by setting quotas for promotion based upon prohibited age, or age and race factors, in favor of younger persons; whether the "goals and timetables" system is in reality a "quota" system illegal based upon criteria that are prohibited by Federal Code, Existing Regulations applicable to the GAO and the PAB, and prohibited by Supreme Court precedent?

b.  Whether the GAO's mandated adherence to that system resulted in the exclusion from high profile tasks, the reduction of scores on performance reports, the elimination or reduction of promotions and earnings, or loss of tenure and retirement benefits in favor of young persons via the "PFP" system for the Plaintiffs and members of the class resulting in inequality in opportunity solely because of the acts complained of, and the system in effect complained of in this case?

c.  Whether the GAO maintained a quota system designed to favor a class or classes of preferred employees, said preferences based on illegal criteria, age, sex and race?

d.  Whether the discriminatory system in effect was known to be illegal, and whether that discrimination based upon age was intentional?

e.  Whether the PAB participated in the design and/or maintenance of that illegal quota system, for a part or all of the time period covered by this complaint (1983 to date)?

28

f.  Whether the mandate of Congress for the PAB to furnish oversight on GAO's activities  and the failure of the PAB to enforce adherence by GAO to equal employment opportunity law for protected older persons creates an actionable right by members of the class enforceable by this Court and for which relief is appropriate?

g.  Whether the recent split in the band system, and denials of cost of living increases is part and parcel of the continuing violations by GAO of equal rights of employment of its older employees represented by these three plaintiffs and the class or classes they seek to represent.


(iv) **A CLASS ACTION IS SUPERIOR TO OTHER FORMS OF ACTION THAT THIS CASE MAY TAKE, QUESTIONS OF LAW AND FACT (BOTH) PREDOMINATE OVER QUESTIONS AFFECTING ONLY THE INDIVIDUAL PLAINTIFFS:**

56.    Plaintiffs, for themselves and the class(es) allege that the practices resulting in the depriving of their right to equal employment opportunity, and to be free of discrimination based upon their age  was, for the entire time frame of this complaint universal in application.  It is an observed fact, based upon a 100% analysis of the promotions for the bulk of the time frame for the class, and well published comments by GAO management, that older persons just did not and do not get promoted, at the GAO.  The statistical principle of  "the inexorable zero" is believed to be applicable to the extent of the exclusionary process for older persons at GAO in all of the positive attributes of employment.  That is virtually none (zero) get promoted or get equal treatment under the applicable policy and rules at their employment at GAO.

57.    The root cause of this universal exclusionary process has been discovered.  It was the maintenance and mandatory enforcement of a centrally controlled system of setting quotas for promotions, hiring and advancement in order for each SES person to comply with the directives

of GAO management to increase representation of minorities and females at all levels at GAO. The result of that system was the total exclusion from any meaningful consideration for high profile tasks, and for promotions to management positions of all persons over the age of 45-50. Now the extension of those policies have resulted in a new manifestation of the discrimination, the band split with de factor demotions to each older (over 50) employee considered.

58.    Plaintiffs herein allege that (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact common to the class; and (3) the representative parties will fairly and adequately protect the interests of the class.  The common questions of law and fact are consistent and universal to each of the Plaintiffs and the other members of the class.  The homogeneity of data and facts is such that the only practical handling of this case is via a class action.

59.    Plaintiffs hereby incorporate by reference the additional allegations contained in the contemporaneously filed Motion for Preliminary and Permanent Injunctive Relief, and Motion to Certify the Class.

## STATEMENT OF CLAIMS

### COUNT I
### (Injunctive Relief Halting Promotions and Terminations
### At GAO Pending Correction of the System)

60.    Each and every preceding allegation of this is hereby incorporated by this reference.

61.  The maintenance of a biased promotion and retention system acting as a *de facto* bar to the advancement, promotion, denial of cost of living increases, and pressures resulting in early terminations  of all employees over 45 during the time period of this complaint violates ADEA, 4

CFR parts 2 and 29, and constitutes a prohibited personnel practice in violation of GAO's entire scheme of purported adherence to Merit System principles and equal pay for equal performance at GAO.

63.  The denial of equal protection of the laws to GAO's older employees by the failure of the PAB to adhere to its statutory duties, and be subverted by GAO's budgetary control over its operations violates Constitutional Principles subsumed into Title VII.

WHEREFORE, Plaintiffs herein request that a preliminary and permanent injunction be issued enjoining the United States Government Accountability Office from hiring, promoting any employee, or transferring any employee under the age of 40 in order to evade the applicable Reduction in Force regulation in GS grades11 through 15, or equivalent bands, I through III, inclusive, as being in violation of the individual rights of each of the class members herein.

Further, any further denial of cost of living increases to any member of this putative class, or the class when certified should be prohibited.  Cost of living denials to date should be forthwith repaid to the deprived employee or former employee.  Said injunction should continue until such time as the practices complained of cease and are rectified as to future promotions, and cessation of forced retirement and termination of older persons in favor of young persons.  In addition, a preliminary and permanent injunction should be issued to each and every office of the United States Government Accountability Office enjoining that agency from promoting any employee under age 40 of the United States Government Accountability Office or terminating any employee over 40, as being in violation of the civil rights of any member of the afore-described putative class until such time as the entire promotion and ratings system, and the quota system creating bias in promotions is corrected to the satisfaction of this Court with

discrimination based upon age, race, failure to honor veterans's preferences fully and completely eliminated..

## COUNT II
**(Declaratory and Injunctive Relief, a Finding of Violations of ADEA,
for the plaintiff and the class or classes he seeks to represent,
with a Factual Finding of Intentional Discrimination Based Upon Age,
Bad Faith in Litigation and an Award of Attorney's Fees and Costs)**

Each of the preceding allegations is incorporated by this reference.
The facts contained in paragraphs preceding are hereby incorporated by this reference..

65.    The pattern and practice of age discrimination has been an on-going pattern and practice for many years, and continues even today.

66.    The most current scheme by GAO to downgrade and terminate older employees involves a splitting of "Band 2", the most numerous evaluator band into two sub-groups.  Those rated lower (which by illegal policy includes disproportionately the older employees) are not given cost of living increases, and are on the road out-the-door at GAO.  Thus, the policies and practices complained about in the earliest complaint of these three senior workers continues and increases.

67.    Because of defendant's actions, the plaintiff, and all persons similarly situated have suffered and continue to suffer major economic injury in that they were downgraded in their positions at GAO, and lost pay and other benefits.  Many similarly situated have opted to retire rather than suffer the shame of downgrades and reductions in pay represented by failure to give the statutory increases set by Congress because of the alleged, but untrue, poor ratings which gave rise to the classification at the lower grade level, Band IIA.

68.    Those damages also involve a bar to advancement, failures to promote on a par with younger similarly situated employees who were not subjected to the discriminatory conduct and

bias suffered by the older protected employees.

69.    GAO's in house statistical system, which has existed for the entire term of these

employees employment at GAO would show, and may be used to determine the extent of the bias

over the entire term of employment of plaintiffs and the class they seek to represent.  Disclosure

of the results of data in that system has been requested in normal discovery in related cases, but

GAO has refused, and even denied falsely that the date even exist.  GAO has the duty to disclose

that data pursuant to Federal Rule of Civil Procedure 26(a)(1).  On information and belief, that

data if disclosed would render false a material part of GAO's representations to the courts and

Congress for many years, and verify the correctness of the allegations of discrimination contained

herein.

70.    On information and belief damages to each named plaintiff herein is at least $ 300,000

over accruing over the term of their employment and thereafter as increased retirement benefits.

71.    The bad faith by GAO in misleading the PAB, denying the administrative appeal rights of

each employee, and misleading the United States District Court as to the non-existence of facts

and methods to present those facts constitutes bad faith litigation for which sanction are

warranted in the interests of justice.

72.    Plaintiffs hereby request this Court consider sanctions pursuant to the rules of court as

deemed appropriate.

73.  **DEMAND FOR RELIEF**

Plaintiffs hereby request a declaratory judgment be entered making each plaintiff herein

and each class member whole.  That relief to include a finding of discriminatory conduct by the

Defendant herein and his predecessor, a finding of bad faith conduct in previous litigation as

between these parties and each member of the class, damages to each plaintiff and each member

of the class individually as is appropriate, just and proper.  Those damages should include back

pay, front pay, increases in retirement to compensate for failure to promote, and damages for

emotional and psychological harm for those counts and those persons where such damages are

available as relief in such sum as the Court or a jury finds just and proper.  Relief should also

include interest for the cola denials and deficiencies resulting from failure to advance or promote

as appropriate in a sum not less than $250,000 each for a long term, 30 year, employee member

of the class.

