UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
JAMES D. MOSES,                    )
                                   )
            Plaintiff,             )
        v.                         )        Case No: 06-01712 (JGP)
                                   )
DAVID M. WALKER,                   )
Comptroller General of the         )
U.S. Government Accountability Office, )
et al.                             )
                                   )
            Defendants.            )
_____)

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendants, through counsel, respectfully move this Court to dismiss Plaintiff's complaint with

prejudice for lack of subject matter jurisdiction and failure to state a claim.  In support of this

motion, Defendants respectfully refer the Court to the attached memorandum of points and

authorities.

Because this is a dispositive motion, the undersigned has not sought Plaintiff's consent

before filing it.  LCvR 7 (m).

December , 2006                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES D. MOSES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-01712 (JGP) |
| | ) | |
| DAVID M. WALKER, | ) | |
| Comptroller General of the | ) | |
| U.S. Government Accountability Office, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The Defendants, David M. Walker, Comptroller General of the United States,

Government Accountability Office ("GAO") et al., through counsel, hereby move this Court to

dismiss the instant complaint for lack of subject matter jurisdiction and failure to state a claim.

### INTRODUCTION

Plaintiff James D. Moses commenced this action under the Age Discrimination in

Employment Act of 1964 ("ADEA"), 29 U.S.C. § 633a (2006), the Constitution, and other

federal laws and regulations, alleging age discrimination in performance appraisals,

advancements, pay and terminations.[1]  Plaintiff's claim of age discrimination, which Plaintiff

alleges dates back to the 1980's, must be dismissed for untimeliness and/or failure to exhaust

---

[1]    In the Complaint, Plaintiff stated that he "is contemporaneously filing a motion
for a preliminary injunction and a motion for class certification under Rule 23.  The allegations
in those motions are incorporated by this reference."  Compl. at p. 13.  Defendants believe that
class certification is premature at this stage of the litigation and are filing a motion to stay class
certification until the Court has made a decision on the motion to dismiss.

administrative remedies, as well as a failure to state a claim.  In addition, Plaintiff's claim that

the GAO Personnel Appeals Board ("PAB") has failed to perform its statutory oversight function

must be dismissed for failure to state a claim.  Finally, the jury demand must be stricken from the

complaint because the ADEA does not allow for jury trials.  See, e.g., Lehman v. Nakshian, 453

U.S. 156 (1981) (federal employees may not demand a jury trial for ADEA claims); Al-Harazi v.

City of New York, 70 BNA FEP Cas 444 (S.D.N.Y. 1996)(no entitlement to jury trial in ADEA

cases).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an employee of GAO and is currently employed as an analyst in GAO's Los

Angeles field office.  Plaintiff alleges that GAO's Band II restructuring, which took place in late

2005 and 2006, was discriminatory.  Compl. at p. 15-16.  Plaintiff further claims that GAO's

administrative board, the PAB, has failed to investigate or correct allegations of age

discrimination.  Compl. at p. 3-5.

Plaintiff alleges that he has filed three Notices of Intent to Sue under the Age

Discrimination in Employment Act  (ADEA) one filed in the year 2000 (no month or day

alleged), the second on April 6, 2005, and the third on August 14, 2006.  Compl. at 11.  Finally,

Plaintiff alleges that he filed an administrative complaint in 2002 and 2006, that more than 180

days have expired from the filing of his complaints, and that no final agency decision has been

issued.  Compl. at 11.

Prior to commencing this lawsuit, Plaintiff unsuccessfully attempted to intervene in

another case that is currently before this Court, Chennareddy v. Walker, Case No. 87-3538

(JGP), raising many of the same claims he raises in the case at bar.  Compl. at p. 15.  Subsequent

to that, on May 31, 2006, Plaintiff and two former GAO employees filed a complaint in this

Court, Davis v. Walker, Case No. 06-1002 (JGP), again alleging many of the same issues.

Compl. at p. 7.

## ARGUMENT

### I.    Standard of Review

*1.    Motion to Dismiss*

In resolving a Fed. R. Civ. P.  12(b)(1) and 12(b)(6) motions to dismiss, the court will

treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in

the plaintiff's favor.  Sullivan-Obst v. Powell, Secretary, Department of State, 300 F. Supp. 2d

85, 91 (D.D.C. 2004); Arbitraje Casa De Cambio v. United States Postal Serv., 297 F. Supp. 2d

165, 168 (D.C. Cir. 2003) (finding that substantially the same standard of review should be used

to evaluate Fed. R. Civ. P. 12(b)(1) and 12(b)(6) motions).  Therefore, the complaint will be

dismissed if the plaintiff can prove no set of facts in support of his claim that would entitle him

to relief.  Id.  Finally, while "many well-pleaded complaints are conclusory, the court need not

accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast

as factual allegations."  Id.

The court may consider certain additional evidence in deciding the motion.  See, e.g.,

Marshall Cty. Health Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993); Hohri v. United

States, 782 F.2d 227, 241 (D.C. Cir. 1986); Scott v. England, 264 F. Supp. 2d 5, 7 (D.D.C. 2002)

(citing Hohri); Arizmendi v. Lawson, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("In resolving

a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of

public record including court files, records and letters of official actions or decisions of

government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

## II.     Plaintiff Failed to Comply with the ADEA's Notice Requirements and Failed to Exhaust Administrative Remedies

The ADEA provides two routes by which a claim of age discrimination may be brought against a federal agency.  A federal employee may invoke an administrative process and then file a civil action if she is not satisfied with her administrative remedies.  See 29 U.S.C. § 633a(b).  Alternatively, the employee may elect to forego that administrative process and present her claim directly to a United States district court.  See 29 U.S.C. § 633a(c); Lex K. Larson, 8 Employment Discrimination (2d ed.) § 140.08, at 140-32 (1998).

If a federal employee pursues the second route, the employee must  file a notice of intent to sue with the Equal Employment Opportunity Commission ("EEOC")[2] within 180 days of the alleged discriminatory incident and give the EEOC at least 30 days to remedy the situation before filing the federal complaint.  See 29 U.S.C. § 633a(c) and (d); Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991); Rann v. Chao, 346 F.3d 192 (D.C. Cir. 2003).  The purpose of this 180-day notice requirement is twofold:  First, it provides the EEOC or the employing agency with an opportunity to attempt to conciliate the complaint while it is still fresh.  Second, it provides early notice to the employer of a possible lawsuit, thereby promoting both the preservation of evidence and good faith negotiation on the part of the employer during the conciliation period.  Cf. Lex K. Larson, 8 Employment Discrimination (2d ed.) § 140.01, at 140-

---

[2] For GAO employees, the notice of intent to file suit is filed with the agency's Office of Opportunity and Inclusiveness.

4

3 (1998). Because the deadline for providing written notice of intent to sue is a statutory prerequisite to suit, it constitutes an integral part of the waiver of sovereign immunity that permits an employee to bring an age discrimination claim against a federal government agency. Here, Plaintiff failed to file timely his notices of intent to sue.

        *a.      Plaintiff fails to allege actions or dates prior to 2005 notice*

Despite his broad allegations of age discrimination, Plaintiff does not identify any unlawful practices occurring 180 days prior to the alleged filing of either his 2000 or April 6, 2005 Notice of Intent to Sue. Compl. at p. 11; Exhibit 7. Therefore, his general claims of age discrimination in performance appraisals, advancements, pay, and terminations should be dismissed. Compl. at p. 8.

        *b.      Plaintiff failed to file complaint within statute of limitation period*

There is no statute of limitations in the federal government section of the ADEA, but the Supreme Court has stated that it assumes "Congress intended to impose an appropriate period borrowed from either a state statute or from an analogous federal one." Stevens, 500 U.S. at 7. The majority of other circuits have found that Title VII of the Civil Rights Act of 1964 ("Title VII") is most analogous to the ADEA, and therefore provides the most appropriate statute from which to borrow an applicable statute of limitations for ADEA actions brought by federal employees directly into federal court. The 11th Circuit in Edwards supported the applicability of the Title VII model where an employee decided to forego the administrative process and present a claim directly to a United States district court. Edwards v. Shalala, 64 F.3d 601, 606 (11th Cir. 1995); see also Long v. Frank, 22 F.3d 54 (2d Cir. 1994); Lavery v. Marsh, 918 F.2d 1022, 1025 (1st Cir. 1990); Elder v. Cisneros, No. 94C-597, 1995 WL 107108 at *2 (N.D. Ill. March 8,

1995); <u>Rawlett v. Runyun</u>, 849 F. Supp. 449 (E.D.Va. 1994); <u>Sykes v. James</u>, No. Civ. 04-2031, 2005 WL 3544294, *3 (D.D.C. Dec 27, 2005); <u>Price v. Greenspan</u>, 374 F. Supp.2d 177, 186 (D.D.C. Jun 22, 2005); <u>but</u> <u>see</u> <u>Rossiter v. Potter</u>, 357 F.3d 26, 35 (1st Cir. 2004) (finding 2 year statute of limitations in the Fair Labor Standards Act to be more appropriate than Title VII).

Under the Title VII 90-day limitations period, the Plaintiff would have been required to bring suit in district court by July 5, 2005, within 90 days of filing his April 6, 2005 Notice of Intent to Sue. Compl. at p. 11. Having not filed a complaint until May 31, 2006, his allegations addressed in his 2005 and 2000 Notice of Intent to Sue must be dismissed.

   *c.*   *Plaintiff's 2006 notice was untimely.*

Plaintiff alleges that GAO's Band II restructuring was discriminatory and that the restructuring constituted a demotion. Plaintiff also challenges an alleged denial of a Cost of Living Adjustment ("COLA"). See Compl. at 12-13. Although Plaintiff claims that he was "denied" a COLA on 2/16/06 when he received his paycheck[3], he in fact became ineligible for a COLA in January 2006 because he was at the top of his salary range. Anderson Aff. at para. 5; Compl. at p. 13; Exhibit 6 at p. 1. The effective date of the determination regarding whether Plaintiff was eligible for an annual adjustment was January 22, 2006. Anderson Aff. at para. 6. Plaintiff was notified of this determination on January 25, 2006. Anderson Aff. at para. 6. Thus, Plaintiff failed to file a timely notice of intent to sue with regard to this issue because he did not file a notice of intent until August 9, 2006, 199 days after the annual adjustment determination

---

[3] Whether each new paycheck constitutes a new discriminatory act is an issue that is currently before the Supreme Court in the Title VII case <u>Ledbetter v. Goodyear Tire and Rubber Company, Inc.</u>, No. 05-1074.

and, and 183 days after he was placed in Band IIA.  Exhibit 6.[4]  Therefore, the notice of intent to sue is untimely and cannot serve as the basis for Plaintiff's claims.  Compl. at p. 11-13.

     *d.*     *Exhausted claims*

Plaintiff exhausted his administrative remedies for his claims alleged in the administrative complaints he filed in 2002 and in 2006.  Because 180 days have passed since the filing of both adminstrative complaints with no final decisions having issued from GAO, the claims alleged therein are considered to have been administratively exhausted.

The issues addressed in his 2002 administrative complaint, accepted for investigation, and alleged in the instant complaint include whether the Plaintiff was discriminated against or retaliated against in his performance ratings for 2000 and 2001 on the basis of age.  Exhibit 1 & 3; Crawford Aff. at ¶ 6.  As discussed below, Plaintiff failed to establish a prima facie case under the ADEA for these claims.

