## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **James D. Moses** ) | |
|     **For himself and** ) | |
|     **All others similarly situated** ) | |
| ) | |
|     **Plaintiffs** ) | |
| ) | |
|       **v.** ) | **Case No.  1:06 CV 01712  (JGP)** |
| ) | |
| **DAVID M. WALKER,** ) | |
|     **Comptroller General of the** ) | |
|     **United States Government** ) | |
|     **Accountability Office (GAO)** ) | |
|     **and** ) | |
| ) | |
| **Michael Doheny, Chair** ) | |
| **The Personnel Appeals Board of the GAO,** ) | |
|     **(PAB)** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFF'S OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs through counsel oppose Defendant's Motion to Dismiss this putative class action on the grounds of lack of subject matter jurisdiction and failure to state a claim.

### Preliminary Statement

This motion is filed as a Rule12(b)(6) motion, but with two affidavits attached raising matters outside the pleadings.  As the Court stated in *Jung v..American Association of American Medical Colleges* , Civil Action No. 02-0873 PLAINTIFF) (D.D.C. 2/11/04).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assume the truth of the facts alleged in the complaint and may grant the motion only if it appears that the plaintiffs will be unable to prove any set of facts that would justify relief.

1

See *Summit Health, Ltd. V. Pinhas*, 500 U.S. 322, 325 (1991); *Browning v. Clinton*, 292 F3rd 235, 242 (D.C. Cir. 2002; *Haynesworth v. Miller*, 820 F.2d 1245, 11254 (D.C. Cir. 1987).

Under these standards, that the Motion must be denied is obvious.  It is apparent, therefore, that defendants intended this Court to consider the attached affidavits and the matters raised therein in deciding the motion.  This Court is not required to consider extraneous matters, but if it does so, then it converts the motion to dismiss into a motion for summary judgment and the standards for the latter motion apply.  Judge Robertson in *Microsensor, Inc., v SMK Corporation*, USDC DC CA No., 05-0342 (JR) stated:

> ... *Aamot v. Kassel*, 1 F3d 441, 445 (6th, Cir. 1993) ("[C]onversion takes place at th e discretion of the court, and at the time the court affirmatively decides not to exclude the extraneous matters.")... I agree with Professor Moore, and with the Fourth, Sixth and Ninth Circuits, that the "better view" requires that a court recognize, or rely upon, or at least indicate that it is not excluding material outside the pleading before a motion to dismiss "converts" to a motion for summary judgment. (P.3)

The court in that opinion cited multiple precedent including *Swedberg v. Marotzke*, 339 F.3d 1139 (9th, Cir. 2003; *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp*[, 109 R. 3d 993, 995-997 (4th, cir. 1997).

Plaintiff submits that this Court should not convert this motion into one for summary judgment but rather, should simply deny the motion under Rule 12(b)(6) standards.  It is premature to consider a motion for summary judgment where defendant has not filed an answer and neither party has had any opportunity for reasonable discovery.

In the event the Court decides, in its discretion, to convert this motion into one for summary judgment, Plaintiff clearly sets forth herein the factual bases for his claims, and if any judgment should be summarily granted, it is Plaintiff to whom judgment should be granted.  As

stated in *Ohrenz v. Donnelly*, 2002 DDC 182 (DDC, 2002):

Summary Judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment the Court must view all evidence in the light most favorable to the non-moving party, but the non-moving party must proffer proper evidence to support any material factual assertions. *Bennett v. Spear*, 520 U.S. 154, 168 (1997). ("[A] plaintiff must set forth by affidavit or other evidence specific facts to survive a motion for summary judgment...").

The plaintiff has met its burden; the defendant has not.

## I.  GAO is  Wrong In Its Allegations of Untimeliness:

Defendant's allegations of lack of jurisdiction by the court is based upon untimeliness of plaintiff's complaint. Defendant has once again misled the Court, and perhaps its own counsel, the United States Department of Justice. This time it was by omission of key information. Plaintiff would be distressed if the Department of Justice would participate, knowingly and willingly, in the active misrepresentations of such basic facts as are relevant here. Therefore, plaintiff must assume that as far as the DOJ's participation in the misstatements is inadvertent and that GAO has not been forthcoming with their own counsel.

**The Error:**

The dates urged by GAO for the start of the allowable period to complain about Mr. Moses (Moses) latest discrimination allegations urged are wrong. The materials omitted by GAO from its argument are key applicable regulations governing the specific complaint process applicable to this specific "Band II Split" process. The GAO regulation applicable to this "Band II Split" process is attached. (See Exhibit 1, Moses Declaration, Attachment number 1 thereto). That attachment is an official GAO publication stating regulations and instructions covering that

Band II split process.  The new regulation allows for each employee to ask for reconsideration following a specific process before the decision as to him becomes final.  Mr. Moses followed that procedure faithfully.

Those instructions, and the operative regulation of GAO under which they were promulgated, state a process whereby, in the Band II split process, any aggrieved employee, may apply for reconsideration directly to the Comptroller General before the selection process becomes final.  That is precisely what Moses did, and he was timely in doing so.  The fact of the existence of that process was left out of the GAO's allegations and calculation of untimeliness.

Moses avers, and his correspondence confirms that:

1.  During the first week of January, 2006, Moses was informed by the FMA Managing director that he was not selected for the grade equal to his existing grade (Band II B)(Declaration, Exhibit I, pg 1, ¶ # 1.

2.  Before January 20th, 2006 Moses asked the Comptroller General (CG) to reconsider his decision (As was his right) pursuant to Exhibit I, Attachment 1 thereto.  On February 7th, he received the CG's response (Exhibit I, Attachment 2), dated February 2, 2006 (Declaration, Exhibit I, pg. 2, ¶ # 3).

3.  On February 7th, 2006 Moses wrote the CG a letter requesting reconsideration and a personal meeting with the CG (Exhibit I, Attachment # 3; Exhibit I, pg. 2 ¶ # 4).  The personal meeting was not granted, but a telephone conference did occur on February 16th, at which Moses requested reconsideration.  There was a witness to that telephone conference  (Exhibit I, pg 2 ¶ # 5).  After the 40 minute telephone conversation the Comptroller General made his final decision denying Moses' request for reconsideration and thereby finally demoting him during that

4

telephone conference (on February 16, 2006).

4. On February 17, 2006, Moses contacted a counselor in the OOI office about filing his complaint.

5. On March 30th, 2006, Moses filed his formal discrimination complaint with OOI (Exhibit I, pg 2, ¶ # 7). All there understood that he was filing a class action complaint.

6. On April 25, 2006, the OOI Managing Director acknowledged his complaint, implicitly agreeing that it was timely. At that time no question was raised as to timing and the counselors and manager knew full well that he had invoked and used the special reconsideration process (Exhibit I, pg. 2, 3 ¶ # 8).

7. On June 5, 2006 he applied for promotion from his demoted position to his former position, Band IIB. ON June 26th, 2006 he was notified that he did not even make the "best qualified list". (Exhibit I, pg 3, ¶ #s 9, 10).

8. As of January 22, 2007 Moses has not received any notice of the result of the investigation of his 2006 complaints. He did receive in 2006, the results of the investigation of his 2002 complaints. He has never received any notices or right to sue, or any formal notices of denial of his claims as contained in and required by the pertinent Official GAO Order, Order # 2713.2. (Exhibit I, pg. 3, ¶ # 12).

9. Moses first paycheck with the restructured pay, with cola denial effective, reducing the amount received was on February 16, 2006. (Exhibit I, pg. 3, ¶ # 13).

10. Moses filed notices of intent to sue, through counsel, on the following dates: June 10th, 1999, as an unnamed Plaintiff; on May 3rd, 2000 as an applicant intervenor into case # 87-3538; finally, by certified mail delivery on August 14th, 2006 for the new claims included in this

case. (Exhibit I, pg. 4, ¶ 2).

