**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **James D. Moses** )<br>     **For himself and** )<br>     **All others similarly situated** )<br> )<br>     **Plaintiffs** )<br> )<br>       **v.** )<br> )<br> **DAVID M. WALKER** )<br> **Comptroller General of the United States,** )<br> **Government Accountability Office (GAO)** )<br>     **and** )<br> **Michael Doheny, Chair** )<br> **The Personnel Appeals Board** )<br>     **of the GAO, (PAB)** )<br>     **Defendants.** )<br> ) | **Case No.    1:06 CV 01712  (JGP)** |

**EMERGENCY MOTION PURSUANT TO F.R. Civ P. 23**
**FOR IMMEDIATE CERTIFICATION OF THE CLASS AND**
**INJUNCTIVE RELIEF TO PREVENT IMMEDIATE AND IRREPARABLE HARM**

Plaintiff herein, James D. Moses, by and through counsel for himself and the putative

class, hereby requests immediate certification of the class pursuant to Federal Rule of Civil

Procedure 23, and Temporary, Preliminary and Permanent Injunctive Relief to prevent actions by

the defendant employer, The United States Government Accountability Office (GAO) and/or the

second defendant, the United States Government Accountability Office Personnel Appeals Board

(PAB) which will likely result in the destruction of rights of the putative class.

The relief requested in this motion can most effectively be accomplished, with minimal or

no prejudice to any party, by immediate certification of the putative class (all prerequisites under

rule 23 having been met) coupled with injunctive relief designed to prevent further irreparable

harm from the on-going wrongful contact and advice to class members now occurring. The injunctive relief requested is a Temporary Restraining Order, followed, after a hearing for an injunction pursuant to the Court's authority and responsibilities under Rule 23, by an order granting preliminary and permanent injunctive relief. Action is necessary to prevent evisceration of the class, and the destruction of the rights of each class member by direct contact, and incorrect legal advice from the adverse parties to this lawsuit.

**PRELIMINARY STATEMENT AND REASON FOR THIS MOTION:**

The plaintiff, James D. Moses filed this lawsuit On October 4, 2006 as a class action lawsuit for injunctive relief under the Age Discrimination in Employment Act, of 1967, as amended (ADEA), and Title VII, demanding relief from discriminatory employment practices which demoted and denied cost of living increases to him and about 320 similarly situated persons at his place of employment, GAO.

He alleged, among other charges, an ineffective administrative process for redress of employment discrimination and prohibited employment practices required by federal law to be in effect at all government agencies. Moses alleged that the administrative process at GAO was ineffective both at the agency itself, and in its purportedly independent oversight agency, the PAB. Moses alleged that the PAB was, and is, totally dominated by GAO rendering that purported "oversight" nothing but a sham. Part of that sham was ignoring age discrimination which was, and is, well known to be rampant at the GAO.

Undisputed allegations are to the effect that GAO's office of inclusiveness is dominated by GAO, and does not process claims timely or give correct and timely advice to GAO

employees.  The PAB, as the GAO's purported independent oversight agency, is in fact totally

dominated by GAO and essentially does what GAO wants (ignoring for more than 20 years

blatant age discrimination at the employing agency, the GAO) and not effectively protecting

GAO employees rights as is the PAB's primary statutory duty.

The control of the PAB by GAO is accomplished by control over its budget[1], its

appointment of administrative law judges who make up the Board, and control over

appointments of key employees running the PAB.  This case alleges, as one result that all

professional employees are bereft of counseling and protection of the their right to a meaningful

administrative process, which has been missing for over 20 years.

One of the key employees charged with the failure to perform its oversight function

(particularly with respect to age discrimination) is the PAB General Counsel.  That person is

Anne M. Wagner, Esq., a former Administrative Law Judge, former PAB Board Member and

former Chairperson of the Personnel Appeals Board.  She now serves as General Counsel to the

PAB.  Under the statutory organizational structure[2], the General Counsel has investigatory

authority and litigation authority to bring employment discrimination and prohibited employment

practices cases against the GAO itself, and any management employee of the GAO, for violations

of equal employment opportunity law.

## BACKGROUND OF THIS MOTION:

---

[1]  As the District Court judge commented from the bench, [with control over the budget], what more does GAO need to control the PAB.  But GAO actually has much more than mere budget control in terms of actual power over the PAB.

[2]  The PAB was created, and the PAB Office of the General Counsel was established in The GAO personnel act of 1980, as amended.  The office of PAB General Counsel was modeled after the EEOC General Counsel's position with independent investigative and litigation authority.

This lawsuit was filed against the GAO and the PAB for injunctive relief, age and race discrimination and failure of the GAO and the PAB to follow their statutory mandates to insure a discrimination free workplace.  This lawsuit was triggered by the "Band II Split" a controversial plan for reorganization of GAO's senior workforce that resulted in a demotion for Moses, and about 320 others, all over the age of 45, and associated cost of living adjustment (COLA) denials for Moses and each member of the class he seeks to represent.  That lawsuit was filed on October 4th, 2006.

Simultaneously, 12 senior employees[3] filed their 12 individual cases, based upon their identical complaints about the process, but not alleging discrimination, but rather a series of "prohibited employment practices".  That terminology is essentially an administrative label for the same actions which happened to Moses and the class he seeks to represent.  Those 12 cases were processed "in bulk" by the PAB General Counsel's office, that is as 12 separate cases processed as a "batch".  No class action was brought by the PAB to protect the other about 308 employees.

In April, 2007, the 12  PAB cases were settled.  The were granted essentially full relief.  Simultaneously, Moses was given substantial relief as to his personal situation.  He was paid a $ 2,800 bonus, his demotion was rescinded, his status as "frozen" as to pay and assignments was rescinded, and he was promoted to the position of "Band II B".  These changes in his status were effective in Moses April 7th, 2007 paycheck.

---

[3]   Those employees meet the definitions of the class included in the proposed class definition contained in the original complaint, and as amended herein below to simplify the definition.

4

**STATUS OF THIS CASE, STOPPED AND STALLED:**

Processing of this case has essentially stopped since it was filed in early October 2006. The GAO has filed a Motions to Dismiss on purported grounds of "untimeliness", for Stay of Discovery, and for Stay of Class Certification, all on specious grounds.  Moses timely filed his complaint one day after the final decision of the Comptroller General (CG) not to reconsider his demotion, et cetera fully in accordance with GAO's applicable regulations.  Then, the GAO, through the PAB General Counsel's Office, (apparently) set out to eviscerate the class by offering incomplete and incorrect advice to class members.  That effort, as detailed below, has been strikingly effective.

**EVENTS LEADING UP TO THIS MOTION,**
**ACTIONS AND CONTACTS BY ADVERSE PARTIES;**
**LEGAL MISCONDUCT:**

Because of GAO's stalling tactics, putative class members have been given no notice of the existence of the class.  Those about 320 persons therefore never learned of the fact that they were represented in a timely filed compliant by James D. Moses, which protects all of the putative class members as if they themselves had timely filed along with Mr. Moses.  They also were and are represented by undersigned counsel insofar as their rights for the same complaints alleged by Moses exist as members of the putative class.

There can be no doubt that both the GAO and PAB were well aware of this lawsuit, since both parties have been served with the lawsuit, and have responded through their own counsel, the United States Department of Justice.  In addition, when the facts presented below were learned, those facts were immediately presented to the AUSA representing both defendants, who

5

responded, denying any improprieties because the class had not yet been certified. That position

simply is not the law. Rather it is typical of GAO's stonewalling tactics and, if either intentional

or knowing, or ordered by GAO, is an overt and obvious example of legal misconduct. See case

law following, Argument Section III, pages 16-18.

**THE IMPROPER ADVICE AND CONTACT:**

Early in April, 2007, a putative class member learned about the settlement with the 12

employees by the PAB. That person also apparently did not know about Mr. Moses prevailing in

his claim or the existence of the class action wherein that persons was represented by both Mr.

Moses and counsel. That person, on April 20th, 2007, contacted Frank Mack, Senior Trial

Attorney with the Personnel Appeals Board concerning a previous conversation with him

"regarding the denial of a 2006 annual adjustment [COLA] and 50% or your performance-based

compensation (PBC)" (Exhibit 1 ¶ 1).

On April 24, 2007 the General Counsel of the PAB responded to that letter, giving

detailed legal advice (See Exhibit 1, pages 1 and 2). In those two pages of advice, lack of

timeliness is suggested, a right to petition is stated (page 2 paragraph 4) but no notice of the

already pending class action by Moses is given. The employees right to request the PAB General

Counsel's Office to investigate as a form of relief as was the right to take a claim directly to the

PAB. But the prohibitive effect of a administrative petition in voiding the participation in, or

validity of, any the class member's otherwise valid pending class claims in the Moses class

action was never mentioned in that letter (Exhibit 1)[4].

---

[4] The General Counsel of the PAB obviously knew of that risk, since it was mentioned in an email on August 16, 2006 to Ronnie Bergman, another GAO analyst (Exhibit 3 page 1, last paragraph, and contained  the

This failure is the omission of a very important, if not critical element in the litigation rights of each putative class member[5]. If an administrative petition is filed, and later fails, for whatever reason, like untimeliness or government immunity, each class member will have lost his/her chance for any recovery whatever from these claims.