A sum not less than $ 75,000,000 with costs and attorneys's fees as deemed just and

proper or such greater sum as the facts disclosed by the GAO's own statistical system would be

just and proper for the approximately 300 persons who have just been denied colas and were

denied proper advancements over the term of their employment at GAO.

## COUNT III
**(Injunctive Relief Against the PAB, A Writ of Mandamus Requiring That Agency To
Perform the Analysis and Its Functions Required by the Statute Forming that Agency)**

Each and every foregoing factual allegation is incorporated by this reference.

74.  The PAB has failed to fulfill its statutory duties to monitor, investigate and follow up

instances of discrimination, including age discrimination.  The PAB has allowed an improper and

dysfunctional administrative process to bar relief to all complaining GAO employees, those in

this class definition in particular.

75.  Monetary relief is not sufficient to guard against similar instances or omissions in the future.

76.  The PAB is totally dominated by the GAO in all aspects of its operation.  This domination

absolutely bars any good faith functioning by the PAB as to its statutory function.

77.  Therefore, the GAO and the PAB must be ordered to separate their budgetary entanglement, forthwith, and to eliminate any appearance of control in the appointment of Board members, and General Counsel of GAO by appropriate and control free  means.  This total reorganization should be Ordered to be accomplished within a six month period of divestiture of control and interests.

Wherefore, Plaintiffs request that this Court issue an Order:

(1).  Requiring the PAB to perform a scientific statistical analysis for each and every year since 1983 of GAO personnel files, and to do such data analysis as is necessary to obtain machine manipulable data from which such a scientific analysis can be accomplished, and to determine the validity or non-validity of the existing procedures of the present promotion system, or factors within that system which give the discriminatory results reported upon by the Plaintiffs herein, and which Plaintiffs allege will be verified Agency wide by GAO's own hitherto secret statistical system.

It is notable that those results were confirmed for the partial years study performed by the PAB; and further verified by the laborious hand compilations performed by members of the class in related cases.  The PAB should be required to further perform such analysis as is necessary to determine by logical groupings the actual damages to each and every Plaintiff and putative class member as alleged by the Plaintiffs herein and confirmed by the partial analysis of the PAB.

(2).  To undertake forthwith, a study as to the reorganization of its management and staff to accomplish the true independence envisioned by Congress when it established the PAB.

(3).  To furnish to this Court or such person as is appointed to fulfill that function a verified

report of accomplishments in completion of its duties as to this complainant and the class he

seeks to represent.

## COUNT IV.

(Denial of Due Process, Equal Protection of the Laws and Equal Access to the Law)

Each and every allegation contained foregoing is incorporated by this reference.

78.  The actions of GAO in denial of a process of equal access to the law for its employees, is a

violation of the essence of the intent of Congress when it enacted the GAO Personnel Act of

1980, et seq.  Congress expressed the specific intent to not diminish its employees access to

equal treatment under the law with all other federal employees.

79.    GAO, in its actions controlling its puppet the PAB has for over 20 years taken the most

basic rights of appeal from its employees.  The actions resulting in that control were overt,

invasive of employees constitutional rights of due process and equal protection of the laws.  66.

When belatedly, the PAB prepared a report from its own data, relevant data having been

withheld by GAO in contravention of its duties under Title VII to fairly report and maintain

statistics, GAO quashed dissent (see allegations of Davis, infra) and intentionally misinformed

the Federal Court in related cases that no relevant employee statistics or systems to make those

data understandable existed.

80.    Injunctive relief is appropriate to correct this manifest injustice and further damage to the

plaintiff herein and each member of the class.  Injunctive relief is necessary to prohibit such

activities in the future by denial of these plaintiffs equal protection of the laws and due process as

to their appellate rights which were and are being denied by the malfunction of the PAB created

by GAO's interference with that Agency's functions.

81.    Plaintiffs request a finding of bad faith where appropriate, and request attorney's fees and costs incurred in the prosecution of this lawsuit, along with such other relief as this Honorable Court or a jury may deem just and proper.


WHEREFORE, plaintiffs request that the Court grant the following relief:

(a) Enter judgment for each individual plaintiff and the class they seek to represent, and against defendant on their claim of age discrimination in violation of the ADEA in the amount demanded in the amount of  $ 300,000 per plaintiff and each member of the class they seek to represent;

(b) Award Plaintiffs and the class they seek to represent monetary damages, including back pay, and interest under the Back Pay Act, in an amount to be determined at trial to compensate them for the economic losses they suffered because of the Defendant's discriminatory actions;

(c) To the extent practical, Order defendant to place each plaintiff illegally terminated into positions of Auditor, Evaluator and/or Evaluator-related positions, comparable to the position each Plaintiff held at the time of termination, retroactive to the date of termination, with all appropriate back pay, benefits and other emoluments of the positions; for those for whom such relief is impractical, make them whole by monetary relief commensurate with the damages found to exist.

(d) Enter a finding of intentional violations of ADEA for the time frame of the actual violations found to have occurred; and to the extent these plaintiffs have suffered from GAO's bad faith pleading in this Court, and civil obstruction of justice to the extent supported at a trial or other resolution of this case, including intentional violation of ADEA, and award plaintiffs the costs of

37

maintaining and bringing this action, including attorney's fees and expert witness fees under the

ADEA and the Back Pay Act; and;

(e) Provide such other and further relief as the Court deems just and proper.

**82. DEMAND FOR A JURY TRIAL:**

     Plaintiffs hereby demand a jury trial for each and every factual allegation for which they

have that right under the law, either Title VII; or the Constitution of the United States; the Equal

Pay Act, or if then available under ADEA, pursuant to the applicable statute or constitutional

right for which a violation herein is alleged.

                        Respectfully submitted,

                        Signed, *charltonw2428*

                        Walter T. Charlton, Attorney for Plaintiffs
                        D.C. Bar # 186940
                        Walter T. Charlton & Associates
                        1156 15th, Street N.W. LL 10
                        Washington D.C., 20005-1704
                        Phone 410 571 8764, Fax 410 897 0471
                        charltonwt@comcast.net
                        Counsel for Plaintiffs and the Putative Class

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

---

**I (a) PLAINTIFFS**

JAMES D. MOSES

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _CA_
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

DAVID M. WALKER CG
MICHAEL DOHENY CHAIR

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _DC_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

WALTER T. CHARLTON
1156 15th ST. N.W. LL10
WASHINGTON, DC 20005 -1704

ATTOR

CASE NUMBER  1:06CV01712

JUDGE: John Garrett Penn

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 10/04/2006

*JURY ACTION*

---

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☐ 3 Federal Question
   (U.S. Government Not a Party)

☒ 2 U.S. Government
   Defendant

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in item III)

**III CITIZENSHIP**
FOR PLAINTIFF AND

| | | |
|---|---|---|
| Citizen of this State | ☐ 1 ☒ | Incorporated or Principal Place of Business in This State ☐ 4 ☒ 4 |
| Citizen of Another State ☒ | ☐ 2 | Incorporated and Principal Place of Business in Another State ☐ 5 ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation ☐ 6 ☐ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☒ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

☐ **E. General Civil (Other)** OR ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act



| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 USC §633 - ADEA - GOVT. EMPLOYEE(S)

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS   ☒ ACTION UNDER F.R.C.P. 23   **DEMAND $** # 75,000,000   Check YES only if demanded in complaint   **JURY DEMAND** ☒ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☒ YES   ☐ NO   If yes, please complete related case form.

**DATE** 10.4.06   SIGNATURE OF ATTORNEY OF RECORD   *Walter T. Charlton*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd



# Congress of the United States
## House of Representatives
### Washington, DC 20515

September 28, 2006

The Honorable David M. Walker
Comptroller General
U.S. Government Accountability Office
441 G Street, NW
Washington, DC 20548

Dear Mr. Walker:

We are deeply concerned about your failure to honor the commitment you made during House and Senate hearings held in 2003 to provide an across-the-board pay increase to all GAO employees that received a "meets expectations" rating. As you know, under the auspices of GAO's Band II restructuring, there are hundreds of employees who received a "meets expectations" rating but did not receive the across-the-board pay increase for 2006.

We would like you to provide us with explanations for your actions and why Congress was not consulted prior to denying GAO employees the annual across-the-board pay increase.

At a July 16, 2003, hearing on GAO's human capital proposal before the House Subcommittee on Civil Service and Agency Organization, you committed:

> to guarantee annual across the board purchase power protection and to address locality pay consideration to all employees rated as performing at a satisfactory level or above (i.e., meeting expectations or above) absent extraordinary economic circumstances or severe budgetary constraints.

You later reiterated this commitment in response to a question from Representative Chris Van Hollen. Mr. Van Hollen stated, "You have provided an assurance that except under extraordinarily bad budget scenario...you would assure that employees who are meeting the minimal expectation would receive a COLA and locality pay; is that right?" You responded, "Yes...they would receive protection against erosion of purchasing power due to inflation, and some consideration of locality at a minimum."