The issues addressed in his 2006 administrative complaint, accepted for investigation, and alleged in the instant complaint include whether Plaintiff was discriminated against based on age when he was not placed in the BandIIB pay range during the Band II restructuring and reconsideration process  in December 2005, January 2006, and June 2006.  Exhibit 2, 4 & 5; Crawford Aff. at ¶ 7.  In his administrative complaint, Plaintiff alleged that the system used to place employees in Band IIA or Band IIB was discriminatory.

---

[4]  Plaintiff included in his August 9, 2006 Notice of Intent to Sue the allegation that his placement in BandIIB was discriminatory.  Although his notice was filed untimely as discussed above, he raised this allegation in his 2006 administrative complaint but did not raise his allegations regarding the alleged denial of a COLA.

However, Plaintiff may not pursue issues not raised in those complaints such as his general allegations regarding discrimination dating back 20 years, his claims of discrimination in performance ratings, promotions, pay, and terminations, and his claim regarding the alleged denial of a Cost of Living Adjustment.  Compl. at p. 8; see Exhibits 1-5.  These claims have not been administratively exhausted, nor have they been the subject of a timely notice of intent to sue.  Therefore, these claims must be dismissed.                                .

III.    **Plaintiff Has Failed to State a Prima Facie Case Regarding His 2002 Administrative Complaint**

Plaintiff alleges that his performance ratings for 2000 and 2001 were biased.  Although he alleged and exhausted these claims from his 2002 administrative complaint, Plaintiff has not established a prima facie case under the ADEA with regard to these claims because he has failed to allege an adverse employment action.

The ADEA requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in executive agencies ... be made free from any discrimination based on age." 29 U.S.C. § 2000e-16(a).  The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973), governs the analysis of Plaintiff's discrimination claims.  Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000); see also Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (explaining that the McDonnell Douglas framework applies to ADEA claims).  Under McDonnell Douglas, a plaintiff bears the initial burden of establishing a prima facie case, meaning he must prove by a preponderance of the evidence "that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)   Plaintiff cannot establish

8

the second of these *prima facie* elements (adverse action) in regards to the 2002 administratively exhausted claim.

To establish an adverse employment action in the absence of a diminution in pay or benefits, a plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999); see also Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001) (recognizing "the 'objective tangible harm' requirement, which guards against both judicial micromanagement of business practices, and frivolous suits over insignificant slights") (internal quotation omitted).

    *1.    No adverse employment action*

Plaintiff has failed to allege that he suffered an adverse employment action with regard to his 2000 and 2001 performance appraisals. The Plaintiff has not suffered any "objectively tangible harm," nor has he alleged any type of materially adverse consequence affecting the terms, conditions or privileges of his employment with regard to these two performance appraisals. Plaintiff does not claim that the lowered appraisals resulted in a loss of salary or grade. In fact, in his 2002 complaint of discrimination, Plaintiff stated that there probably would not be any monetary increases for him in the next merit pay category because of where he was in the salary scale. Exhibit 1.

A lowered performance evaluation, absent an effect on the employee's salary or grade, is not sufficient to constitute an adverse employment action under the ADEA. In Brown, that Court held that the lowering of an employee's performance evaluation was not an adverse employment action because, while the evaluation may have been lower than normal, it did not affect the employee's grade or salary. 199 F.3d 446, 458 (noting the "thick body of precedent"

9

that "refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions"); <u>Easton v. Snow</u>, No. 04-02038, 2006 WL 1774552, at \*4 (D.D.C. June 26, 2006) (holding that a lowered appraisal was not "intrinsically adverse enough to trigger ADEA protections absent some indication of objective or tangible harm").

Plaintiff has not established an adverse employment action with regard to the claims he raised in his 2002 administrative complaint of discrimination. Therefore, Plaintiff has failed to state a prima facie case with regard to these claims.

## IV.    Plaintiff's Continuing Violations Claim Fails.

While Plaintiff contends that GAO's alleged policy of age discrimination constitutes a continuing violation of ADEA, the holding in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), makes clear that discrete events of the type alleged in the complaint are not subject to the continuing violation doctrine. Compl. at p. 18-19. Discrete occurrences, such as termination or failure to promote, constitute a separate action for which separate and timely EEO charges (or, in the case of ADEA, Notices of Intent to Sue) must be filed. <u>Morgan</u>, 536 U.S. at 114; <u>Romero-Ostolaza v. Ridge</u>, 370 F. Supp.2d 139 (D.D.C. 2005) (dismissing additional employment-related allegations for which plaintiff had not filed a charge despite having filed a charge on failure to be promoted). Here, the Plaintiff alleges discrimination in performance ratings, promotions, pay, and terminations, claiming that these actions constitute a continuing violation. Compl. at p. 8. However, Plaintiff's claims involve discrete acts that are each definable and easily identifiable as each claim encompasses a separate alleged unlawful employment practice that occurred on a date certain. Therefore, Plaintiff should have filed a

timely notice of intent to sue or administratively exhausted each of these claims prior to bringing them to court.  Thus, Plaintiff's allegations of continuing violation must be dismissed.[5]

## V.    The Court Should Dismiss Plaintiff's Equal Pay Act Claims

Plaintiff seeks relief under the Equal Pay Act (EPA).  Compl. at p. 3, 13, 38.  Plaintiff cannot maintain an EPA claim in this Court because a) he alleges age discrimination and not sex discrimination and b) he seeks relief exceeding the $10,000 jurisdictional amount.  The Equal Pay Act "prohibits payment of unequal wages for equal work on grounds of sex [.]" 29 U.S.C. § 206 (d).  Here, Plaintiff alleges age discrimination and does not allege any discrimination based on gender.  Thus, he cannot seek relief under the EPA.

Furthermore, claims brought pursuant to the Equal Pay Act must satisfy the jurisdictional requirements of the Tucker Act. 28 U.S.C. § 1491.  See e.g., Barnes v. Levitt, 118 F.2d 404, 410 (5th Cir. 1997) cert denied, 523 U.S. 1136 (1998) ("[A] plaintiff asserting an EPA cause of action must bring the action in the Court of Federal Claims if the claim, including the fees sought, exceeds $10,000.").  Section 1346(a)(2), commonly referred to as the "Little Tucker Act," expressly limits the jurisdiction of this Court to any non-tort civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress."  28 U.S.C. § 1346(a)(2).  See, e.g., Doe v. Dep't of Justice, 753 F.2d 1092, 1101 (D.C. Cir. 1985); Wiggins v. Powell, No. Civ.A.02-1774, 2005 WL 555417, * 11 (D.D.C. Mar. 7, 2005); Schrader v. Tomlinson, 311 F. Supp.2d 21, 25 (D.D.C. 2004)("it is well established that claims brought pursuant to the Equal Pay Act must satisfy the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491") (internal quotations and citation omitted).

---

[5]  See ftn. 3.

Plaintiff seeks damages of "a sum not less than $75,000,000 plus costs and attorneys's [sic] fees." Compl. at p. 34. This amount exceeds the jurisdictional amount of the Little Tucker Act. Assuming his claims can be heard at all, they must be brought before the Court of Federal Claims. Therefore, the Court should dismiss any EPA claim for lack of jurisdiction.

**VI.    Plaintiff Has Failed to State a Claim Under the Constitution or Other Laws.**

In addition to his ADEA claims, Plaintiff attempts to seek relief under other federal laws, federal regulations, and the Constitution concerning the alleged age discrimination. Compl. at p. 3, 13, 36. However, this Circuit has held that "[i]t is undisputed that the ADEA provides the exclusive remedy for a federal employee who claims age discrimination." Chennareddy v. Bowsher, 935 F.2d 315, 318 (D.C. Cir. 1991); see Ward v. Kennard, 133 F. Supp. 2d 54, 58 (D.D.C. 2000); Sykes, 2005 WL 3544294 at *4. Therefore, Plaintiff's claims under the Constitution and other laws and regulations should be dismissed.

**VII.    The Court Should Deny Plaintiff's Request For A Writ of Mandamus**

Plaintiff seeks a writ of mandamus compelling PAB and PAB's Office of General Counsel to perform its duties of investigation and elimination of discrimination, and to cease being subservient to GAO management. Compl. at p. 8. Plaintiff seeks a writ of mandamus against GAO requiring that it end its alleged control over the PAB. Compl. at p. 8. The Court should dismiss Plaintiff's requests for writs of mandamus. Plaintiffs do not specify under which statute they seek the writs of mandamus. However, the Court should dismiss claims under either the Mandamus and Venue Act or the Administrative Procedure Act ("APA").

12

1.    *The Court should dismiss any claims under the Mandamus and Venue Act*

      Under the Mandamus and Venue Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The remedy of mandamus is considered a drastic one that should be awarded only in extraordinary situations. See Mallard v. United States District Court, 490 U.S. 296 (1989); Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980); Cartier v. Secretary of State, 506 F.2d 191, 199-200, n.8 (D.C. Cir. 1974). To be entitled to mandamus, a plaintiff must demonstrate (1) a clear right to the relief he requests, (2) a clear, non-discretionary duty in the respondent/defendant to perform the action sought, and (3) the absence of an adequate alternative remedy. Mallard, 490 U.S. at 309; see also Cartier, 506 F.2d at 199-200. The burden of showing each element is on the Plaintiff.

      This case does not present the extraordinary situation that warrants mandamus relief. Notably, Plaintiff has an adequate alternative remedy. Plaintiff has a right to a *de novo* review of his claims in federal district court. See Storey v. Rubin, 976 F. Supp. 1478, 1482 (N.D. Ga. 1997), aff'd, 144 F.3d 56 (11th Cir. 1998). "One critical consideration in determining the propriety of resort to a writ of mandamus is the question of alternative remedies; the writ is usually denied when such alternatives exist." Cartier, 506 F.2d at 199-200. Here, Plaintiff is currently pursuing his alternative remedy with the present lawsuit; thus, mandamus relief is not warranted. The Court should deny Plaintiff's request for a writ of mandamus.

2.    *The Court should dismiss any claims under the Administrative Procedure Act*

    a.    Defendants are not covered under the APA

The Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., provides an express waiver of sovereign immunity for suits seeking relief, other than money damages, based on allegedly improper actions of a federal "agency."  5 U.S.C. § 702.  GAO is not an agency under the APA pursuant to 5 U.S.C. § 701, which provides the following definition of "agency": "(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—(A) the Congress".  GAO is a part of the legislative branch, and accordingly, exempt from the APA.  See Bowsher v. Synar, 478 U.S. 714, 730 (1986) (Congress created the GAO in 1921 in the belief that it "needed an officer, responsible to it alone, to check upon the application of public funds in accordance with appropriation").

The Court of Appeals for the D.C. Circuit has held that the exclusion of Congress in the APA itself applies to arms of Congress.  Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405, 1416 n. 15. (D.C. Cir. 1985) (holding statutory exemption for "Congress" extends to the Library of Congress because it is a component of the legislative branch of government); see also Washington Legal Foundation v. United States Sentencing Commission, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (concluding that the APA exemption for "the Congress" meant the entire legislative branch); cf. Mayo v. U.S. Government Printing Office, 839 F. Supp. 697, 700 (N.D. Cal. 1992) (finding that because the Freedom of Information Act declares that it's definition of agency does not include the Congress, the entire legislative branch is exempted from the FOIA).  The PAB, is GAO's personnel appeals board and it is likewise

14

exempt from the APA.  Therefore, Plaintiff may not bring claims under the APA against the

Defendants.

        b.    <u>The Court has no jurisdiction under the APA</u>

Even assuming *arguendo* that the APA did apply to the Defendants, the Court would still

have no jurisdiction under the APA.  Under the APA, "[a] person suffering legal wrong because

of agency action, or adversely affected or aggrieved by agency action within the meaning of a

relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Yet, not all agency

action comes within the scope of the APA.  <u>ITT Corp. v. Local 134, IBEW</u>, 419 U.S. 428, 443-

44 (1975).  Only "[a]gency action made reviewable by statute and final agency action for which

there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C.§ 702.