11.  The lawsuit in this case was filed on October 4th, 2006.  That date is more than 30 days after Moses had filed his last notice of intent to sue. (Exhibit I, pag 4, ¶ 3).

12.  That filing, on October 4th, 2006, was more than 180 days after Moses had filed his timely written complaint with OOI, on March 30th, 2006.

**Moses' Filings and Notices Were Timely:**

When the correct regulations and dates are applied to Mr. Moses actions, it is obvious that he was timely in all aspects of his complaint process as to the Band II Split.  Mr. Moses actions are entirely in accord with the correct procedures as set forth in *Stevens v. Department of the Treasury et al*, 500 U.S. 1, 6, 7 (1991); the Court interpreted the statute as follows, at page 6 and 7:

> But the statute reads otherwise as to both requirements. It calls for a notice of not less than 30 days to the Commission [the EEOC or Equivalent-here the OOI] of an intent to sue (not notification within 30 days), and it provides that the notice shall be filed with the Commission within 180 days of the alleged unlawful practice (not filed within 180 days of the notice). Clearly, petitioner Stevens met both requirements. The EEOC was notified on October 19, 1987, the 176th day after the alleged discriminatory action - petitioner's transfer and demotion of April 27, 1987 - had occurred. 1  [500 U.S. 1, 7]  And suit was not filed until May 3, 1988, a date more than 30 days after the notice was given. [footnote 1, omitted]

Therefore, Moses met the timeliness requirement of the filing and the GAO position is in error.

Further, Moses cannot be said to have failed to exhaust his administrative remedies since he waited more than 180 days for the agency to act on his complaint, and it never did.  The

agency has not acted even until now.  Therefore, he as satisfied both of the available routes to the

Court.

### II.  GAO's Allegation that Plaintiff has Failed to State a Claim is Without Merit

#### A.  The Band II Split Process In Fact Used Age as a Determinative factor; GAO's Stated Reasons are Pretext for Discrimination Based Upon Age:

The Band II split process used age as a determinative factor for selection or non-selection.

The Band II split is the latest in the series of age discriminatory actions taken by GAO.  In this

complaint Moses alleges overt rigging of the ratings and selection process, through the use of

GAO's secret data base which includes as one data element the age of each professional

employee.   Of the data received, pertaining to 419 employees in Band II 49 years of age and

older,  282 other Band II employees were similarly downgraded in pay (cost of living denied) and

status.  137 or 1/3 were selected to remain in their former position.

Plaintiff alleges age bias in this process and result.

The data in the opinion was, on information and belief, obtained from official GAO files.

That data is believed to be accurate and may be easily cross-checked, if challenged, to the official

data base files of GAO.  The age and years of service enable GAO to easily cross-check to their

records each of the employees for whom the data was received.  All 419 persons are GAO

professional employees who were at that time 49 years and older and who were subject to the

"Band II Split" process.  Those employees are listed in the sequence received.  All of those

employees constitute the universe of data which was considered by plaintiffs expert witness as

the foundation for his opinion.  No names or social security numbers are listed.  But according to

the source, the data represents all such employees who were considered and selected or rejected for the Band II downgrade.  There were 419 of those employees.  One third were selected and two thirds were rejected.

Figure 1, page 8, of that opinion, is instructive.  It depicts the probability of selection into the existing level and not being downgraded in comparison to the ages of each of the applicants. That chart shows that the probability of selection.  The court will please note that exactly one-third, or 33% were selected for retention in grade.  The Court will please note that the percentage of selection drops uniformly from a better than average probability of 47% at age 49, to a far lower probability of selection, 14%, at age 69.  The selection for the younger persons is expected to show a similar preference for younger employees, once discovery is obtained of that data.

Because of the large number of observations, the expert opinion states a nearly 100% certainty that age plays a determinative part in the selection process (opinion page 9).

### The Opinion:

The opinion of plaintiff's expert (Exhibit II, Attached, referenced to page 9) is:

"In other words, the confidence in the conclusion that intentional age discrimination is clearly exhibited in GAO, by statistical evidence , is practically one hundred percent."

### The Reasonable Implications of this Data and Information:

This data therefore confirms plaintiffs allegations in this case and in all related cases.  It also confirms the data previously submitted to this court in the history of related cases.  Plaintiffs can now state with near certainty that GAO's secret data base has been withheld and the Court

8

has been misinformed as to its existence, simply because the content (like this data) is so damning.  This data essentially proves plaintiffs entire set of allegations as confirmed in objective data from GAO's own files.

Thus, GAO's posturing of "failure to state a claim" should be viewed as just that and nothing more.  It is simply without merit and should be held to have been interposed only for purposes of delay.

In an accompanying Motion for Preliminary and Permanent Injunctive Relief Plaintiffs request that inequitable conduct by GAO be addressed by the Court and consideration be given to immediate and irreparable harm resulting from GAO's misconduct with respect to these Plaintiffs in related cases and in this Motion.

### III.  INCORPORATION BY REFERENCE OF
### DAVIS, ET AL ARGUMENTS AND EXHIBITS FOR EARLIER FILINGS

The remainder of this brief, if contained herein, would incorporate nearly verbatim, the arguments and exhibits contained in the related case Plaintiff's (one of whom is Moses) filed in the case of Arthur L. Davis, et al v. Walker, case No 06-01002 (JGP) on September 11th, 2006, with a supplemental opposition filed on September 30th, 2006.

Those materials complete, when added to the above materials plaintiffs theory of the case.  Plaintiff hereby incorporates by reference the theory and exhibits of that filing with respect to the earlier events pertaining to Mr. Moses.

Plaintiff wishes to particularly emphasize that the testimony of Mr. William (Bob) Mowbray, as contained in those materials supports all of plaintiff's allegations in this case, and

refutes the entire theory of GAO, that its actions with respect to its older employees are based

upon merit and not a mere pretext for prohibited age discrimination in this federal agency.


## IV.  CONCLUSION

For all of the above reasons the Motion to Dismiss should be denied.

A HEARING ON THIS MOTION IS HEREBY REQUESTED

Respectfully submitted,

/s/ charltonw 2428

Walter T. Charlton, D.C. Bar # 186940
Counsel for the Plaintiffs and the Class
They Seek to Represent
230 Kirkley Road,
Annapolis, Maryland 21401
Telephone 410 571 8764
Email, charltonwt@comcast.net

| | |
|---|---|
| **James D. Moses, et al** )<br>**and all others similarly situated** )<br> )<br>**PLAINTIFFS,** )<br> )<br> )<br> )<br>**DAVID M. WALKER** )<br>**Comptroller General of the** )<br>**United States c/o United States General** )<br>**Accountability Office (GAO)** )<br>**and** )<br>**Michael Wolf, Chairman** )<br>**United States Government Accountability Office** )<br>**Personnel Appeals Board (PAB)** )<br>**DEFENDANTS.** )<br> ) | **CASE NO: 06 01712 (JGP)** |

### INDEX OF ATTACHMENTS TO MOSES'S OPPOSITION TO MOTION TO DISMISS

Exhibit 1- Declaration of James D. Moses with Attachments
      Attachment 1, GAO Order # 2900.3, Instructions for GAO Employees Who
          Request Reconsideration of their Placement into Band II A
      Attachment 2, Letter to James Moses of February 2, 2006

      Attachment 3, Letter to Walker from Moses, February 7, 2006

Exhibit 2- Affidavit of Dr. Venkareddy Chennareddy, Phd

      Opinion and Methodology

      Chart of Results

      Source Data, from GAO files

Exhibit 3-Qualifications of Dr. Venkareddy Chennareddy

### EXHIBITS INCORPORATE BY THIS REFERENCE

 (The following materials were included in Evidence contained in the Filing of the Related Case
of Arthur L. Davis, et al v. David M. Walker, case number 06 1002, Incorporated by Reference
Into this Filing)

11

Davis
Attachment
Number

Attachment 1- Excerpt of Status Hearing March 10, 2005, With explanatory material.
And, Excerpt of William (Bob) Mowbray Deposition in related case
taken on June 27, 2002.