It is therefore immaterial whether this contact was intentional misinformation or merely a mistake by the General Counsel of the PAB. The expected harm to each class member is the same regardless of motive, complete denial of all claims because of a untimely or otherwise unsuccessful filing in the PAB.

However, that misinformation and incorrect advice was ultimately disseminated to a large number of putative class members in this case. The PAB is an adverse party to plaintiffs and the class in this case. Contact on decisions affecting this litigation by an adverse party is prohibited by legal ethics, the rules of court (Rule 23) and class law. Where a prohibited contact is made by legal counsel for an adverse party and where the action or advice rendered is detrimental to a putative class member or the class that communication has been deemed *per se* legal misconduct.

**DISSEMINATION OF THE MISINFORMATION:**

The incorrect and incomplete legal advice contained in Exhibit 1, and contained in an unknown number of similar contacts, were given very wide, even universal, circulation at GAO.

---

following language,
  "However, I should add that filing a discrimination claim before the PAB does arguably preclude an employee from litigating that same claim in federal district court.   See GAO Order 2713.2, Ch. 6 (2)(a)(2)".

  [5]   Also not mentioned (Exhibit 4, page 4, item 15) is the fact that the filing of the putative class action created de facto legal representation of each putative class member as a matter of Rule 23 legal responsibility of the named class counsel.

The circulation of this misinformation as of May 16th, 2007, has caused 226 members of the putative class filed a "petition" with the PAB General Counsel (Exhibit 2), seeking relief from the same wrongs and the same complaints contained in Moses class action (this case). According to newspaper reports and emails to some of the class members, these petitions have been filed despite vague warnings issued by the PAB General Counsel's Office of a potential adverse ruling by reason of untimeliness.

Most egregious and damaging to the class members is the fact that the Moses class action was timely filed on October 4th, of 2006 (despite GAO's attempts to delay this case alleging falsely that Moses was untimely). Thereafter, under F.R.Civ.P., Rule 23 these same persons were protected in the event the class action succeeds. That is the timeliness of the Moses filing eliminates the main and most obvious defense to any "petitions" for relief filed with the PAB at this belated date.

**But,** if these "petitions", once filed are accepted for processing in the main stream of the PAB processing of cases, and thereafter are held to be invalid, for whatever reason, the mere fact of filing in the administrative process would, under GAO regulations thwart all claims. That is because federal law prohibits an administrative claim and a federal court case being simultaneously processed for the same claims. That would be the ultimate result if the petitions, filed on either inadvertent or intentional misleading of those petitioners were found to be defective for a variety of reasons, among them governmental immunity and, far more likely, untimeliness.

Thus, in the absence of an Order of this Court holding the misinformed decision to be

voidable, a class member would be expected to be denied participation in the class action[6].  In other words, by this action, made without full knowledge of that persons rights and necessary elections, all relief could be barred for every class member.

In the light of the law pertaining to Rule 23 class actions in the federal courts, these contacts should be held to be prohibited contacts by an adverse party, which result, under existing case law to be in voidable actions by each class member.

## REMEDIES REQUESTED, IMMEDIATE CERTIFICATION , A NEUTRAL LETTER TO THE CLASS AND PROHIBITION OF FURTHER CONTACT BY THE OFFENDING PARTIES, IN PARTICULAR THE OFFICE OF THE GENERAL COUNSEL OF THE PAB:

To rectify this misinformation and improper contact, this Honorable Court should and hereby is requested to immediately:

(1) Issue a Temporary Restraining Order pursuant to its authority and responsibility to control class actions under Rule 23 prohibiting further communications by the PAB Office of General Counsel, or any GAO department or agency regarding advice to the putative class members.

(2) Find that the communications from the PAB General Counsel and staff with class members were misleading by: (a) failure to mention the existence of the Moses class action to which the complainants were putative class members, (b) Class member were represented by Moses as a class representative and his class counsel as counsel for the putative class, © that the Moses class action was timely filed, and (d) each class member

---

[6]  This risk was well known to the PAB General Counsel.  See letter to a class member (Exhibit 3, page 2). This risk was also never mentioned in any of the contacts with putative class members disseminated with the petition forms (Exhibit 4).

would likely be subject to a defense of lack of timeliness[7] (e) that duplicative claims, based upon the same set of facts would be barred in a later attempt to bring the same claims in Court, and that (f) and that generalized claims of "unfairness" and the like, which do not represent specific personnel practices or employment discrimination, or other cause for which the government has waived sovereign immunity, will fail.

(3) Order that a formal Court communication and notice, neutral in legal content, be sent to each and every class member informing them completely of their rights and procedural duties under this class action, and options each has for alternative action under the law.

(4) Enter an Order pursuant to the authorities cited following, ***Kleiner, Roper, and Deposit Guaranty Nat'l Bank of Atlanta***[8]***,*** ordering that the actions of each putative class member based upon that faulty information be deemed ***voidable***.

(5) Order the immediate certification of the class as defined hereafter in the accompanying statement of points and authorities.

The Court's attention is respectfully directed to the accompanying statement of points and authorities.  A draft Order accomplishing these objectives is attached.

---

[7] Indeed, the Comptroller General had recently stated exactly  that as a fact concerning his defense to the 229 petitions just filed (in a press release on Friday, May 19th, 2007)

[8] Those authorities are ***Kleiner v.First Nat'l Bank***, 751 F.2d 1193, 40 Fed.R. Serv. 2d1390 (11th Cir. GA. 1985)(principles correcting and preventing further legal misconduct are applicable to **certified** class actions); ***Roper v. Consurve, Inc.***, 578 F.2d 1106, 1110 (5th, Cir 1978, Aff'd sub nom and ***Deposit Guaranty Nat'l Bank v. Roper***, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed. 2d 427 (1980)(the rights flowing from F.R.Civ.P. 23 are applicable to **putative** class actions, and appealable by the class representative as an independent cause of action from the personal damages of the representative).

**REQUEST FOR A HEARING:**

A hearing on this Motion is Requested at the Court's earliest convenience in accordance

with the local rules for injunctive relief.

Respectfully submitted,

*Charltonw2428*

Walter T. Charlton,
D.C. Bar # 186940
Telephone 410-571 8764
1156 15th, Street N.W.. LL 10
Attorney for Plaintiff and the putative class
of about 309 persons he seeks to represent

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

James D. Moses                                )
    For himself and                      )
    All others similarly situated        )
                                      )
    Plaintiffs                           )
                                      )
    v.                                   )          Case No.     1:06 CV 01712  (JGP)
                                      )
DAVID M. WALKER                               )
Comptroller General of the United States,     )
Government Accountability Office (GAO)         )
    and                                  )
Michael Doheny, Chair                         )
The Personnel Appeals Board                   )
    of the GAO, (PAB)                    )
    Defendants.                          )
_____)

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
EMERGENCY MOTION PURSUANT TO F.R. Civ P. 23
FOR IMMEDIATE CERTIFICATION OF THE CLASS AND
INJUNCTIVE RELIEF TO PREVENT IMMEDIATE AND IRREPARABLE HARM**

**Statement of Facts In Support of This Motion:**

    1.  The facts as contained in the foregoing Motion and Exhibits 1-4, are incorporated by this reference.

    This class action case was filed on October 4, 2006 by plaintiff, James D. Moses, a 30 year employee of GAO.  Mr. Moses had been complaining for years of bias in the ratings and promotion process based upon age and race.  This particular case was filed with multiple counts of age and racial discrimination resulting from what is known as "the Band II Split".  Mr. Moses was downgraded, to Band IIA, denied a cost of living increase (COLA), along with about 320 other similarly situated persons, had his status for raises and assignments frozen, and generally

1

treated as a second class citizen after 30 years of outstanding service and high ratings.  Moses, who, along with other duties, also served as a counselor to complaining employees.  As a counselor he acquired a substantial view of what was happening at the GAO in management level decisions.

2.  Moses was aware of the ineffective nature of GAO's in-house administrative process through the Office of Inclusiveness OOI, and that office's failures to process some claims in a timely fashion.  He was also aware of the failures of the Personnel Appeals Board, GAO's purported but ineffective oversight agency to process claims, particularly those claims based upon age or veterans' claims.   Accordingly, he filed this federal district court complaint containing multiple claims including a request for injunctive relief and for a class action for all of those persons affected by the "Band II Split" process.

3.  Moses also requested injunctive relief in his original complaint to stop GAO's and the PAB's compliance rather than independent oversight.  That compliance, failure to investigate, and failure to enforce when discovered, gave rise to the present rampant and universal employment discrimination at GAO based upon age.  Statistical samples and consistent anecdotal complaints by hundreds of employees support the conclusion that GAO management enforces a de facto "glass ceiling" for all professional analysts who do not make the management teams by age 50.  This bar is applied regardless of the employee's intellect, production in terms of money saved, ingenuity, or actual value to the agency and the nation.  Regardless of the label used to describe the situation, whether a  prohibited employment practice, or illegal preferences or

exclusion by a de facto bar otherwise qualified persons over 50[9] this practice is a violation of federal law. Moses complained that the practices of discrimination included domination of the PAB (GAO's purported personnel "oversight" agency). That domination removed for all practical purposes, any actual oversight to which every GAO employee was entitled to protect his/her equal employment rights, again, regardless of the label placed upon the practice.