In March 2006, Representative Steny H. Hoyer submitted questions for the record during GAO's appropriations hearing. In reply, you stated that after the completion of the Watson Wyatt Worldwide market based compensation study for GAO your views were altered about whether and when employees should receive pay adjustments. Still, we are concerned that you did not consult with Congress before denying GAO employees the annual pay adjustments. Had we been aware of your unwillingness to follow through with your publicly stated commitment to

The Honorable David M. Walker
September 28, 2006
Page 2

provide the across-the-board increase, the Congress and this Committee would have taken steps
to do so through the legislative process.

Please explain the reasons for your change of position and let us know whether or not you
intend to honor your commitment in the future.

Sincerely,

Danny K. Davis
Ranking Member
Subcommittee on Federal Workforce
  and Agency Organization

Steny H. Hoyer
Member of Congress

Elijah E. Cummings
Member of Congress

C.A. Dutch Ruppersberger
Member of Congress

Eleanor Holmes Norton
Member of Congress

Benjamin L. Cardin
Member of Congress

James P. Moran
Member of Congress

Albert Russell Wynn
Member of Congress

Chris Van Hollen
Member of Congress

Attachment 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **James D. Moses, et al** | ) |
| **and all others similarly situated** | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | ) **CASE NO:**          **(JGP)** |
| **v.** | ) |
| | ) |
| **DAVID M. WALKER** | ) |
| **Comptroller General of the** | ) |
| **United States c/o United States General** | ) |
| **Accountability Office (GAO)** | ) |
| **and** | ) |
| **Michael Doheny, Chair** | ) |
| **United States Government Accountability Office** | ) |
| **Personnel Appeals Board (PAB)** | ) |
| **DEFENDANTS.** | ) |
| | ) |

## DECLARATION OF MR. JAMES D. MOSES
## IN SUPPORT OF CLASS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND MOTION FOR INJUNCTIVE RELIEF

(Presently Band II A, GAO Employee/Auditor/Evaluator)

I hereby state under the penalties of perjury that the following facts are true and correct:

### I.  IDENTIFICATION AND KEY PERSONNEL DATA.

My name is James D. Moses.  I am 64 years old; my date of birth is December 20, 1941.

I am an African American male.  I was hired by GAO on March 3, 1967.  I have been at this job

for nearly 40 years.

My highest G/S classification was  Program Manager GS 14.  I was reorganized to an

equivalent band designation in 1989, GAO Band II.  Recently I was reclassified to the lower

division of Band II, Band II (a).  This is a demotion in rank.  I was a senior member of Band II.

Now I am a junior member of Band II.  This is because Band II (b) is higher in rank than

1

Band II (a).

My Technical job description is Senior Analyst, Financial Management and Assurance, Los Angeles, California.  I have held this title since  2003.

## II.  VERIFICATION OF COMPLAINT AS FILED

I have read carefully the complaint filed in the United States District Court for the District of Columbia, in case No 06 1002, and the complaint filed on October 4th, 2006 JGP, and all of the statements contained therein are true and correct to the best of my present knowledge, information, and belief. The facts upon which I base this statement follow.

## III. DETAILS OF IMMEDIATE AND IRREPARABLE HARM TO ME AND MY PROFESSIONAL STANDING AT GAO IN THE PAST 6 MONTHS:

### A.      Statement of Facts as to Timing of My Complaints about the Band II Restructuring and the Associated Cost of Living (COLA) Denials:

 The proposed Band II Restructuring became effective on about January 8, 2006.  The series of events progressed as follows:

1.  About the first week in January, 2006 I was informed by the FMA Managing Director that I was placed in Band IIA.

2.  Before January 20, 2006, I asked the Comptroller General (CG) to reconsider his decision to place me in Band IIA instead of Band IIB..

3. On February 7, 2006, I received the CG's response dated February 2, 2006, denying my request to be placed in Band IIB.

4.  On February 7, 2006, I wrote the CG a letter acknowledging his decision to not place

2

me in Band IIB and asked to meet with him personally.

    5.  The CG granted me a telephone meeting with him on February 16, 2006.  After about 40 minutes of talking with me, he did not grant my request to be placed in Band IIB.  (The CG was accompanied by Ms. Barbara Sember)

    6.  On February 17, 2006, I contacted a counselor in the Office of Opportunity and Inclusiveness (OOI) about filing a discrimination complaint against the Band II Split.  At that time, my initial contact with a counselor for this complaint, I was not informed in writing of my right to file a class complaint as required by GAO Order # 2713.2.

    7.  March 30, 2006, filed a formal discrimination complaint with OOI.  I did not state the complaint in writing to include the fact that I wished to make it a class complaint because I was never informed by OOI that this was necessary.

    8.  On April 25, 2006, the OOI Managing Director acknowledged my complaint of discrimination.   There was not any recognition that it was or was not a class action complaint.

    9.  On June 5, 2006, I applied for promotion to Band IIB.

    10.  On June 26, 2006, I was notified that I did not make the BQ list for the promotion.

    11.  On  July 6, 2006, I sent an email to OOI to amend my complaint and add race and age discrimination and retaliation for the Band IIB promotion denial.

    12.  As of today, September 9th , 2006 I have not received the result of the investigation, for the complaint filed in 2006, however I did receive notices of ongoing investigations of the 2006 clams.  I received the results of the 2002 investigation, but I have never received any right to sue letters or formal notices of denial of my claims as contemplated and required by the pertinent Official GAO Order, Order # 2713.2.

    13.  My first paycheck with the restructured pay, with cola denial was on February 16th.

2006. All persons similarly situated with me, that is Band IIA analysts, over 40 years of age who were denied their status as full band II members, and thereafter placed in subordinate positions to the younger persons who received Band IIB status, were likewise notified in accordance with the foregoing schedule.

14. Notices of Intent to Sue and Motions to Intervene in On-Going Court Proceedings: I have filed notices of intent to sue through my counsel, Walter T. Charlton, of Washington D.C. on the following dates. June 10th, 1999, as an unnamed Plaintiff; On May 3, 2000 as an applicant intervenor in Chennareddy, et al Class action, Case Number 87-3538 USDC DC; on April 6th, 2005 in a Notice and Re-Notice of Intent to Sue as an additional class representative, and intervenor and finally, on August 9th, 2006 my counsel filed for me another notice of intent to sue as a class action. I am informed by my counsel that the certified mail delivery occurred on August 14th, 2006. The tracking number is 7005 3110 0001 4015 5920.

### B.     My Experience and Training Are Being Wasted by GAO's Discriminatory Policies:

The expertise and experience that I have developed over close to 40 years with the Government Accountability Office (GAO) is a valuable asset. Those experiences and training are being wasted by my being sidelined to make way for younger persons. I and my peers, also persons over 50, also believe that our experience in governmental analysis, and along with it a maturity in judgment, are valuable assets to this organization and the government functioning as a whole. GAO's age discriminatory practices contravene proper and efficient use of this experience.

In addition, policy of demotions in rank and elimination of any possibility of leadership

rolls for the older employees is not based upon any merit or actual leadership qualification criteria, but rather based primarily upon age. GAO's ratings system is entirely quota driven. What GAO does is decide what they want to do to "shape the staff profile", using age as the primary criteria, which is entirely subjective ratings criteria to achieve the desired result. The criteria used have nothing at all to do with either past performance or actual job production or accomplishments.

The result is ratings that are entirely politically based and which, I am sure the data will show, track nearly one-for-one the policy of getting rid of the older workers, and pushing hard for much younger replacements. As to the most recent events, which include the downgrading of employees over 50, about 300 persons similarly situated to me were similarly affected by the same acts.

## III. THE SECRET GAO STATISTICAL SYSTEM WOULD VERIFY THESE ALLEGATIONS:

I have recently learned that GAO has its own in-house statistical and data base system which it has maintained for over 20 years. This system has been so secret that it was denied to exist by GAO in cases before the United States District Court. One of those cases was the case in which I attempted to intervene before this case was filed. *Chennareddy v. Walker*, 87-3538, a case which has been in the court system more than 20 years. I am informed by my counsel that GAO denied the existence of that system both in formal discovery and in open court by miss-statements to the Federal Court Judge.

I am confident that observations I personally experienced as an individual, and as a counselor for many other GAO employees who came to me in my capacity as counselor, will be

verified by the data in that system, if and when the Court grants access to that system and its

data.  Those observations are to the effect that there has existed for more than 20 years an

identical pattern and practice of age discrimination at GAO.  That pattern is pervasive in that it

affects all nuances of employment and personnel decision making.  This statement includes

hiring, ratings, bonuses, advancements and promotions, among others.  One pervasive practice is

to place untrained persons in charge of jobs in order to place the older experienced persons in a

subservient position.