Here, the Court has no jurisdiction under the APA because Plaintiff can seek a *de novo*

review of his claims in federal district court and such is an "adequate remedy in a court."  5

U.S.C.§ 702.  Plaintiff can seek and is seeking a review of his claims in federal district court.

Because Plaintiff has an adequate remedy in this Court, the Court should dismiss any claim

under the APA for lack of subject matter jurisdiction and deny Plaintiff's request for injunctive

relief.

**VIII.   Plaintiff's Claims Against the PAB Fail**

Plaintiff claims that the Personnel Appeals Board has failed to perform its statutory oversight function.  Compl. at p. 3-5, 34-36.  Under 31 U.S.C. §§ 751-55, the PAB is the administrative body that handles complaints of employees of the GAO and provides oversight on EEO issues at GAO.

*1.      The Court has no subject matter jurisdiction over ADEA claims against PAB*

Federal Courts are courts of limited jurisdiction and may hear a case only if it is authorized to do so by a congressional grant of jurisdiction.  Insurance Corp. of Ireland, Ltd v. Compagnie des Bauxites de Guiness, 456 U.S. 694, 702,(1982); Aldinger v. Howard, 427 U.S. 1 (1976).  Congress has not created a right of action against the EEOC or any other agency based upon the handling of an administrative complaint of discrimination, thus an alleged failure to process an administrative claim properly is not actionable under the ADEA.  E.g., Storey v. Rubin, 976 F. Supp. at 1483-84 (finding ADEA does not confer jurisdiction over an action "challenging any aspect of the administrative processes (or any application of  that process) by which complaints of discrimination are investigated and resolved."); Oxford Medical Group v. Vossoughian, M.D., 154 F. Supp2d 782, 785 (S.D.N.Y. 2001) (ADEA does not provide for a claim to be brought against the EEOC ); see also Packer v. Garrett, 735 F. Supp. 8, 9-10 (D.D.C. 1990) (only "right" Title VII establishes is to be free of discrimination; this right is served even if errors are made in processing the charge, by the right to a trial de novo), aff'd, 959 F.2d 1102 (D.C. Cir.) (table), cert. denied, 506 U.S. 1036 (1992); Young v. Sullivan, 733 F. Supp. 131, 132 (D.D.C. 1990) ("Title VII creates only a cause of action for discrimination.  It does not create an independent cause of action for the mishandling of an employee's discrimination complaints."),

16

aff'd, 946 F.2d 1568 (D.C. Cir. 1991) (table), cert. denied, 503 U.S. 918 (1992); Anthony v.

Bowen, 848 F.2d 1278 (D.C. Cir. 1988) (denying claim for attorney's fees under Title VII where

fees were incurred to challenge processing of EEO complaint), cert. denied, 489 U.S. 1011

(1989).  In Francis-Sobel v. Univ. of Maine, 597 F.2d 15 (1st Cir.), cert. denied, 444 U.S. 949

(1979), a case involving allegations that the EEOC's inaction deprived the plaintiffs of their

rights, the First Circuit stated, "[t]he interests themselves [the rights under the anti-

discrimination statute] have not been lost, only the help that Congress intended charging parties

receive in vindicating those rights."  Id. at 18.  Because the Plaintiffs had not been deprived of

their underlying Title VII statutory interests, the court held that the plaintiffs had failed to state a

claim.

 In Storey, the Court analyzed the remedial scheme of the ADEA and concluded that the

Federal Courts lacked subject matter jurisdiction to hear claims regarding the mishandling of an

employee's discrimination complaint during the administrative process:

> While federal courts generally have subject matter jurisdiction over claims arising under
> Title VII and the ADEA, this subject matter jurisdiction typically arises from one of the
> five specific code sections in these two remedial schemes through which Congress
> explicitly created rights of action, namely:  (1) 42 U.S.C. § 2000e-5(f)(3) (Title VII)
> (authorizing the EEOC, Attorney General, and aggrieved employees to bring civil actions
> in federal court);  (2) 42 U.S.C. § 2000e-6(b) (Title VII) (authorizing three judge district
> courts for pattern and practice cases of general importance brought by the Attorney
> General or the EEOC); (3) 42 U.S.C. § 2000e-16 (Title VII) (authorizing federal
> employees or applicants to bring civil actions); (4) 29 U.S.C. § 626 (ADEA) (authorizing
> aggrieved employees and applicants to bring a cause of action);  (5) 29 U.S.C. § 633a
> (authorizing federal employees and applicants to bring a cause of action).  None of these
> five sections creates a right or action or confers on this Court jurisdiction over a claim by
> a federal employee against the EEOC, or any other agency, challenging any aspect of the
> administrative processes (or any application of that process) by which complaints of
> discrimination are investigated and resolved.[6]

---

 [6]  In Storey, the Court noted that "the remedial scheme of the ADEA parallels the
remedial scheme of Title VII.  Thus, the analysis of Plaintiffs' claims under these statutes is

Storey, 976 F. Supp. at 1483-84.

Thus, even assuming, arguendo, that the PAB failed to investigate age discrimination at GAO, a contention Defendants deny, Plaintiff would have suffered no loss of his underlying right to seek redress of his complaints under the ADEA in federal court. He is entitled to no further relief regarding the investigative actions of the PAB and Plaintiff has failed to state a claim against the PAB. Therefore, the Court should dismiss the claims against PAB and dismiss PAB as a party to this suit.

   2.    *Plaintiff fails to state a claim under the ADEA against the PAB*

Assuming *arguendo* that the Court does have subject matter jurisdiction over Plaintiff's claims under the ADEA, the Court should still grant dismissal for Plaintiff's failure to state a claim because Plaintiff is not a PAB employee. See Fed. R. Civ. P. 12(b)(6). "Title VII and the ADEA create causes of action against only the employers of individuals injured by acts of discrimination in the workplace." Storey, 976 F. Supp. at 1484; see 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 633a.[7]

   3.    *Plaintiff has Neither an Express nor Implied Cause of Action against PAB*

Even assuming *arguendo* that the court has subject-matter jurisdiction over the plaintiff's complaint, the court would have to dismiss the complaint under Rule 12(b)(6) because the D.C. Circuit and circuits across the county have held that Congress has not authorized, either expressly or impliedly, a cause of action for the alleged negligence or other malfeasance in processing an employment discrimination charge. See e.g., Smith v. Casellas, 119 F.3d 33, 34

_____

identical." 976 F. Supp. at 1483.
   [7]    Thus, assuming *arguendo* that this Court did have subject matter jurisdiction and Plaintiffs' Complaint did state a claim, the head of the agency (here, Defendant Walker) involved is the only appropriate defendant. Storey, 976 F. Supp. at 1484.

(D.C. Cir. 1997); <u>Baba v. Japan Travel Bureau Int'l. Inc.</u>, 111 F.3d 2, 4 (2d Cir. 1997); <u>Scheerer v. Rose State College</u>, 950 F.2d 661, 663 (10th Cir. 1991); <u>McCottrell v. Equal Employment Opportunity Comm'n</u>, 726 F.2d 350, 351 (7th Cir. 1994); <u>Uberoi</u>, 180 F. Supp.2d 42, 45 (D.D.C. 2001); <u>Storey</u>, 976 F. Supp. at 1484 ("it is well settled that charging parties do not have an implied remedy against the EEOC or any other agency arising from the handling of a charge or a decision."). Thus, the Court should dismiss Plaintiff's claims against the PAB for the alleged improper processing of their discrimination claims.

        4.     *Plaintiff does not state a claim for due process violation against PAB.*

Assuming *arguendo* that Plaintiff's due process claims were not precluded by the ADEA or barred by sovereign immunity, these claims would still fail. The Plaintiff alleges that the manner in which Defendants conducted the administrative processes violated Plaintiff's due process rights.[8] However, courts have routinely rejected such efforts to couch claims of inadequate processing of claims as due process violations supporting an implied damage remedy. See <u>Stewart</u>, 611 F.2d at 681-82 & n.2 (no implied right of action under Fifth Amendment for Commission's processing of charges); <u>Francis-Sobel v. University of Maine</u>, 597 F.2d 15, 18 (1st Cir. 1979) ("even arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party [do not] transgress[] the Due Process Clause in a way that would support the implication of a damage remedy"); <u>Storey</u>, 976 F. Supp. at 1485

---

       [8] The Court should construe Plaintiff's due process and equal protection rights claims for relief under the Fifth Amendment to the United States Constitution. See <u>Rutherford v. United States</u>, 702 F.2d 580, 582 and n.4 (5th Cir. 1983) (holding that the Fourteenth Amendment's restrictions on the powers of the states do not apply to the federal government, but that analogous limitations on federal action are embodied in the Fifth Amendment); <u>Storey</u>, 976 F. Supp. at 1486; <u>U.S. Const. Amend. XIV</u>.

("plaintiff cannot bring a Fifth Amendment due process claim against the EEOC ... based on its investigation or resolution of a claim of discrimination").

The Supreme Court has recognized that federal agencies may be liable for due process violations committed in the course of performing their functions if those functions are adjudicatory.  See Hannach v. Larche, 363 U.S. 420, 442 (1960).  Here, Plaintiff cannot state a claim against the PAB for denial of due process because the PAB's actions were not adjudicatory and did not ultimately affect his rights.  None of the PAB's actions are binding and the Plaintiff may seek (and is seeking) a *de novo* review of his claims of discrimination in federal district court.  Chandler v. Roudebush, 425 U.S. 840, 861 (1976).  For this reason, numerous courts have determined that a plaintiff cannot bring a Fifth Amendment due process claim against the EEOC or any other agency based on its investigation or resolution of a claim of discrimination.  See e.g., Francis-Sobel, 597 F.2d at 18 ("There remains to be considered any interest appellant may have lost which proper EEOC processing might have provided.  Because a determination of reasonable cause is nonbinding and nonfinal, investigative and not adjudicative, we cannot say that the failure to receive such a determination represents any loss that implicates the Due Process Clause."); McCottrell v. E.E.O.C., 726 F.2d 351, n1. (7th Cir 1983) ("Plaintiff has no right under the Constitution to challenge the EEOC's adverse determination").  Therefore, the Court should dismiss the Plaintiff's claim of due process violations.

   5. *Plaintiff does not state a claim for equal protection violation against PAB*

Plaintiff can not establish an equal protection violation by the PAB because Plaintiff has not alleged that the PAB treated his claim any differently than it treats those of other, similarly situated complainants.  Storey, 976 F. Supp. at 1485; Mitchell v. EEOC, 888 F. Supp. 710, 713

(E.D. Pa 1995); see Dowling v. Commonwealth of Pa. Liquor Control Bd., No. 88 Civ. 7568,

1992 WL 328840, at *6 (E.D.Pa Oct. 27, 1992) (equal protection claim requires proof of

purposeful discrimination, which entails demonstration that plaintiff "received 'different

treatment from that received by other individuals similarly situated.' ") *quoting* Andrews v. City

of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).  Here, Plaintiff claims that "GAO's

administrative process is "deficient even negligent, in seeking relief for employees seeking their

aid." Compl. at p. 5.  However, even if the PAB's processing of complaints were "deficient even

negligent, in seeking relief for employees seeking their aid" that alone would not violate

Plaintiff's equal protection rights.  Plaintiff does not allege that PAB treated other similarly

situated GAO employees differently.  For example, Plaintiff has not alleged that the PAB treated

GAO employees who complained of race, gender, disability or national origin discrimination

differently than PAB treated the Plaintiff.  Consequently, Plaintiff does not state a claim for

equal protection violation against the PAB.