Attachment 2-Transcript Status Hearing Chennareddy et al, case No 87-3538
March 10, 2005.

Attachment 3-Transcript of Mowbray Deposition in related case, June 27, 2002.

Attachment 4- Declaration of Mr. James D. Moses, September 2006

Attachment 5-Affidavit of Arthur L. Davis, September 2006

Attachment 6- Affidavit of Dr. Venkareddy Chennareddy, September 2006

Attachment 7-Notice and Re-Notice of Intent to Sue, April 6, 2005

Attachment 8-New Notice of Intent to Sue, August 9, 2006 (for recent ADEA violations)

Attachment 9-GAO Order # 2713.2, dated 1997 (the "live" Order re notices,
and Administrative Procedures for GAO civil rights cases.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| James D. Moses, et al | ) |
| and all others similarly situated | ) |
| | ) |
| PLAINTIFFS, | ) |
| | ) CASE NO: 06 01712 (JGP) |
| | ) |
| DAVID M. WALKER | ) |
| Comptroller General of the | ) |
| United States c/o United States General | ) |
| Accountability Office (GAO) | ) |
| and | ) |
| Michael Wolf, Chairman | ) |
| United States Government Accountability Office | ) |
| Personnel Appeals Board (PAB) | ) |
| DEFENDANTS. | ) |
| | ) |

**ORDER**

Upon consideration of Defendants' Motion to Dismiss, and it appearing that:

1.  The Defendant has filed a Motion to Dismiss, based upon two propositions.  First, that

Plainitff, James D. Moses (Moses) was untimely in his presentation of the complaint to the GAO

office of Inclusiveness (OOI).  Second that Moses has presented no basis for his claims upon

which relief can be granted.

2.  The Court notes that the Defendant has submitted two affidavits in support of the Defendant's

position.  Those affidavits represent materials outside of the pleadings.  The court must, in order

to decide anything relevant to this case, consider those affidavits and the content thereof.  This

action by the Court would necessarily convert this motion to a motion for summary judgment.

3.  In that event, the Court must next consider the materials presented by the Plaintiff tending to

refute the allegations of the defendant.

1

4.  The Court declines to convert this Motion to a Motion for Summary Judgment.  As the record now stands all allegations of the Plaintiff must be taken as true.  The Court is satisfied with those allegations as sufficient under the rules of pleading in this Circuit to state a claim upon which relief can be granted.

The Motion to Dismiss is hereby denied.

_____
John G. Penn, United States District Judge

**Certificate of Service**

I hereby certify that I emailed, a copy of this Plaintiff's Opposition to Defendants' Motion to Dismiss on this 24th, th , day of January, 2007 to counsel for the Defendants who will also be served by automatic service through the ECF system.


Andrea McBarnette, AUSA
Judiciary Center Building
555 4th, Street, N.W.
Washington, D.C. 2001.

　　　/S/ Charltonw 2428
_____
Walter T. Charlton

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No   06-017012 (JGP)

DECLARATION OF JAMES D. MOSES January 19th, 2007

Defendant Incorrectly Argues that Plaintiff's 2006 notice was untimely (page 6):

The facts as I know them to be contradict that statement as follows:

The proposed Band II Restructuring became effective on about January 8, 2006.  The series of events progressed as follows:

1.  About the first week in January, 2006 I was informed by the FMA Managing Director that I was not selected for Band IIB and was placed in Band IIA.  This would be a demotion in grade.  It also resulted in a loss of cost of living increases, now and for the future.

2.  Before January 20, 2006, I asked the Comptroller General (CG) to reconsider his decision to place me in Band IIA instead of Band IIB.  This reconsideration was pursuant to the regulations and procedures established by the CG for processing the band two split decisions and disagreements and complaints thereunder.  In other words, the normal procedures and time schedules were changed for this particular process (herein referred to as the "Band II Split" process. (See Attachment 1 hereto, for the written materials pursuant to GAO Order # 2900.3 which was furnished to employees adopting that time schedule for these complaints).

1

3. On February 7, 2006, I received the CG's response dated February 2, 2006, denying my request to be placed in Band IIB (Attachment 2, hereto).

4. On February 7, 2006, I wrote the CG a letter acknowledging his decision to not place me in Band IIB and asked to meet with him personally as was my rights under the special regulations. (Attachment 3).

5. The CG granted me a telephone meeting with him, but not the personal meeting I had requested.  On February 16, 2006 that telephone meeting occurred. After about 40 minutes of talking with me, he did not grant my request to be placed in Band IIB.  (The CG was accompanied during this phone call by Ms. Barbara Sember).

6. On February 17, 2006, I contacted a counselor in the Office of Opportunity and Inclusiveness (OOI) about filing a discrimination complaint against the Band II Split.  At that time, my initial contact with a counselor for this complaint, I was not informed in writing of my right to file a class complaint as required by GAO Order # 2713.2.

7. March 30, 2006, I filed a formal discrimination complaint with OOI.  I did not include in the written complaint the fact that I wished to make it a class complaint because I was never informed by OOI that this was necessary.  But it was clearly discussed with OOI that this was my intent when they aided me in filing that complaint.

8. On April 25, 2006, the OOI Managing Director acknowledged my

2

complaint of discrimination and the fact was implicit that it was timely.  At that time no question was raised as to timing and they knew full well that I had been through the special reconsideration process.   Also, there was not any recognition in that notice that it was or was not a class action complaint.

9.  On June 5, 2006, I again applied for promotion to Band IIB.

10.  On June 26, 2006, I was notified that I did not make the BQ list for the promotion.

11. On  July 6, 2006, I sent an email to OOI to amend my complaint and add race and age discrimination and retaliation for the Band IIB promotion denial.

12.  As of today, January 22, 2007, I have not received the result of the investigation, for the complaints filed in 2006, however I did receive notices of ongoing investigations of the 2006 claims.  I received, in 2006 the results of the 2002 investigation, but I have never received any right to sue letters or formal notices of denial of my claims as contained in and required by the pertinent Official GAO Order, Order # 2713.2.

13.  My first paycheck with the restructured pay, with cola denial was on February 16th, 2006.  All persons similarly situated with me, that is Band IIA analysts, over 40 years of age who were denied their status as full band II members, and thereafter placed in subordinate positions to the younger persons who received Band IIB status, were likewise notified in accordance with the foregoing schedule.

3

14.  Notices of Intent to Sue and Motions to Intervene in On-Going Court

Proceedings:

I have filed notices of intent to sue through my counsel, Walter T. Charlton,

of Washington D.C. on the following dates.  June 10th, 1999, as an unnamed

Plaintiff; On May 3, 2000 as an applicant intervenor in Chennareddy, et al Class

action, Case Number 87-3538 USDC DC; on April 6th, 2005 in a Notice and Re-

Notice of Intent to Sue as an additional class representative, and intervenor and

finally, on August 9th, 2006 my counsel filed for me another notice of intent to sue as

a class action.  I am informed by my counsel that the certified mail delivery

occurred on August  14th, 2006.  The tracking number is 7005 3110 0001 4015 5920.

The lawsuit in this case was filed on October 4th, 2006.  That date was more

then 180 days after I had filed my written complaint with OOI and more than 30

days after I had filed my last notice of intent to sue.  I believe from my training as a

counselor, that those filings were as dictated by GAO regulations.  Those

regulations are include in GAO Order # 2713.1, and have been in existence for

years.  I also believe that the office of inclusiveness does not do its job correctly,

resulting in discouraging many GAO employees from following the correct and

authorized Civil Rights Administrative process.  I also believe based upon my own

experiences that OOI that GAO discourages the completion of timely investigations

resulting in near complete frustration of the administrative process at OOI.

4

Plaintiff alleges that GAO's Band II restructuring was discriminatory and that the restructuring constituted a demotion.  Also, Plaintiff challenges the denial of a Cost of Living Adjustment (COLA).  That cost of living denial was effective in my paycheck of February 16th, 2006 and in each paycheck thereafter.