4. Moses had previously filed, in June 2006, another lawsuit with two former co-workers alleging basically the same complaints, but in the interests of caution, filed his new October 4, 2006 lawsuit to additionally question the most recent iteration of GAO's policies of age discrimination. These new actions of GAO demoted each of the about 320 age protected persons, denied their cost of living increases and froze their professional employment status, consistently placing them in subservient positions to younger employees.

5. Moses filed this case as a class action invoking the principles and law contained in Federal Rule of Civil Procedure 23, applicable to Federal Government employees pursuant to this Court's ruling in ***Moysey v. Andrus***, 481 F. Supp. 850, 21 FEP 836 (D.D.C. 1979) and subsequent cases citing ***Moysey*** as precedent.

6. Although Moses, in this complaint requested preliminary and permanent injunctive relief, and class certification, progress in this case was stopped in its tracks by Defendant's delaying tactics. Defendant filed (1) a motion to dismiss on grounds of untimely filing by Moses.

---

[9] The "glass ceiling" now appears to be about 50. Earlier in the protracted litigation in related cases the "cut line" appeared to be about 43. The actual discriminatory pattern is stronger for blacks, veterans, and disabled veterans, all protected groups who have over the years complained and have been denied relief. But the universal element that flows through the entire universe of GAO professionals is the adverse impact and disparate treatment of persons who have reached a senior age. Plaintiff contends that those persons are in reality the most productive and he backbone of the entire investigatory work force at GAO. GAO's ratings schemes, consistently over the years have downgraded the ratings for those persons, immediately upon a person reaching the "magic age" where the ceiling is a bar to all progress, professional, promotions and otherwise.

GAO then filed (2) a motion for stay of discovery (3) a Motion to Stay class certification.  None of those motions have been ruled upon.

7.   The case has just stopped.  The motion to dismiss alleged incorrectly, and with no supporting evidence, that Moses was untimely in his administrative process and/or in filing this complaint.

8.   The result is that no putative class member has been notified even of the existence of the class action filing.

9.   In the meantime, some evidence has been gathered.  Notably, plaintiff obtained data on the persons over 49 who were denied COLAs along with the ages of those persons.  Plaintiff has had prepared, based upon that data, an expert statistical opinion.  That opinion is based upon the identical effect of the actions of the employer in the demotions of some persons, and the likelihood of each demotion when correlated to the age of each person subject to the subject decision, selected or not.  That opinion, and the data supporting it are unchallenged in the record. The opinion concluded that there is nearly a 100% probability that age was the determining factor in the selection process complained about herein.

10.   Congress has become interested and is presently conducting an investigation and hearings are scheduled for later this month in a joint session of Congressional and Senate sub-committees.

11.   In the meantime, 12 members of the putative class decided to take the administrative route requesting relief.  They alleged the same causative set of facts as Moses with respect to the actions of GAO in the demotions, cost of living denials, and freeze on status.  But these employees did not allege age or race discrimination.  Rather, they based the legal theory of their

4

complaint upon a series of "prohibited personnel practices"which they alleged were violated pursuant to GAO regulations.  The administrative bulk action also did not question the effectiveness of the administrative process or request injunctive relief, but nevertheless the underlying causative facts were identical, the same "Band II Split process".

12.  All employees in Band II were reevaluated, and some were demoted to Band IIA, while others were not demoted and assigned the position of "Band II B".  Employees not making Band II B were frozen in pay, grade and status, with no hope for advancement, denied COLAs, and were removed as leaders of tasks that they had previous led.

13.  While action in this district court case has stopped, the 12 PAB cases proceeded with discovery.  Depositions were taken with apparently outstandingly successful results.

14.  Also, Moses has personally been granted substantial relief in his case.  This happened effective April 7, 2007, when Moses was unilaterally granted substantial monetary relief.  He was given a bonus of $ 2,800.  That bonus was approximately equal to the amount of his COLA denial, $2,875.  He was "promoted" to Band II B.  And his status on the "available for leadership positions list" was then automatically restored.

15.  On April 10th, 2007 the 12 PAB complainants settled their cases.  It appears that they were granted full relief, that is, the 12 demotions were canceled, COLA's restored, and their status restored granting them Band II B status.

16.  On April 24, 2007, another class member was contacted by PAB General Counsel, Anne Wagner, to amplify questions asked on April 20th, 2007 by a class member of one of the trial counsels reporting to Ms Wagner at the PAB office of General Counsel.  That document is presented verbatim as *Exhibit 1*.

17.  A copy of this document was immediately upon receipt, on May 8th, 2007, forwarded by undersigned counsel to the AUSA in charge of this case at the United States Department of Justice questioning the propriety of the contact by the PAB and incorrect and misleading advice being given to class members.

18.  No challenge to the authenticity or content of that forwarded email has been made by the GAO or the PAB.  It therefore is presumed to be authentic.  It is unknown to undersigned counsel how many persons received copies of this document, or how many other such communications have been received by the about 300 members of the putative class in the Moses case.

19.  However, it is now apparent that the omitted information and misinformation contained in that letter, and preceding and later communications have become widely disseminated.  On Wednesday, May 16th, 2007, 226 documents entitled "Petitions"[10] were delivered to Anne M. Wagner, General Counsel of the PAB, apparently as a response to the information, or lack thereof contained in Exhibit 1.

20.  It appears from documents 1-4  226 persons have filed a request for relief with the PAB General Counsel.  Apparently, none of these petitioners are aware of the existence of the Moses lawsuit, nor the fact that they are covered in that lawsuit.  That is if Moses is timely, then they are also, once the class is certified which appears certain based upon the known and undisputed facts.

21.  If those persons were informed of the Moses lawsuit, which appears doubtful, they

---

[10]  Exhibit 4 is a copy of the blank PAB petition form, with certain fields filled in, for completion by the rest of the form by the petitioner.  Exhibit 2 states that 226 of these "petitions" were delivered to the General Counsel of the PAb on Wednesday, May 16th, 2007.

6

apparently have no understanding of their respective rights under each avenue open to option for processing their claims. They apparently do not have any understanding of the consequences of filing their out-of-time petition with the PAB Office of General Counsel, particularly if those "petitions" continue on through the administrative process. If this happens, there is, in the opinion of undersigned counsel, a good likelihood that all relief will be barred for those class members.

22. Exhibit 3, attached, is an email received from a client by counsel for Moses and the putative class. was received on May 12, 2007. That email contains a letter apparently sent on August 16th, 2006 by Anne M. Wagner, General Counsel of the GAO Personnel Appeals Board to a putative class member in both the Moses and Davis class actions.

That letter, apparently dated 8/16/06[11] states:

"In our conversation yesterday, you asked about the effect of pursuing your charge at the PAB on your ability to pursue any discrimination claims that you may have in federal court. As I indicated, because your PAB charge does not allege discrimination, filing the petition here should not preclude federal court jurisdiction over any discrimination claim in federal court. However, I should add that filing a discrimination claim before the PAB does arguably preclude an employee from litigating that same claim in federal district court. *See* GAO Order 2713.2, Ch. 6 (2)(a)(2).
Anne Wagner

Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836"

---

[11]   The date of this letter is *after* the filing of the Arthur L. Davis, Moses, et al USDC DC class action case, Number 06-cv-1002 (JgP), filed in June, 2006, and after the "notice of intent to sue" was filed by Moses on August 9th, 2006. Thus, it appears that Ms. Wagner had actual notice of the pendency of federal actions against both the GAO and the PAB as of the date she wrote this letter.

That letter fails to mention either one of the Davis/Moses class actions.  That communication also misstates the exclusionary rule applicable to duplicate claims in federal court and substantially misstates the exclusionary rules.  The communication states (Exhibit 3, page 2 line 2, 3:

> "As I indicated, because your PAB charge does not allege discrimination, filing the petition here should not preclude federal court jurisdiction over any discrimination claim in federal court." (Exhibit 3, pg 2 lines, 2,3).

This communication is incorrect in the context of the PAB filings excluding another recovery in the Moses case.  If the causes of action, that is the facts complained of are the same, you cannot get two bites of the apple.  Here, as to the Band II Split, the causes are the same, only the legal theory is different, and not that much different at that.

This communication goes on to state another wrong rule (Exhibit 3, pg 2 lines 5-8).

> "However, I should add that filing a discrimination claim before the PAB does arguably preclude an employee from litigating that same claim in federal district court".

This statement is wrong in that it doesn't matter what you call each claim, if the facts supporting the cause of action are the same (like the Band II Spit decisions) you only get to file one claim.  Filing in the PAB will preclude any filing in the Federal Court for the same occurrence or damages.

Neither of these rules are correctly stated, with the result that all of the 226 petitioners are at risk to destruction of their rights to any recovery AT ALL, unless that course is altered.  Res Judicata, issue preclusion and being barred by a unwise election are simply not discussed, nor is the fact that the 226 persons are already covered by Moses timely filings.

This communication, apparently being relied upon by about 2/3 of the Moses class, is in

the process of damaging or destroying the rights of each of the Moses putative class plaintiffs.

The correctly stated rule, greatly simplified to get to its essence is that:

In an age case, employees have two avenues to relief. One is the administrative route, the second is in Federal Court. Both avenues have procedural prerequisites which must be followed to get past the governments immunity defense. If a complainant fails to follow one of the prerequisites, he/she is out of court, no matter whether the "court" is an administrative forum of a United States District Court. And all of the case law states the principle, once a complainant has had his fair day in court he doesn't get a second bite of the apple, for the same factual claim, or one that could have been included in that claim under the principles of "issue preclusion".