My highest role as a GS-14 Audit Manager was special because I earned it through hard

work, accomplishments, staff development, and competition against my peers.  In 1984 I was

placed in charge of an entire issue area with more than 10 staff people reporting to me.  I gained

a reputation of being able to work effectively with hard to manage staff and had several assigned

to my area.  I was able to effectively manage all of the staff assigned to me and was able to get

maximum productivity and accomplishments out of those persons GAO had effectively written

off as ineffective and non-productive.  This situation continued during the period 1984 to about

2000.

Then, in the late 1980's GAO dropped the GS system and adopted a broader Band

System.  GS-13 and 14 were combined into one band (Band II).  As a GS-14, I realized this was

a demotion, and I and many others fought hard against this consolidation, but in the end we lost.

The result was that myself and others like me in the higher end of the newly created "Band"

(GS-14's) lost their higher job classification previously contained in the GS grades (GS 14s

higher than the 13s).  However, many former GS 14s maintained their roles as managers of an

issue area.  I was one of those lucky ones.  This reorganization had the effect, for me, of a de-

facto demotion with the same responsibilities.  My observation was that it adversely affected the

older employees to a much greater extent than persons under 40.

## IV.  RECENT EVENTS AND ACCELERATION OF AGE DISCRIMINATION:

Now, in 2006, GAO has decided and accomplished another purported "restructuring" with similar results.  Older employees get demoted by management with management's ultimate and obvious objective of their termination.  The method is purported to be fair, with a  complete reevaluation of each employee in Band II, however with the result actually dependent entirely upon age.  This is the same result as earlier restructuring, only the method is new.  The Comptroller General's  "re-shaping of the staff" is indeed working.  The result is foregone in its conclusion, that is "get rid of the old folks" is the theme, and that part has not changed over the last 20 years.  The end result is the same; a demotion of the older employees with a lowering of both pay and status.  And it is done, contrary to the prerequisite of unsatisfactory performance, without regard to actual performance over the years, or capability now of a particular employee.

Again, I am sure that the statistics from the secret system that GAO maintains will validate these observations.

Band II staff were split into Band II B, for leaders and managers with higher pay scales and Band II A, persons classified via their predetermined (based upon age) ratings as merely average or below workers.  I was placed in Band II A, based upon very recent and suddenly lower ratings even though my production and value remained the same.

I was shocked, embarrassed and humiliated by being placed in this lower Band, along with nearly my entire peer group, the older employees.  We were all psychologically drained.

This pattern is basically the same as in the earlier "reorganization".  Money-wise the effect paralleled the ranking demotions.  My opportunity for promotion was taken from me by the split and my status and role as a manager was taken by creation of the "Bands" substituting

for GS grades.  Now, it is taken again in the split of the bands into high and low pieces.  In

addition, my status and role downgrade resulted in a denial of any further government-wide Cost

of Living Adjustment (COLA).

My  performance actually has always remained satisfactory or better.  And my official

ratings always have been "satisfactory or better".  Therefore, the downgrade in rank is contrary

to law.  Also, the denial of the COLA is contrary to law in that the denial violated the strictures

placed upon the Comptroller General in public law H.R. 2751, as not applicable to those who

perform satisfactorily.

But it was nevertheless applied, to more than 300 other persons similarly situated.  I

believe that this violates the new rules set out by the Congress as well as is a blatant violation of

ADEA, based upon my own knowledge of what the statistics will undoubtedly prove.

The Comptroller General, Mr. Walker, told me in a telephone conversation that legally I

was not demoted because I didn't lose any money.  This is untrue. I did lose money in the last

"restructuring". But more importantly, what actually happened with both of the foregoing

moves, was a reduction in rank, followed by a virtually automatic reduction in ratings, followed

by the second reduced ranking all pointing the way to the door for me and other older GAO

employees.

I believe all of these machinations by GAO results in an unmistakable pattern of down

with the oldsters, up with the youngster subordinates.  That pattern blots out all other factors

combined.  Also, I did lose money immediately as well as for the rest of my life as indicated

below.  More importantly, my professional status has been destroyed and rendered dead end, not

because of failure to perform, but rather because of preconceived illegal rating criteria based

upon age.

I also informed Mr. Walker that the performance evaluation system that he put in place had not been validated as fair and equitable, and that some minorities, especially older African Americans, were not being equitably rated.  One area of the rating system where older African Americans and others were falling short was in the "role model" category.  I informed him that I believed older African Americans and others were receiving a disproportionate number of role model on performance evaluations, myself included.

For example, under the old performance evaluation system I almost always received the highest rating marks, outstanding, in leadership and critical thinking, but I have never received a role model rating mark in any rating category under the new system.   Mr. Walker told me that he would check into both of these issues—the rating system in general and role model in particular—that I brought up.  .

In essence, the last  "reorganizations" effectively ended any chance I had for promotions in the future, and placed me as subservient to many younger and less qualified employees.  Since this pattern applies nearly exclusively to older employees, this appears to me to clearly violate the anti-discrimination policy of GAO, is a prohibited personnel practice, and it violates ADEA.


## V. GAO'S RATING SYSTEM IS DISCRIMINATORY:

**The Definition of Role Model In GAO is Age Discrimination Per Se**

In normal English usage a Role model is defined as "a person whose behavior in a particular role is worthy of imitation by others."   In general, naturally, you would expect the role models to be the older, more experienced, and seasoned veteran of the organization with outstanding technical expertise.  This is not true at GAO.

In fact, I believe that at GAO you will find that older more experienced employees are

receiving less role model rating marks than the younger less experienced staff. This would seem to be totally opposite of what a reasonable person would expect. I believe that the withholding of role model rating marks had significant negative impact on older GAO employees causing a disproportionate number of them to be placed in the lower Band IIA level during the split and is continuing to have negative impact when competing for promotion to Band IIB. For example, after my telephone meeting with Mr. Walker on 2/16/06, I was very optimistic about my chance of getting a Band IIB in the first round of promotions after the split. Mr. Walker told me that I didn't get a Band IIB during the split because of my rating score, but that I would receive a bonus for being in the top 20th percentile of my peer group. I did receive that bonus. HE also told me that my last rating was good and that I needed to continue getting good marks prior to the June promotion and that I should be alright. Honestly I had considered not applying for the Band IIB promotion because I really didn't want to endure more embarrassment. But after my discussion with Mr. Walker I thought I should test the water, so to speak. Well I did apply and didn't even make the Best Qualified (BQ) List. The feedback given to me was that I was very close to making the BQm but I "fell a little short".

While the rating mark of role model had devastating impact on older more experienced GAO employees during the Band II Split, causing a disproportionate number of them to be placed in the lower Band IIA level, it was not the only factor. The entire process was designed to ensure that a representative number of older more experienced staff would not receive the Band IIB level. For example, three criteria were used; the last 3 years of rating marks (which were under the new rating system that had not been validated), roles and responsibilities for those 3 years and future potential for carrying out leadership roles. Those criteria completely threw out all experience, accomplishments and ratings except the last three years.

This, in essence, means that equal credit was given to someone with less than 5 years of experience with GAO and someone with up to 40 years of experience.  Also, roles and responsibilities for the last 3 years were not reflective of prior significant roles.  Further, GAO management recognizes, because of the large number of complaints that the criteria used in the Band II split was not fair to older more experienced staff and is already trying to fix it.  For example, in a recent SES off-site meeting most of the time was spent on performance appraisal data and diversity issues and future changes to the performance management system which were used for the Band II split.

In addition, at the time of my phone conversation with Mr. Walker I did not realize that this indeed was the next to last step in a forced retirement.  That event for me has not yet occurred, but only because I have decided to file this lawsuit to protect my rights and the rights of all others similarly situated.

## VI.  GAO'S SECRET PERSONNEL DATA BASE SYSTEM:

Further, I have learned that GAO maintains a secret personnel system containing, among other key data, the age of each employee.  GAO uses this system during the ratings and promotion process to achieve its policy aims.  Those are to rid itself of persons of mature age. Of course, those persons are also those persons who are the most knowledgeable and with the greatest "corporate knowledge" of governmental functions they have been auditing and evaluating for their entire careers.   I understand that GAO has not been candid with the Federal Court in still denying the very existence of that data base and systems.  If access to that system and data could be gained, I believe my observations would be confirmed by GAO's own data and that data would demonstrate once and for all, with conclusive effect, the across the board

11

nature of GAO's age discrimination for the last 20 years, and including the present form of that discrimination.