**CONCLUSION**

Based upon the foregoing, Defendants respectfully request that Plaintiff's complaint be

dismissed with prejudice.

December 11, 2006                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153


Government Accountability Office
Staff Attorney
Cherrie Owen

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing **MOTION TO DISMISS** was filed via the Court's

electronic filing system on this December 11, 2006 and is expected to be served by the Court's

electronic transmission facilities to:


Walter T. Charlton
Walter T. Charlton & Assoc.
1156 15th Street, N.W.
LL 10
Washington, D.C.  20005
(410) 571-8764 (phone)
(410) 897-0471 (Fax)




_____/s/_____
ANDREA McBARNETTE, D.C. Bar  #483789
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| James D. Moses, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No: 06-01712 (JGP) |
| ) | |
| DAVID M. WALKER, et al. ) | |
| Comptroller General of the ) | |
| U.S. Government Accountability Office ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT OF DOLORES CRAWFORD**

I, Dolores Crawford, depose and state as follows:

1.     I am presently employed as a Mediation Program Manager & EEO Counselor in the Office of Opportunity and Inclusiveness (O&I), formerly known as the Civil Rights Office, at the Government Accountability Office (GAO).  In that capacity, I have the responsibility for the receipt and processing of individual and class complaints of discrimination.  I have served in that capacity since approximately 1991.

2.     Among other duties, O&I staff provides EEO counseling, mediation and complaint discrimination services to U.S. Government Accountability Office employees and applicants.

3.     When O&I receives a formal Complaint of Discrimination, O&I creates a file and places it in a filing cabinet located in O&I, then begins processing the complaint.

4.     O&I has two files: one containing active complaints, and one containing old complaints.  O&I's files date back to approximately 1990.  The O&I filing system is organized alphabetically by the complainant's name.

5.     On or about November 27, 2006, I performed a search of the O&I files to ascertain whether O&I had received Complaints of Discrimination from James Moses.

6.     O&I records reflect that on March 15, 2006 O&I notified Mr. Moses of his right to file a formal administrative discrimination complaint regarding his Band II restructuring claims within 15 days.

7.     I located two Complaints filed by Mr. Moses, dated January 18, 2002 and April 4, 2006.  These Complaints have been identified as Defendants' Exhibits 1 and 2.

8.    O&I's file also contained a Complaint of Discrimination dated December 14, 2001; O&I records reflect that this complaint alleged the same violations as the one accepted on January 18, 2002.

9.    Defendants' Exhibit 3 is a letter O&I issued to Mr. Moses acknowledging receipt of his 2002 Complaint of Discrimination and identifying which claims O&I was accepting for investigation.

10.    Defendants' Exhibit 4 is a letter O&I issued to Mr. Moses acknowledging receipt of his 2006 Complaint of Discrimination and identifying which claims O&I was accepting for investigation.

11.    O&I's file indicates that on September 6, 2006, O&I acknowledged Mr. Moses' amendement of his 2006 complaint to include an additional allegation.  O&I's letter to Mr. Moses identifying the amended claim is labeled as Defendants' Exhibit 5.

12.    There is no record of a final agency decision having been issued with regard to the Complaints identified in paragraphs 7 and 8 above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

_Dolores J. Crawford_    _28 Nov. 06_
Dolores Crawford           Date

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

James D. Moses,⁣ )
⁣ )
Plaintiff,⁣ )
v.⁣ )⁣   Case No: 06-01712 (JGP)
⁣ )
DAVID M. WALKER, et al.⁣ )
Comptroller General of the⁣ )
U.S. Government Accountability Office⁣ )
⁣ )
Defendants.⁣ )
⁣ )

**AFFIDAVIT OF SHANNON ANDERSON**

I, Shannon M. Anderson, depose and state as follows:

1.  I am presently employed as a Human Capital Specialist in the Performance and Compensation Management Center of the Human Capital Office. In that capacity, I have the responsibility of verifying the calculations of pay increases for GAO employees pursuant to GAO's pay orders.

2.  There are two types of possible pay increases for GAO employees. The first type is called an "across the board increase" or "annual adjustment." This type of pay increase consists of a predetermined percentage pay increase that is granted to all eligible employees to adjust for inflation. Employees sometimes refer to the annual adjustment as a Cost of Living Adjustment (COLA).

3.  The second type of pay increase is called "performance-based compensation" (PBC). This type of pay increase may be in the form of a permanent pay increase, a lump sum bonus, or a combination of the two. An employee's PBC is determined using a formula that incorporates the employee's annual performance appraisal score.

4.  If an employee is in excess of the salary range for his Band, he is not eligible for an annual adjustment or a permanent PBC pay increase. However, if the employee's performance appraisal score is in the top 20% of employees in the same Band in his team, he may receive a one-time lump-sum PBC bonus that year.

5.  At the time of the 2006 pay increase calculations, James Moses's salary was in excess of the maximum salary rate for his band. Therefore, he could not receive an annual adjustment or a permanent PBC pay increase.

6.  The effective date of the determination described in paragraph 5 was January 22, 2006. On January 25, 2006, employees were notified that they could view the

amount, if any, of their annual adjustment (and their PBC). This information was contained in GAO's on-line Competency Based Performance System (CBPS) database.

7.    In March 2006, Mr. Moses was notified that, based on his performance appraisal score, he would receive a PBC lump-sum bonus of $1000, which would be made retroactive to January 22, 2006.


I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.


*Shannon Anderson*                    12-11-06
Shannon M. Anderson                    Date

# Defendants' Exhibit 1

# GAO

**United States General Accounting Office**

# Complaint of Discrimination

For Further Information about the GAO Discrimination Complaint Process see
GAO Order 2713.2.

| 1. Name (last, first, middle initial) | 2. Address (number and street, city, state, and ZIP code) |
|---|---|
| Moses, James D. | 1662 Cyrene Drive<br>Carson, CA 90746 |

| 3. Home Telephone Number | 4. Work Telephone Number | 5. If A GAO Employee |
|---|---|---|
| 310/762-9006 | 213/830-1085 | Grade/Band _____ II<br>Position _Senior Analyst_<br>GAO Unit _____ LAO |

| 6. If a GAO Applicant |
|---|
| Position Title/Series _____ |
| Grade/Band applied for _____ |

**7. GAO Unit Alleged To Have Discriminated**
Administration of Justice

**8. Date On Which Most Recent Alleged Discrimination Occurred (month, day and year)**
October 18, 200` and october 23, 2000

**9. Check the basis(es) on which discrimination is alleged. (Check all that apply.)**

- [ ] Race, If So, Identify Your Race _____
- [ ] Color, If So, Identify Your Color _____
- [ ] Religion, If So, Identify Your Religion _____
- [ ] National Origion, If So, Identify Your National Origin _____
- [ ] Sex, If So, State Your Sex _____
- [x] Age, If So, State Your Age _59_
- [ ] Disability, If So, State Your Disability _____
- [x] Retaliation _For joining the Chennareddy Age discrimination suit as an intervenor_

| 10. Has this complaint been discussed with a Civil Rights Complaint Counselor? (Check one.)<br>[x] Yes [ ] No | 11. Counselor's Name<br>Allen Elliott |
|---|---|

| 12. Has the GAO Mediation Program been explained to you as a possible means of resolving your complaint? (Check one.) [x] Yes [ ] No | 13. Date of Initial Contact with Counselor.<br>11/20/01 & 11/3/00 | 14. Do you have a representative or legal counselor? (Check one.)<br>[x] Yes [ ] No |
|---|---|---|

| 15. Name of Representative or Legal Counsel.<br>Walter T. Charlton | 16. Address<br>230 Kirkley Road<br>Annapolis, Maryland 21401 | 17. Telephone Number<br>410/571-8764 |
|---|---|---|

**18. Briefly describe the alleged discrimination action(s) and the issues in your complaint. If more space is needed, please use attached continuation page.**

Out of 49 Band II's in the Administration of Justice Issues (currently, Tax and Administration of Justice), I was rated number 47 for the period ending 9/30/00. My average rating score was 3.28 as compared to the average for all 49 Band II staff of 4.23 and a median of 4.29. My average rating score was almost a full point below the overall average and I was the lowest rated Band II in the TAJ group in the

**19. What corrective action(s) are you seeking?**
The 2000 and 2001 ratings to be changed, merit pay category of commendable to be changed and monetary compensation for pain and suffering and embarrassment that this has caused me.

| 20. Signature | 21. Date |
|---|---|
| _[signature]_ | 1/18/02 |

OPR:CRO

GAO Form 51 (Rev. 10/00)

**18. Description of the Alleged Discrimination Continuation Sheet**

Los Angeles Office. I didn't fair much better for the rating period ending 9/30/01. For this period my average rating score was 3.67 as compared to the overall average of 4.25 and a median of 4.33 for 86 TAJ Band II staff. Again my average rating was significantly lower than the overall average and, for the second year in a row, I was the lowest rated Band II in the TAJ group in the Los Angeles Office. Go back 25 years or longer in my career with GAO and you will not find a rating nowhere near as low as those for the last two years. In fact you will find that I was always in or near the top 20 percent of staff in my grade. I believe that any reasonable person, after looking at all of the facts, would have to believe that my ratings for the last two years do not reflect my actual performance and that other factors had to play a part. I firmly believe that the other factors involved discrimination in some form.

I started my career with the Los Angeles Office of GAO about 35 years ago. During this long and, I believe, very successful career, I have worked in a variety of positions and issue areas. In 1984, I was promoted to GS-14, one of the top managerial positions in the field offices at that time. I managed several major issue areas and had staff of 9 or more people in the office reporting directly to me and staff in other offices indirectly reporting reporting to me.

What happened in 2000 and 2001 for me to get such low ratings? Three major things happened that I believe, negatively impacted my ratings. But before I get to the three things that happened, let me mention the principal characters that I believe are involved in attempting to trash my career in GAO. The primary character and the one with the most influence and power and the supervisor of the next three individuals I am going to name, is Richard Stana, Director, TAJ. The three individuals that I reported to are all assistant directors in TAJ who reported to Mr. Stana. These individuals are Danny Burton, TAJ Dallas; Weldon McPhail, TAJ Washington and James Blume, also, TAJ Washington. Now for the three things that happened in 2000 and 2001. First, Mr. Stana became very upset with me when I told him that I did not want to report to Sam VanWagner who was in the same grade and had achieved the same success as me in GAO; second, I became an intervenor in the Chennareddy Age Discrimination suit; and third, I got older. I don't believe GAO values the experiences and knowledge of many of its older people. Another factor that could have played a part, primarily with Mr. Stana, is the fact that I am an outspoken Black male.