The defendants are attempting to make the Band II restructuring and the COLA two separate events in order to support their contention that the Plaintiff's Notice of Intent to Sue was untimely.   The Defendants are wrong because the two events, GAO's restructuring and the COLA cannot be separated with regards to the Plaintiff's suit.  The only reason that the Plaintiff did not receive a COLA is because he was placed in Band IIA and not Band IIB.  If the Band II restructuring was fair, Plaintiff would have been place in Band IIB and would have received a COLA because he would not have been over the salary range.  Therefore, the denial of the COLA to Plaintiff cannot be conclusively made until a decision of whether the GAO's Band II restructuring was fair and equitable.  Thus, the Plaintiff's notice of intent to sue dated August 9, 2006, was timely and the following statements provided to respond to the Defendants motion to dismiss in the related and earlier case are still accurate and applicable.

Defendant Alleges Incorrectly that Plaintiff Has failed to state a Prima Facie Case Regarding His 2002 Administrative Complaint

(Note:  In footnote 4 on page 7, Defendants statement that Plaintiff Moses was placed in Band IIB is incorrect).

5

The Defendants chooses to ignore a key claim by the Plaintiff regarding establishing a prima facie case.  In his response to the Defendants motion to dismiss, Plaintiff clearly stated that he had not abandoned any of his claims in the 2002 case, including the claim regarding an award.

Plaintiff Moses is still pursuing all of his claims under the 2002 administrative complaint including performance ratings for 2000 and 2001 and not receiving an award that he should have received.

The Defendants statement, that Plaintiff Moses has not established a prima facie case under the ADEA with regards to his claims in not true.  Under <u>McDonnell Douglas</u> a plaintiff bears the initial burden of establishing a prima facie case that (1) he/she is a member of a protected class: (2) he/she suffered from an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  Defendants claim that Plaintiff Moses cannot establish the second of these prima facie elements (adverse action) in regards to the administrative claim filed in 2002.

In fact Plaintiff Moses established all three of the prima facie elements including the second element, an adverse action.  In 2002 Plaintiff Moses was denied an award of $300 that he should have received.  There were three members on the assignment where the award was given.  The two female members (both of whom were much younger than Plaintiff Moses -- one member was under 40) received the $300 award.  There is no other clear or documented reason, other than age, to not have given Plaintiff Moses the award citation, along with the $300 cash.

<u>THESE ACTIONS CONSTITUTE IMMEDIATE AND IRREPARABLE HARM:</u>

The lower ratings that Plaintiff Moses received were also an adverse action. Plaintiff Moses ratings were among the lowest in the entire group of 47 people, completely out of character with what he had been fairly awarded for preceding years and which were well earned by hard work and accomplishments.  Both

6

females received higher ratings than Plaintiff Moses with no documented reasons. Moses alleges that statistics on ages of all persons over 49 rated and subject to the Band II split demonstrate with near 100% certainty that age discrimination is the result of the ratings process, and the process for those years.  The lower ratings correlate 1 for 1 with non-selection for band IIB and also 1 for 1 with age.

The lower, and unfair, ratings that Plaintiff Moses received were embarrassing and psychologically draining.  The lower ratings and not receiving the award disrespected Plaintiff Moses and caused him to lose status among his peers. Also, these discriminatory actions against Plaintiff Moses because of his age, affected his future status and potential advancement in the GAO organization.

I have examined and compared the accompanying expert opinion of Dr. V. Chennareddy with my knowledge of what occurred in the band II split as to age bias.  The data on employees appears to correlate with my knowledge of what did occur, and the ratings and selection criteria used.  The conclusion of Dr. Chenareddy appears to be on all fours with the facts as I have observed them to be.

What happened to me is also consistent with my observations as a counselor over the years.  I understand that the Mowbray statistics are fully expected to establish the consistent pattern and practice of age discrimination for the entire period of time, and the fact that this latest "band II split" episode is just more of the same.

When this happens to a professional at GAO, you are effectively sidelined, and your career as a creative, active, viable professional is finished.  That event, as has just happened to me, is therefore the cause of immediate and irreparable harm to every person to which it happens.  This harm flows throughout the entire career process at GAO and all ratings, assignments and future expectations.  You are finished.  For this reason, injunctive relief is essential in this case.

7

I declare under the penalties of perjury that the foregoing statements are true and correct.

[SIGNED BY DECLARANT]  January 18, 2007

James D. Moses ORIGINAL ON FILE IN COUNSEL'S OFFICE

.

Posted 09:48 AM

December 16, 2005

## Prior Announcement: Band IIb Placement Reconsideration

In accordance with GAO Order 2900.3 Band II Restructuring, employees who have
received Band IIb placement decisions may request relevant feedback from their
team Managing Director. If requested, staff will receive feedback from their MD
between December 19, 2005 and January 13, 2006. After receiving feedback,
staff may request a reconsideration of the placement decision from the
Comptroller General.

Instructions for the Reconsideration Process are as follows.

Staff requesting reconsideration must have received feedback and must submit an
email to the CG. The email should contain a written explanation as to why the
staff member believes the decision was incorrect by addressing only the
assessment factor(s) they were informed they did not meet. The staff should send
the email electronically to the BandIIb Placement mailbox, with a courtesy copy
addressed to their MD. The email requesting reconsideration must be submitted
no later than January 20, 2006. Staff requesting reconsideration will be notified of
the final placement decision in writing.

The effective date of Band IIb staff placements will be January 9, 2006, including
staff that receive a favorable reconsideration decision after that date.

Staff with questions regarding the reconsideration process should contact Ron
Famous at (202)512-6479.

Posted 10:27 AM

## Prior Announcement: Important Information on APSS Performance Appraisals and Pay

The 2006 APSS Performance Appraisal Cycle is being adjusted to end on January
31, 2006. This change is being made to better align the APSS performance cycle
and PBC with the annual adjustment and the analyst and attorney cycle.

APSS staff will receive the 2.6% annual adjustment effective January 22, 2006,
and will receive their PBC in late March or early April (about 5 months earlier than
they would under the current cycle).

The changes are as follows:

# G A O
Accountability • Integrity • Reliability

**United States Government Accountability Office**
**Washington, DC  20548**

**Comptroller General**
**of the United States**

February 2, 2006

James Moses
Senior Analyst
FMA
Los Angeles Field Office

Dear Mr. Moses:

This is in response to your request for reconsideration of the decision to place you in Band IIA instead of Band IIB.  I personally gave serious consideration to your reconsideration request.  Unfortunately, after detailed review of the statement you provided and pertinent data, I am unable to grant your request for placement into Band IIB.  While you are a valued member of GAO and your team, you did not meet the requirements for strong relative past performance through September 30, 2005.  If you asked for reconsideration of any of the other assessment factors, I did not consider those because I determined you did not meet the past performance factor.

As I have stated previously, no one in the Band IIA pay range will have his or her pay reduced as a result of this placement decision.  As a result, you will retain your current salary and will, at a minimum, be able to earn annual performance based adjustments up to the maximum Band II rate that was in effect in 2005 (e.g. $118,700 in Washington, D.C.).

GAO will hold another Band IIB placement process in the near future.  This will give you another opportunity to be considered for possible placement effective as of the end of June 2006.  In the initial placement process, employees had to meet a high bar for placement into Band IIB.  In addition to fulfilling the relative performance criteria, employees needed to have demonstrated that they actually performed the required roles and responsibilities of a Band IIB to a significant degree and on a recurring basis through September 30, 2005.  In contrast, future cycles will be competitive and similar to our current promotion procedures.  The competitive pool will differ from the pool that was recently considered for Band IIB placement, and an employee's chances for movement into Band IIB should increase.  In addition, over the coming months, you should gain further relevant experience which should help improve your opportunity for Band IIB placement.