23. Here, the widely disseminated misinformation suffers from a number of errors which need to be corrected forthwith, before any of the several hundred class members rely upon the misinformation to which they have been exposed. Whether this misinformation is intentional, that is spread on purpose by the GAO or the PAB to thwart the class, or whether unnoticed putative class members did it on their own by misapprehending the complexities of civil rights law, the result and the means to correct the errors are the same. Proper notification of the putative class members is necessary to avoid immediate and irreparable harm.

24. The PAB has simply not done its job, once again, in these events, with similar ineffective results for employees as those complained about in the complaint in this case. Therefore, this Court has both the authority and the duty pursuant to Rule 23 to take this class action case in hand and also grant immediate injunctive relief in the form of corrective action as deemed necessary by the present situation. Lacking such action, each of the class members will be damaged, or very likely damaged by pursuing a path that is blocked by the untimeliness

defense.

Failing that avenue, that class member will have his/her path back into the putative class blocked by the you don't get two bites of the apple rule.  The case law cited above and below authorizes this Court to act to prevent that wrong, particularly where as here, there are serious indications if not *presumptive evidence of legal misconduct*, on the part of one or both of the defendant parties.

For this reason injunctive relief should be granted, and to aid in that effort, the class should be immediately certified.

## CLASS ACTION ALLEGATIONS

Note: These Allegations Were Contained in the Original Complaint Filed On October 4 2006 beginning at page 25, ¶ 54.  For clarity, these allegations have been modified by editing and the scope of the class limited to just the persons affected by the implementation of the ratings and actions which began within three years before the "Band II Split".  Background allegations of generalized age discrimination have been retained for context and historical value.

For the convenience of the Court, these "Class Action Allegations", as contained in the original complaint of Mr. Moses filed on October 4th, 2006, and incorporated in pending motions to certify the class (which has been delayed by the Defendant's Motion to Dismiss) are listed below.  These allegations and Argument are incorporated into this statement of facts.  The only major change is in the class definition which has been simplified to facilitate certification of this class of only those persons affected by the actions of GAO during the ratings period beginning three years before the effective date of the  "Band II Split".

Those allegations follow:

10

**25.  Class Action Allegations (Under L. Civ. R 23.1):**

(1)[12] This case is maintainable as a class action pursuant to Federal Rule of Civil

Procedure 23 (a)(1)-(4) and 23 (b)(1)-(3), and *Moysey v. Andrus*, 481 F. Supp. 850, 21 FEP 836

(D.D.C. 1979) and subsequent cases citing *Moysey* as precedent.

(2) (I) This class action is brought on behalf of 300 +  members of the putative class of

employees in professional level positions at the GAO.  That number has been derived by a count

of similarly situated persons over 40 who have been adversely affected by the GAO's plan to

restructure and/or demote and/or terminate band II employees as described foregoing.  Each new

paycheck written under the improper denial of cola increases is a new violation of equal

protection of the laws, the equal pay act, and has been deemed to present a viable claims of a

prohibited personnel practice by the PAB office of General Counsel.  However, no class action

has been filed to protect the rights of these employees except this case.

**26.  Class Definitions and Allegations Pursuant to Rule 23, F. R. Civ. P.:**
**Proposed Class Definition:**

(Proposed Class Definition -Amended and Updated to May 21, 2007)

> Auditors, Analysts, Evaluators and Evaluator support persons, and/or other job descriptions performing highly skilled equivalent tasks or performing equivalent functions, who were over the age of 40 at any time during the relevant period of time, who were or are employed by the United States Government Accountability Office (GAO) at any time within three years of the February 6, 2006, the effective payroll date of the downgrades and **COLA** denials,  who were adversely affected, or demoted, encouraged to resign or retire, or constructively discharged, or denied bonuses, or denied cost of living increases, by GAO management persons use of intentionally or erroneous age and/or race or gender biased ratings and rankings pertaining to that employee and/or the use of pretext or false methodology or theories of ratings or promotion as excuses for

---

[12]  These paragraph numbers correspond to numbers in the local rule, L.Civ.R 23.1, these paragraph numbers have been retained for the convenience of the Court.

the discriminatory actions stated above; or the unwarranted inflation of the performance ratings and rankings of younger competing employees, which younger employees are otherwise similarly situated persons to the aggrieved employee.

**27.    (ii) The Plaintiff and his Counsel are Adequate Representatives of the Class:**

The Plaintiff, James D. Moses, is a member of the protected age group, i.e., over 40, and has been passed over, or denied fair ratings, and the resulting higher "pay for performance" using age or age and race combined, in the ratings process and/or the promotion and retention process in favor of younger, less qualified and less experienced employees of the United States Government Accountability Office.  Plaintiff Moses has been harmed by both the acts of disparate treatment complained of herein and the adverse impact of the GAO promotion system. He has been denied a statutory right to a cost of living increase granted by Congress, since February 16th, 2006.  The statute of limitations has not expired on any of these claims.

The Plaintiff and his counsel have demonstrated by their persistence and patience over the 7 year, period of time from when this plaintiff first sought to intervene in the related case. Their dedication to the truth and validity of these claims has been repeatedly demonstrated by actions in attempting relief this plaintiff and the class.  Their counsel has been litigating this case and the related putative class action for more than 20 years.

Large expenditures of funds have been required, in large part resulting from GAO's stonewalling of truthful and complete reporting of evidence known to exist of GAO's known age discriminatory policies and failure to candidly provide statistics which would long ago have proven the truth of these allegations and ended all of this troublesome litigation.  But the

12

arrogance of GAO management precludes its adherence to truth with respect to its older employees.

This plaintiff essentially challenges all aspects of the ratings and promotion system at GAO used for the determinations of judging each member of the proposed class as biased, unfair, not based on objective "truth" and in violation of ADEA. To undertake such a challenge standing alone against the might of the Federal Government demonstrates the adequacy of their representation. Plaintiff and counsel have pledged to adequately protect the interests of the class, as have the group of loyal GAO workers supporting these efforts for more than 20 years.

28. **(iii)** All of the questions of law and fact as claimed in this lawsuit are common to the class. The detailed allegations contained in the "live" complaint are incorporated by the reference, and in addition factual matters relevant to the class certification requirements are summarized in the issues of fact and law stated below. These are:

a. Whether the GAO maintained a ratings system and policies leading to practices applicable in hiring, promotion, forced retirement and retention or termination in reduction in force situations for its professional level employees that created a pervasive pattern and practice of discrimination against persons over 40, and particularly those initially over 43, who are now over 50, by setting quotas for promotion based upon prohibited age, or age and race factors, in favor of younger persons?

b. Whether the GAO's mandated adherence to that system resulted in the exclusion from high profile tasks, the reduction of scores on performance reports, the elimination or reduction of promotions and earnings, or loss of tenure and retirement benefits in favor of young persons via the "PFP" system for the Plaintiffs and members of the class resulting in inequality in

13

opportunity solely because of the acts complained of, and the system in effect complained of in this case?

      c.   Whether the GAO maintained a quota system designed to favor a class or classes of preferred employees, said preferences based on discriminatory and prohibited criteria, age, sex and race?

      d.   Whether the discriminatory system in effect for the relevant period of time was known to be illegal by GAO officials, and whether that discrimination based upon age was intentional or mere coincidence and whether the hitherto secret statistical system proves that GAO's actions and excuses for the bias observed is a pretext for age discrimination or a combination of age and gender discrimination, and not based upon merit?

      e.   Whether the PAB participated in the design and/or maintenance of that age biased quota system, for a part or all of the relevant time period covered by this complaint, and whether or not the PAB was forced to participate in the discriminatory acts and system by control of the PAB personnel and budget by the GAO management and refrain from investigating the perceived age bias by GAO financial or other intimidation?

      f.   Whether the mandate of Congress for the PAB to furnish oversight on GAO's activities  and the failure of the PAB to enforce adherence by GAO to equal employment opportunity law for protected older persons creates an actionable right under either ADEA or Title VII, by members of the class enforceable by this Court and for which relief is appropriate under existing civil rights statutes?

g.  Whether the recent split in the band system, and denials of cost of living increases is part and parcel of the continuing violations by GAO of equal rights of employment of its older employees represented by these three plaintiffs and the class or classes they seek to represent.

h.  Whether, as an overall matter, GAO's position that its ratings system, and promotions system are mere pretext for the implementation of policies disfavoring older persons and racial minorities?

**29.  (iv) A CLASS ACTION IS SUPERIOR TO OTHER FORMS OF ACTION THAT THIS CASE MAY TAKE, QUESTIONS OF LAW AND FACT (BOTH) PREDOMINATE OVER QUESTIONS AFFECTING ONLY THE INDIVIDUAL PLAINTIFFS:**

**30.**     Plaintiff, for himself and the class, allege that the practices resulting in the depriving of their right to equal employment opportunity, and to be free of discrimination based upon their age  was, for the entire time frame of this complaint universal, in application.  It is an observed fact, based upon a 100% analysis of the promotions for the bulk of the time frame for the class, and well published comments by GAO management, that older persons just did not and do not get promoted, at the GAO.  The statistical principle of  "the inexorable zero" is believed to be applicable to the extent of the exclusionary process for older persons at GAO in all of the positive attributes of employment.  That is virtually none (zero) get promoted or get equal treatment under the applicable policy and rules at their employment at GAO.