In 2004, GAO was granted additional personnel action flexibly based on the Comptroller General's commitment to Congress to continue providing an across the board pay increase to all GAO employees who "meet expectations." But as put into practice GAO failed to meet this commitment. It appears to me that the Comptroller General did not follow his commitment to Congress when he enacted the flexibility provisions contained in the GAO Human Capital Reform Act of 2004. I have instructed my counsel to furnish more details on these failing in a separate argument in this filing.

## VII.  DETAILED COMPUTATION OF THE FINANCIAL IMPACT OF THE PAY CUTS UPON ME:

According to the GS Salary Table, my pay was cut about $3,900 for 2006. But the overall and long-term monetary impact is much greater than this when one considers the cumulative effect on retirement. For example, if I retired this year, the $3,900 that I lost because of the split would not be included in my highest 3 years earnings (the high 3). Thus my high 3 would be reduced by $1,300 ($3,900    3). My retirement would be computed at 75% of the average of my high 3, so I would lose about $1,000 a year for the rest of my life. Also, the impact on my retirement would be compounded *for each additional year that I do not receive a COLA*. Thus, the impact of this one thing alone, denial of Colas, is quite material. And my rating at all times to date was that I did "meet expectations". Thus, GAO's actions toward me are not authorized by H.R. 2751. I believe that similar violations apply to most, if not all of t-he persons who did not receive COLAS this year.

## VIII. RATINGS ARE BIASED AGAINST OLDER EMPLOYEES:

I always received highly favorable ratings (the foundation for advancement and promotions in GAO) and was a high level group leader on multiple projects until I reached my mid 50's. My leadership and accomplishments led to my final promotion, to GS-14, the second highest line manager position in the field at that time (1984). Not only was I the group manager for a major issue area with 10 people reporting to me, I was also the Civil Rights Counselor, for the Los Angeles Office for more than 20 years until about 2000 when central management in Washington, D.C. took over the function of counselors in the field. As a counselor, I was personally involved in many cases dealing with age discrimination across GAO. Over those 20 years I gained what I believe is a through understanding of the *actual* promotion and ratings process as distinguished from what GAO claims that process to be.

An analyst's personal advancement progress and *capability for tasks* at GAO typically starts with a learning curve which continues to increase as experience is gained in the particular field or fields to which he/she is assigned and the methods used to do GAO work. So long as an employee retains his/her health and mental awareness, the capability generally increases with time and experience in his/her particular duties at GAO.

For the early years of the learning process, the *ratings curve* is much the same as the actual learning process (discussed immediately foregoing), reflecting that same increasing curve. But once a "top age" is attained, all of this changes. The change is not the result of diminishing abilities of the employee with age, but rather based upon two factors driven by management policy.

## IX. TOPPING OUT IN RATINGS:

Two factors, driven not by any fair evaluation, but rather are driven by management's

13

well known but unwritten desire to favor young persons. These factors cause older employees' ratings to top out at about age 50. The two factors are, (1) by letting it be well known that oldsters should not be favored for promotions; and (2) the giving of choice and high visibility assignments to those young persons pre-selected for advancement.

The result of these actions as to fairness in ratings is that ratings are biased and based not upon production or achievements but rather the two foregoing factors.

The automatic result is that young persons get the great bulk of all promotions, at all levels. Upon reaching that "top age", generally starting at about 50 now, and about 43 in earlier years, management has made it perfectly clear to the SES staff, the raters, that oldsters should be gotten rid of and that youngsters must be promoted. And because of the inherent bias of the process, the ratings become a self-fulfilling and foregone conclusion.

But this system, to be at all workable requires that the young persons gain some semblance of experience in difficult matters. This problem is solved by the demeaning and lowering of status of the older experienced analysts who are assigned to work for the young persons, who then get all of the glory and prestige of the efforts of the older experienced analysts. The result is that the young persons get promotions and ratings that they do not deserve.

By design, those young persons selected for advancement are given the choice assignments, resulting in higher ratings (as expected by the self-fulfilling policy) and resulting preferences in jobs, ratings, and retention. The raters, themselves middle management persons, endeavor to please upper management and garner favor with upper management by showing that they know how to downgrade the oldsters, and upgrade the youngsters. This system of intentional age bias has been in effect, to my knowledge since at least 1986.

Early in my career, I was performing assigned tasks, receiving high ratings and was generally viewed by management and my co-workers as a model professional level evaluator/analyst.  However, with the passage of time I automatically, with no change in performance, became a member, over 50, of the disfavored age group.  Then, and only then, did my rating fall.  I was relegated in job assignments to reporting to younger staff.

After tolerating this blatant discrimination as long as I could, I attempted to intervene into an ongoing related case alleging age discrimination, ***Chennareddy et al v. Walker***, USDC DC 87-3538.  My intervention was heretofore denied, and no relief has ever been granted in that case although the case is still on-going.

On January 18, 2002, frustrated and angered by further discriminatory actions of my superiors, and continuation of the demeaning and intentional mistreatment, designed to cause my resignation, I filed an administrative discrimination complaint with GAO's Civil Rights Office (now the Office of Opportunity and Inclusiveness).  That complaint was again filed on the basis of both age and race.  In addition, I alleged retaliation for having attempted to intervene in the afore-cited ***Chennareddy v. Walker,*** case.

Based upon information passed on to me by the independent investigator, investigation of the complaint revealed that I was not treated fairly or in accordance with the applicable rules. However, the complaint was never resolved and GAO has, contrary to its duty for timely resolution, failed to issue a final agency decision.  The discrimination has continued unabated and the results have now included a second downgrading and denial of cost of living increases applicable to both satisfactory and unsatisfactory performers.  Given these new violations of what I perceive to be my civil rights, I was compelled to file the recent United States District Court case.

## X. RECENT MANIFESTATIONS
## OF THE DISCRIMINATORY POLICY AND PRACTICES:

In December 2005 and January 2006, GAO adopted a new series of actions designed to eliminate older persons from the staff. These actions were named "Band II Restructuring". This new plan worked as follows. Band II's were split into two groups, Band II B (the highest) and Band II A. The determining criteria were stated by management using the standard terminology for subjective ratings of personnel with the added factor being considered most important, that of "role model". Since GAO's ongoing policy was to downgrade all older employees, and I had been continually subjected to being downgraded in leadership roles to a subservient position (along with all older persons similarly situated) it was inevitable that I would be downgraded into the lower category. One key reason for this is that all experience except for the last three years was simply thrown out, placing older people at a major disadvantage of being placed in the Band II B.

As mentioned foregoing, one key component in the new discriminatory scheme was the emphasis of the new ratings factor of "role model", whatever that subjective and undefinable terms is supposed to mean. As an older employee, who was predetermined to be on the way out, it was of course inevitable that as a "role model" I would be rated poorly. The application of this factor to favor younger employees, standing alone, is, within the scope of GAO's statutory mission and activity, patently absurd as well as a manifestation of discrimination based upon age.

## XI. DISCRIMINATION AGAINST EXPERIENCED (OLDER) ANALYSTS
## IS HARMFUL TO THE AGENCY'S FULFILLMENT OF ITS STATUTORY MISSION

The reader should be aware that the statutory mission of this agency, and all of these

analysts, is highly technical and based in large measure upon objective and truthful measurements of information and data.  GAO receives requests from Congress for technical review, audit and observations in difficult situations.  The mission of the analysts is to respond, and respond correctly to the questions asked.  The personality or perception of each analyst, one to the other internal to the organization, has little to do with the furnishing of correct answers.  The looks and demeanor of each analyst, the color of skin or national origin has little to do with the analysis required.  What counts are experience, training and skill in the necessary aspects of a particular job.  GAO's system of evaluation and ratings of employees, simply discard experience and years of demonstrated success in favor of factors more appropriate in a personality contest than a technical analysts' position and duties.

Rating by a superior as "role model" being a matter of personality is akin to making good looks a prerequisite for retention on this technical job.  As I started off, this aspect of GAO's mission is worse than poorly conceived, it is akin to preferring form over substance.  And that is a very dangerous error in the context of GAO's mission, to truthfully and accurately report facts, not to please people by being a "role model".

I have developed my own opinion, based upon my 20 years experience as a counselor and my entire career experience at GAO as to the nature and effectiveness of GAO's ratings system.  That opinion is-- that the term "role model", now used as a main determinant factor to decide job ratings and who gets to lead a team to answer the questions of congress to GAO, is nothing short of a device to continue GAO's discriminatory policies of age and racial discrimination.

That system and the other biased factors used by GAO build a false reason, i.e. false ratings, to accomplish that illegal objective with impunity.  Certainly, that is the result about

which I complain, and which resulted in my filing of this case.  It is also the result of many

interviews that I have conducted over the 20 years I served as a counselor.