The First Factor

For the first time in my GAO career I was assigned to report to a staff in the same grade, office and who had, basically, achieved the same success as me in the agency. The assignment was review of INS Task Forces in Los Angeles, Code 183642. I first expressed my concerns to Danny Burton, Assistant Director from Dallas who was in charge of the assignment. Danny didn't seem interested in my concern so I told him I wanted to discuss it with Rich Stana, Associate Director, to whom Danny reported. The three of us talked by telephone. I explained my concern to Rich in detail. His initial response was that it was not unusual for a Band II to be reporting to another Band II. I explained to Rich very clearly that this was not as simple as he was trying to make it. I requested to be reassigned if the job structure stayed the same. Rich told me that Marty Ferber, the LAO Manager at the time, had suggested that the assignment structure stay the same. I told Rich that Marty and I had a rocky relationship and that his opinion was biased. Rich said he wanted to think about my concern and he would get back to me. He said that he was disappointed with me for bringing this concern and said that I was wasting job time. Danny Burton supported Rich's position. These individuals showed no interest in something that was very important to me. I told them that I was surprised by their reaction and that I believed my age was playing a part in how I was being treated. Danny got back to me the next day and told me that Rich wanted to keep the structure the same. I told him I wanted to here this from Rich. After some discussion, Rich said that I would report directly to Burton the same as the EIC, Sam VanWagner.

Continuation page for Moses Complaint

The Second Factor

On August 21, 2000, I signed a declaration to become an intervenor in the Venkareddy Chennareddy Age Discrimination suit against GAO. I believe that Rich Stana and Danny Burton were aware of this prior to preparing my 2000 rating. I firmly believe that these two individuals would freely to retaliate against me for exercising my right to join as an intervenor in the ongoing class action suit based on the way they had treated me on this assignment and their attitude regarding my concern about the assignment structure. I believe that joining this suit negatively affected my 2000 rating. I also believe that joining the Chennareddy suit negatively affected my 2001 rating.

At the end of the assignment and for the rating period ending 9/30/00, Danny, with Weldon Mcphail's input, gave me the lowest rating that I have ever received in GAO. Danny Burton and Weldon McPhail prepared the 2000 rating together because I had worked for both. Half of the rating period was spent finishing up a job for Weldon and the other half on the new job for Danny. Weldon rated me on the same assignment in 1999 and gave me one of the highest scores in the TAJ group. It would normally be very difficult to understand how my ratings from McPhail could cover both extremes on the same assignment, until you add Stana to the equation. You see, Rich Stana, without my knowledge, told Weldon to give me a low rating in 2000. The other participant in my 2000 rating was Danny Burton. Danny prepared my rating in 1998 and recommended me for an award as a result of my performance on his assignment, which I received. Again the common factor here is that Danny was reporting to Rich. I am convinced that Rich Stana intimidates the assistant directors who report to him.

The third Factor

I really believe my age had something to do with what has happened to me over the last two rating periods.

In July 2000 we had to indicate our assignment preference (this was prior to the end of the job with Danny Burton. I had indicated a preference in 3 jobs and I had asked for EIC roles. The staffing meeting was held on 7/13/00. On Friday, 7/14/00, Laurie Ekstrand, Director, GGD/Justice, called to inform me about the results of the staffing meeting. She told me that none of the assistant directors wanted me as neither an EIC nor a member on any of their jobs because of what Weldon McPhail, Danny Burton and probably, Rich Stana had said about my performance. I was shocked by what Laurie told me. I was also angered that top management, including Laurie, would accept such irresponsibility from their assistant directors, especially since no one bothered to talk to me about what was said at the meeting. (Please see attachment A for more detail on this telephone call and my reaction).

On 8/11/00, I sent a memorandum to Norm Rabkins, Managing Director, Tax and Administration of Justice about a meeting I had with Laurie Ekstrand and Rich Stana on

8/1/00 about the 7/13/00 staff meeting. (Please see Attachment B, for a copy of the memo). I was floating with no assignment, my career was going down the drain, I still wanted leadership roles and I thought Norm would help. He didn't. To his credit, however, he had not officially taken over the Managing Director role in TAJ. He told me that he turned my memorandum over to Nancy Kingsbury, Acting Assistant Comptroller General, General Government Division. Sadly, no one ever contacted me about my memorandum. I mean no one seemed to care what happened to me. Remember, I had put almost 35 good years of work in this GAO organization. Not only had I done audit work, but I was always heavily involved in collateral duty activities. I was the Civil Rights Counselor in Los Angeles for about 20 years and still acts in that capacity when someone needs help; I served as a primary recruiter; and I am currently the mediator for the Los Angeles Office.

I was assigned to the INS Immigration Benefit Fraud job with Bonnie Hall as the EIC and Jim Blume as Assistant Director. Bonnie Hall is a Black female, much younger than me and who had reported to me for about 10 years in my role as issue area manager. Laurie Ekstrand told me that Weldon McPhail suggested this arrangement.

I worked hard on the INS assignment and I got along with Bonnie Hall and Carla Brown the other Black female that was assigned to the job. I had little direct contact with Jim Blume on the assignment. During the little direct contact that I did have with Jim, he was very complimentary of my work.

Jim Blume gave me the low 2001 rating. But again the common factor is present, Richard Stana to whom Blume reported. I am attaching a document (Attachments C) that will show how I felt about Jim Blume's rating. Jim Blume was not honest or fair in his rating of me and he knows this. Rich Stana signed the rating that was sent to me. Jim Blume didn't sign or date the rating. Jim never sat expectations for me, provided feedback or discussed the rating or my performance during the course of the assignment as required by GAO performance standards. I had a lot of impact on the INS job and both Jim and Rich are quite aware of this.

My merit pay category for 2000 and 2001 was commendable. There were no monetary increases for me in this category. There probably wouldn't be any monetary increases for me in the next merit pay category because of where I am in the salary scale. So, it not really the money that concerns me in the merit pay categories. But I, like everybody else, want to be recognized appropriately for my work. I assume that very few TAJ people were placed in the commendable merit pay category. Based on some conflicting information that Jim Blume provided to Bonnie Hall, I may be the lone person in this pay category and I don't believe this is right. I believe my performance deserved much better than this.

# GAO

ACHMENT A (2 pages)

**Memorandum**

Date:       July 20, 2000

To:         Director, GGD/Justice – Laurie Ekstrand

From:       Senior Evaluator, Los Angeles – Jim Moses

Subject:    July 13, 2000 Staffing Meeting

You called me on Friday morning (7/14/00), to inform me about the results of the staffing meeting held the day before. You told me I wasn't assigned to a new job. I was a bit puzzled because I had indicated my 3 choices (1st and 2nd on Weldon McPhail's jobs and 3rd on Jim Blume's job). There were several other jobs on the list as well. You told me that none of the assistant directors wanted me as EIC on any of their jobs and I had requested EIC roles. You also told me that since I only wanted EIC roles, none of the assistant directors wanted me as a member on any of their jobs. Prior to the meeting I had called and discussed my interest in Weldon's jobs and he didn't indicate that he would not accept me. The decision not to staff me appears to put me in major dilemma in the GGD/Justice group.

Laurie, you told me that none of the assistant directors wanted me as an EIC because of what Weldon and Rich Stana said about my performance on the Police Corps assignment. You also told me that none of the assistant directors wanted me in a member role because of what Danny Burton said about my work on the current assignment dealing with INS' role in the LAPD/Rampart scandal. You and I discussed my dilemma and you said that I could call you if I had other questions. You told me that I would be staying on my current assignment but that I would be reassigned in the future. You then told me to have a good weekend.

I experience a range of emotions after talking with you. I experienced anger, frustration, disappointment, and most of all, a feeling that I had overstayed my welcome in this organization. I had to subdue these emotions, however, because I had scheduled two major interviews with INS agents on Friday, which we were able to obtain important information pertaining to one of the findings on the INS job.

I have led two assignments since coming into the GGD/Justice area, one for Weldon and the other for Danny. The assignment with Weldon, dealing with the Police Corps, I thought, went quite well even though it was complicated by several legal issues that required heavy involvement from General Counsel. I received one of the highest ratings in the Los Angeles office last year from Weldon. I don't have the details of what Rich or Weldon said at the meeting but you indicated that Rich feels he spent a lot of time on the assignment. I am sure Rich said more than this but the report for this assignment was issued in February of this year, 5 months ago, and Rich has not discussed with me what he apparently mentioned at the

meeting. I guess Weldon and Rich discussed my performance after the report was issued, but they never told me anything. This is contrary to GAO's performance management requirements that staff be given timely feedback.

The assignment that I led for Danny, dealing with PFNA, I also thought, went well. Danny recommended me for an award on that job which I received. My current assignment, INS Participation in Task Forces, is also for Danny. It's no secret that I wasn't happy about being placed on this assignment. As I am sure you are aware, I had in depth telephone discussions with both Rich and Danny about assigning me to the INS job. In fact, I requested to be assigned to another job. They, obviously, ignored my request. I don't know exactly what Danny said about me at the staffing meeting, but you only got his side of the story.

The statement that none of the assistant directors wanted me on any of their jobs seriously affects me! I have had a long outstanding career here at GAO and, frankly, I was stunned by what transpired at the staffing meeting. Not only have I had many significant accomplishments in the audit arena, I have also positively impacted the lives of many staff through roles that I have filled in management and counseling. Did anybody in this meeting think about the affect this kind of decision would have on me? I am not only talking about the immediate affect, Laurie. I am also talking about the long-term affect. Frankly, I am not exactly sure what I am supposed to do in this situation. I do know, however, that what has happened to me is not fair.

I don't want the recent staffing decision to force me to accept whatever job I am given rather than being able to indicate my choices, including the role I would like, and feel confident that I will be fairly considered. Before being assigned to another job, I would like the opportunity to discuss available options. I still feel somebody should have stood up for me at that meeting. Curiously, not one assistant director has contacted me about this very damaging decision, not even Darryl Dutton who is in the Los Angels Office, Weldon (I requested two of his jobs) or Danny, who I am reporting to on the current INS assignment.

cc: Norm Rabkins, Rich Stana, Weldon McPhail, Danny Burton



ATTA..MENT B (2 pages)

# Memorandum

**Date:**       August 11, 2000

**To:**         **Managing Director, Tax and Administration of Justice – Norm Rabkins**

**From:**       **Senior Evaluator, Los Angeles** Jim Moses

**Subject:**    **Meeting with Laurie Ekstrand and Rich Stana**

I met with Laurie and Rich on Tuesday, August 1, about the July 13 staffing meeting and my subsequent memorandum. Let me state up front, I was not satisfied with the outcome of the meeting. As you might imagine Norm, I have given this whole situation a lot of thought. One main question that always come to mind is what should I do about what has happened? Should I just leave it alone and go about business as usual, pretending that nothing has really happened? Should I look deep into my inter-self and find a way to deal with the faith that has been handed me? Or, should I defend myself and fight for my honor, dignity and respect for the many wonderful years that I have given to the GAO organization.

Laurie and Rich had their minds made up before the meeting and there was nothing I could say that would make them change. Laurie really didn't have any personal knowledge about the two jobs in question and had to rely on what she was told by Rich, Weldon MePhail and Danny Burton. These are managers she deal with a lot and, obviously, trust what they say more than she trust me. Rich on the other hand did have personal knowledge because the Police Corps job was under him and the he also has the current job dealing with INS' role in the LAPD/Rampart scandal. Also, I am beginning to think that Rich is behind all that is happening to me. I have had some major disagreements with Rich, including the some involving the current job. Rich also had some views on my performance on the Police Corps job that were never conveyed to me until the 8/1 meeting even though the report for that job was issued in February of this year, almost 7 months ago. Now Rich will tell you that he conveyed his views to Weldon who will say he told me. This is not true.

Rich said that he was concern with all the changes that had to be made at the exit conference for the Police Corps job. Well he is right, a lot of suggested changes were tentatively made but when we tried to document them the next day we couldn't. It turns outs our data was correct and I guest this didn't get communicated to Rich. I could go on about the details of the discussion but I don't think it is necessary in this memo. I believe I performed well on the Police Corps assignment and my rating will bare this out. I am willing to discuss the assignment and feel that I can answer any questions about the whole job, including General Counsel and AIMD's involvement.