The Band IIB placement process was one of the most difficult issues that GAO has undertaken. The decisions relating to it were not easy, but they were necessary. I realize that you still may have questions about the process and I am willing to meet with you personally if you would like to discuss this matter. Please contact Beth Miller, Confidential Assistant, on 512-5500 if you would like to set up an appointment with me regarding my reconsideration decision.

Thank you for your service to GAO, the Congress and our country.

Sincerely yours,

David M. Walker
Comptroller General
of the United States

# G A O
**Accountability • Integrity • Reliability**

**United States Government Accountability Office**
**West Region-Los Angeles Office**

**Los Angeles World Trade Center**
**350 South Figueroa Street, Suite 1010**
**Los Angeles, CA  90071**

February 7, 2006

The Honorable David M. Walker
Comptroller General of the United StatesTitle
Government Accountability Office
Washington, D.C. 20548

Dear Mr. Walker:

On Monday, February 7, 2006, I received your decision on my request for reconsideration to be placed in Band IIB instead of Band IIA. While I was very disappointed that you couldn't grant my request, I do believe that you put considerable thought in the decision you made. I was impressed by your sincere efforts in coming up with the final decision.

I do understand that the Band II split was a very difficult issue to deal with and I believe I understand the necessity for making the split. I also believe that the decision to go from the GS system to Bands was a difficult issue. In both of these decisions, I believe that I have come out on the short end, so to speak. When GS 13 and 14 were combined into Band II, no distinctions were made between the two groups, when, obviously, there should have been. Now under the Band II split distinctions are clearly being made. In both decisions, I believe I have been treated wrong.

I believe my situation in the Band II split is rather unique. I am a black male, a formal GS-14, the most senior GAO employee in the Los Angeles Office, and obviously nearing retirement. I have had a long and successful career in GAO. I have been and continue to be a leader in the office as a whole, in all of the issue areas that I have been involved, including my current issue area, FMA, and I enjoy the respect of my colleagues in the field and headquarters. Most of them don't know I was placed in Band IIA and would be surprised to learn this. So, this decision has put me in a very embarrassing position and I believe it disrespects me.

I do have more questions about the process and would like very much to meet with you to discuss this matter further. As you suggested, I will contact Beth Miller, Confidential Assistant, to set up an appointment with you.

Again, Mr. Walker, let me say that I appreciate the effort you put into your decision and I do understand the Band II split was a very difficult issue.  I look forward to meeting with you soon.

Sincerely yours,

James D. Moses
Senior Analyst
Los Angeles Office.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Arthur Davis and James Moses  et al | ) | |
| and all others similarly situated | ) | |
| PLAINTIFFS, | ) | CASE NO: 06 1002 (JGP) |
| | ) | |
| DAVID M. WALKER | ) | |
| Comptroller General of the | ) | |
| United States c/o United States General | ) | |
| Accountability Office (GAO) | ) | |
| and | ) | |
| Michael Doheny, Chair | ) | |
| United States Government Accountability Office | ) | |
| Personnel Appeals Board (PAB) | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**AFFIDAVIT OF VENKAREDDY CHENNAREDDY**

After first being duly sworn in accordance with law, I make this affidavit, as given below, under the penalties of perjury.

I have received data from counsel purporting to be print-outs from GAO's official personnel records.  No names or social security numbers were associated with that data. The data purports to be a list of all persons over or equal to the age of 49.0 years subject to the Band II split related process. The data used for this opinion are given in the attachment A

**STATISTICAL OPINION OF VENKAREDDY CHENNAREDDY IN THE
CASE OF SELECTION TO BAND II-B (II-B BEING HIGHER THAN II-A) IN GAO**

**INTRODUCTION**

I, Venkareddy Chennareddy, Ph.D (Experienced as an Economist as well as a Statistician), am a retired employee of GAO, presently living in Colorado Springs.  I was requested by Mr.

1

Walter Charlton, the Counsel for the putative Age Class Action case to give my statistical opinion

based on data furnished to me. I analyzed the data—purported to be the ages of all staff members

considered for selection and either selected or not selected to GAO Band II-B. My statistical

methodology for analyzing the data is given below. That methodology is well accepted as correct

under the facts of the case as presented to me.

## METHODOLOGY

I estimated a Logit model, which is a more accurate statistical model according to the references

given in the end of my opinion. The model is given below.

**Log [P/(1-P)]  =  A  + B\*AGE + C\*TOTALSER + D\*APRATING + E\*EDUCTN + e**

Where
P            =  1   if a staff member was selected for Band II-B
                  0    if a staff member was placed in Band II-A
                      (Band II-A is lower than Band II-B)
AGE          =      Age in years of the staff member in Band II, who was placed in
                      Band II-A and Band II-B after abolishing Band II
TOTALSER   =     Total years of service of the staff member
APRATING   =     Average supervisory performance ratings for the staff member
EDUCTN      =     Years of education of the staff member
A, B, C, D, E are the regression coefficients and e is the random error term.

**Assumptions**: Years of education or the equivalent for a staff member (EDUCTN) is a constant

for most of the staff members and, therefore, there is no significant variation in this variable. Also,

according to my knowledge of  GAO personnel procedures, there are no points for education of a

staff member in panel members' consideration for rating the applicants for arriving the best

qualified list and for consideration of the selecting official for final selection for promotions. This

is also based on my personal knowledge of panel procedures and final selections in GAO for the

last 25 years in GAO.  Since there is little variation in the years of education of the staff members and no points are given for education in promotion selections, the correlation between a staff member's selection to Band II-A and Band II-B and the years of education of that staff member would be consistently extremely low.  Therefore, the regression coefficient of the years of education (E) would not be statistically significantly different from zero.  Therefore, this variable (the years of education), is not included in the model. Moreover, data for this variable is unavailable.

It is hypothesized that the average supervisory performance ratings (APRATING) for a staff member is negatively associated with the age in years of that staff member.  If this hypothesis is statistically accepted in the sense that the regression coefficient of the average supervisory ratings (APRATING) in a regression model with the average supervisory performance ratings as the dependent variable and the age in years as an independent variable **is** negative and statistically significantly different from zero, then it provides statistically significant evidence for age discrimination in supervisory performance ratings for staff members in GAO. If the regression coefficient of the age in years for a regression model for average supervisory performance ratings is **not** statistically significantly different from zero, then non-inclusion of average supervisory performance ratings in the Logit model, as given above, is not an error.  If the regression coefficient of the age in years for a regression model for average supervisory performance ratings is positive and statistically significantly different from zero, then the average supervisory performance ratings is an indication of merit with the age in GAO.  If that is the case, probability of selection to Band II-B should be positively related to the age in years and therefore, any

3

negative statistically significant relationship between the probability of selection to Band II-B and the age in years indicates a very strong statistical evidence for intentional age discrimination in selection to Band II-B in GAO. Therefore, non-inclusion of average supervisory ratings for staff members in the Logit model, as given above, is not an error.

It is found that the total number of years of service of a staff member is positively correlated with the age in years of a staff member, which was the result expected. In the preliminary estimation of the Logit model, as given above, with the two variables, age in years (AGE) and total years of service (TOTALSER), the regression coefficient (C) for total years of service (TOTALSER) is negative and not statistically significantly different from zero, while as the regression coefficient of age in years (B), is negative and statistically significantly different from zero. Because of statistical insignificance of the coefficient for the total years of service (TOTALSER), this variable was excluded in the estimation of final model. Therefore, the Logit model, as given above, was chosen with only age in years (AGE) as an independent variable (Also, see Reagan, 2002, the Federal Judicial Center paper published in Jurimetrics). Therefore, the finally chosen Logit model for estimation for a statistical assessment of intentional age discrimination in selection to Band II-B, which is higher than Band II-A, is the one with only one independent variable, age in years (AGE). The empirical results from the estimated Logit model are given below.

### ESTIMATION

The chosen Logit model is estimated using the Maximum Likelihood estimation procedure and Shazam Econometric Software.

4

**EMPIRICAL RESULTS**

The estimated Logit model is given below.