**31.**     The result of GAO's ratings system was and is a predetermined exclusion and negative bias existing for many years against older employees.  The intent was to exclude older employees from any meaningful consideration for high profile tasks, and exclusion from promotions to management positions of all persons over the age of 45-50.  Now the extension of those policies

15

have resulted in a new manifestation of the discrimination, the band split with *de facto* demotions to each older (over 50) employee considered mandatory for ratings persons. The statistical opinion on the Band II Split decisions shows a nearly 100% certainty of age bias in the selections. Neither the data or the results of that opinion have been challenged by the GAO. Nor is a challenge expected, because that opinion is correct beyond doubt or question.

32.     Plaintiffs herein allege that (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact common to the class; and (3) the representative parties will fairly and adequately protect the interests of the class. The common questions of law and fact are consistent and universal to each of the Plaintiffs and the other members of the class. The homogeneity of data and facts is such that the only practical handling of this case is via a class action.

## ARGUMENT

### I.  A Temporary Restraining Order is Necessary to Prevent Immediate Irreparable Harm:

At this time it is vital to the class claims that the Court enter an Order requiring the PAB General Counsel's Office not to take any action which will, or may deprive any putative class member of any rights available to that person as a member of the class. The petitions filed (more than 226 of them) if considered binding as an election of remedies will, or are likely to, destroy any right of that member to participate in the Moses class action, when certified, or if not certified, to appeal that ruling.

Plaintiffs in Argument, III, below, argue that full notice is necessary, and immediate certification of the class is appropriate. But in the meantime, if, by reason of the misinformation

16

conveyed to each putative class member a formal petition or complaint is filed or the PAB acts

for them in filing such an action, each putative member may be placed in an irrevocable position

(absent the requested Order of this Court) of "opting out" of the class, or subject to a ruling that

he/she has made an election of remedies fatal to his class participation.

The regulations of the GAO and the PAB do not allow simultaneous prosecution of

duplicate claims, one administrative and one in federal court for the same occurrence.  Nor do the

doctrines of Res Judicata and/or issue preclusion allow duplicate claims in two different courts.

Moreover, a viable claim (like that of a class member in the putative class action) may be

destroyed by a foolish action of the class member, as here, in filing an untimely "petition" while

under the influence of incorrect advice by an adverse party.

Therefore, this election process must be stopped and notice given to all class members to

insure that no unknowing damage to each putative class members legal position occurs while the

Court is considering the proper course of this case's administration.  For that reason this Court

should enter a Temporary Restraining Order against the GAO and the PAB.

For this reason, the Court should enter an Order prohibiting GAO and the PAB from

processing any claim for any putative class member pending completion of the notification

process, and a knowing election to opt out of the Moses class, which of course is available to any

class member in a Rule 23 class action.

There will be no prejudice by entry of this Order, and great prejudice, if improper action

is taken without all due notice having previously been given to each putative class member.

17

**II.  An Emergency Hearing On the Appropriateness of Preliminary and Permanent Injunctive Relief Should be Held; An Order Entered Granting Preliminary and Permanent Injunctions Prohibiting Contact Without Leave of Court by the Adverse Parties, the GAO and the PAB:**

An emergency hearing should be held on the scope and content of elections made and petitions received from members of the putative class, who were misinformed of their respective elections available to them and the risks of duplicate filings by the adverse parties.

Exhibits 1 through 4, and argument preceding demonstrate that there are ongoing contacts by the adverse parties, specifically the office of the General Counsel of the PAB, harmfully inducing class members to act to their own detriment.  These contacts are occurring on a daily basis.  The "errors" of omission and commission (by an adverse party, the PAB) in failing to correctly and completely inform the putative class members of their rights must stop forthwith.

Given the uncertain procedural state of this case, and the undecided nature of the enabling motions, the PAB should not be allowed to continue to act in influencing in any way the class members to make uninformed and incorrect elections which may well utterly prevent their recovery on otherwise valid class claims against one or both of the adverse parties, the GAO and the PAB.

Only the PAB knows the extent and status of its actions.  A hearing is necessary to ascertain those facts and take what remedies are necessary to correct misinformation disseminated by the improper contacts with class members and misinformation given those putative class members.

**III.  A.  The Actions of the PAB in Contacting and Misinforming Adverse Parties is Legal Misconduct; a Writ of Prohibition And a Corrective Neutral Letter Informing Class Members of their Rights Should Issue Forthwith;**

The actions of the PAB, in the communications with adverse parties starting with Exhibit 1, have apparently resulted in most of the Moses class "deciding" that they are unrepresented by any counsel, in any civil action to remedy their perceived injuries (Exhibit 4, page 4, item 15). The PAB has not correctly informed the class members of facts, including the existence of the class action in which they are timely represented, nor correctly informed the class members of the effect of filing an untimely or duplicate claim with the PAB.  Nor have those members been apprised of the effect of beginning a losing battle before the PAB upon their status as a class member in a viable federal district court case (which is it will ruin their claims in the federal court also)..

All of these factors are necessary to be conveyed to the putative class member in order that he/she may make an informed decision on how and where to proceed.  The PAB General Counsel did not do that.  To do otherwise, as they did, in contacting adverse members of the class, and withholding vital information is legal misconduct.  ***Kleiner v. First Nat'l Bank of Atlanta,*** 751 F.2d 1193, 1197-98 (11th, Cir. 1985); (99 F.R.D 77,79 (N.D. GA. 1983).

The Court is requested to issue an Order preventing any further action at all with respect to any putative class member by either GAO or the PAB.  This Order, in the nature of a writ of prohibition, should be renewed and continue until the Court has had time to sort out what shall happen in the way of notices to the class, and the appropriate limitations on PAB contact with class members.  In no way should the PAB General Counsel's Office be allowed to render advice to putative class members affecting or impacting class proceedings.  The PAB has already

19

demonstrated that it has failed in its responsibilities to fully inform class members correctly of their respective rights as members of the putative class.

The United States District Court for the District of Columbia has commented upon contact with class members that have the effect, as here, "of extinguishing the rights of class members."

This Court stated in *Cobell v. Norton*, No. 96-1285 (RCL) 2002 DDC 389, (DDC,2002) in connection with the filing of plaintiffs' motion for a preliminary injunction at [20].

> "There is no apparent support in the available case law that permits an opposing party to engage in communications with class members that have the effect of extinguishing the rights of those class members", ...

And the Cobell court then quoted from the landmark case of *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1197-98 (11th, Cir. 1985).

> "while the issue of unsupervised contacts by the defendant bank with putative class members was pending before the district court, the bank contacted over 3000 of its customers urging them to opt out of the litigation, Id. At 1197-98. The district court found the decisions of the putative class members to opt out to be voidable, id. at 1197, and entered an order proscribing either party from discussing the issues involved in the case with class members, although it permitted the bank to engage in ordinary business affairs with its clients who were putative class members. *Kleiner v. First Nat'l Bank of Atlanta*, 99 F.R.D. 77,79 (N.D. GA. 1983).
>
> The Eleventh Circuit held that the district court had "ample discretion" under Rule 23 of the Federal Rules of Civil Procedure to enter such an order. *Kleiner,* 751 F.2d at 1203 (1985). The court also concluded that the order complied with the dictates of the First Amendment:" *Quotes from Cobell v. Norton, supra,* at [20], [21].

Two Orders are required for the Court to maintain proper administrative control over the proceedings of this class action until such time as the underlying operative facts are known to the Court.

One Order should prevent any action by GAO or the PAB which results in advising a putative class member, except under the Court's supervision. The second Order is discussed in **Section III B** below.

### III B.  The Court Should Enter An Order Holding that any Election By a Misinformed Putative Class Member "Opt Out" of the Class, and/or Filing a Conflicting Administrative Petition is Voidable:

The Court should enter an order holding that any election or action taken which has the effect of extinguishing the putative class members rights to litigate his claims in this Court, due to misinformation given to him by the GAO or the PAB, or failure to notify him of the pendency of this case is voidable.

The facts in this case based upon only those known to date, are sufficient to require an Order finding legal misconduct in advising putative class members, without informing them of the existence of the class action, the untimeliness of their own claims, and the prohibition against filing duplicate claims in two separate courts. Argument in section II amply discusses the facts demonstrated by exhibits 1-4. This situation needs to be corrected, and right now before it goes any further to the complete destruction of the class, and all of the rights of class members.

The orderly administration of justice pursuant to Rule 23, requires the Court to act to prevent destruction of the class rights for the proper judicial administration of the case. The right to class action treatment starts not when a class is certified, but rather when the case is filed. *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 338-340 (1980)(sound judicial administration of class actions include adherence of the District Court to the dictates of Rule 23, and the right of appeal of denial of class certification). In *Roper*, although the Supreme Court

21

did not reach the question of responsibilities of the class representative to a putative class, the theme that the Court must maintain control over the proceeding at all times is clear.

For this reason this Court is requested to act timely and forcefully to stop the flow of misinformation to class members pending certification of the class.  Preliminary and permanent injunctive relief should be granted stopping the contact with and influencing of class members with misinformation permanently, and enforcing such other relief as is found to be just in a hearing on this motion.

An Order should issue finding that any action of the putative class members to date while acting under the influence or misinformation from any adverse party is voidable.