## XII.  MY ATTEMPTS TO MITIGATE DAMAGES TO ME:

In accordance with the intent of the scheme, in December 2005, I was notified that I had

been placed in Band II A, the lower group.  I appealed to Mr. Walker, about being placed in this

lower category and asked the CG to reconsider his decision.  On 2/7/06, I received the CG's

decision not to change his position of placing me in Band II A.

In attempting to redress these wrongs, I asked Mr. Walker for a meeting in person to

discuss his position on this issue.  He did not grant the personal meeting but spoke to me by

telephone on 2/16/06.  During this 45 minutes telephone meeting, I informed Mr. Walker that I

felt I had been treated wrong in being placed in II A.

I informed the CG of my history of satisfactory employment and undiminished ability.  I

told him that I had achieved a GS-14 level prior to being grouped into Band II with younger and

less experienced GS-13's; that I was treated wrong then, and, again, unfairly and incorrectly with

the split and further downgrading .  I told him that I felt hostility, embarrassment and hurt by the

demotion to Band IIA, and that I was psychologically devastated.

I feel certain the Mr. Walker understood my pain, but there were no positive results from

Mr. Walker.  I knew that I had no chance of relief in the normal complaint channels, and also

knew that GAO's own internal personnel system, and purportedly independent personnel

oversight agency are both dysfunctional.

## XIII. THE LATEST ADMINISTRATIVE COMPLAINT

On March 30, 2006, I filed another discrimination complaint with GAO's Office of Opportunity and Inclusiveness (formerly the Civil Rights Office). Again I alleged race and age discrimination. In that administrative complaint I alleged, based upon my own information and knowledge, that the Band II split has had negative impact on me and about 300 hundred others who were and are similarly situated with me on the band II split demotion. All of those persons are 50 years old or older.

Not only have virtually all of those older workers been embarrassed, demoted, and psychologically hurt, and denied, by virtue of downgrading, any opportunity for future promotions, most egregiously, myself and all other similarly situated, were demoted in status and reduced in salary by denial of cost of living increases. It is critical to note that neither I, nor anyone similarly situated failed to meet performance expectations for that ratings period. This fact as I understand the law, makes these actions an illegal event, a prohibited personnel practice and a violation of the equal pay act. That denial, standing alone, is a denial of equal treatment of the law and, I believes, a discriminatory event.

But the entire continuing process is one that has been of long standing and represents nothing less than overt intentional discrimination based upon age. And both the timing and substance of actions by the entire administrative process at GAO does not comport with the standards applicable to other government agencies as set out by the EEOC regulations. This current complaint is under investigation and the previous one, filed in 2002, has not been resolved which is a violation of GAO's own regulations requiring timely resolution of complaints and a discrimination free workplace. These actions are supposed to be over within 180 days. It simply has not happened. On 7/6/2006, I amended my latest complaint to add the following: I applied for the first Band IIB promotion after the split and did not make the BQ list.

I requested that this be added to my current discrimination case.  In addition to Race and Age

discrimination, I believe that GAO Retaliated against me for filing an individual discrimination

complaint and a class action complaint against the agency.  I was really surprised when I didn't

even make the BQ list because when I talked to Mr. Walker on February 16, 2006, about the

Band II split, he practically assured me that I would get a Band IIB in the first round of

promotions.  I believe that GAO is continuing the pattern of discriminating against me on the

basis of Race, Age, and now Retaliation for exercising my rights.

Also, I want the discrimination complaint that I filed in 2002 to be reactivated and

included along with my new complaint.  It has never been resolved and is long overdue for a

final agency decision.


## XIV. GAO HAS INTENTIONALLY MISLED THE COURT AND I TS OWN OVERSIGHT AGENCY IN AN EFFORT TO ESCAPE REVEALING THE DISCRIMINATION RAMPANT IN ITS RANKS

I have learned from my counsel and from filings in this court that for more than 20 years

GAO has maintained a secret personnel data base and comprehensive system containing ratings

and demographic data on each analyst and key employee.  From this data and system GAO can,

and has, made this data available to its ratings and promotions panels during the entire 20 year

period of age litigation by GAO employees.

GAO has misinformed the Court, and continues to misinform the Court, and its own

oversight agency, the PAB, and opposing counsel in related cases.  The misinformation is to the

effect that no GAO employee personnel profile data base existed, and no such comprehensive

systems were available for quantitative and qualitative analysis of that data.  In fact this

representation is false.  In fact those systems and data did and do exist and was a part of the

mechanism and tools available to GAO management. Those tools were in daily usage to bring about and measure the intentional discriminatory results about which I and hundreds of others have complained.

The existence of those systems and data and access to that data and systems is of primary importance to my claims and the claims of many others which are now ongoing. According to the testimony of the professional who maintain those systems, any pattern or practice which exists in the data may be readily extracted and reported upon. For example, either the GAO discriminates against older persons or it does not. This system and data, the existence of which was withheld from the PAB and falsely denied to exist to the United States District Court, would definitively prove the pattern and practice of bias against older employees. If the age data were used, as testimony demonstrates that it is, in ratings panels and in promotion determinations, the apparent exclusion of older employees will be definitively explained, as a matter of cause and effect.

The result would be unequivocal proof of the Plaintiffs' case in this case, and in all of the related cases before the United States District Court for the District of Columbia,.

Therefore, the failure of the PAB to be effective in its oversight function and misleading by GAO of persons and federal courts having the power to correct the massive malfunction of this agency's personnel practices came about becomes understandable. GAO has obstructed justice for its older employees for more than 20 years, and gotten away with it.

## XV. GAO'S PERSONNEL OVERSIGHT AGENCY (THE PAB) IS A FAILURE:

I have learned that GAO's internal policies and procedures are intentionally designed to frustrate the oversight process. See copies of attached letters from the former General Counsel

21

of GAO's purported personnel oversight agency, the PAB (Attachment A, hereto).  See also the

list of investigations of the PAB over the years (Attachment B) and note that NONE pertain to

the multiplicity of charges of age discrimination.  Please note also the one meaningful report of

the PAB which was issued on the subject of Age Discrimination (Attachment C, hereto) covered

the period of time from 1991 to 1995.   That report contained important comments upon the

apparent pattern of "race, gender and age disparities" (Report Pg 25 final paragraph, and Pg. 26

final paragraph), consistent with my opinion as contained in this affidavit.  However, no follow

up by either GAO or the PAB has ever occurred despite a 10 year lapse in any investigation.  I

believe, based upon all of these circumstances that this is because the PAB was ordered *not* to so

investigate by GAO upper management.

In addition, again, GAO for all this time had a complete system of employee data and a

comprehensive data base system which could analyze the actual patterns of alleged

discrimination and determine from actual real data what did or did not occur.  Instead, in a

demonstration of lack of candor, GAO simply denied that this vital data (and comprehensive

systems) even existed.  It not only denied it to the Federal Court, it failed to fulfill its

responsibilities to be candid pursuant to the Federal Rules of Discovery (F.R.Civ). P. 26 (a) (1)

and to his own oversight agency the PAB.  The PAB investigation therefore had to be done at

great expense for an already overextended captive agency whose budget is completely controlled

by the Agency it is supposed to have oversight over, the GAO.  No wonder that it (the PAB)

lacks all integrity and effectiveness.

However, that data system was secret, and its existence kept from both the PAB and the

Federal Courts by false representations to those entities with the power to correct these illegal

happenings.  As a result the discrimination continues to this day without diminution.

22

On information and belief, and my own observations, I allege that the hostility against older employees is uniform among my co-workers, and the extent of the bias is nearly 100%. I believe that available statistics will confirm the universal bias I have observed since I reached the age of about 50. I also believe that the same pattern has existed for over 20 years, however, it used to start earlier at about the age of 43. The general aging of the staff at GAO has increased that "top acceptable age" to about 50 now.

It is my belief and opinion, based upon all of the information at my disposal, that any reasonable investigation, with access to the GAO's secret data base on employee performance, ratings, and age, among other factors, like race, will undoubtedly support my conclusion that age discrimination is rampant at GAO. It is nearly 100% practiced and nearly 100% effective based upon my personal experiences and observations as a civil rights counselor.

In addition, I am aware of no credible information contradicting these conclusions of unequal treatment of older persons in all aspects of personnel management at this agency despite the representations of GAO management.