/

Regarding my current INS assignment, Laurie said that what worried her was Danny's statement that I hadn't organized the workpapers. My workpapers were in binders just like all of the other workpapers. I imagine Danny said more than this, especially considering the impact it is having on me. I am ready to discuss my work on the current job anytime. I explained to Laurie that we normally organize, finalize and index the documents close to the end of data gathering in order to avoid including a lot of unneeded information. In fact, we are just now organizing and indexing the workpapers because we are getting ready to reference parts of the report. Laurie then stated, and I quote "all come on now, Marty Ferber told us that the Housing and Community Development issue was taken out of the Los Angeles Office because of your leadership". I told them this was not true and that other issues including Education and Health were taken out of Los Angeles. I further explained to them what Judy England-Joseph told me as the reason why Keith Fultz would not keep the Housing issue in Los Angeles. Rich told me that he didn't believe me. I fought to bring the Housing issue to Los Angeles, I built it up to where there were 9 staff working in the area, ran it for about 10 years and, to my knowledge, no one ever told me that it was removed because of my leadership. My ratings will document how well I did in managing the Housing issue.

Rich than summed the meeting up. He said my explanations showed that "it is all about Jim Moses". He then told me that I was full of myself. He said I didn't want to look into myself and accept what had happened. He said he knew this was hard for me to swallow, but that I should accept it and go on. I really don't know what Rich was trying to say with these statements. I guess he was really criticizing me for standing up for my rights. I think he would see things different if something like this happened to him.

Laurie told me that I was being assigned to a job with Bonnie Hall. She told me that I would not be the EIC and that she wanted me to do a good job. I told Laurie that I have a lot of respect for Bonnie and that she was on our first assignment in the Housing area. I was not given any option even though I did put this job down as my third choice.

Laurie and rich have probably talked to you about this meeting, but I thought it was important for me to let you know, from my perspective, what happened and how I felt about it. Again, I was not satisfied with their decision. I think I have established a fine track record as a leader and I feel strongly that I should continue to be in that role. Norm, I believe you are a reasonable person. Tell me, do you trash someone's career based on what Weldon and Danny are saying?

United States General Accounting Office

# Performance Appraisal for Band I and II Employees

 **G A O**
Accountability • Integrity • Reliability

| 1. Name | | 2. Band | 3. GAO Unit |
|---|---|---|---|
| James D. Moses | | II | Los Angeles Office |
| **4. Rating Period** | | **5. Total Staff Days** | |
| From: 10/1/00      To: 9/30/01 | | | |

**Part I(A) Assignment Information:** Describe, (1) job title(s), code(s), summary of assignment(s) objectives; and (2) any unusual job characteristics or factors of complexity.

Review of Immigration Benefit Fraud (440001). This review was requested by the Chairman, Committee on the Judiciary and the Chairman, Subcommittee on Claims and Immigration. We were asked to review INS' actions to address immigration benefit fraud. Specifically our objectives were to address how does INS: (1) manage and carryout its benefits enforcement activities; (2) address its dual responsibility of timely application processing and detecting and deterring fraudulent applications; and (3) measure the results of its benefits fraud enforcement activities. This assignment was both complex and challegeing because fraud, in general, is a very difficult area to review and INS' approach to managing benefit fraud was fragmented and unfocused. I also continued to carry out my collateral duties as Civil Rights Counselor and Mediator for the Office by counseling and coaching several employees with personal and job problems.

**Part I(B) Summary of Ratee's Expectations:** Describe ratee's role and expectations for the assignment/period.

As a senior member of the team, I was expected to participate in all facets of this assignment. I was expected to participate significantly in developing the job plan, discussing and defending it with GAO managers, and suggesting revisions as the job progressed. Along with another member on the job, I was expected to visit 2 service centers, a region and 2 district offices. I also accompanied the EIC on visits with INS headquarters officials. I was expected to obtain agency officials views and opinions, pertinent documents, and perform analysis to meet the audit objectives. I was expected to participate in and provide input during job meetings with GAO managers including both the Director and Managing Director. I was expected to write significant portions of the report draft and was specifically assigned to write two major sections. Finally, I was expected to assist with indexing and referencing. In addition to job requirements, I was also expected to carry out my collateral duty responsibilities.

**Part III. Rater's Assessment of Performance.** Summary and dimension-specific narrative as appropriate. One additional page may be added.

Planning: Always mindful of GAO's core values of accountability, integrity and reliability, Mr. Moses played a key role in planning this sensitive and complex assignment. This assignment started out as a self initiated job and was later turned into a Congressional request because of the potential significant issues that were identified. Mr. Moses effectively participated with the team in planning this assignment making important suggestions on the researchable questions and other information in the design matrix. In early meetings with GAO management, Mr. Moses showed his versatility in the planning area by responding to questions about the job plan, defending team positions when appropriate and making suggestions for changes in areas that management had concerns. For example, during the design summit meeting the Managing Director favorably commented on several suggestions that Mr. Moses made to clarify several areas in the design matrix. Recognizing that the job plan is a moving document, Mr. Moses was almost always sensitive to identifying, planning, and researching other important issues. For example, when writing a major area in the report, he identified, planned and obtained supporting data for a key finding dealing with weaknesses in INS' technology systems. Data Gathering and Documentation: Mr. Moses identifies and obtains the most relevant data, particularly that needed to support findings and recommendations. For example, for an important finding involving INS' technology systems, he quickly obtained paper documents, had an INS official to respond to specific questions in writing, got agreement on the issue from a high level INS official, made charts and tables to demonstrate the significance of the finding and even contacted a key INS former employee. Data Analysis: Mr. Moses showed outstanding skills in data analysis. He identified key weaknesses in INS' management of immigration benefit fraud that led to strong conclusions and recommendations. For example, while writing the report section on INS technology systems, he identified a report that had pointed out major problems in INS system for detecting and deterring benefit fraud. The report clearly showed that aliens with adverse information in their backgrounds, including criminals, were obtaining immigration benefits. Not only did he identify this major issue, Mr. Moses conducted research and obtained documentary and testimonial support from high level INS officials. Identifying and incorporating this finding eliminated the question about whether the technology section could stand alone in the report.

**Part IV. Signatures**

| | Name (typed) | Band | Signature | Unit | Date |
|---|---|---|---|---|---|
| Rater | | | | | |
| Reviewer | | | | | |
| Ratee | James D. Moses | II | | | |
| | | | | Angeles O | |

The signature of the rater and ratee indicate that the appraisal has been discussed and the ratee was counseled on his/her performance. By signing, the ratee does not necessarily indicate agreement with the appraisal.

**Part V. Ratee Comments** (optional): Additional pages may be added.

**Part III.  Rater's Assessment of Performance--Continuation Page**

This finding became even larger as a result of the tragedy in New York on September 11th because according to a high level INS official, the Attorney General gave the agency 6 months to implement computer checks on all applications and petitions for immigration benefits.  Mr. Moses has shown his strong analytical skills in several other areas including the fact that INS may not be able to set meaningful performance goals because the agency does not know the extent of fraud in any of its programs and that in the future this may have to be factored into goal setting.  Written Communication: Mr. Moses almost always prepares written documents that are accurate, objective and complete and he is always mindful of GAO's core values in his products.  He has an excellent command of the language and delivers high quality products on time, even under challenging circumstances.  For example, after completing a very successful pre-message meeting in Los Angeles the EIC went on leave for a week.  Mr. Moses and another staff member were told to have a draft of the product to the Assistant Director before the EIC returned.  Mr. Moses took the lead on this project and the expectation was met with the delivery of an excellent written draft that captured the essence of the pre-message agreement and provided easy reading while comprehensively covering the issues.  The Assistant Director was very satisfied with the product and made compliminary remarks to the EIC about how well it was done.  Mr. Moses was significantly involved in drafting the report.  He was given two major sections, INS information technology and performance measures, to write, neither of which would have been his first choice.  He took these two sections on, however, and did an excellent job.  Very few changes were made by the Director and Assistant Director in the two sections.  Also, no substantial changes were suggested by the Cold Reader and the editor had complimentary remarks about the overall writing  Mr. Moses assisted with writing other sections of the report including the hook, results in brief and the conclusions and recommendations.  He and the EIC worked closely together to strengthen all areas in the report.  For example, the AD re-wrote the original conclusions but the Director didn't like them.  On his own, Mr. Moses re-worte the conclusion and they were incorporated almost verbatim.  Oral Communication: Mr. Moses almost always speaks confidently, clearly and accurately about the issues with both GAO and agency officials.  In meetings with GAO officials, he listens well and responds appropriately and is always calm and professional, even when there are disagreements.  In the message agreement meeting Mr. Moses confidently responded to questions from the stakeholders and presented options to break impasses.  For example, the Managing Director felt that we were pushing INS to develop outcome measures in our recommendation when we didn't have any suggestions on what should be done.  Mr. Moses responded by stating that INS did not know the extent of fraud in any of its programs but was in the process of validating it in one major program.  Once the extent of fraud is determined, INS could factor this into their performance goals.  The Manageing Director indicated that this was a good idea.  In meetings with agency officials Mr. Moses handles himself very well.  His thoughts are well organized and he is convincing and very knowledgeable about the issues.  Teamwork, Working Relationships, and Equal Opportunity: Mr. Moses is a complete team player and he employs excellent interpersonal skills is dealing with others.  Mr. Moses teamwork and working relationships skills were particularly impressive on this assignment because he was put in a subordinate role where he had not been for the last 25 years.  He accepted this role and demonstrated a positive attitude throughout the assignment, working effectively with the EIC and another team member and me.  His interpersonal skills were also strongly demonstrated in working with agency officials.  For example, after talking to Mr. Moses, an INS suboffice is reconsidering opening an investigation into a case that involves more than 500 potential fraudulent applications for benefits from one preparer.  Prior to Mr. Moses' intervention, a service center had been unable to obtain investigative assistance.  The suboffice assigned an investigator to the case in September 2001. Mr. Moses believes in fair treatment for all staff and has openly promoted this for many years in his collateral roles as the Los Angeles Office Civil Rights Counselor and Mediator.  He continued his fair treatment of staff on this assignment, promoting good teamwork and equal opportunity.  Staff in the Los Angeles Office and other GAO offices trust Mr. Moses and seek his counsel on both personal and career matters.

ATTACHMENT C (4pages)

October 31, 2001

Ratee Comments: for the rating period 10/1/00 – 9/30/01 (James D. Moses)

I am not a below average performer in the TAJ Group and I was not on the INS benefit fraud assignment. Bonnie Hall is not a below average performer in TAJ and she was not on the same assignment. I don't know how Carla Brown, the third team member, faired.

I received a rating that was signed on 10/18/01 by Rich Stana, Director. Jim Blume, Assistant Director, who prepared the rating did not sign or date it.

The Rating is neither fair nor honest. No expectations were set for me on this job. Jim Blume signed an expectation form dated January 13, 01, but he never discussed with me what my role would be even though there were many opportunities both in person and by telephone. Part B in the rating was prepared by me based on what I felt, with my experience and knowledge, should be expected of me. No one provided feedback to me about my performance on this assignment even though it lasted about a year. There was a big fight between Blume and the EIC over who was going to rate me. Blume insisted that the EIC rate me because he didn't know about the details of my performance on the assignment. The EIC refused to rate me because she it was agreed at the beginning of the assignment that the AD would rate me and he signed the expectation form. This whole thing got out of hand to the point where unpleasant names were uttered. The decision was made that I would prepare my rating with narrative and marks and Blume would sign it. When he received the rating that I prepared, Blume told the EIC that he couldn't go in (to Stana I presume) with a rating that high considering the history. What does history have to do with my performance on this assignment? As my detailed comments I am attaching the two pages of narrative without the marks that I provided to Blume on my performance.

usng1

# GAO

## United States General Accounting Office

## Complaint of Discrimination

2006 APR -4 PM 2: 36

For Further Information about the GAO Discrimination Complaint Process see GAO Order 2713.2.