**Logit [P/(1-P)]   =  A + B*AGE**

**A = 3.8959        T-Ratio  = 2.5594**

**B = -0.082499     T-Ratio = -3.0270**

**Elasticity at mean age = -3.1 (rounded off to one decimal)**

Elasticity is computed based on the basis of the result for change in probability, as given in Pindyck, Robert S and Rubinfeld, Daniel L, 1993, p.299, last portion.   Sample size (N=419) is considered to be very large for reliable statistical inference (see Walpole, 1968, p. 157). Data on staff members' ages (in years) range from  49. years to about 70.6 years.  Models are not estimated for disaggregated data reducing data to offices, divisions, and regional offices because detection of  the embedded true age discrimination in GAO organization gets blocked in small samples.  Mr. Wolf (Chair) of the  Personnel Appeals Board, the General Accounting Office, wrote "Unnecessary disaggregation  reduces the power of statistical tests, thereby making it difficult to distinguish genuine effects from sampling error. In plain words, breaking up the data into little subsets reduces the chance of finding disparities if they do exit."  In other words, PAB, which has the oversight responsibility, of GAO, argued against analysis at each little subset of data (see Wolf, 1999, p. 36, last paragraph).

The Likelihood  ratio for the model = 9.73908 with 1 D.F    P-Value = 0.0018.

The regression coefficient (B) of the variable "age in years (AGE)" is negative and statistically significantly different from zero at far less than 1-percent probability (it is 0.001293)

level of significance.  The elasticity of probability of selection to Band II-B with respect to age of a staff member at mean age is -3.1, which indicates that a 10-percent increase in the age of a staff member applicant  leads to 31-percent decrease in the probability of selection to Band II-B. This leads to a statistical inference that intentional age discrimination (disparate treatment of older professionals) is clearly evident in the selection process for Band II-B in GAO  Based on one-tail test (discrimination is indicated only by negative sign), the chance of this conclusion being wrong is practically zero (.001293) or 1 out of 773. In other words, the confidence in this statistical inference of intentional age discrimination in the selection process for Band II-B  is practically hundred percent.

### ESTIMATED PROBABILITY PERCENTS AT SELECTED AGES

The estimated probability percent of selection to Band II-B for a staff member with a given years of age, as derived from the estimated Logit model, is given below.

$$P = 100 * EXP(3.8959 - 0.082499 * AGE)/[1 + EXP(3.8959 - 0.082499 * AGE)]$$

Table 1 provides estimated probability percents at selected years of age of staff members. The estimated probability percent of selection to Band II-B at the age of 49 years is 46.34 percent which is 3.26 times the estimated probability percent (14.23) of selection at the age of 69. The estimated probability percent of selection to Band II-B at the age of 54 years is 36.38 percent which is 2.56 times the estimated probability percent (14.23) of selection at the age of 69. The estimated probability percent of selection to Band II-B at the age of 59 years is 27.46 percent which is 1.93 times the estimated probability percent (14.23) of selection at the age of 69.

Table 1.  Probability Percent of Selection to Band II-B in GAO at Selected Years of Age of  Staff Members

| Age in years  of a staff member | Probability percent of selection to Band II-B in percent |
|---|---|
| 49 | 46.34 |
| 54 | 36.38 |
| 59 | 27.46 |
| 65 | 20.04 |
| 69 | 14.23 |

Note: Probability percent is rounded off  to 2 decimal points

The estimated probability percent of selection to Band II-B at the age of 64 years is 20.04 percent which is about 1.41 times the estimated probability percent (14.23) of selection at the age of 69. Figure 1 shows the steady down trend of the probability percent of selection to Band II-B in GAO as the age in years of a staff member applicant  progresses.

# Figure 1. Probability Percent of Selection to Band II-B in GAO



## CONCLUSION

An inference of intentional age discrimination (or disparate treatment of older professionals) in the selections to Band II-B in GAO is drawn based on statistical testing using the selection data.  The elasticity of probability of selection to Band II-B with respect to age of a staff member at mean age is -3.1, which indicates that a 10-percent increase in the age of a staff member applicant leads to 31-percent decrease in the probability of selection to Band II-B.  Based on one-tail test (discrimination is indicated only by negative sign of the coefficient), the chance of this conclusion being wrong is practically zero (0.001293) or 1 out of 773.  In other words, the confidence in the conclusion that intentional age discrimination is clearly exhibited in GAO, by statistical evidence, is practically 100 percent.

## REFERENCES

1. Reagan, Robert Timothy, "Federal Judicial center Statistical Examples Software Prototype: Age Discrimination Example", *Jurimetrics,* 42, Spring 2002, pp. 281-372
2. Hosmer, David W and Lemeshow, Stanley*, Applied Logistic Regression,* John Wiley & Sons,Inc., New York, 1989
3. Pindyck, Robert S and Rubinfeld, Daniel L*, Econometric Models and Economic Forecasts, Second edition,* McGraw-Hill Book Company, New York, 1993
4. Whistler, Diana et al., *Shazam Econometrics Software, Version 10*, Northwest Econometrics, Ltd., Vancouver, B.C., Canada, 2004
5. SAS Institute, The Logistic Procedure (Chapter 27), *SAS Manual, Version 8*, North Carolina
6. Walpole, Ronald E, *Introduction to Statistics*, The Macmillan Compny, New York, 1968
7. Wolf, Michael, Wolf (Chair), *Promotions of Banded Employees (1991-1995)*, Personnel Appeals Board, U.S. general Accounting Office, Suite 560, Union Center Plaza II, Washington, D.C. 20548.

**ATTACHMENT  A**

Data provided by the Counsel for the AGE Class Action

| Selected to Band II-B Or not (1,if selected 0, if not selected ) | Age in years | Total years of service |
|---|---|---|
| 0.000000 | 59.00000 | 34.60000 |
| 0.000000 | 53.40000 | 14.10000 |
| 0.000000 | 58.50000 | 43.10000 |
| 0.000000 | 52.50000 | 1.000000 |
| 0.000000 | 56.50000 | 7.400000 |
| 0.000000 | 52.70000 | 31.60000 |
| 0.000000 | 59.60000 | 34.40000 |
| 0.000000 | 51.70000 | 8.500000 |
| 0.000000 | 68.30000 | 34.20000 |
| 0.000000 | 56.80000 | 32.00000 |
| 0.000000 | 49.30000 | 26.60000 |
| 0.000000 | 58.80000 | 26.90000 |
| 0.000000 | 57.30000 | 27.60000 |
| 0.000000 | 60.50000 | 36.60000 |
| 0.000000 | 58.40000 | 29.30000 |
| 0.000000 | 57.50000 | 35.50000 |
| 0.000000 | 51.20000 | 24.70000 |
| 0.000000 | 57.40000 | 35.50000 |
| 0.000000 | 53.20000 | 26.10000 |
| 0.000000 | 58.80000 | 36.60000 |
| 0.000000 | 56.20000 | 17.10000 |
| 0.000000 | 59.50000 | 35.70000 |
| 0.000000 | 56.00000 | 33.80000 |
| 0.000000 | 57.50000 | 32.10000 |
| 0.000000 | 64.20000 | 27.50000 |
| 0.000000 | 51.60000 | 30.10000 |
| 0.000000 | 55.90000 | 19.80000 |
| 0.000000 | 53.80000 | 31.50000 |
| 0.000000 | 53.90000 | 26.40000 |
| 0.000000 | 55.20000 | 34.80000 |
| 0.000000 | 54.30000 | 21.20000 |
| 0.000000 | 57.90000 | 27.70000 |
| 0.000000 | 57.50000 | 22.30000 |
| 0.000000 | 57.50000 | 32.30000 |
| 0.000000 | 54.80000 | 18.70000 |
| 0.000000 | 58.50000 | 35.40000 |
| 0.000000 | 68.70000 | 16.00000 |
| 0.000000 | 51.90000 | 45.20000 |
| 0.000000 | 52.00000 | 29.70000 |
| 0.000000 | 57.00000 | 23.10000 |
| 0.000000 | 50.50000 | 27.60000 |
| 0.000000 | 52.30000 | 31.50000 |