**IV.      Acceleration and Consolidation with a Trial on the Merits:**

Plaintiff has no objection to an acceleration of a trial on the merits into this hearing for injunctive relief per F.R.Civ P. Rule 65 (a)(2); subject however, to a previous enforcement of the evidentiary matters discussed in Argument V, below.

**V.  Enforcement of Evidentiary Disclosures**
**Pursuant to F.R. Civ P. Rule 26(a)(1).**

Events in this case are proceeding very quickly, and particularly over the past several weeks.  In order for plaintiff to be ready for the hearing requested, it is necessary to obtain several items of evidence, which ordinarily would be subject to voluntary production pursuant to Federal Rule of Civil Procedure 26(a)(1).  However, the defendants have refused to produce these items.  Permission to reissue and enforce this request via subpoenas is hereby requested. These items of evidence are:

1.  Items subpoenaed representing PAB depositions with exhibits in the parallel cases of the 12 cases recently settled by the PAB General Counsel concerning the "Band II Split". Plaintiff believes that evidence contained in those depositions of GAO management persons admissions of wrongdoing would be determinative of the results in this case also.  It is in the interests of judicial economy and justice to order that public information produced forthwith.

2.  GAO should be ordered to produce the entire statistical data base and systems and cooperate fully with plaintiffs's counsel in that production.  This Court has been misled by false statements by GAO counsel to the effect that such evidentiary materials, known as "William (Bob) Mowbray's systems and data bases", do not exist.  These statements by GAO to this Court, which have prevented class certification in all related cases are categorically false and proven to be so by sworn testimony now before this Court in two separate related cases.

Therefore, prior to any hearing these materials should be ordered produced while allowing sufficient time for assimilation of the information for use at any hearing date set by the Court.

**VI.  The Class Should be Immediately Certified:**

There can be no question that all of the requirements for class certification have been met. Each of the requirements are discussed in full within the requirements of Federal Rule of Civil Procedure 23 in pages 9-16 of the points and authorities to this Motion.

There can be no doubt that all of these 320 GAO professional employees (as described in the proposed amended class definition herein) are all similarly situated.  They all have one common set of claims, one common set of law applies to the claims of each, and one set of facts

23

will prove or disprove their cases.  Commonality and typicality are not in question, these claims

are identical.  Each and every requirement of Rule 23 has been addressed, and each answered

affirmatively.  Further, there is no question that Mr. Moses has done all that he could do to

properly, and timely represent those fellow workers before this Court.  His counsel has

demonstrated over the years, tenacity second to none.  Knowledge of the functioning of GAO is

complete within the class litigation team.  Financing the class notices and the like is not a

problem as is payment for the fees required for documents and expert witnesses, if needed.

     Therefore there is no impediment as to class certification.

      Here, quite understandably, class members have become distressed at the PAB's lack of

action on their behalf.  There is no question that, as a part of the PAB's investigative duties,

remedial action should have come from the PAB, and not need to be undertaken by the class

representative, Mr. Moses.  But, Mr. Moses anticipated the failure of the PAB to take group

action, as would have been more appropriate and undertook that burden himself.  In trying to

undertake that responsibility Moses acted timely in each move he made, with full knowledge of

the GAO's regulations he had gained by serving as a voluntary counselor.

     Class certification before this has only been stymied by GAO's delaying tactics.  All

delays of this case are entirely the fault of GAO's unfounded and ill-considered motions, which

are also, although irrelevant to class certification, entirely without substance.

     For example, even if the GAO's Motion to Dismiss had some merit (and in fact Moses

was untimely, which he was not), he would still be before the court in his earlier complaint with

co-plaintiffs Arthur L. Davis and Jimmie Gilbert, case number 06 CV 1002.  No motion to

dismiss has ever been filed by the government in that case and it is alive and well, and could serve, if need be, to be the repository of this class action.

All Moses needed to do to get these most recent claims into the mix of relief requested is amend his first complaint to include these later violations as part of the original pattern and practice. Moses, therefore is, and will be then, still before the Court on the same basic claims, age and race discrimination. But Moses declines to do that, having met the challenge head on with complete confidence in his position and factual representations. Therefore, GAO's Motions to delay and obstruct should be viewed as what they are, merely bad faith delaying tactics where no substantive defense for their discriminatory actions exist.

The confusion of the present status of each class member needs to be alleviated by correct and timely action of the Court. Class Certification is not dependent upon the merits of a case. Nor is it dependent upon unsupported arguments of untimeliness of Moses claims. That is merely a delaying tactic in order to buy time for the GAO to attempt to eviscerate the class, or render the class headless[13].

Nor does Moses "substantially prevailing" by GAO's granting part of his claims terminate the class or render it headless. There are even more substantial claims to be adjudicated, for example the facilitating of the age and race discrimination at GAO by GAO's management rendering the PAB a toothless tiger without an investigative bone in its body.

_____

[13]  The Court will note that Mr. Moses was granted return to his prior status, before the adverse personnel actions complained of herein, effective on April 7, 2007. But that relief was only part of what this complaint is all about. The basic aura of discrimination in all aspects of GAO's personnel management continues unabated as evidenced by Exhibit 2 hereto.

It is unjust and in violation of the intent of Rule 23 to deny the right to class members for final determination of their claims because the defendant has sought to:

> ... "buy off" the individual private claims of named plaintiffs would be contrary to sound judicial administration. Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions, moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement." ***Deposit Guaranty Nat. Bank, Supra* at 339.**

For these reasons the class should be immediately certified. If for one reason or another, decertification is later required, that is easily accomplished in accordance with the provisions of Rule 23.

Under these circumstances of legal misconduct, injunctive relief is not only appropriate but essential to the administration of justice in this class action.

For the same reasons, the class should be immediately certified, and all of the GAO's motions to further delay the process dismissed and overruled as frivolous. These timely actions by the Court will mitigate the difficulty and complexity of the required corrective notices to members of the (now) putative class.

A draft order accompanies this Motion for Injunctive Relief and Request for Immediate Certification of the Class.

**A Hearing on the Motion for Injunctive Relief Is Requested at the Earliest Convenience of the Court In Accordance withe the Local Rules on Requests for Injunctions.**

Respectfully submitted,

*Charltonw2428*

Walter T. Charlton,
D.C. Bar # 186940
Telephone 410-571 8764
1156 15th, Street N.W.. LL 10
Attorney for Plaintiff and the putative class
of about 309 persons he seeks to represent

27

Certificate of Service

I hereby certify that I filed via the ECF system a copy of this Plaintiff's EMERGENCY MOTION PURSUANT TO F.R. Civ P. 23 FOR IMMEDIATE CERTIFICATION OF THE CLASS AND INJUNCTIVE RELIEF TO PREVENT IMMEDIATE AND IRREPARABLE HARM on May 221nd, 2007, with the expectation that a copy thereof will be automatically electronically delivered to:

Andrea McBarnette, AUSA
555 Fourth Street, N.W
Washington, D.C.
20530

_____*CharltonW 2428*_____
Walter T. Charlton, D.C. Bar # 186940

28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **James D. Moses** )  | |
|      **For himself and** ) | |
|      **All others similarly situated** ) | |
|  ) | |
|      **Plaintiffs** ) | |
|  ) | |
|      **v.** )  | **Case No.     1:06 CV 01712  (JGP)** |
|  ) | |
| **DAVID M. WALKER** ) | |
| **Comptroller General of the United States,** ) | |
| **Government Accountability Office (GAO)** ) | |
|      **and** ) | |
| **Michael Doheny, Chair** ) | |
| **The Personnel Appeals Board of the GAO,** ) | |
|      **Defendants.** ) | |

_____)

**TEMPORARY RESTRAINING ORDER, AND**
**ORDER FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Upon consideration of plaintiffs' Motion for An Emergency Hearing on Purported

Contacts by defendants of members of the putative class, and it appearing to the Court that such

contacts have in fact occurred, the Court finds that it is likely that misinformation has been

presented to many, if not all of the members of the putative class.

Based upon the documents received, that advice and communication occurred without the

disclosure of information important to each class member's respective rights and detriments,

including the possibility of complete foreclosure of relief by each putative class member because

of opting out of a viable class action into a situation where no relief is possible because of

untimeliness, and/or the fact that this putative class action case even exists, and it appearing that

at least 226 members of the putative class, are acting or will act based upon improper

1

communications from an adverse party, which may have the effect of extinguishing the rights of those class members, without being furnished complete or proper information as to their respective rights under the auspices and control of this Court, now therefore, it is hereby ordered that:

(1) Pending further Order of Court, no party defendant nor their counsel shall in any way advise, counsel or accept for action any person who is or may be arguably a member of the putative class or classes represented by Mr. James D. Moses, and/or his counsel herein, Walter T. Charlton and/or contact in any way except to advise such person that this case, and all of its circumstances are under the control of this Court; and that further;

(2) That an emergency hearing will be held on the ____ day of _____ 2007 to determine further proceedings in this case.