**SIGNATURE AND DECLARATION:**

I declare under the penalties of perjury that the foregoing statements are true and correct

and that all attachments to this affidavit are genuine or true and/or correct copies of genuine

documents.


s/s James D. Moses
Signed                                          October 4th, 2006
James D. Moses
Signature                                       Date

Attachment 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
**James D. Moses, et al**               )
    **and all others similarly situated**  )
                              )
**PLAINTIFFS,**                 )
                              ) **CASE NO:**       **(JGP)**
                              )
**DAVID M. WALKER**         )
**Comptroller General of the**      )
**United States c/o United States General**  )
**Accountability Office (GAO)**     )
    **and**                     )
**Michael Doheny, Chair**       )
**United States Government Accountability Office**  )
**Personnel Appeals Board (PAB)**   )
  **DEFENDANTS.**         )
———————————————————————)

## AFFIDAVIT
## ARTHUR L. DAVIS

**After first being duly sworn in accordance with law, I hereby state under the penalties of perjury as follows:**

**I.** Identification of Employee.

     Name: Arthur L. Davis
     Age, date of birth May 29, 1948
     Sex Male
     Date Hired by GAO July 2, 1973
     Date rating started to fall. Please see below
     Band or GS Grade Band II
     Technical Job Description Various issue areas over the years but assigned to
          Tax Administration and Policy from 1987 until 2004.

     I consider and allege that my "retirement" which occurred on June 1, 2004 was in fact caused involuntarily and was in fact a "constructive discharge". The root causes were false and incorrect ratings, acts of harassment falsely demeaning of my status and work performance. Particularly egregious were false allegations impugning my ability and professional integrity after over 30 years of highly successful performance.

1

Until I reached the age where age discrimination kicks in at GAO, my ratings, performance and professional standing were uniformly high and unquestioned.  My slide to the "out the door" status began when I was 46.  My abilities have not diminished over the years, but actually increased with the application of computerized abilities to my considerable background in civil rights and GAO technical areas.

Throughout my career with GAO, I have filed complaints with the Office of Opportunity and Inclusiveness (formerly Office of Civil Rights) more specifically in 2002 and 2003 for race and age discrimination issues. These complaints were counseled, but not resolved.  I believe investigations were held, and witnesses were contacted, but no final report or resolution was ever given to me. In this regard, this was consistent with GAO pattern and practices of non-resolution of issues but instead to continue its discriminatory practices under the covers of its weak investigations of these issues.  I seem to recall some oral references to timetables for complaints, but no notice to me of the existence of GAO Order Number 2713.2 was ever given, either orally or in writing.

II.  I have read carefully the complaint filed in the United States District Court for the District of Columbia, in case No 06 1002 JGP, and all of the statements contained therein are true and correct to the best of my knowledge information and belief. The facts upon which I base this statement follow.

III.  **Details of Immediate and Irreparable Harm to Me and My Professional Standing at GAO in the Past 12 months:**
　　　(Note: This section does not apply to me since I retired in 2004).

IV.  **Detailed Statement of Facts Supporting the Foregoing Claims of Harm.**

For the last several years of my employment I had been experiencing a series of acts applicable to me personally and in my observations applicable to nearly all older employees at the GAO.  These actions generally included a downgrading of assignments, ratings of performance on all jobs, and lowered ratings on my individual yearly ratings.

I know that the general statement that the pattern and practices described in the preceding paragraph is true of my own knowledge because of the hundreds of complaints I reviewed, and many hundreds more of informal phone calls or discussions in person which occurred during my six years as chair of the Advisory Council for Civil Rights (ACCR).

That counsel was  an organization approved by management of the GAO.  Membership on the council was elected by GAO employees, and the chair was elected by the members of the council.  During those six years I was repeatedly contacted by older, protected employees who complained about their treatment as inferiors in virtually all aspects of their employment.  The sheer volume and unanimity of those complaints of non-equal treatment of older protected persons led me to believe, and act with respect to the overall age based discriminatory pattern of their complaints.

Just prior to the beginning of my own discrimination complaints, at the request of a number of employees, I raised with top management questions brought to me by other employees concerning observed instances of age bias. This occurred first on or about 1994 when I represented them as chair of the GAO's ACCR .  The ACCR was created by GAO as an active committee of elected representatives of all GAO employees.  That committee was formed by management in about 1971 for the purpose of in-house correction of discrimination matters before those matters became the subject of GAO's formal discrimination processing, either with the PAB ( in 1980 ) or the Courts.

My inquiries, which were first met with the order to "back off", then, after I refused to bury my obligation to the persons who had elected me, with obvious reprisals against me personally.  Those personal reprisals were coupled with the disbanding of that committee (The ACCR).  The ACCR has now been replaced by another committee made up of the Comptroller General's hand picked persons.

The ACCR was disbanded for reasons given by GAO management that were and are untrue, and known to be such by most reasonable people, including the Comptroller General.

I ignored those reprisals against me and for the next several years engaged in contemporaneous civil rights efforts as an employee of GAO.  My efforts were aimed at constructive correction of GAO management's blatant across the board attempts, unfortunately largely successful, to first discredit, then terminate by pressure and personal affronts essentially all older experienced employees.  Those "older experienced employees" were those who had reached by that time a mature age, and a knowledge of "company policy" as distinguished from "company propaganda".

Reprisal or retaliation for my civil rights efforts, became more overt and personally discomforting, even painful, on or about 1998 immediately after I refused to "back off" from covering up or failing in my perceived duties as chair of the ACCR.  At that time I personally had one case being processed by the PAB (GAO's purported but ineffective personnel oversight agency) and had attempted to intervene into a putative age class action case, USDC DC 87-3538, which had been on-going for about 15 years at that time.

The acts of reprisals, low ratings, comments and innuendo continued for the next six years.  I then was forced by the degrading treatment of me after 30 years plus as a staff

member and in order to maintain my professional reputation, self-esteem and dignity, to retire.  I consider my retirement as in reality a constructive discharge since all of the indignities I suffered, along with my older co-workers, are in violation of federal law. For more details of the acts I perceive to be illegal acts of reprisal or age discrimination, or mixed, see Attachment I.


**THE PAB IS A SUBVERTED AND CONTROLLED USELESS ORGANIZATION:**

I am aware that the PAB is a de facto totally controlled sub-unit of the GAO.  Its practices have included over the years budget control by GAO over the PAB, failure to appoint members, allowing former board members and chairpersons to become general counsel, and allowing GAO to withhold from it GAO's secret personnel statistics.  The one study of which I am aware by the PAB on GAO's personnel practices was undoubtedly correct in its findings of discrimination, including age indications of age bias, but never followed up.

I am aware of firings by the PAB of honest employees who refused to subvert their professional findings to the official doctrine of PAB management.

Over the years I had been very active and observant of the civil rights situation at GAO. I observed the PAB become suborned and ineffective by admitted control of its actions by GAO budget control (admitted by GAO counsel in open court in a hearing that I attended in May 2001).  I also noted the failure of GAO to be candid with both the PAB and the Court by failing to disclose the existence of GAO's in-house personnel statistics and a major statistical system.  This key information is necessary to gather pattern and practice "facts" in an efficient manner.  GAO kept the existence of this system from complaining employees, its own oversight system, and misrepresented the non-existence of that system to the Federal Court in the related case I attempted to join. Case No 87-3538 JGP (USDC DC).  I believe strongly that the system was used as a management tool in its discriminatory plans designed to bring about a "younger vital staff", a terminology used frequently by the Comptroller General and his management team.

Finally, in a report dated September 30, 1999 after about 20 years of failure to do its duty to prohibit age discrimination, and inaction in enforcement of observed discrimination, the PAB produced a statistical study of its own for employment practices from 1991 through 1995 which strongly indicated age discrimination in the workplace.

The PAB recommended action in the nature of further analysis and pinpointing problems.  GAO not only refused, but challenged the PAB definitive results when it knew full well that GAO's own secret statistics, if access were allowed, would prove GAO's own violations of the law.  If GAO were required to produce its own statistical reports from its own system, based upon my personal observations, I believe that the actual statistics from GAO's own system  would prove that GAO has lied to the federal

courts, its own oversight agency and the congress for more than 20 years.

Recently, GAO has not been candid with the Court in two underlying cases, falsely denying, once again, that its comprehensive statistical data and system even exists. I further submit, based upon statistics I have seen prepared by my former co-workers by hand in the 20 year old class action, that the pattern that I observed in my job as ACCR Chair is consistent for the entire period of time, from 1985 to now. For that whole time it is just the same old pattern, under various guises.

In other words, the unabated age discrimination continues, the PAB is not only a controlled "house organ" contrary to the intent of congress when it set up the PAB, but GAO lies to it with impunity and the Courts as well. Nothing is done to correct this harmful situation, and GAO proceeds down the road in its own dishonest way.

I have received and considered all of the materials available to me regarding GAO's present discriminatory plan to oppress the older employees, including denial of cost of living increases. GAO present actions, in splitting band II's into the persons they want to keep (the young persons) and the ones they want to get rid of (the older persons) are just part of the 20 year old same pattern and practice. And that practice is unwise, immoral, and illegal. If the "watchdog of the congress" lies to the courts, the congress, and its own people, it certainly cannot be entrusted with the duties for which it was created by congress.