**1. Name (last, first, middle initial)**
James D. Moses

**2. Address (number and street, city, state, and ZIP code)**
1662 Cyrene Dr., Carson, CA 90746

**3. Home Telephone Number**
(310) 762-9006

**4. Work Telephone Number**
(213) 830-1085

**5. If A GAO Employee** Grade/Band ___ Band II
Position __ Senior Analyst (347)
GAO Unit ____ LA/FMA

**6. If a GAO Applicant**
Position Title/Series _____
Grade/Band applied for _____

**7. GAO Unit Alleged To Have Discriminated**
FMA

**8. Date On Which Most Recent Alleged Discrimination Occurred (month, day and year)**
During 2000 through 2005

**9. Check the basis(es) on which discrimination is alleged. (Check all that apply.)**

[✓] Race, If So, Identify Your Race  African American

[ ] Color, If So, Identify Your Color _____

[ ] Religion, If So, Identify Your Religion _____

[ ] National Origion, If So, Identify Your National Origin _____

[ ] Sex, If So, State Your Sex _____

[✓] Age, If So, State Your Age  64

[ ] Disability, If So, State Your Disability _____

[ ] Retaliation _____

**10. Has this complaint been discussed with a Civil Rights Complaint Counselor? (Check one.)**
[✓] Yes  [ ] No

**11. Counselor's Name**
Ms. Dolores Crawford

**12. Has the GAO Mediation Program been explained to you as a possible means of resolving your complaint? (Check one.)** [✓] Yes  [ ] No

**13. Date of Initial Contact with Counselor.**
2/17/05

**14. Do you have a representative or legal counselor? (Check one.)**
[ ] Yes  [✓] No

**15. Name of Representative or Legal Counsel.**

**16. Address**

**17. Telephone Number**

**18. Briefly describe the alleged discrimination action(s) and the issues in your complaint. If more space is needed, please use attached continuation page.**

I believe I have been discriminated against by Mr. David Walker, Comptroller General, Mr. Gene Dodaro, Chief Operating Officer, Ms. Sallyanne Harper, Chief Administrative Officer, Mr. Jeff Steinhoff, Managing Director, FMA, and FMA Directors when I was placed in Band IIA instead of Band IIB during the recent Band II split because of my race and age. I Also believe that I was demoted. The key issues in this complaint are:

**19. What corrective action(s) are you seeking?**
Band IIB and compensation for pain and suffering

**20. Signature**

**21. Date** 3/30/06

OPR:GAO

GAO Form 51 (Rev. 10/00)

**18. Description of the Alleged Discrimination Continuation Sheet**

1) Performance appraisals for 2003, 2004, and 2005 were used to determine placement in the Band II split. It is a known fact by GAO Top Management, or it should be, that African American employees at all Band levels received the lowest performance appraisals in comparison to all other groups over the past three appraisal years. 2) The performance appraisal system used is new and had not been validated. 3) The highest rating category in the performance appraisal system is "Role Model". Top Managers in GAO know or should know that African American don't get the Role Model mark as often as other groups. and 4) When GS 13 and 14 were grouped into Band II I felt that my status as a GS-14 was made less important because no distinction was made between the two grades. But when Band II's were recently split into Band IIA and Band IIB distinctions were clearly made. I was placed in Band IIA, a demotion in my mind. Being placed in Band IIA was embarrassing, disrespectful and psychologically draining.

# Defendants' Exhibit 3



**United States General Accounting Office**
**Washington, DC 20548**

February 27, 2002

Mr. James D. Moses
1662 Cyrene Drive
Carson, CA 90746

Dear Mr. Moses:

This is to acknowledge receipt of the complaint of discrimination that you filed with this Office on January 18, 2002. Based on our review of your complaint and its attachments, the following claims have been accepted for investigation:

- Whether you were discriminated against based on your age (59) when you were rated for the 2000 and 2001 assessment cycles;

- Whether you were retaliated against for intervening in the <u>Chennareddy vs. GAO</u> class complaint when you were rated for the 2000 and 2001 assessment cycles; and

- Whether you were retaliated against for intervening in the <u>Chennareddy vs. GAO</u> class complaint when you were not given a spot award on February 4, 2002.

If you believe we have not correctly identified any issue in your complaint, please provide your specific reasons in writing to this Office within 10 calendar days of receiving this letter.

## Agency Investigation of Accepted Allegation

An independent firm under contract with GAO will investigate the accepted allegations in your complaint and will be in touch with you shortly. When the investigation is completed, we will provide you a copy of the report and an opportunity to comment on it.

## Agency Decision and your Appeal Rights

GAO's Chief Operating Officer, or his designee, will send you a final agency decision, with notice of your appeal rights and the applicable time limits for appeal actions. As outlined in the enclosure, under certain circumstances, prior to receiving the final agency decision, you may file either (1) a civil action in an appropriate U.S. district court or (2) a charge with the General Counsel of the GAO Personnel Appeals Board

(PAB).  Either filing t̲  ̲..inates this Office's administrative proceedings under GAO Order 2713.2.

If you have any questions regarding the administrative complaint procedures, please contact Allen Elliott or me at (202) 512-6388.

Sincerely,

*Ronald A. Stroman*

Ronald A. Stroman, Managing Director
Office of Opportunity and Inclusiveness

Enclosure - GAO Order 2713.2

cc:  w/enclosure
      Walter T. Charlton, Esq.
      230 Kirkley Road
      Annapolis, MD  21401

      w/o enclosure
      Norman Rabkin
      Thomas J. Brew
      Margaret Wrightson
      Sally Thompson

Page 2

# Defendants' Exhibit 4

# G A O
Accountability • Integrity • Reliability

**United States Government Accountability Office**
**Washington, DC 20548**

**Opportunity & Inclusiveness**

May 1, 2006

Mr. Jim Moses
1662 Cyrene Drive
Carson, CA 90746

Dear Mr. Moses:

This is to acknowledge receipt of the complaint of discrimination that you filed in this office on April 4, 2006. Based on our review of your allegations and related information, we have accepted the following claims for investigation.

- Whether you were discriminated against based on your race (African American) and age (64) when you were not placed in the Band IIB pay range during the Band II restructuring in December 2005, because of discriminatory selection criteria.

- Whether you were discriminated against based on your race (African American) and age (64) when you were not placed in the Band IIB pay range during the reconsideration process in January 2006, because of discriminatory selection criteria.

If you believe that we have not correctly identified the issues in your complaint, please provide us your specific reasons, in writing, within 10 calendar days of receiving this letter.

## Agency Investigation of Accepted Allegations

An independent firm under contract with GAO will investigate the accepted allegations in your complaint and will be in touch with you shortly. When the investigation is completed, we will provide you an opportunity to comment on the report. GAO's Chief Operating Officer, or his designee, will send you a final agency decision, with notice of your appeal rights and the applicable time limits for appeal actions. As outlined in the enclosure, under certain circumstances, prior to receiving the final agency decision, you may file either (1) a civil action in an appropriate U.S. district court or (2) a charge with the General Counsel of the GAO Personnel Appeals Board (PAB). Either filing terminates this Office's administrative proceedings under GAO Order 2713.2.

If you have any questions regarding the administrative complaint procedures, please contact Dolores H. Crawford or me at (202) 512-6388.

Sincerely,

Ronald A. Stroman
Managing Director


Enclosure – Appeal Rights

## Appeal rights

Within the time limits stated below, you may file (1) a civil action in an appropriate U.S. district court or (2) a charge with the General Counsel of the Personnel Appeals Board (PAB) under 4 CFR 28.98.

### Filing a Civil Action in A U.S. District Court

Time Limit: If you decide to proceed in U.S. district court, you must file a civil action within 90 days of receiving GAO's final decision. You may also file a civil action any time after 180 days have elapsed from the date your complaint was filed, provided that GAO has not issued a final decision. However, you may not file a civil action if you have filed a petition for review with the PAB under 4 CFR 28.18. Filing a civil action in U.S. district court terminates administrative proceedings under GAO Order 2713.2.

Court Appointed Attorney – Jury Trial: The court has discretionary power to appoint an attorney for you, if requested. You are entitled to a jury trial under Title VII of the Civil Rights Act and under the Americans with Disabilities Act.

Judicial Review: You may appeal a U.S. district court decision to the corresponding U.S. Circuit Court of Appeals.

### Filing a Charge with the General Counsel of the Personnel Appeals Board

Time limit: If you decide to proceed before the PAB, you must file a charge with the General Counsel of the PAB within 30 days after receiving GAO's final decision. You may also file a charge with the General Counsel, PAB, if GAO has not issued a final decision within 120 calendar days of the date you filed your complaint. The charge must be in writing to the General Counsel, Personnel Appeals Board, U.S. Government Accountability Office, Washington, D.C. 20548. You may not pursue your complaint with the PAB if you have filed a civil action in U.S. district court. Filing a charge with the PAB terminates administrative proceedings under GAO order 2713.2.

Investigation and Representation by the PAB of the General Counsel (PAB/OGC): If you file a charge, the PAB/OGC will investigate the charge according to 4 CFR 28.12. If it concludes that there are reasonable grounds to believe your rights have been violated, the PAB/OGC will represent you on appeal to the board unless you elect not to be represented by the PAB/OGC. However, if the PAB/OGC does not find reasonable grounds to believe that your rights have been violated, you may still pursue the matter before the board on your own or with private counsel, after receiving a right to appeal letter from the PAB/OGC. (4 CFR 28.18 (a)).

Appeal To The Board-Discovery:Hearing:Decision: If you appeal a charge to the board by filing a petition for review under 4 CFR 28.18, you will be entitled to discovery, a hearing, and a final decision from the PAB according to 4 CFR 28.99.

# Defendants' Exhibit 5



**G A O**

Accountability • Integrity • Reliability

---

**United States Government Accountability Office**
**Washington, DC 20548**                                    **Opportunity & Inclusiveness**

September 6, 2006

Mr. Jim Moses
1662 Cyrene Drive
Carson, CA 90746

Dear Mr. Moses:

This is to amend your complaint of discrimination that you filed with this office on
April 4, 2006 based on our review of your allegations and related information, we
have accepted the following claim for investigation.

- Whether you were discriminated against based on your race (African
  American) and age (64) and retaliated against for prior EEO activity, when you
  were not placed in the Band IIB pay range during the Band II restructuring in
  June 2006, because of discriminatory selection criteria.

If you believe that we have not correctly identified the issues in your complaint,
please provide us your specific reasons, in writing, within 10 calendar days of
receiving this letter.

### Agency Investigation of Accepted Allegations

An independent firm under contract with GAO will investigate the accepted
allegations in your complaint and will be in touch with you shortly. When the
investigation is completed, we will provide you an opportunity to comment on the
report. GAO's Chief Operating Officer, or his designee, will send you a final agency
decision, with notice of your appeal rights and the applicable time limits for appeal
actions. As outlined in the enclosure, under certain circumstances, prior to receiving
the final agency decision, you may file either (1) a civil action in an appropriate U.S.
district court or (2) a charge with the General Counsel of the GAO Personnel Appeals
Board (PAB). Either filing terminates this Office's administrative proceedings under
GAO Order 2713.2.