10

| | | |
|---|---|---|
| 0.000000 | 52.20000 | 27.60000 |
| 0.000000 | 57.80000 | 7.900000 |
| 0.000000 | 57.30000 | 25.50000 |
| 0.000000 | 55.60000 | 29.90000 |
| 0.000000 | 64.90000 | 39.80000 |
| 0.000000 | 55.10000 | 16.40000 |
| 0.000000 | 54.10000 | 32.90000 |
| 0.000000 | 62.60000 | 16.40000 |
| 0.000000 | 51.20000 | 21.50000 |
| 0.000000 | 55.20000 | 30.20000 |
| 0.000000 | 53.50000 | 16.60000 |
| 0.000000 | 59.30000 | 20.20000 |
| 0.000000 | 57.50000 | 21.10000 |
| 0.000000 | 62.00000 | 39.60000 |
| 0.000000 | 56.00000 | 2.800000 |
| 0.000000 | 53.40000 | 28.10000 |
| 0.000000 | 67.80000 | 34.60000 |
| 0.000000 | 61.30000 | 34.30000 |
| 0.000000 | 62.50000 | 38.30000 |
| 0.000000 | 54.00000 | 30.50000 |
| 0.000000 | 51.40000 | 27.30000 |
| 0.000000 | 51.60000 | 26.30000 |
| 0.000000 | 56.00000 | 25.90000 |
| 0.000000 | 51.20000 | 7.300000 |
| 0.000000 | 50.20000 | 27.60000 |
| 0.000000 | 56.40000 | 27.50000 |
| 0.000000 | 55.80000 | 25.70000 |
| 0.000000 | 64.90000 | 36.40000 |
| 0.000000 | 60.80000 | 38.50000 |
| 0.000000 | 55.30000 | 17.50000 |
| 0.000000 | 56.00000 | 33.60000 |
| 0.000000 | 66.60000 | 32.20000 |
| 0.000000 | 60.80000 | 31.70000 |
| 0.000000 | 52.80000 | 7.800000 |
| 0.000000 | 52.90000 | 30.70000 |
| 0.000000 | 58.20000 | 27.30000 |
| 0.000000 | 54.60000 | 26.30000 |
| 0.000000 | 57.40000 | 35.20000 |
| 0.000000 | 56.20000 | 29.60000 |
| 0.000000 | 57.60000 | 22.40000 |
| 0.000000 | 53.20000 | 27.90000 |
| 0.000000 | 58.30000 | 15.60000 |
| 0.000000 | 54.30000 | 29.60000 |
| 0.000000 | 57.60000 | 33.40000 |
| 0.000000 | 58.10000 | 28.60000 |
| 0.000000 | 67.30000 | 8.400000 |
| 0.000000 | 57.00000 | 31.00000 |
| 0.000000 | 57.60000 | 18.50000 |
| 0.000000 | 51.30000 | 27.00000 |
| 0.000000 | 62.90000 | 11.80000 |
| 0.000000 | 57.60000 | 22.90000 |
| 0.000000 | 57.00000 | 35.20000 |
| 0.000000 | 60.20000 | 38.40000 |
| 0.000000 | 57.00000 | 8.400000 |
| 0.000000 | 51.20000 | 26.60000 |
| 0.000000 | 53.10000 | 18.80000 |
| 0.000000 | 57.70000 | 13.00000 |
| 0.000000 | 54.40000 | 11.10000 |
| 0.000000 | 56.10000 | 22.20000 |

11

```
0.000000        55.10000        15.40000
0.000000        53.50000        11.60000
0.000000        53.50000        23.30000
0.000000        66.50000        36.20000
0.000000        58.00000        35.50000
0.000000        62.90000        30.20000
0.000000        55.40000        31.50000
0.000000        55.40000        32.60000
0.000000        54.90000        29.70000
0.000000        56.10000        14.30000
0.000000        53.00000        31.60000
0.000000        55.40000        19.00000
0.000000        59.00000        16.00000
0.000000        57.10000        29.90000
0.000000        54.20000        34.80000
0.000000        53.60000        17.40000
0.000000        54.20000        30.90000
0.000000        56.60000        33.90000
0.000000        50.40000        25.20000
0.000000        50.70000        24.70000
0.000000        57.90000        32.70000
0.000000        51.60000        27.00000
0.000000        56.50000        36.40000
0.000000        58.70000        19.50000
0.000000        53.90000        30.00000
0.000000        57.80000        35.50000
0.000000        60.40000        29.60000
0.000000        60.90000        31.80000
0.000000        58.50000        32.40000
0.000000        55.50000        27.30000
0.000000        51.70000        28.20000
0.000000        61.30000        39.20000
0.000000        56.10000        32.60000
0.000000        51.30000        25.90000
0.000000        62.40000        37.70000
0.000000        55.50000        31.50000
0.000000        50.20000        17.80000
0.000000        50.80000        5.500000
0.000000        59.20000        25.70000
0.000000        60.50000        36.50000
0.000000        65.30000        16.90000
0.000000        53.60000        26.60000
0.000000        52.50000        22.80000
0.000000        55.10000        2.400000
0.000000        50.30000        14.30000
0.000000        53.40000        35.50000
0.000000        52.80000        23.50000
0.000000        53.50000        17.00000
0.000000        65.70000        37.60000
0.000000        54.60000        21.00000
0.000000        50.90000        28.60000
0.000000        51.10000        25.60000
0.000000        53.60000        31.70000
0.000000        51.90000        3.300000
0.000000        63.30000        39.60000
0.000000        52.00000        29.60000
0.000000        57.90000        38.80000
0.000000        62.20000        32.70000
0.000000        64.10000        29.60000
```

12

```
0.000000        66.80000        31.60000
0.000000        60.90000        35.60000
0.000000        57.30000        31.00000
0.000000        56.30000        31.60000
0.000000        54.10000        7.200000
0.000000        60.00000        33.90000
0.000000        64.10000        39.80000
0.000000        55.80000        32.70000
0.000000        59.10000        8.100000
0.000000        58.50000        23.90000
0.000000        52.30000        28.50000
0.000000        54.30000        29.50000
0.000000        61.60000        34.90000
0.000000        60.30000        21.60000
0.000000        54.30000        22.60000
0.000000        55.30000        31.30000
0.000000        52.70000        23.20000
0.000000        56.90000        30.50000
0.000000        61.80000        34.80000
0.000000        54.90000        35.00000
0.000000        53.10000        29.40000
0.000000        53.40000        31.30000
0.000000        65.10000        25.70000
0.000000        54.10000        15.30000
0.000000        52.40000        3.300000
0.000000        56.10000        30.70000
0.000000        56.30000        34.00000
0.000000        54.30000        31.20000
0.000000        59.50000        24.30000
0.000000        62.60000        22.70000
0.000000        53.50000        5.500000
0.000000        58.20000        21.50000
0.000000        52.20000        27.00000
0.000000        53.30000        31.40000
0.000000        60.70000        27.40000
0.000000        60.90000        25.30000
0.000000        70.60000        44.80000
0.000000        53.80000        25.10000
0.000000        51.60000        36.00000
0.000000        56.60000        31.50000
0.000000        57.70000        15.00000
0.000000        52.90000        30.60000
0.000000        55.50000        15.60000
0.000000        58.50000        25.80000
0.000000        50.70000        29.50000
0.000000        55.90000        29.30000
0.000000        52.80000        28.50000
0.000000        58.30000        34.40000
0.000000        56.40000        31.20000
0.000000        53.60000        31.60000
0.000000        58.80000        30.50000
0.000000        55.40000        30.20000
0.000000        53.60000        15.40000
0.000000        53.50000        21.10000
0.000000        51.50000        27.20000
0.000000        65.20000        42.30000
0.000000        51.40000        26.00000
0.000000        59.50000        19.10000
0.000000        60.50000        36.90000
```