(3) At the emergency hearing each of the parties shall be prepared to go forward with arguments as to why the class should be certified or not, and;

(4) Any evidence of contact or advice adverse to the interests of the class which has been already given;

(5) Any corrective communications which shall correct any misapprehensions of law or fact given to the class members.  In this regard, counsel for the plaintiff and counsel for the defendant shall prepare a joint letter for signature of the Court, neutral in content advising each putative class member of their rights without taking any position as to which rights exist and which do not;

Any decision made by any class member without the full knowledge of the existence of his/her rights in this putative class action, and all alternatives available to him/her shall be deemed voidable for all purposes.  Any class member so inclined shall contact attorney for the

plaintiffs or a counsel of their choice and make such election by the close of business on

_____(date).

(6) Counsel for the Defendants, Andrea McBarnette, AUSA and Counsel for the Plaintiffs

and the Putative Class shall confer and prepare the afore-described a joint communication, for the

Court's authorizing signature, conforming to the law as set forth in the following cases, which

appear to be applicable to this situation:

Kleiner v. First National Bank or Atlanta, et al 751 F.2d 1193, 40 Fed. R. Serv. 2d 1390
(1985); Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S. Ct 1166, 63
L.Ed. 2d 427, 100 S.Ct. 1166, 63 L.Ed. 2d 427 (1980).

**HEARING DATE FOR THE EMERGENCY HEARING:**

Further, the Court hereby sets an Emergency Hearing on alleged violations of the rules

prohibiting contact to an adverse party by either GAO or the PAB, the pending Motion to

Dismiss all claims on grounds of untimeliness, certification of the class, and appropriate further

injunctive relief, for a time when assimilation of the subpoenaed materials has been completed.

The date for this hearing shall be on the _____ day of _____ for a one day hearing.

**SO ORDERED.**

_____
John Garrett Penn, Senior United States District
Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **James D. Moses** )<br>　　**For himself and** )<br>　　**All others similarly situated** )<br>　　　　　　　　　　　　　　　　)<br>　　**Plaintiffs** )<br>　　　　　　　　　　　　　　　　)<br>　　　　**v.** )<br>　　　　　　　　　　　　　　　　)<br>**DAVID M. WALKER** )<br>**Comptroller General of the United States,** )<br>**Government Accountability Office (GAO)** )<br>　　**and** )<br>**Michael Doheny, Chair** )<br>**The Personnel Appeals Board of the GAO,** )<br>　　**Defendants.** )<br>　　　　　　　　　　　　　　　　) | **Case No.    1:06 CV 01712  (JGP)** |

---

**ORDER FOR CERTIFICATION OF A CLASS**

Upon consideration of plaintiffs Motion for Certification of the Class, and it appearing that class certification is warranted and that all of the requirements of Federal Rule of Civil Procedure have been met, now therefore the Motion is Granted.

Based upon the representations made in the complaint, and it appearing that each of the putative class members is similarly situated with Mr. Moses, if not substantially identical as to the alleged violations of federal law, the facts with respect to the relief claimed, and Mr. Moses and the class having satisfied on a prima facie basis, the requirements of commonality and typicality, and whereas, both the plaintiff and the counsel herein have demonstrated through diligent and long term contact with the court a through grasp of their duties and responsibilities with respect to the Court and that each of the other requirements of Rule 23 have been addressed

4

and no objection raised by the defendants, now therefore, the class is hereby certified, and further

Ordered that;

The class definition as described in the complaint now before this Court appears to be

complete and accurate for purposes of class certification, now therefore the class is hereby

certified as:

> Auditors, Analysts, Evaluators and Evaluator support persons, and/or other job
> descriptions performing highly skilled equivalent tasks or performing equivalent
> functions, who were over the age of 40 at any time during the relevant period of time,
> who were or are employed by the United States Government Accountability Office
> (GAO) at any time within three years of the February 6, 2006, the effective payroll date of
> the downgrades and **COLA** denials,  who were adversely affected, or demoted,
> encouraged to resign or retire, or constructively discharged, or denied bonuses, or denied
> cost of living increases, by GAO management persons use of intentionally or erroneous
> age and/or race or gender biased ratings and rankings pertaining to that employee and/or
> the use of pretext or false methodology or theories of ratings or promotion as excuses for
> the discriminatory actions stated above; or the unwarranted inflation of the performance
> ratings and rankings of younger competing employees, which younger employees are
> otherwise similarly situated persons to the aggrieved employee.

The parties are hereby Ordered to prepare a joint notice for signature of the Court.  That

notice shall include both notice of class certification to each class member, and along with the

class certification notice, a notice for taking the corrective measures, including notice of the class

members's right to have declared VOID, and the time frame for that action, resulting from that

members prior action adverse to the interests of each class member in this case.


_____

John Garrett Penn, Senior United States
District Judge


5

**Office of the General Counsel**
**Personnel Appeals Board**
**U.S. Government Accountability Office**
820 First Street, NE , Suite 580
Washington, D.C. 20002

April 24, 2007

NAME REDACTED
UPON REQUEST OF
SENDER

Dear REDACTED:

     This is in response to your email to Frank Mack, Senior Trial Attorney with the
Personnel Appeals Board (PAB or Board), Office of the General Counsel (OGC), dated April 20,
2007, concerning a previous conversation with him regarding the denial of a 2006 annual
adjustment and 50% of your performance-based compensation (PBC).  In that conversation, Mr.
Mack indicated to you his belief that such a claim would be dismissed as untimely.  In your
email, you request that Mr. Mack provide written confirmation that "that PAB will not now file a
case for me to obtain the 2006 annual adjustment and ½ of PBC…."

     In advising you, Mr. Mack correctly noted the likely judicial response to the timeliness of
your claims.   Specifically, under Board regulations, a charging party must file within 30 days
after the effective date of the personnel action or within 30 days after the charging party knew or
should have known of the action.  *See* 4 CFR §28.11(b).   Here, GAO revised its Pay Order
2540.3 on January 20, 2006, and thereby, *inter alia,* eliminated annual pay adjustments for Band
IIA employees whose pay exceeded the maximum pay rate for Band IIA.  On February 8, 2006,
GAO issued the "FY 05 Performance-Based Compensation (PBC) Guide for Analysts,
Specialists and Investigators" (*Guide*) as a supplement to GAO Order 2540.3.  Appendix 2 to the
*Guide* sets forth the pay ranges for Band IIA for each geographical zone.  The *Guide* also
provides that any portion of the GAO-wide 2.6% annual pay adjustment that exceeds the
maximum rate of pay for Band IIA would be "lost."  *Guide* at 6.

     The Band IIA employees whose salaries in December 2005 exceeded the Band IIA
maximum rate were covered by the *Guide's* Band IIA transition provisions.  *Guide* at 7.   These
provisions stipulated that any Band IIA whose salary was in excess of the Band IIA maximum
rate would not receive the 2.6% annual pay adjustment and would receive 50% of their PBC
bonus as a permanent salary increase up to the IIA transition salary range maximum but would
lose any remaining PBC.

Individual pay decisions reflecting the policies set forth above were, on the whole, made by February, 2006.   At that time, GAO employees were provided specific notice of a denial of an annual adjustment and PBC.    Thus, in order to be timely, a charge challenging that denial would, arguably, had to have been filed within 30 days of the effective date of that pay action. You did not file such a charge.

A judge could likewise readily conclude that a charge filed by you now challenging the 2006 pay decision was untimely under the "knew or should have known" standard set forth in 4 CFR §28.11(b).   Specifically, on August 11, 2006, you filed a charge with this Office  – which you subsequently withdrew - expressly complaining about the fact that you were denied an "across-the-board increase (COLA)" in 2006.  Thus, one cannot argue that you only recently became aware of the pay decisions or of the possibility that they might be legally challengeable.

Having said that, however, I should also point out that my attention has recently been directed to exploring the possibility of pursuing a challenge to the denial of the 2006 annual adjustment in the context of pending charges.  Although the PAB/OGC's confidentiality regulations preclude my discussing this matter in further detail with you, I can say that my decision will depend upon a thorough analysis of  all potential issues underlying such a claim, including any potential legal impediments that would obviate a "reasonable grounds" determination under 4 CFR §28.12(d)(1).   In any event, your conversation with Mr. Mack occurred before I had the opportunity to apprise him fully of my thinking in this regard.  It is possible that your claim could fall within parameters of such a cause of action.  Therefore, if you want to pursue such a challenge, the charge forms are available on the PAB website at www.pab.gao.gov.

In this regard, I am constrained by your request to emphasize that the PAB/OGC cannot offer or decline representation to an individual prior to the completion of the investigation into a charge filed with this Office.   *See* 4 CFR §28.12.   Because you do not have a pending charge, it would be inappropriate to decline representation at this juncture.  It is important to explain also that even if the PAB/OGC decides, after investigation, not to represent you, you thereafter have the right to take your claim directly to the PAB, either *pro se* or with a representative of your choice.   *See* 4 CFR §28.12((d)(2) and (3).

I trust that this clarifies the basis for Mr. Mack's response and provides useful information for your consideration.

Sincerely,

/s/

Anne M. Wagner
General Counsel

Exhibit 2

----- Original Message -----

1. **From: JusticeatGAO**

**To: JusticeatGAO**

**Sent:** Wednesday, May 16, 2007 7:04 PM

**Subject:** Form & Articles -- We delivered 226 petitions to PAB at 1PM today, 5/16/07; will continue accepting & delivering & will develop form for APSS Staff next

## GAO Watchdogs:

**We delivered 226 petitions to Anne Wagner, GAO-PAB General Counsel this afternoon @ 1:00 pm. There were 213 for current GAO employees and 13 for GAO retirees. About a half-dozen additional petitions were brought to us in the afternoon, and we intend to keep taking and delivering them to the PAB every other day.**

T he grassroots movement has been spreading very fast across all analysts at GAO; we plan to develop a petition for GAO's 400 non-analyst staff, i.e., APSS (Administrative, Professional, & Support Staff) as our next move. This is only proper, for most of this group includes the "poorest of the poor" at GAO, many making less than $30,000 who live literally pay-check-to-pay-check; we must, as a matter of ethical obligation, ensure that they are respected and paid fairly.