For older experienced persons are the heart and soul of GAO's mission and duty to this Country. By reason of their experience, professionals of 20, 30 and 40 years experience have seen it all and, by reason of this experience are not inclined to blindly follow the unwise actions or orders of GAO management. And this is, in my judgment, the real motive to get rid of the older persons. These managers want young green analysts so GAO management can do what it wishes, having young green analysts blindly follow orders, and sweep embarrassments, inequities and theft under the rug, regardless of the correct facts or whether its decisions are good for the country (and the congress for whom it is supposed to act) or not.

I understand from my former colleagues who still work at GAO that one part of the band split takes away the cost of living increases from those GAO persons who now have suffered the indignity to be downgraded to band II (a). From my own civil rights training, I believe that is a prohibited personnel act in addition to being a violation of equal treatment of persons all of which were rated as "fully successful" in meeting their assigned tasks for the year. I have instructed my counsel to address the legalities of this point in the instant motion for preliminary and permanent injunctions.

In my judgment, age discrimination at the GAO is symptomatic of far larger problems, but we have to start somewhere. This is where I start.

5

**V. Attachments**:

I have received many awards and commendations during my thirty-year plus tenure at GAO.   These awards ranged from letters of accommodations with cash and without cash within GAO and outside recognition by organizations for activities both inside GAO and other federal agencies.  To illustrate, the American Heart Association and GAO recognized my contributions in promoting a healthy workplace by teaching CPR to GAO employees as well as other federal employees (Savings Immeasurable – Two Former Students Were Able To Relieve Two Choking Victims And Save Their Lives).

Moreover, I also received similar levels of recognition for my contributions to various assignments such as Reviews of IRS Filing Seasons, IRS EITC, IRS Redeployment Plans, and GSA Building Purchase Plan (Savings $ 15 Millions By Convincing GSA Not To Purchase A Building in Las Vegas Unless The Seller Was Willing To Pay For The Defects In The Building), Census 2000, IRS Regional Office Operations, Discrimination In Federal Grants Programs, Title VI, 1964 Civil Rights Act And Federal Agencies Enforcement Of The Act (Testified Before Congress On Results; This study is still Considered the Most Comprehensive Study To date of the Federal Government Enforcement of Its Civil Rights Laws ), Federally-Held Loan Sales to the Public. IRS Problem Resolution Program, and finally, the last recognition I received came after my retirement  which was contained in the e-mail below:

* * * * *

 "Jim, thank you very much for this info.and keeping me posted.

Best regards,

Art
----- Original Message -----

From: "James J Ungvarsky" <UngvarskyJ@gao.gov>
To: <adavis@jps.net>
Sent: Thursday, January 19, 2006 11:14 AM
Subject: Fwd: Recent Strategic Results


Arthur Davis,

Proves once again that he is the man, behind Charlie Daniel and Jim White
jim
>>> Jyoti Gupta 1/19/2006 2:05 PM >>>
Congratulations on a very significant accomplishment!

>>> J C Mihm 1/19/2006 1:55 PM >>>
Esteemed colleagues--

While the ERS is down we are still processing accomplishments. Here is a recent financial accomplishment.

Congratulations and thanks to all involved!

Chris

IRS Eliminates Questionable Form W-4 Program, Saving Resources (GAO-06-543A)
IRS's Questionable Form W-4 Program was used to determine if taxpayers were complying with tax withholding guidelines. Our review of the program found that many employers were not complying with their reporting requirements and that the information IRS maintained may not reflect the current withholding status of taxpayers. Because IRS's information on the program was incomplete and unreliable, we recommended that IRS assess the value of the program and determine if the program should continue in its present form. IRS subsequently eliminated the program and started to use other existing data to monitor withholding compliance. IRS estimated the financial savings to be $4.1 million.
Charlie Daniel, James Ungvarsky, Jim White, and Arthur Davis were responsible for this accomplishment.

Take care.
Jan

**AFFIDAVIT OF ARTHUR L. DAVIS**                    Attachment I

Beginning about 2003, I had been singled out for disparate treatment as to my time cards and my word has been challenged as to my time spent on the job, and I have been ordered to report my comings and goings in a special manner designed to demean my status, and subject myself to special reporting allowing untrue criticism of my attendance, and other nonprofessional attacks on my character.

I have been subjected to the following special demeaning treatment.  On April 23, 2003, the writer stated that he advised me about the accuracy of my Time and Attendance.  I told the writer that I was here on April 7th but that I was not here on the April 18th and that I would make a prior period adjustment the next pay period.

Continuing along this line, the writer brought another instance where he maintained that one July 14th and 25th, 2003 I was not in the office. On July 13th I was in Sacramento, California assisting my daughter who was in a car accident and I did not work on the July 14th. But, on July 25th I did work and I had affidavits attesting to that fact.  I did not turn my computer on all that day because I was reading and cleaning up my office.  For the last 30 years whenever I have unscheduled leave, I **always** make adjustments at the next pay period. Though, these are nick-picking details, they are "part and parcel" of a bigger issue pertaining to disparate treatment and discrimination.

As a 30 + year (1973) employee of the GAO I have always adhered to government policies and honest practices and consider these actions for what they are, calculated harassment designed to make me quit.  I won't! …. And I will leave when I am ready…***not*** before or after.  To illustrate, I was told that I could not leave my computer on, though headquarters; especially IT never said that this could not be done, and has not promulgated any formal direction. My rationale for leaving my computer on with the screen ***dark follows:***

> This is an industry's practice.  I followed this practice in 2006 with my personal computers in my home and at my real estate office because it is the correct and most efficient and useful practice of which I am aware.

> Specifically, Microsoft recommends that ***Windows maintenance tasks be performed*** only when the computer is on.  They added further that the easiest way to maintain your computer is to leave it running all the time and schedule maintenance to happen at night. I schedule my maintenance to occur at midnight to 3 am everyday so that the computer is ready for me at 6:00am the time I report to duty. It is my belief that the foregoing personal example demonstrates a hostile work environment.  And this is but one of many examples..

I am a disabled American veteran, of African/Indian American decent and by virtue of my 30 years plus experience and age.  I believe that my history, conduct and clean

8

record as a professional level employee for over 30 years entitled me to a presumption of honesty, the same as all other professional level employees at GAO.  This information is in my personnel jacket and has been there since 1973.  There are times when I have difficulties getting out of bed to come to work and I take leave and go to the Veterans Administration Hospital for treatment of my service-connected disability related to Agent Orange infections.

I respectfully requested that GAO management be **Ordered** to cease and desist from discrimination and acts of disparate treatment and make allowances, as the regulations provide, (the State of California does where I have been granted a permanent placard for disability parking, for example) for any disability for which I continually suffer as is my right as a disabled veteran; and unspecified general and specific damages and legal expenses.


The essence of the foregoing evidence was sent to my superiors at GAO incident to a trumped up complaint of insubordination which did not actually occur.

ADO's: David Walker, CG
James White, Director, SI, Tax Issues
Charlie Daniel, Assistant Director, SI, Tax
Jonda Van Pelt, Assistant Director, SI, Tax
Kerry Dunn, Field Office Manager, WRO-SF
Et al


I also want to mention one more detailed occurrence.  One of the last assignments I did before retirement in 2004 was to be the Evaluator in Charge (EIC) on an assignment to evaluate the IRS's W-4 program. I specifically identified weaknesses in IRS's development and administration of the W-4 program and recommended that IRS abandon the program. In 2006 IRS cancelled the program and saved over 4 million annually; yet my rating was one of the lowest I ever received.

I received this from Mr. James White, Director, SI, Tax Issues and Mr. Charlie Daniel, Assistant Director, SI, Tax, et al though I had developed the major findings in this report and convinced IRS to accept them.    Of course, I vehemently disagreed with the rating and I attached my comments to their rating of my performance. My comments were very terse and reflected my frustrations with the treatment I received.  I have attached an e-mail from colleagues attesting to my contributions to this assignment ( Please see above )   To say that **" Art does imitate life",** both White and Daniel were required to take remedial training on how to prepare ratings as recent as 2006   In my judgment, these people need a lot of psychological help, and in my opinion, and they should not be in their respective positions.

**Signature and Notarization:**

**VI.**  I declare under the penalties of perjury that the foregoing statements are true and correct and that all attachments to this affidavit are genuine, or true, and/or correct copies of genuine documents.


_____/s/_____     ____08/14/06_____     _____
Signature                              Date
Arthur L. Davis

Subscribed and Sworn to before me this 14th,  day of  _August, 2006_____

NOTARY PUBLIC, CITY OF  ____Vallejo____STATE OF _California____


MY COMMISSION EXPIRES  _09-07-2006_____

/s/ Jean-Marie R. Jean                              Date 8-14-2006

                                                    /s/

                          10