If you have any questions regarding the administrative complaint procedures, please contact Dolores H. Crawford or me at (202) 512-6388.

Sincerely,

Ronald A. Stroman
Managing Director


Enclosure – Appeal Rights

Page 2

# EXHIBIT 6

# WALTER T. CHARLTON & ASSOCIATES
### Attorneys At Law, Washington, D.C.

*202 296 2975, 410 571 8764 (Phone)*
*Mailing Address: 410 897 0471 (Fax)*
*230 Kirkley Road*
*Annapolis, Maryland 21401*

### August 9th, 2006

United States General Accounting Office (GAO)      **BY CERTIFIED MAIL**
Office of Opportunity and Inclusiveness            **RETURN RECEIPT REQUESTED**
451 G. Street, N.W.
Washington, D.C. 20548

*Re: Class Action(s) , Age Discrimination in Employment*
*Notice and Re-Notice of Intent to Sue 300 COLA Denials*
*(Pursuant to GAO Order # 2713.2, December 2, 1997)*

Ladies and Gentlemen:

This Notice is a New Notice of Intent to Sue by James D. Moses, presently a Band II A analyst for GAO. He give this notice for himself and all others similarly situated pursuant to GAO Order number 2713.2, Chapter 3, 9, page 12 (Age Discrimination in Employment Act)(ADEA), Chapter 3, 10 (Equal Pay Act, Section 16(b) of the Fair Labor Standards Act) and Chapter 4, (Class Complaints). This notice incorporates by this reference two previous notices of intent to sue for the same pattern and practice of across-the-board age discrimination, and, in the interest of caution, adds several recent discrete events which Mr. Moses alleges continue the same pattern and practice. Those new matters result from the "Band II Restructuring" and cost of living adjustment (COLA) denials which became effective in his paycheck on February 16th, 2006. Mr. Moses alleges that all of his complaints are timely, and the latest Notice is Timely under Statute of Limitations contained in the Fair Labor Standards Act, as applicable to Federal Employees, 29 U.S.C. § 631(a); 633(a) et seq, as amended. Mr. Moses alleges that GAO's Order

1

violates the existing statute of limitations of two years from the event, and three years if the violation is intentional (as here). But in any event this Notice is timely for all matters contained therein.

Mr. Moses notices his intent to sue as a class complaint for himself and about 300 other similarly situated employees affected adversely by the "Band II Restructuring", or "Band II Split" and denials of Cost of Living Increases (COLAs) which became effective with the pay check of February 16, 2006. Mr. Moses has previously complained of these actions and received counseling by GAO's Office of Inclusiveness, but no resolution has occurred.

Although Mr. Moses for years has been a regular counselor for employees, neither he nor any employee he is aware of has received timely written or other notice of deadlines for notification or filing applicable to age discrimination cases. Under federal civil rights law principles, notice to employees of their rights in employment disputes is an important duty of the GAO Office of Opportunity and Inclusiveness. That has simply not happened here.

Mr. Moses and his counsel recently became aware of the existence of GAO Order Number 2713.2, effective December 2, 1997, through their own research. Chapters 3 and 4, of that Order, if interpreted literally, mean that he must complain within 180 days of the occurrence of the discrete events about which he complains. It is fortuitous that this fact became known before the unnoticed deadline expired. However, as foregoing noted, Mr. Moses argues that all of these events are part and parcel of the same discriminatory pattern and practice.

This letter is that notice, purportedly required by GAO Order # 2713.2 in the event the "Band II Split" is found to be a discrete event and not a part, as Mr. Moses claims, of the overall pattern of age discrimination at the GAO.

2

Mr. Moses alleges that the first payday that this occurrence became effective was on February 16, 2006, and that the harm is repeated effective on each payday thereafter, each one a separate violation of law. He alleges that about 300 persons are similarly situated in that they are over 40 years of age and have been effectively demoted in rank and denied COLAs while performing satisfactorily in their jobs.

As per this Notice, Mr. Moses intends to file an amendment to his existing class action lawsuit, or if it becomes necessary to file a new class action in the event the Court determines that the "Band II Split" and resulting actions by GAO are discrete events and not a part of the on-going overall pattern and practice of illegal age discrimination which he, and others have alleged previously in United States District Court Case numbers 87-3538 and 06 1002. Both of those cases allege essentially the same pattern and practice of across-the-board discrimination. Those cases are now "live" before the Honorable Judge John G. Penn, Senior Judge of the United States District Court for the District of Columbia.

Although unnecessary to file a separate notice under existing law, Mr. Moses also alleges that GAO's actions violate the Equal Pay Act. To the extent that act affords relief, no separate notification of the GAO is necessary under the existing GAO Order, 2713.2, chapter 2, # 10.

This Notice also memorializes Mr. Moses's actions in previously complaining to the Civil Rights Office, or as newly named the Office of Opportunity and Inclusiveness, for himself and all others similarly situated, in complaining about the discriminatory effect of the "Band II Split" events, occurrences and related decision to deny COLAs for himself and all others similarly situated.

In no way is this new notice to be construed as an admission of any failure to previously

3

complain, since in fact Mr. Moses has consistently been timely in accordance with all GAO regulations of which he is and had been made aware. You will please note that Mr. Moses served as a counselor, and therefore purportedly at least, received all instructions appropriate from GAO to perform in that capacity including regulations and GAO Orders which have been brought to his attention by the Office of Opportunity and Inclusiveness or in conversations with the Officials of the GAO with whom he has spoken and been counseled.

This Notice also incorporates by this reference his previous notices which Mr. Moses alleges are part of the on-going pattern and practices of discrimination about which he complains. Those are:

By letter of June 10, 1999 a Notice of Intent to Sue was given by letter, a copy of which was directed to the Comptroller General, Mr. David M. Walker. A copy of that letter is incorporated by this reference. That letter noticed and re-noticed intent to sue for a class action for age discrimination for 15 employees specifically named persons and 151 unnamed persons all of whom were then employees or former employees of the GAO. All of the specifically named persons had previously given the required notice of intent to sue as a part of the on-going case of V. Chennareddy et al v. David Walker, Case No. 87-3538 JGP.

By letter of April 6 , 2005 Mr. Moses again gave notice of intent to sue alleging continuing violations of (ADEA) alleging the same pattern and practice. When the intervention by Messrs. Moses, Davis and Gilbert was denied by the United States District Court, they filed a lawsuit to preserve their remedies. That lawsuit, Case No 06 1002 (JGP) resulted.

Both of the foregoing cases, and the claims of all of the present persons who seek to become class representatives in this case are presently pending before the Honorable Senior

4

United States District Judge, John G. Penn of the United States District Court for the District of

Columbia.

No part of this new Notice of Intent to Sue is to be considered an admission that any

previous notice of continuing violations is either abandoned or ineffective as to the new

violations herein alleged, nor does this new notice constitute any waiver of or admission to any

rights contained in the previous notices of intent to sue by Mr. Moses or any other party now

before the United States District Court.

The undersigned firm represents all of those individuals named in the previous lawsuits

as well as Mr. Moses for purposes of the contemplated lawsuit(s) and/or in any of the on-going

cases as prospective intervenors.

Counsel for Mr. Moses hereby requests that any notification of actions required by Mr.

Moses pursuant to GAO regulations or orders, including any counseling required for individual

or class complaints, interviews or investigations, be Noticed to this office, and in addition to Mr.

Moses.


All correspondence should be directed to this office at:


Walter T. Charlton, D.C. Bar # 186940
230 Kirkley Road,
Annapolis, Maryland 21401
Phone 410 571 8764
email, charltonwt@comcast.net

APPROVED,

JAMES D. MOSES

5

Sincerely,

*Walter T. Charlton*

Walter T. Charlton
Counsel for Mr. Moses and the
class or classes he seeks to represent

CC:
Jimmie Gilbert
7251 S. Vernon Ave.
Chicago,
ILL. 60619

James David Moses
1662 Cyrene Drive
Carson, CA 90746

Arthur Davis
194 Carnival Court
Vallejo, CA 94589

The Honorable David M. Walker
Comptroller General of the United States
of America
451 G. Street, N.W.
Washington, DC 20548

6

# EXHIBIT 7

# WALTER T. CHARLTON & ASSOCIATES
### Attorneys At Law, Washington, D.C.

————

**202 296 2975, 410 571 8764 (Phone)**
**410 897 0471 (Fax)**

**Mailing Address:**
**230 Kirkley Road**
**Annapolis, Maryland 21401**

*April 6th, 2005*

United States General Accounting Office (GAO)        **BY CERTIFIED MAIL**
Office of Opportunity and Inclusiveness              **RETURN RECEIPT REQUESTED**
451 G. Street, N.W.
Washington, D.C. 20548

*Notice and Re-Notice of Intent to Sue*

Ladies and Gentlemen:

By Letter of June 10th, 1999 a Notice of Intent to Sue was given by letter, a copy of which was directed to the Comptroller General, Mr. David M. Walker. A copy of that letter is incorporated by this reference. That letter noticed and re-noticed intent to sue for a class action for age discrimination for 15 employees specifically named persons and 151 unnamed persons all of whom were then employees or former employees of the GAO. All of the specifically named persons had previously given the required notice of intent to sue as a part of the on-going case of V. Chennareddy et al v. Charles Bowsher, Case No. 87-3538 JGP. Mr. Bowsher has been replaced by Defendant David M. Walker, as the Defendant in this case against a Federal Government Agency.

That case, and the claims of all of the present persons who seek to become class representatives in this case is presently pending before the Honorable Senior United States District Judge, John G. Penn of the United States District Court for the District of Columbia.

This notice is intended to Notice, to the extent applicable, and constitute New Notice to the extent applicable, for each of those employees and putative class members listed previously, including the 151 unnamed persons listed in that notice, and further to note the intent to either file a lawsuit individually, or to join the on-going case by three additional persons. Those three persons are Arthur L. Davis, and Jimmie Gilbert, former employees of the GAO, and James Moses, a current employee. These three persons are African Americans, and they too, allege age discrimination in their employment at GAO. They will also seek to adopt the on-going continuing violations of the Age Discrimination in Employment Act (ADEA) alleged in previously filed complaints in the afore-described case, as their own.

The undersigned firm represents those individuals for purposes of the contemplated lawsuit(s) and/or in the on-going case as prospective intervenors.

All correspondence should be directed to this office.

Sincerely,

Walter T. Charlton, DC Bar # 186940

CC:
Jimmie Gilbert
7251 S. Vernon Ave.
Chicago,
ILL. 60619

James David Moses
1662 Cyrene Drive
Carson, CA 90746

Arthur Davis
194 Carnival Court
Vallejo, CA 94589

The Honorable David M. Walker
Comptroller General of the United States
      of America
451 G. Street, N.W.
Washington, DC 20548

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
JAMES D. MOSES,                                          )
                                                                        )
                                      Plaintiff,              )
                       v.                                            )          Case No: 06-01712 (JGP)
                                                                        )
DAVID M. WALKER,                                       )
Comptroller General of the                            )
U.S. Government Accountability Office,        )
et al.                                                                 )
                                                                        )
                                      Defendants.          )
_____)

ORDER

        UPON CONSIDERATION of Defendants' Motion to Dismiss, the memorandum of

points and authorities in support thereof, any opposition thereto, any reply, and the record herein,

it is this ____day of _____, 200__,

        ORDERED, that Plaintiff's complaint be, and hereby is, DISMISSED WITH

PREJUDICE.


                                                      _____
                                                      United States District Court Judge