13

```
0.000000        53.00000        6.300000
0.000000        56.20000        31.50000
0.000000        63.50000        35.90000
0.000000        50.30000        6.300000
0.000000        61.40000        20.40000
0.000000        61.70000        15.40000
0.000000        53.30000        16.70000
0.000000        58.80000        21.20000
0.000000        55.40000        33.00000
0.000000        52.20000        28.70000
0.000000        52.60000        26.30000
0.000000        64.90000        32.50000
0.000000        58.90000        24.60000
0.000000        56.10000        31.70000
0.000000        58.30000        25.20000
0.000000        57.80000        24.50000
0.000000        59.70000        18.30000
0.000000        59.50000        24.80000
0.000000        54.40000        29.80000
0.000000        55.30000        32.50000
0.000000        57.80000        20.30000
0.000000        58.80000        33.30000
0.000000        66.60000        20.00000
0.000000        62.50000        29.90000
0.000000        50.30000        29.10000
0.000000        51.30000        29.30000
0.000000        58.40000        24.00000
0.000000        66.00000        33.30000
0.000000        53.70000        16.10000
0.000000        58.20000        36.60000
0.000000        57.70000        27.60000
0.000000        54.80000        32.50000
0.000000        54.10000        24.20000
0.000000        65.10000        27.60000
0.000000        56.60000        33.50000
0.000000        52.50000        25.90000
0.000000        52.20000        19.00000
0.000000        54.20000        24.30000
0.000000        54.00000        18.00000
0.000000        61.70000        21.60000
0.000000        64.00000        29.90000
0.000000        51.20000        25.90000
0.000000        52.80000        30.90000
0.000000        52.80000        29.60000
0.000000        58.80000        27.60000
0.000000        57.00000        28.60000
0.000000        50.00000        26.60000
0.000000        61.50000        17.60000
0.000000        54.50000        25.90000
0.000000        56.40000        33.40000
0.000000        55.20000        29.50000
0.000000        62.10000        32.70000
0.000000        51.30000        25.90000
0.000000        58.90000        33.90000
0.000000        53.60000        17.50000
0.000000        60.10000        14.60000
0.000000        54.00000        23.90000
0.000000        51.40000        7.400000
0.000000        51.30000        26.60000
```

14

```
0.000000        54.50000        16.70000
0.000000        59.30000        4.100000
0.000000        58.00000        33.90000
0.000000        61.10000        5.700000
1.000000        53.30000        16.30000
1.000000        55.30000        18.10000
1.000000        51.00000        8.700000
1.000000        54.20000        31.50000
1.000000        52.70000        26.50000
1.000000        51.60000        21.10000
1.000000        59.10000        25.90000
1.000000        55.70000        33.50000
1.000000        61.50000        14.50000
1.000000        51.00000        18.00000
1.000000        59.70000        27.30000
1.000000        56.80000        34.50000
1.000000        53.50000        32.00000
1.000000        52.80000        29.60000
1.000000        56.70000        27.90000
1.000000        54.10000        26.10000
1.000000        52.10000        20.80000
1.000000        50.70000        20.50000
1.000000        56.60000        22.70000
1.000000        54.50000        32.70000
1.000000        55.20000        21.70000
1.000000        50.70000        24.90000
1.000000        51.60000        23.50000
1.000000        57.70000        29.50000
1.000000        59.10000        31.60000
1.000000        57.70000        31.50000
1.000000        56.70000        34.50000
1.000000        60.90000        9.300000
1.000000        54.30000        17.10000
1.000000        52.60000        25.60000
1.000000        51.20000        27.00000
1.000000        49.20000        21.40000
1.000000        61.90000        28.90000
1.000000        63.10000        27.90000
1.000000        59.20000        15.50000
1.000000        57.60000        31.60000
1.000000        65.80000        20.20000
1.000000        53.70000        29.50000
1.000000        53.70000        17.40000
1.000000        57.60000        35.50000
1.000000        61.10000        36.50000
1.000000        50.40000        29.20000
1.000000        50.40000        5.000000
1.000000        58.50000        16.80000
1.000000        52.10000        18.50000
1.000000        61.50000        20.30000
1.000000        51.40000        29.60000
1.000000        51.60000        24.90000
1.000000        53.10000        31.80000
1.000000        57.00000        27.30000
1.000000        52.20000        20.00000
1.000000        53.00000        8.900000
1.000000        52.30000        28.30000
1.000000        57.80000        21.10000
1.000000        56.20000        33.50000
```

15

```
1.000000        59.80000        33.30000
1.000000        59.00000        36.00000
1.000000        50.10000        7.200000
1.000000        52.10000        21.50000
1.000000        57.90000        28.80000
1.000000        54.40000        35.80000
1.000000        54.00000        27.50000
1.000000        50.30000        27.60000
1.000000        59.30000        36.60000
1.000000        50.40000        28.00000
1.000000        50.30000        28.20000
1.000000        60.20000        7.500000
1.000000        52.50000        21.10000
1.000000        58.50000        18.20000
1.000000        60.70000        20.20000
1.000000        50.50000        10.80000
1.000000        62.80000        30.80000
1.000000        56.10000        33.50000
1.000000        52.30000        17.80000
1.000000        56.20000        31.50000
1.000000        50.20000        3.700000
1.000000        51.30000        14.80000
1.000000        57.50000        22.20000
1.000000        55.90000        18.80000
1.000000        64.10000        39.50000
1.000000        54.30000        25.30000
1.000000        56.00000        34.50000
1.000000        55.90000        35.60000
1.000000        51.80000        31.50000
1.000000        59.90000        19.00000
1.000000        50.90000        26.70000
1.000000        53.50000        31.20000
1.000000        55.20000        30.80000
1.000000        59.00000        18.70000
1.000000        53.50000        32.00000
1.000000        50.40000        24.40000
1.000000        59.90000        0.1000000*
1.000000        50.50000        13.30000
1.000000        61.40000        21.00000
1.000000        54.80000        33.80000
1.000000        55.80000        33.60000
1.000000        58.00000        34.80000
1.000000        54.50000        33.70000
1.000000        51.60000        29.60000
1.000000        55.60000        26.50000
1.000000        55.20000        25.40000
1.000000        53.80000        31.60000
1.000000        50.50000        25.90000
1.000000        54.50000        21.50000
1.000000        55.70000        22.90000
1.000000        56.30000        34.20000
1.000000        53.80000        26.30000
1.000000        51.20000        15.80000
1.000000        51.00000        29.60000
1.000000        51.50000        16.50000
1.000000        56.40000        34.80000
1.000000        53.80000        30.00000
1.000000        56.70000        36.50000
1.000000        63.20000        40.10000
```

16

```
1.000000        53.30000        29.90000
1.000000        51.70000        26.40000
1.000000        52.00000        30.70000
1.000000        57.80000        13.80000
1.000000        55.10000        18.50000
1.000000        57.10000        21.70000
1.000000        60.10000        11.10000
1.000000        55.50000        22.00000
1.000000        49.00000        26.10000
1.000000        57.00000        26.40000
1.000000        52.50000        21.50000
1.000000        60.50000        33.00000
1.000000        52.50000        7.300000
1.000000        51.30000        24.80000
1.000000        59.30000        35.80000
1.000000        52.80000        21.50000
1.000000        57.80000        17.30000
1.000000        59.70000        15.00000
1.000000        57.30000        29.90000
1.000000        57.10000        29.40000
1.000000        64.30000        32.60000
1.000000        57.20000        30.60000
1.000000        57.50000        18.40000
```

```
Total number of observations = 419
```

*This item appears to be a typographical or data entry error by GAO. Because of statistical insignificance of the regression coefficient of this variable, total years of experience, in the estimation of preliminary model, this variable was excluded in the estimation of final model.  Therefore, this error in this data point did not affect the estimation of the final model chosen and the results from that model for my opinion.