Committee for Justice at GAO

JUSTICEatGAO@gmail.com

Exhibit 3

From: "ARTHUR L. DAVIS" <arthurdavis06@comcast.net>

[Add to Address Book]

To:

<charltonwt@comcast.net>

Subject: Fw: Because your PAB charge will not allege discrimination, filing the petition should not preclude federal court jurisdiction over any discrimination claim in federal court

Date: Saturday, May 12, 2007 7:04:47 PM

[View Source]

Walter, FYI

Art

Original Message -----

**From:** Robert Kershaw

**To:** ejao77@earthlink.net ; 'ARTHUR L. DAVIS'

**Cc:** Walter T. Charlton, Esq. ; 'Ronnie Bergman'

**Sent:** Saturday, May 12, 2007 3:38 PM

**Subject:** Because your PAB charge will not allege discrimination, filing the petition should not preclude federal court jurisdiction over any discrimination claim in federal court

Dear **Elizabeth Olivarez** < ejao77@earthlink.net> and ARTHUR L. DAVIS < arthurdavis06@comcast.net>,

Ronnie Bergman forwarded me your email to the Justice at GAO mailbox. Below is a copy of an email I received from PAB OGC, Anne Wagner, on 8/16/2006 9:35 AM. Ms Wagner's email should reassure you, as none of the petitions to the PAB will allege discrimination of any type.

Robert G. Kershaw

5228 Ravensworth Road

Springfield, VA 22151

(h) 703-256-2254

(w) 202-512-3282

(c) 703-674-8909

kershaw@cox.net

----------------------------------------------------------------

Dear Robert:

In our conversation yesterday, you asked about the effect of pursuing your charge at
the PAB on your ability to pursue any discrimination claims that you may have in
federal court. As I indicated, because your PAB charge does not allege discrimination,
filing the petition here should not preclude federal court jurisdiction over any
discrimination claim in federal court. However, I should add that filing a discrimination
claim before the PAB does arguably preclude an employee from litigating that same
claim in federal district court. *See* GAO Order 2713.2, Ch. 6 (2)(a)(2).

Anne Wagner

Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836

# PERSONNEL APPEALS BOARD
# OFFICE OF GENERAL COUNSEL
# CHARGE FORM

---------------------------------------------------------------------------------------------------------------

**1.  Name (last, first, middle initial)**

---------------------------------------------------------------------------------------------------------------

**2.  Address (number and street, apartment number, city, state and zip code)**

---------------------------------------------------------------------------------------------------------------

**3.  Home Telephone Number**

---------------------------------------------------------------------------------------------------------------

**4.  Work Telephone Number**

---------------------------------------------------------------------------------------------------------------

**5.  If GAO Employee**

     Position Title    _____

     Position Series   _____

     Grade/Band     _____

Organizational Unit  _____

---------------------------------------------------------------------------------------------------------------

**6.  If applicant for employment, provide the following information regarding the position applied for:**

     Position Title    _____

     Position Series   _____

     Grade/Band     _____

     Regional Office  _____

Organizational Unit  _____

---------------------------------------------------------------------------------------------------------------

**7. Organizational unit in which the alleged prohibited personnel practice occurred**

        _____

---

8.  **Date on which most recent alleged prohibited personnel practice occurred (month, day, year)**

    My most recent paycheck (or retirement check) received based upon my GAO service.

---

*(Check all items that apply)*

9.  **DISCRIMINATION**

    \_\_\_\_ **Race**, if so, identify your Race _____

    \_\_\_\_ **Color**, if so, identify your Color _____

    \_\_\_\_ **Religion**, if so, identify your Religion _____

    \_\_\_\_ **National Origin**, if so, identify your National Origin _____

    \_\_\_\_ **Sex,** if so, specify your Sex _____

    \_\_\_\_ **Age**, if so, specify your Age _____

    \_\_\_\_ **Handicapping condition**, if so, state your Handicapping condition_____

    \_\_\_\_ **Sexual Harassment**

    \_\_\_\_ **Hostile Work Environment**

---

10.  **If your complaint relates to discrimination, have you filed a complaint with the Office of Opportunity and Inclusiveness?**

    **Yes_____      No_____**

---

11.  **If the answer to question 10 is yes, please provide the following information;**

    Date (month, day, year) filed with O&I            _____

    Date (month, day, year) you received a Final Agency Decision     _____

---

12.  **Other Prohibited Personnel Practices**

    \_\_\_\_ **Discrimination for or against any employee due to political affiliation**

    \_\_\_\_ **Coerce political activity**

    \_\_\_\_ **Willful obstruction of competition for employment**

    \_\_\_\_ **Improperly influence to withdraw or to force withdrawal from competition**

2

_____ **Grant of unauthorized privilege or advantage**

_____ **Nepotism**

_____ **Whistleblowing (reprisal for disclosure of information)**

_____ **Reprisal for exercising appeal rights**

_____ **Discrimination based on non-performance related conduct**

_____ **Solicitation or consideration of improper evaluation**

<u>X</u>___ **Action taken or not taken in violation of law, rule, or regulation**
       **[5 U.S.C. § 2302 (b) (12)]**

-----------------------------------------------------------------------------------------------------------------------------------------

13. **Type of action upon which your claim is based (check all that apply)**

_____ **Denial of within-grade increase**

_____ **Reduction-in-force**

_____ **Performance Evaluation**

_____ **Promotion**

_____ **Transfer/Detail**

_____ **Leave**

<u>X</u>___ **Decisions concerning pay**

<u>X</u>___ **Decisions concerning benefits**   related to salary - TSP, pension, etc.

_____ **Decisions concerning awards**

_____ **Decisions concerning training**

_____ **Disciplinary actions (non-adverse actions i.e., reprimand, suspension for less than 14 days etc.)**

_____ **Furlough of 30 days or less**

_____ **Removal**

_____ **Reinstatement**

_____ **Involuntary Retirement**

_____ **Restoration**

_____ **Reemployment**

_____ **Any other significant change in duties or responsibilities or working conditions**

X
____ **Other** Failure to carry out promises (explicit, implied, or otherwise) made on the record to Congress, and lack of full compliance with the letter and spirit of federal law and regulations.

---

**14. Collective Bargaining or Labor Relations**

____ **Collective bargaining agreement (appropriate units)**

____ **Collective bargaining issues (representation elections)**

____ **Negotiated grievance procedure**

____ **Right to representation**

____ **Labor organization (Unfair Labor Practices)**

---

**15. Do you have a representative or legal counsel?**

**Yes** _____    **No** X _____

---

**16. If the answer to question 15 is "Yes", please provide the name, address and telephone number of your representative or legal counsel.**

---

**17. Name(s) and Title(s) of person(s), if any, responsible for the actions alleged.**

David Walker, Comptroller General of the United States (CG); Gene Dodaro, Chief Operating Officer (COO); and Sallyanne Harper, Chief Administrative Officer (CAO)

---

**18. Briefly describe the actions complained of and the reasons you believe the actions to be improper.  (If more space is needed, please continue on the supplemental sheet provided.)**

GAO violated the statutory rights of its employees and failed to provide employees with their rightful pay as provided for in federal law and regulations, including the GAO Human Capital Reform Act of 2004 (Public Law - 108-271, July 7, 2004).  While GAO did provide a notice to Band IIA staff that they could appeal their placement ("constructive demotion") into the newly created Band IIA immediately after the initial GAO Band II restructuring, GAO failed to provide any notice to GAO employees who were harmed by the pay decisions under GAO's new market-based compensation system.  This new pay system, which began in 2005, has harmed GAO employees in a number of ways, including by the institution of pay caps lower than the GS schedule, lower market-based salaries than would have been the case under the GS system, lower GAO across-the-board adjustments than the government-wide COLAs for 2006 and 2007, questionable performance-based compensation (PBC) amounts based on an opaque process for calculating standardized rating scores (SRS), and the failure of the CG to fulfill his commitments to guarantee inflation protection for the salaries of all GAO employees with a "meets expectations" or better rating that at least equals the consumer price index (CPI).

4

----------------------------------------------------------------------------------------------------

**19. What remedy(ies) or corrective action(s) do you seek? (If more space is needed, please continue on the supplemental sheet provided.)**

For each GAO employee who has been harmed, full reinstatement of across-the-board salary adjustments (adjusted to at least equal the GS schedule, including the locality pay differential) and applicable PBC for the rating periods covering 10/1/03-9/30/04, 10/1/04-9/30/05, and 10/1/05-10/15/06, along with appropriate corresponding adjustments with respect to benefits and subsequent salary (including interest).  Include a detailed calculation of the PBC and SRS score for the rating periods listed above that can be traced and verified using standard GAO audit methods.

----------------------------------------------------------------------------------------------------

**20. Signature**

----------------------------------------------------------------------------------------------------

**21. Date**

For further information about the GAO PAB Charge Process,  see 4 C.F.R. §§ 28.11 - 28.13.

**<u>SUPPLEMENTAL SHEET</u>**