UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

JAMES D. MOSES,               )
                                     )
               Plaintiff,      )
            v.                 )     Case No: 06-01712 (JGP)
                                     )
DAVID M. WALKER,         )
Comptroller General of the      )
U.S. Government Accountability Office, )
et al.                         )
                                     )
              Defendants.    )
                                     )

---

**Response to Inaccuracies and Omissions in**
**Plaintiff's Reply to Defendants' Notice of Objection to Subpoenas**

Plaintiff's Reply to Defendants' Notice of Objection to Subpoenas is replete with gross inaccuracies and material omissions. Instead, Plaintiff's Reply contains a plethora of unsupported and untrue statements. The inaccuracies and speculations are so substantial, numerous and utterly misleading that Defendant is compelled to file the following response and to correct the most egregious errors.[1]

### 1)     Defendant did not grant Plaintiff relief in his claims

Plaintiff's Reply to Defendants' Objections to Subpoenas begins by stating that Plaintiff was "unilaterally granted substantial relief in his claims, being restored in grade to the position from which he was demoted, paid a bonus approximately equal to his denied cost of living increase (cola) and granted a raise in pay." Pl.'s Reply to Defs'. Objn. to Subpoenas at 1. This statement is untrue. Rather, on December 22, 2006, Plaintiff applied for competitive placement

---

[1] To the extent that Defendant's Notice is deemed a motion for protective order, Plaintiff's "Reply" is properly characterized as an "opposition" under the Court's Local Rule, and the "response" constitutes Defendant's "reply" under LCvR 7(d).

into Band IIB, in accordance with the application procedures set forth in the announcement of placement opportunities provided to eligible staff.  Defendants' Exhibit 1 contains the Announcement of Band IIB Competitive Placement Opportunities, which sets forth the procedures and requirements for applying for such opportunities.  Defendants' Exhibit 2 contains Plaintiff's application for Announcement Number FMA-07-30, which Plaintiff prepared in accordance with the procedures set forth in the Announcement.  Ten applicants, including Plaintiff, were ultimately selected for competitive placement into Band IIB under Announcement Number FMA-07-30.  Each of these applicants, including Plaintiff, was selected pursuant to the procedures set forth in GAO Order 2335.8, "Merit Selection Plan for Analyst and Specialist Positions" (May 24, 2006), after having submitted applications seeking competitive placement. Def. Ex. 3.

Because each band at GAO is subject to a different salary range, when Plaintiff moved into a higher band, he became subject to a new salary range.  Although Plaintiff may have been ineligible for a COLA when he was a Band IIA because his salary exceeded the salary cap for Band IIA, upon placement into Band IIB (which has a higher salary cap), Plaintiff became again eligible to receive COLAs.

Plaintiff applied for competitive placement into Band IIB and was selected pursuant to GAO's procedures governing competitive placement.  Upon placement into that higher band, the usual effects upon an employee's salary took place.  Thus, Plaintiff's claim that he was "unilaterally granted substantial relief" is misleading and omits pertinent facts.

**2)      12 GAO employees had different claims in front of the PAB**

The Plaintiff asserts that there were "12 identically situated complaints" before the GAO

Personnel Appeals Board ("PAB") that recently settled their claims.  Pl.'s Reply to Defs'. Objn.

to Subpoenas at 1.  Their cases, unlike the case at bar, did not involve allegations of age

discrimination - as the Plaintiff admits -  "the PAB did not mention age discrimination."  Pl.'s

Reply to Defs'. Objn. to Subpoenas at 9.  Therefore, those cases are fundamentally different

from the Plaintiff's case and to claim that there were "12 identically situated complaints" is a

misstatement.

**3)      Plaintiff merely speculates on the reasons for settlement in a different case**

In Plaintiff's Reply, Plaintiff sets forth his unsupported speculation that GAO was

forced to settle the cases brought by 12 employees in order not to disclose the contents of

testimony contained in six depositions taken in that case.  Pl.'s Reply to Defs'. Objn. to

Subpoenas at 1.  Plaintiff's statement is again mere speculation and he can present no evidence

to support his speculation.

**4)      Plaintiff's speculations for contents of depositions are wrong**

Plaintiff also claims that the contents of the depositions taken in the PAB cases are

essential to the resolution of the issues central to the case at bar -- whether Plaintiff timely filed

his appeal and whether the Band II restructuring was the result of age bias.  Again, Plaintiff is

mistaken.

*i)      Timeliness was not an issue in the depositions*

With regard to the issue of timeliness, the deposition testimony sought by Plaintiffs is of

no or little relevance.  The petitioners in the cases before the PAB followed a different appeal

procedure, and therefore, were subject to different time frames.  They appealed directly to the

PAB and did not file claims with GAO's Office of Opportunity and Inclusiveness ("O&I"), nor did they seek relief in Federal District Court. Because they chose a different route of appeal, the time frames applicable to Plaintiff under the ADEA and GAO's discrimination complaint process were inapplicable to the PAB petitioners. As Plaintiff recognizes "those 12 employees exercised their alternative option to request relief down the administrative path." Pl.'s Reply to Defs'. Objn. to Subpoenas at 9. Thus, the PAB petitioners were required to follow the procedures applicable to PAB claims. See 4 C.F.R. 28.11(b).

Plaintiff, in contrast, was required to follow the procedures for the filing of age discrimination claims. See 29 U.S.C. § 633a(b); 29 U.S.C. § 633a(c). Because Plaintiff alleges age discrimination, he was required to either timely file a complaint of discrimination with GAO's Office of Opportunity and Inclusiveness, or to timely file a Notice of Intent to Sue, then bring a timely claim in federal court. See 29 U.S.C. § 633a(b); 29 U.S.C. § 633a(c). Plaintiff Moses failed to timely file a Notice of Intent to Sue and failed to file a complaint with the District Court within the statue of limitations. MTD, p. 4-6.

Moreover, GAO did not dispute the PAB petitioners' timeliness as the PAB petitioners all timely filed their claims. Thus, the issues of timeliness and filing deadlines were not discussed during the depositions taken in those cases. Therefore, Plaintiff's speculation that the materials sought will "impeach GAO's defenses of untimeliness by Moses" is without merit.

ii)    ***Age discrimination was not claimed and therefore not likely discussed in the depositions***

Plaintiff also claims that the contents of the depositions will show that age drove the GAO decision to split Band II into Bands IIA and IIB.  Pl.'s Reply to Defs'. Objn. to Subpoenas at 2.  This statement is purely speculative and quite doubtful.  None of the PAB cases for which Plaintiff seeks the depositions involved claims of age bias or any other form of discrimination, and age bias/age discrimination would likely not have been discussed in the depositions.  Plaintiff's statement that the deposition testimony shows that GAO's decisions were based on age bias is nothing more than fanciful speculation.

**5)    Defendant GAO disputes that age was a factor in the restructuring**

In addition, Plaintiff claims, throughout his Reply, to have submitted evidence and arguments that have gone unchallenged by GAO.  These statements are inaccurate.  First, Plaintiff states that "evidence proffered by Moses, <u>which has not been challenged</u>, demonstrates . . . the true reason for the demotions is a strong age bias."  Pl.'s Reply to Defs'. Objn. to Subpoenas at 2 (emphasis added).  This statement is untrue.  GAO has vehemently and repeatedly challenged Plaintiff's allegations of age bias and his claims that the Band II restructuring constituted a demotion.  <u>See, e.g.,</u> Def. Mot. to Dismiss; Def. Reply to Opposition to Mot. to Dismiss; and Def. Response to Surreply.  Next, Plaintiff states that, "in light of the unchallenged statistics, no one can deny that age discrimination was present."  Pl.'s Reply to Defs'. Objn. to Subpoenas at 9.  Again, Plaintiff is mistaken.  GAO has challenged all of Plaintiff's allegations regarding the presence of age discrimination and his claim that his allegations are supported by statistics.

**6)    Defendant GAO challenges the timeliness of Plaintiff Moses' filing**

Plaintiff also claims that his statement of the facts regarding the timing of his administrative filing are "unchallenged" and that if his statements were not true, the Comptroller General himself would have provided sworn evidence to the contrary. Pl.'s Reply to Defs'. Objn. to Subpoenas at 8. Again, Plaintiff has failed to correctly represent the facts. GAO has vigorously contested Plaintiff's claim that he timely filed by providing, among other things, GAO Order 2900.3, "Band II Restructuring" (Nov. 4, 2005), and a sworn affidavit from Ms. Barbara Simball, who was present during the Comptroller General's February 16, 2006 telephone conversation with Plaintiff. See, e.g., Defs'. Response to Sur-reply in Sup. of Defs'. Mot. to Dismiss. The exhibits submitted by GAO make clear that the February 16, 2006 telephone conversation was not a second reconsideration by the Comptroller General and that the Comptroller General's February 2, 2006 letter constituted his one and only reconsideration decision. See id.

### 7) Defendant GAO provided supporting relevant and credible evidence

Plaintiff also states that GAO's Motion to Dismiss was unsupported, "devoid of any supporting evidence utterly bare, and based upon only 'lawyer talk.'" Pl.'s Reply to Defs'. Objn. to Subpoenas at 11. If by "lawyer talk," Plaintiff is referring to citations to relevant statutes and case law, then perhaps Defendants' Motion to Dismiss did contain "lawyer talk." Defendants' Motion to Dismiss and subsequent filings were not "devoid of supporting evidence." On the contrary, Defendants' motions contained appropriate references to relevant statutes and case law and included numerous exhibits in their filings with this Court. For example, Defendants have supplied, among other things, the affidavits of Ms. Crawford (Def. Mot. to Dismiss), Ms. Anderson (Def. Reply in Sup. of Mot. to Dismiss), and Ms. Simball (Def. Response to Sur-reply).

**8)    Defendant GAO disputes existence of secret database**

With regard to Plaintiff's claims of a conspiracy theory involving a "secret database" (<u>see</u> Pl.'s Reply to Defs'. Objn. to Subpoenas at 3, n.1) Defendants have explained, on several occasions, that Plaintiff's claims in this regard are merely a reference to a discovery dispute in a separate case pending in this Court, <u>Chennareddy v. GAO</u>, Case No. 87-3538(JGP).  The parties in that case have extensively briefed the alleged secret database claims pursuant to Chennareddy's Motion for Additional Discovery, and GAO has vigorously contested the Plaintiff's claims with regard to that issue.  Plaintiff's claims about a "secret database" are both meritless and irrelevant to the instant case.

**9)    Plaintiff speculates that GAO attempted to restrict PAB's actions**

In continuing his speculations about conspiracies, Plaintiff states that the PAB was ordered by GAO management not to consider age violations and not to make the PAB case a class action.  These allegations are, quite simply, without evidentiary support.  They have no basis in fact and should be disregarded completely.

**10)    Defendant GAO filed for a Motion for a Protective Order**

Plaintiff also alleges that GAO has shirked its duty to engage in discovery.  In particular, Plaintiff states that "instead of . . . filing for a protective order [with regard to the subpoenaed deposition transcripts] GAO merely notified undersigned counsel that it objected."  Pl.'s Reply to Defs'. Objn. to Subpoenas at 5.  This statement is another example of Plaintiff's fabrications of alleged fact.  Contrary to Plaintiff's statement, Defendants did file a Motion for Protective Order on January 18, 2007.  That Motion is still pending before this court.  In addition, on May 3, 2007, Defendants filed a Notice of Defendants' Opposition to Subpoenas, which stated, "to the extent the Court deems Plaintiffs' 'Notice of Serving Subpoenas and Consent Motion An

Emergency Hearing' to be a motion to compel, Defendants respectfully request that the Court

treat the instant Notice as their opposition thereto and their <u>request for a protective order</u> under

Fed. R. Civ. P. 26(c). Notice of Defs' Opp. to Subpoenas at 1 (emphasis added).

May 24, 2007                     Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

Government Accountability Office
Staff Attorney
Cherie Owen

## Cycle I - 2007 Specialist IIB Competitive Placement Opportunities

| Band IIB Specialist Opportunities OPEN PERIOD: 12/11/06 – 12/22/06 | | | | |
|---|---|---|---|---|
| Announcement # (Team) | Series | Title | # of opportunities | Location |
| ARM-07-18  see page 12-14 | various | various | * | ARM (Headquarters) |
| EWIS-07-29  see page 15 | 0110 | Senior Economist | 1 | Any EWIS location |
| FMA-07-30  see page 16 | 0511 | Senior Auditor | 10 | Any FMA location |
| FMA-07-31  see page 17 | 0347 | Senior Analyst (Forensic Audit) | 1 | Any FMA location |
| HC-07-32      see page 18 | 2210 | Senior Information Technology Specialist | 1 | Any HC location |
| IT-07-33      see page 19 | 1550/2210 | Senior Information Technology Analyst | 7 | Any IT location |

### AREA OF COMPETITION:

GAO-Wide

### ELIGIBILITY REQUIREMENTS:

Must be full or part-time employees on permanent appointments in an analyst or specialist position.  In addition, employees must have a minimum of 52 weeks of GAO experience at Band IIA by the effective date of the competitive placement (3/4/07).

If applicable, applicants for Band IIB specialist positions must meet approved selective placement factors and government-wide qualification requirements (see announcement page referenced above).

### HOW TO APPLY:

Submit all required paperwork via email to msp@gao.gov.  You must include the announcement number of the position which you are applying for BQ determination in the subject line of the email.  All paperwork must be submitted to the email address by COB (7:00 p.m. Eastern time) December 22, 2006.  INCOMPLETE OR LATE APPLICATIONS WILL NOT BE CONSIDERED.

Required Paperwork:

1.  GAO Form 537 (Employee Profile) or its equivalent (Resume).

2.  On separate sheets, written statements that address the assessment factors in paragraphs 4(a) (1) and (3) of Chapter 4, GAO Order 2335.8, MERIT SELECTION PLAN FOR ANALYST AND SPECIALIST POSITIONS.

    - Paragraph 4(a) (1) Roles and Responsibilities: This statement should describe your potential to immediately and effectively perform the roles and responsibilities of the IIB position to a significant degree and on a recurring basis; limited to 1000 characters (approximately one half page in length).  Panel members will use the roles and responsibilities set forth in Appendix 2, with a focus on paragraph 2(a) of Appendix 2 of GAO Order 2335.8.

    - Paragraph 4(a) (3) Performance Potential: This statement should describe your potential to immediately perform the "Developing People" competency and the specific Investing Resources work activities contained in the Achieving Results and Collaborating with Others competencies for the Band IIB position as provided in Appendix 3 of GAO Order 2335.8; limited to 1000 characters (approximately one half page in length).

3.  If positions have selective placement factor(s), you must submit an addendum addressing how you possess and have demonstrated the relevant selective placement factor(s) described on the announcement.

4

**From:**       James D Moses
**To:**         msp@gao.gov
**Date:**       12/22/2006 3:43 PM
**Subject:**    FMA-07-30
**Attachments:** gf537[1].pdf.111.pdf.112.pdf; New Microsoft Word Document (35).doc

James D. Moses

Addendum to Band IIB Promotion
Announcement # FMA-07-30

Roles and Responsibilities

I have established myself as a leader in GAO.  Over the last four years I have
been working in the Financial Management and Assurance (FMA) issue
area.  In FMA I have had leadership roles on several assignments.  On the
DOD purchase card work I *was* responsible for the internal control section
at three Air Force bases.  I was also responsible for internal control on the
IRS work.  On these assignments I was responsible for collecting,
presenting, summarizing and reporting on findings and making
recommendations.  I supervised several staff members and dealt effectively
with management in GAO and the agencies.  In more recent work looking at
managerial cost accounting (MCA) in 10 large federal agencies, I led the
work at two agencies.  Currently, I am AIC on a capping report for the MCA
work at the 10 agencies we visited.  I believe that I have been a very
effective leader in GAO and I am certain that I can immediately assume and
carry out leadership roles.  From 1984 to 2002 I served *as a* GS-14 program
manager responsible a number of issue areas.  In this role I carried out
multiple assignments simultaneously and had up to 10 people reporting to
me.

Performance Potential

I believe my performance potential has been well established in GAO.
During a large part of my long career in GAO I supervised up to ten people
as manager of an issue area.  I was responsible for developing and providing
leadership to staff on multiple assignments.  Many times difficult staff was
assigned to me because of my ability to teach and counsel them to become
productive members of GAO.  My ability to work well with others inside and
outside of GAO has always been very strong.   Over the last four years my
work on purchase cards in FMA has been strong and consistent.  I identified
many internal control weaknesses over purchase cards that resulted in
many cases of potential fraud and abuse.  I also identified many internal
control weaknesses in IRS and made appropriate recommendations.  In my

most recent work on MCA at large federal agencies I have demonstrated strong abilities in all of the performance categories. Additionally, as a civil rights counselor and mediator, I advised employees and management about personnel issues. Further, I was involved in recruiting activities and was the head recruiter at one university.

United States Government Accountability Office

# GAO Employee Profile

| 1. Name of Employee (last, first, mi.) | | 2. Telephone Number | |
|---|---|---|---|
| James D. Moses | | 213/830-1085 | |
| 3. Employer and Address or GAO Unit | | 4. Dates Employed | |
| Los angeles Field Office | | From: July 2006    To: present | |
| 5. Title of Position (if federal, grade/series) | 6. Name of Immediate Supervisor | 7. Telephone Number | |
| Senior Analyst | Glenn Slocum | 303-572-7332 | |

**8. Duties, Responsibilities, and Major Achievements**

During this period I continued working on managerial cost accounting (MCA) issues in large federal agencies. LA led the MCA work at the Department of Agriculture (USDA). We made eight recommendations to the Secretary to promote the implementation and use of reliable MCA methodologies to better inform managerial decision making in the Department and its components. I was instrumental in identifying and presenting the finding that USDA had a cultural realment resulting in managers managing the budget rather than using costs to make more informed decisions. This is an ongoing problem that some agencies have to resolve to successfully implement MCA. Our work at USDA was comprehensive, . thorough, complete and timely. When we presented our findings the agency accepted them with virtually no suggested changes. I was also named as the AIC on a capping report for MCA activities at the 10 large federal agencies that were included in our MCA reviews. This is a very challenging assignment that requires creativity from the team in order to present the value of using cost to make better decisions and thus, generate more support for MCA in the federal government. The client has expressed interest in this report and we are focusing on providing an accurate, timely, and high quality product. One of the most challenging issues in developing the capping report was to determine how to move federal agencies forward in implementing and using MCA to make more informed decisions when spending taxpayers dollars. I suggested using OMB's Presidential Management Agenda program which requires improvement in financial management. This has been incorporated into the capping report. We have already drafted the capping report and it has been sent to the Director for comments. At this point, we are ahead of schedule and I am confident that we will have a very good product.

| 9. Employer and Address or GAO Unit | | 10. Dates Employed | |
|---|---|---|---|
| Los Angeles Field Office | | From: January 2005    To: July 2006 | |
| 11. Title of Position (if federal, grade/series) | 12. Name of Immediate Supervisor | 13. Telephone Number | |
| Senior Analyst | Glenn Slocum | 303-572-7332 | |

**14. Duties, Responsibilities, and Major Achievements**

Since January 2005 I have been working on an assignment looking at Managerial Cost Accounting (MCA) practices in large federal agencies. This work has turned out to be very interesting, challenging and valuable. It was requested by the Subcommittee on Government Management, Finance, and Accountability. We are basically trying to determine how federal agencies generate managerial cost accounting information and how they use this data to make decisions. We have two teams, one out of Los Angeles and the other out of Denver. Each team has been responsible for reviewing several large federal agencies. Los Angeles lead the reviews at the Departments of Veterans Affairs (VA) and Transportation (DOT) and the Social Security Administration (SSA). We have alternated the lead role in reviewing federal agencies. At these federal agencies I have been responsible for interviewing officials, collecting and analyzing documents, and writing summaries and briefing slides. We have had some major accomplishments from this work and the Subcommittee is very interested in our findings. At VA, for example, we made five recommendations to the Secretary for improving the agency managerial cost accounting practices. One recommendation I was responsible for was that VA exercise more effective departmental-level leadership to ensure implementation of MCA. In addition to leading the review at DOT. I was responsible for identifying and recommending that the agency develop and disseminate a department-wide policy on MCA. We made four other recommendations to DOT management for improving MCA. SSA was far ahead of other agencies in developing and using MCA. I felt particularly gratified in suggesting and arranging a meeting for SSA to share its MCA experience with DOT, especially the MCA policy development. An official told me that DOT improved it draft policy after meeting with SSA officials.

| 15. Employer and Address or GAO Unit | 16. Dates Employed | |
|---|---|---|
| Los Angeles Field Office | From: March 2002 | To: Jan. 2005 |

| 17. Title of Position (if federal, grade/series) | 18. Name of Immediate Supervisor | 19. Telephone Number |
|---|---|---|
| Senior Analyst | John Kelly and others | 202/512-6926 |

**20. Duties, Responsibilities, and Major Achievements**

My work during this period dealt primarily with DOD purchase cards and Internal Controls at IRS. On the purchase card reviews I was responsible for leading major segments of the work. I was responsible for collecting, analyzing, and presenting information in summary and report to the Congress on the internal controls over use of purchase cards at three Air Force bases. We identified significant control weaknesses that made the Air Force vulnerable to fraud, waste, and abuse. I was instrumental in establishing that tone at the top was crucial in effectively managing and controlling the use of government purchase cards. We made several recommendations to strengthen DOD and the Air Force controls over purchase cards. On the IRS internal control work I had a lead role in carrying out this hugh effort. In addition to leading the work at one site, I was responsible for coordinating, consolidating, and summarizing the work from seven other sites. I was responsible for doing the initial analysis on all of the findings and presenting the information to the team for concurrence. I drafted the internal control section with suggested recommendations for the IRS Consolidated Financial Statement report for 2004. I was responsible for supervising two staff members and providing guidance to several staff in other units.

| 21. Employer and Address or GAO Unit | 22. Dates Employed | |
|---|---|---|
| Los Angeles Field Office | From: 1984 | To: 2002 |

| 23. Title of Position (if federal, grade/series) | 24. Name of Immediate Supervisor | 25. Telephone Number |
|---|---|---|
| Issue Area Manager | Various | |

**26. Duties, Responsibilities, and Major Achievements**

For most of this period I was a GS-14 audit manager, responsible for multiple assignments simultaneously with up to ten staff member reporting to me. I was responsible for an several issue areas including, Housing and Community Development, IRS, and Postal Services which required many meetings with GAO and agency management. I participated in reviews by collecting and analyzing data, interviewing staff and agency management personnel, and writing and reviewing reports. I was always highly regarded as a leader for staff even those who were considered difficult to work with.

| 27. Employer and Address or GAO Unit | 28. Dates Employed | |
|---|---|---|
| | From: | To: |

| 29. Title of Position (if federal, grade/series) | 30. Name of Immediate Supervisor | 31. Telephone Number |
|---|---|---|
| | | |

**32. Duties, Responsibilities, and Major Achievements**

**33. Other Knowledges, Skills, and Abilities - List and describe how you obtained any knowledges, skills, and abilities that add to your qualifications.**

Throughout my GAO career I have been involved in collateral duty activities. For many years I served as a civil rights counselor and mediator. I gained valuable knowledge and experience in these roles and was able to effectively counsel both GAO employees and management on issues dealing with employee rights. I was also heavily involved in recruiting highly qualified candidates for GAO, especially minority applicants.

**34. Professional Development - List memberships and offices held in professional associations, civic or volunteer organizations, GAO groups, etc., that add to your qualifications. Also, list professional certifications and/or publications and dates published.**

### 35. Education

| Name of College or University Attended | Type of Degree (B.A., etc.) | Major Field |
|---|---|---|
| Southern University | B.A | Accounting |
| | | |
| | | |
| | | |

### 36. Training

| Internal GAO Training (Name of Course) | Dates From: | To: |
|---|---|---|
| I have had many internal and external training courses during more then | | |
| 40 years of service at GAO. | | |
| | | |
| | | |
| | | |
| | | |

| External Training (Name of Course) | Name of Facility/School | Dates From: | To: |
|---|---|---|---|
| AGA Annual Educational Conf. | | 4/26/06 | |
| | | | |
| | | | |
| | | | |
| | | | |

**37. Awards**

| Type and Source of Award | Date | Basis for Award (Indicate if group award) |
|---|---|---|
| I have received many awards while in GAO, the latest was the | | |
| Managing Director's Award for participation and contribution to | | |
| work on Managerial Cost Accounting. | 2006 | Team |
| | | Team |
| For work on DOD purchase cards. | 3/2003 | |
| I received a GAO-wide award for my work on EEO issues. | | |
| | | |

| 38. Item | 39. Space for additional information. Indicate item number to which information applies. |
|---|---|
| | |

**40. Certification**
I certify that all statements are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I understand that any falsification may be grounds for disciplinary action.

| 40a. Signature of Employee (in ink) | 40b. Date |
|---|---|
| | |

GAO Form 537 (Rev. 8/04)

**United States**
**Government**
**Accountability Office**



# Order

| 2335.8 |
|---|

MERIT SELECTION PLAN FOR ANALYST AND
SPECIALIST POSITIONS

**May 24, 2006**

Initiated by:      **Human Capital**
**Office**

# TABLE OF CONTENTS

| Chapter | Paragraph | Title | Page |
|---------|-----------|-------|------|

**CHAPTER 1.    GENERAL PROVISIONS**

1.    Purpose, Scope, and Applicability ................................................................. 1

2.    Supersession ............................................................................................... 1

3.    References ................................................................................................... 2

4.    Policy ......................................................................................................... 2

5.    Definitions .................................................................................................. 2

6.    Use of Competitive Procedures .................................................................... 3

7.    Time-Limited Change to Higher Level and Placement to Band IIB ............. 4

8.    Workforce Planning Process ........................................................................ 5

9.    Job Opportunity Announcement ................................................................... 5

10.  Area of Consideration and Minimum Opening Periods ................................ 5

11.  Absent Employees ....................................................................................... 5

**CHAPTER 2.    ELIGIBILITY REQUIREMENTS FOR CHANGE TO HIGHER LEVEL (BAND IIA AND BAND III)**

1.    Eligibility Requirements for Analyst Positions ............................................ 6

2.    Eligibility and Qualification Requirements for Specialist Positions .............. 6

**CHAPTER 3.    ELIGIBILITY REQUIREMENTS FOR COMPETITIVE PLACEMENT TO BAND IIB**

    1.   Eligibility Requirements for Analyst Positions ............................................. 8

    2.   Eligibility and Qualification Requirements for Specialist Positions.............. 8

**CHAPTER 4. APPLICATION AND PANEL PROCEDURES FOR CHANGE TO HIGHER LEVEL (BAND IIA AND III)**

    1.   Application Procedures ................................................................9

    2.   Panel Procedures ........................................................................9

    3.   Panel Rating and Ranking for Change to a Higher Level.............................9

    4.   Panel Rating and Ranking for Placement to Band IIB.........................10

    5.   The Best-Qualified (BQ) Candidates .........................................................11

    6.   Employee Notification of Best-Qualified Status...........................................12

    7.   Selection.....................................................................................12

    8.   Employee Notification of Selection............................................................13

    9.   Feedback....................................................................................13

    10. Applicants' Review Rights.......................................................................14

    11. Applicants' Appeal Rights........................................................................14

**CHAPTER 5. RESPONSIBILITIES**

    1.   Chief Human Capital Officer.................................................... 15

    2.   Panel Members ......................................................................... 15

    3.   Panel Chairpersons................................................................... 15

    4.   Selecting Officials..................................................................... 16

    5.   Managing Director, Office of Opportunity and Inclusiveness...................... 16

**APPENDIX 1.**    **INTERVIEW GUIDELINES** ......................................................... 17

**APPENDIX 2.**    **BAND IIB ANALYST AND SPECIALIST ROLES AND RESPONSIBILITIES**.................................................................. 18

**APPENDIX 3.**    **RATING CANDIDATES FOR COMPETITIVE PLACEMENT TO BAND IIB** .........................................................................20

United States

Government Accountability

Office



# Order

| 2335.8 |
| --- |

May 24, 2006

Subject:   **MERIT SELECTION PLAN FOR ANALYST AND SPECIALIST POSITIONS**

---

## CHAPTER 1.  GENERAL PROVISIONS

1.  <u>**PURPOSE, SCOPE, AND APPLICABILITY.**</u>

This notice contains the basic requirements governing the procedures for the change to higher level of employees from Band I to Band IIA and Band IIB to Band III, and the competitive placement of employees from Band IIA to Band IIB.  It only applies to Analyst and Specialist positions.

2.  <u>**SUPERSESSION.**</u>

This order supersedes GAO Order 2335.8, "Merit Selection Plan for Analyst and Specialist Positions" (Nov. 9, 2005).  Major changes include the following:

a. creates a section entitled "Definitions";

b. modifies when competitive procedures are not required;

c. adds a minimum opening period for job opportunity announcements;

d. eliminates the provision that did not require panels to "Best-Qualify" applicants for Analyst positions when less than 10 applicants applied for the position;

e. requires panels to Best-Qualified all applicants for Specialist positions;

f.  changes the procedure to be used with respect to rating candidates for change to higher level by requiring that candidates be assessed relative to each other;

g. describes the eligibility requirements and procedures for competitive placement to the Band IIB level;

h. codifies the ability of selecting officials to speak to the Managing Directors of persons who have applied from outside their team or unit when making selections;

i. abolishes winnowing panels and requires structured interview questions if interviews are held; and

j. describes the role of the Office of Opportunity and Inclusiveness.

## 3.  REFERENCES.

a. GAO Order 0010.1, "GAO Orders, Operational Directives and Manual."

b. GAO Order 2250.1, "Human Capital Management in the U.S. Government Accountability Office."

c.  GAO Order 2351.1, "Workforce Restructuring Procedures for the GAO."

d. GAO Order 2352.1, "Reemployment Rights for Non-GAO Service."

e. GAO Order 2353.1, "Reemployment Rights of Members of the Uniformed Services."

f.  GAO Order 2432.1, "Dealing With Unacceptable Performance."

g. GAO Order 2752.1, "Adverse Actions."

h. GAO Order 2810.1, "Line-of-Duty Injury Benefits for GAO Employees Under the Federal Employees' Compensation Act."

## 4.  POLICY.

The changes to higher level and competitive placements covered by this order will be made on the basis of merit from among the best-qualified (BQ) applicants from appropriate sources.

## 5. DEFINITIONS.

In this order:

a. **Analyst** positions mean positions in the 347 occupational series.

b. **Area of Consideration** means the organizational and/or geographic area in which an employee must work to apply for the changes to higher level or competitive placements covered by this order.

c. **Change to higher level** means the movement of an employee from one band to a higher band in the same pay plan or from a band in one pay plan to a band in a different pay plan that has greater earning potential.  This does not include any movement from Band IIA to Band IIB.

d. **Change to lower level** means the movement of an employee from one band to a lower band in the same pay plan or from a band in one pay plan to a band in a different pay plan that has lesser earning potential. This does not include any movement from Band IIB to Band IIA.

e.  Except for staff assigned to the Professional Development Program (PDP) as their **home unit** means the unit/team where an employee's position of record is officially located, as indicated on his or her most recent Notification of Personnel Action (Standard Form 50).  PDP staff will select their home unit which must be a unit through which they have rotated within 1 year from the effective date of the promotion.

2

f.  **Placement to Band IIB** means the movement from Band IIA to Band IIB in the Analyst Banded system.

g.  **Placement to Band IIA** means the movement from Band IIB to Band IIA in the Analyst Banded system. This action is typically based upon an employee's personal request, workforce restructuring, or performance reasons.

h.  **Selecting Official** means the unit head or designee.

i.  **Selective Placement Factor** means a knowledge, skill, or ability that is essential for successful performance in the position.

j.  **Specialist positions** means positions that are covered by the banded Analyst system and are in an occupational series other than GAO Analyst PE-347.

6.  **USE OF COMPETITIVE PROCEDURES.**

a.  When Competitive Procedures Are Required.  Unless otherwise indicated in this order, the competitive procedures in this order must be used for the following personnel actions:

(1)  a higher level change to Band IIA or Band III;

(2)  time-limited higher level change to Band IIA or Band III for more than 120 days;

(3)  placement to Band IIB; and

(4)  time-limited placement to Band IIB for more than 120 days; and

b.  When Competitive Procedures Are Not Required.  The competitive procedures of this order are <u>not</u> required in the following cases:

(1)  lateral placement to a banded position at the same band level;

(2)  change to higher level when the employee was previously selected competitively on a time-limited basis for such level and the original competitive procedures made clear to all potential candidates that the temporary appointment might become permanent (this also applies to placements to Band IIB);

(3)  change to lower level or placement to Band IIA;

(4)  change to higher level that was previously held on a permanent basis from which the employee had been demoted for other than performance or conduct reasons. Such an employee must be considered for noncompetitive change to higher level or placement before any competitive selection procedures are instituted (this also applies to placements to Band IIB);

(5)  a position change under workforce restructuring regulations when the action is technically termed a change to higher level within the band due to a pay increase (this also applies to placements to Band IIB);

(6) reemployment of a former employee in a position at the highest level within the band the employee previously held at GAO when the employee is exercising reemployment rights upon return from military service, an international organization, or an executive branch during an emergency;

(7) appointment or reinstatement to a permanent or time-limited position when the appointment is not at the higher level within the band or to one with higher earning potential than a position previously held in the federal government, and where the employee did not lose the position because of conduct or performance reasons;

(8) change to higher level within the band resulting from the reclassification of a position without significant change in duties and responsibilities due to the issuance of a new classification standard or the correction of an initial classification error (this also applies to placements to Band IIB);

(9) a change to an employee's position resulting from the position being classified at a higher level within the band because of additional duties and responsibilities (this also applies to placements to Band IIB); and

(10) temporary change to higher level within the band for 120 days or less (this also applies to placements to Band IIB).

c.  When competition would ordinarily be required, the Chief Human Capital Officer (CHCO) may approve a non-competitive change to higher level to Band IIA or Band III and non-competitive placement to Band IIB in rare circumstances such as when an employee is granted priority consideration as a remedy for a harmful error.  In each case, the action shall be documented, in writing, stating the reason(s) why the action was approved.

## 7.  TIME-LIMITED CHANGE TO HIGHER LEVEL AND PLACEMENT TO BAND IIB.

a.  GAO may make time-limited changes to higher level and placements to Band IIB following the competitive procedures of this order for a specified period of not more than 5 years, which period may be extended under unusual circumstances.  However, as indicated in ch. 1, para. 6(b)(10), a time-limited change to higher level or placement to Band IIB for 120 days or less does not require competitive procedures.  (Prior service during the preceding 12 months under noncompetitive time-limited changes and details to a higher level including noncompetitive placements to Band IIB are counted toward the 120 day limit when occurring within 12 months preceding the current action).

b.  The 5-year limit applies to the total continuous time an employee serves on a time-limited change to higher level or placement to Band IIB without new competition.  If an employee is noncompetitively changed to higher level or placed at Band IIB for 120 days and the change is then extended after competition has been held, the first 120 days count toward the 5-year limit.

c.  An employee shall be given advance written notice of the conditions of any time-limited change to higher level, or placement to Band IIB, when it is a higher level than previously held, regardless of its length.  If advance notice is not possible, it must be provided as soon as possible after the change to higher level or placement at Band IIB occurs.  The notice must include:

(1) the time limit of the change to higher level or placement to Band IIB;

(2) the reason for the time limit;

      (3) the requirement for competition beyond 120 days, where applicable; and

      (4) a statement that the employee may be returned at any time to his/her former position or to a different position at the same level and pay plan and that return is not subject to the procedures in GAO Order 2351.1, "Workforce Restructuring Procedures for the Government Accountability Office," GAO Order 2432.1, "Dealing with Unacceptable Performance," or GAO Order 2752.1, "Adverse Actions."

    d. A time-limited change to higher level or placement to Band IIB may be made permanent without further competition provided the position was advertised through a competitive vacancy announcement that notified potential candidates that the change might become permanent.

    e. An employee who receives a time-limited change to higher level or placement to Band IIB is assessed at his/her permanent band. The employee must meet all requirements for the permanent band or level including qualification requirements.

## 8. WORKFORCE PLANNING PROCESS.

Opportunities for changes to higher level and placements to Band IIB are determined on the basis of an annual workforce planning process.

    a. The Chief Administrative Officer (CAO) issues instructions to teams/units to submit proposals for the number of Analyst and Specialist positions authorized to be filled at each band.

    b. The Human Capital Office (HCO) provides technical assistance in describing the duties and responsibilities of new positions, establishing the qualifications required to fill positions, and approving selective placement factors for positions.

## 9. JOB OPPORTUNITY ANNOUNCEMENT.

The HCO publishes a job opportunity announcement covering information on eligibility and application procedures. The comprehensive job opportunity (vacancy) announcement will list the number of opportunities, band level, locations, and types of positions. It also will identify the area of consideration by geographic location.

## 10. AREA OF CONSIDERATION AND MINIMUM OPENING PERIODS.

Vacant positions may be announced unit/team-wide, headquarters-wide or GAO-wide. If the area of consideration is unit/team-wide, the applicant must work in the unit/team identified. If the area of consideration is headquarters-wide, the applicant may work in any team/unit, but must work at headquarters. If the area of consideration is GAO-wide, the applicant may work in any team/unit regardless of geographic location. The announcement must be open for a minimum of 10 calendar days.

## 11. ABSENT EMPLOYEES.

Employees temporarily absent in the uniformed services, in an international organization, on Intergovernmental Personnel Act (IPA) assignments, or because of a compensable injury that does not exceed 1 year are considered for changes to higher level and placements to Band IIB only when they apply for specific announcements. Employees who are absent for other legitimate reasons, such as leave, detail, official travel, or training, also receive consideration for changes and placements if they apply.

## CHAPTER 2. ELIGIBILITY REQUIREMENTS FOR CHANGE TO HIGHER LEVEL (BAND IIA AND BAND III)

**1. ELIGIBILITY REQUIREMENTS FOR ANALYST POSITIONS.**

In order to apply for Analyst positions, employees must meet the minimum eligibility requirements set forth in below.

a. <u>Position Type</u>. Employees must be full or part-time employees on permanent appointment in an Analyst or Specialist position.

b. <u>Time in Band</u>.

(1) For change to Band IIA, employees must meet one of the following criteria by the effective date of the change to higher level: (a) have a minimum of 104 weeks of GAO experience in a position covered by the banded Analyst system, or (b) have 78 weeks of GAO experience in a position covered by the banded Analyst system, and 52 weeks of directly related experience prior to starting work at GAO .

(2) For change to Band III, employees must have a minimum of 52 weeks of GAO experience at Band IIB by the effective date of the change to higher level.

(3) Directly Related Experience will be determined as follows: at the time of hire, the employee's qualifications will be evaluated by the HCO to determine whether the employee possesses the requisite number of weeks of experience directly related to GAO's work (that is, experience that involves working in a collaborative environment on tasks that require the range of knowledge, skills, and abilities that enable an individual to perform GAO's audit and evaluation work at Band I). If an employee's qualifications were not evaluated at the time of hire, the employee may request a review by the HCO to determine whether he/she possesses the requisite number of weeks of experience directly related to GAO's work at the time of the effective date of the change to higher level.

(4) Effect of leave without pay (LWOP) and part-time schedules. LWOP in excess of 30 calendar days does not count toward the minimum time in band period. Part-time experience is prorated by determining the percentage of a full-time schedule worked.

**2. ELIGIBILITY AND QUALIFICATION REQUIREMENTS FOR SPECIALIST POSITIONS.**

In order to apply for Specialist positions, employees must meet the minimum eligibility and qualification requirements set forth below.

a. <u>Position Type</u>. Employees must be full or part-time employees on permanent appointments in an Analyst or Specialist position.

b. <u>Time in Band</u>.

(1) For change to Band IIA, employees must meet one of the following criteria by the effective date of the change to higher level: (a) have a minimum of 104 weeks of GAO experience in a position covered by the banded Analyst system, or (b) have 78 weeks of GAO experience in a position covered by the banded Analyst system, and 52 weeks of directly related experience prior to starting work at GAO .

(2) For change to Band III, employees must have a minimum of 52 weeks of GAO experience at Band IIB by the effective date of change to higher level.

(3) For determination of directly related experience for change to Band IIA, see para. (1)(b)(3) of this chapter.

(4) For effect of leave without pay (LWOP) and part-time schedules, see para. (1)(b)(4) of this chapter.

c. <u>Qualification Requirements</u>.  If applicable, applicants for Band IIA or Band III Specialist positions must meet approved selective placement factors and government-wide qualification requirements.

**CHAPTER 3.  ELIGIBILITY REQUIREMENTS FOR COMPETITIVE PLACEMENT TO BAND IIB**

1.  **ELIGIBILITY REQUIREMENTS FOR ANALYST POSITIONS.**

In order to apply for competitive placement to Band IIB Analyst positions, employees must meet the minimum eligibility requirements set forth below.

a. <u>Position Type</u>.  Employees must be full or part-time employees on permanent appointments in an Analyst or Specialist position.

b. <u>Time in Band</u>.

(1)  Employees must meet one of the following criteria:  (1) have been assigned to a Band IIA position on January 8, 2006, or (2) have a minimum of 52 weeks of GAO experience at Band IIA by the effective date of the competitive placement.  Experience at the Band II level may be substituted for Band IIA experience to qualify for all or a part of the 52 weeks of GAO experience.

(2)  For effect of leave without pay (LWOP) and part-time schedules, see ch. 2, para. (1)(b)(4).

2.  **ELIGIBILITY AND QUALIFICATION REQUIREMENTS FOR SPECIALIST POSITIONS.**

In order to apply for competitive placement to  Band IIB Specialist positions, employees must meet the minimum eligibility and qualification requirements set forth below.

a. <u>Position Type</u>.  Employees must be full or part-time employees on permanent appointments in an Analyst or Specialist position.

b. <u>Time in Band</u>.

(1)  Employees must meet one of the following criteria:  (1)  have been assigned to a Band IIA position on January 8, 2006, or (2) have a minimum of 52 weeks of GAO experience at Band IIA by the effective date of the competitive placement.  Experience at the Band II level may be substituted for Band IIA experience to qualify for all or a part of the 52 weeks of GAO experience.

(2)  For effect of leave without pay (LWOP) and part-time schedules, see ch. 2, para. (1)(b)(4).

c. <u>Qualification Requirements</u>.  If applicable, applicants for Band IIB Specialist positions must meet approved selective placement factors and government-wide qualification requirements.

## CHAPTER 4.  APPLICATION AND PANEL PROCEDURES FOR CHANGE TO HIGHER LEVEL (BAND IIA AND BAND III) AND COMPETITIVE PLACEMENT TO BAND IIB

### 1.  APPLICATION PROCEDURES.

HCO will notify employees of application procedures and relevant deadlines through the GAO Intranet.  All employees must apply for change to higher level or competitive placement to the team/unit advertising the position by the deadline established for the submission of applications.

a.  Applications for Analyst Positions from Staff Outside the Home Unit.  Employees who wish to apply for Analyst positions outside their home unit must be certified as best qualified by a home unit panel.  Once they are certified as best qualified, they are automatically considered for change to higher level/competitive placement opportunities in their home unit and may apply for Analyst positions in other units if they are advertised GAO-wide.  If the employees are in headquarters, they may also apply for Analyst positions advertised headquarters-wide.  Note:  Specialists are best-qualified by the team that is filling the position.

b.  Withdrawal of Applications.  Employees who accept a change to higher level or competitive placement in one unit should notify other units to which they have applied if they wish to withdraw their application.

### 2.  PANEL PROCEDURES.

a.  Panel Responsibilities.  Panels are used to assess the qualifications of candidates who are determined to be eligible for the position and comply with the filing deadlines established by HCO.  Regardless of the number of qualified candidates, panels are used for both Analyst and Specialist positions.  The panels establish a ranked list of candidates from which the panel chair, in consultation with the panel, identifies the best-qualified candidates.

b.  Panel Composition.  Panels must consist of at least three unit employees at a band or level higher than the employees being assessed.  Panel members are typically in Band III or SES positions.  However, the Chief Human Capital Officer (CHCO) may approve a unit head's request to utilize employee(s) from another unit to meet the minimum requirement.  The selecting official may not be a panel member.

### 3.  PANEL RATING AND RANKING FOR CHANGE TO HIGHER LEVEL (FROM BAND I TO IIA and from BAND IIB TO III).

a.  Rating the Candidates for Change to Higher Level.  Panel members will rate each candidate on a 7-point scale on each of the competencies that apply to the band to which the candidate has applied for change to higher level.  In rating each candidate, the panel members should assess how well the candidate has the potential to immediately perform each of the relevant competencies relative to other employees being assessed.  The GAO Analyst and Specialist Competencies and Performance Standards are available on the GAO Intranet.  A score of 7 denotes the highest potential to perform the competency; it is not a perfect score but rather reflects a judgment that the candidate has more potential to perform the competency than candidates assigned lower scores.  A score of 1 denotes that the employee has less potential to perform the competency being rated as compared to the other candidates being considered.  A score of 4 denotes potential performance that is in between the two extremes.

9

b. <u>Information to Consider</u>. In assessing the candidate's demonstrated potential to perform the relevant competencies at the next higher level, the panel members should consider each candidate's performance, experience, knowledge, skills, and achievements as reflected in the following documents as well as the panelist's knowledge of the types of information set forth in these documents:

(1) Competency-based performance appraisal data. For the spring cycle, if rated on an annual cycle, appraisals for the past two appraisal cycles and the non-cycle appraisal prepared for applications for change to higher level will be used. For employees in the Professional Development Program (PDP), appraisals covering a comparable period will be used. For the fall cycle, appraisals for the past three appraisal cycles or comparable period for PDP employees will be used;

(2) An addendum that describes his/her experience and/or skills for each competency that the employee did not receive a rating for each year in which a competency-based performance appraisal was submitted. (This document will also address any competencies for which the employee received a waiver and any competencies that are not part of the employee's ratings for the current band but are competencies in the next higher band);

(3) The employee profile (GAO Form 537) or its equivalent; and

(4) Any optional or required forms or other documents specified in application procedures.

c. <u>Preparation of the Ranked List</u>. After the panelists have arrived at a final rating for each of the candidates, a list of the candidates setting forth the average scores of the panelists for each candidate is prepared.

## 4. **PANEL RATING AND RANKING FOR PLACEMENT TO BAND IIB.**

a. <u>Rating the Candidates for Placement to Band IIB</u>. The panel members will rate each candidate on a 7-point scale relative to other candidates being assessed on each of the following three assessment factors:

(1) <u>Roles and Responsibilities</u>: Each panel member will assess the candidate's potential to immediately and effectively perform the roles/responsibilities of the IIB pay range to a significant degree and on a recurring basis relative to other candidates being assessed. For the assessment, the panel members are to use the roles/responsibilities set forth in Appendix 2, with a focus on paragraphs 1(a) and (b) of Appendix 2 with regard to Analysts and paragraph 2(a) of Appendix 2 with regard to specialists. Using a scale of 1 to 7, the panel member will provide one overall score on roles and responsibilities. A score of 7 denotes the highest potential to perform the Band IIB roles and responsibilities; it is not a perfect score but rather reflects a judgment that the candidate has more potential to perform the roles and responsibilities than candidates assigned lower scores. A score of 1 denotes that the candidate has less potential to perform the roles and responsibilities of a Band IIB as compared to the other candidates being considered. A score of 4 denotes potential that is in between the two extremes.

(2) <u>Past Performance</u>: Each panel member will assess the candidate's demonstrated performance as a Band IIA or Band II during the time period covered by the performance appraisals referred to in paragraph 4(b)(1) below that the candidate was a Band IIA or Band II. The panel member is to examine how well the candidate performed in the competencies on which the candidate was assessed and reach a judgment as to the candidate's performance relative to the other candidates.

10

Using a scale of 1 to 7, the panel member will provide one overall score on past performance. Those who are given a score of 7 stand out from other staff being considered in terms of their past performance on the competencies. Those who are given a 1 have less potential to perform at an acceptable level, relative to those being considered. Those who are given a 4 are in between the two extremes.

(3) <u>Performance Potential</u>: Each panel member will assess the candidate's potential to immediately perform the Developing People competency and the specific Investing Resources work activities contained in the Achieving Results and Collaborating with Others competencies for the Band IIB pay range, as provided in Appendix 3 of this order. The panel member is to examine how well the candidate has the potential to immediately perform in the competency and work activities on which the candidate is being assessed and reach a judgment as to the candidate's performance relative to other candidates. Using a score of 1 to 7, the panel member will provide one overall score on performance potential. A score of 7 denotes the highest potential; it is not a perfect score but rather reflects a judgment that the candidate has more potential to perform the competency and work activities than candidates assigned lower scores. A score of 1 denotes that the candidate has less potential to perform the competency as compared to the other candidates being considered. A score of 4 denotes potential performance that is in between the two extremes.

b. <u>Information to Consider</u>. Individuals serving as panelists and selecting officials will be provided with the following information:

(1) Competency-based performance data. For the spring cycle, if rated on an annual cycle, appraisals for the past two appraisal cycles and the non-cycle appraisal prepared for application for placement to Band IIB will be used. For the fall cycle, appraisals for the past three appraisal cycles. (Note: only performance appraisals while the employee was assigned to a Band II or Band IIA position will be used);

(2) The employee's written statement that addresses the assessment factors in paragraphs 4(a)(1) and (3);

(3) The employee profile (GAO Form 537) or its equivalent;

(4) Role and engagement level data for the employee's assignments. For the spring cycle, the panel will consider data for approximately the past 2 ½ years when the employee was a Band II or Band IIA; and for the fall cycle, the panel will consider data for approximately the past 3 years when the employee was a Band II or Band IIA; and

(5) Any optional or required forms or other documents specified in application procedures.

c. <u>Preparation of the Ranked List</u>. After the panelists have arrived at a final rating for each of the candidates, a list of the candidates indicating the average scores of the panelists for each candidate is prepared.

## 5.   <u>THE BEST-QUALIFIED (BQ) CANDIDATES.</u>

BQ candidates are those employees that are determined most ready for change to higher level or competitive placement to Band IIB and most competitive with others being assessed. The panel chair, in consultation with the panel, decides which applicants are the best qualified candidates by "drawing a cut

11

line" through a list of employees being assessed, ranked in descending order according to their average score. When drawing the cut line, the panel chair should consider where the natural breaks in point scores occur and the total number of available change to higher level or competitive placement opportunities in the unit. An individual's name may not be sent forward unless the names of all those ranked above him or her are sent forward. A list of the best-qualified candidates in alphabetical order without the average scores of the panelists is provided to the selecting official.

## 6. **EMPLOYEE NOTIFICATION OF BEST-QUALIFIED STATUS.**

Unit heads, or their designees, must notify each employee individually as to whether or not he or she is Best-Qualified by the deadline specified for the cycle. The method of notification is determined by the unit head who should attempt to have all assessed employees informed of their BQ status at the same time. The names of individuals on the Best-Qualified list shall only be disclosed to those who have a need to know the information.

## 7. **SELECTION.**

a. <u>General</u>. Selecting officials must select candidates for change to higher level (from Band I to IIA and from Band IIB to III) on the basis of their judgment of how well each candidate is likely to be able to perform at the level being considered. For Band IIB selections, selecting officials should base their decisions on how well they would evaluate each candidate on the assessment factors set forth in paragraph 4(a) of this chapter.

   (1) In making these determinations, selecting officials should take into consideration a candidate's performance; experience, including applicable roles and responsibilities; knowledge; skills; and achievements; and to a lesser extent, education; training; awards and professional development as reflected in the candidate's paperwork, and the official's personal knowledge of this information.

   (2) If the selecting official believes additional information regarding candidates from outside his/her team is needed as to the factors listed above to be considered in making a selection, he/she may discuss the candidate with the Managing Director or designee of the candidate's home unit/team.

   (3) If the selecting official chooses not to fill an announced position, he/she must document this decision in the merit selection file.

b. <u>Declinations/Obtaining Additional Referrals</u>. All declinations should be documented in the merit selection file. If candidates on the selection certificate decline consideration or are unavailable for the position, the selecting official should contact the CHCO for guidance on the most appropriate procedure to follow when additional referrals are needed. The selection certificate must be annotated to reflect if additional names were referred. This procedure is applicable to both internal and external applicants.

c. <u>Interviews</u>. At his/her discretion, the selecting official may interview BQ candidates as part of the selection process.

   (1) The selecting official may designate another management official or a panel member to conduct or participate in interviews. The names of these individuals should be noted on the selection certificate.

12

(2) If one BQ candidate is interviewed, all candidates on the same BQ list must be interviewed except as follows: The selecting official or designee may interview candidates from outside the unit without having to interview BQ candidates from within the unit or vice versa. The official may also recall some candidates for an interview without obligation to recall others.

(3) The selecting official or designee should attempt to conduct face-to-face interviews, but interviews conducted by other methods such as telephone or video-conferencing are acceptable. Candidates should be scheduled in advance for all interviews. If reasonable efforts to arrange an interview are unsuccessful, the selecting official or designee should document these efforts in the merit selection file.

(4) If interviews are conducted they must be structured and the same questions should be used for all candidates that are interviewed.

(5) Guidelines for conducting interviews are contained in Appendix 1.

d. Selected Employees.

(1) Except for selections involving a change of duty station, employees changed to higher level or competitively placed in Band IIB must be released from their current assignments as soon as practicable.

(2) Employees who are changed to higher level or competitively placed into Band IIB in another geographic area will receive a time-limited change or placement not to exceed 1 year, which becomes permanent upon relocation. Employees who do not relocate within 1 year will revert to their previous band.

(3) If a part-time employee is selected for a full-time position, the employee is converted to full-time status unless the selecting official determines that the position can be filled on a part-time basis.

(4) After selections are made and offers accepted, the selecting official will provide HCO with the required documentation.

(5) If a transfer date cannot be negotiated within a reasonable time, final decisions should be elevated to the CHCO.

## 8. EMPLOYEE NOTIFICATION OF SELECTION.

The selecting official, or designee, will notify employees on the BQ list whether they have been changed to higher level or placed in Band IIB. If the selecting official decides not to fill an announced position, he/she will notify employees on the BQ list of this decision.

## 9. FEEDBACK.

Employees may request feedback on the paneling process. If feedback is requested, the employee should contact the responsible panel member. Feedback should be based on the final ranking record and should include the employee's total score, the cut-line score for the BQ group, the number of employees between the employee's score and the cut-line score, the number of employees in the BQ group, and the range of scores for the BQ group.

10. **APPLICANTS' REVIEW RIGHTS.**

Employees are not entitled to see the paperwork or scores of other employees. However, employees may, upon request, see the forms they submitted that were used in considering them for change to higher level or competitive placement.

11. **APPLICANTS' APPEAL RIGHTS.**

a. An employee alleging discrimination on the basis of race, color, religion, sex, national origin, age, disability, or sexual orientation or retaliation for activities protected by the anti-discrimination statutes must contact a counselor in the Office of Opportunity and Inclusiveness within 45 days of the effective date of the action.

b. An employee who believes that an action taken against him/her under this order is a prohibited personnel practice has the right to file a charge with the General Counsel of the Personnel Appeals Board (PAB). To exercise such a right, the employee must contact the Office of the General Counsel of the PAB within 30 days of the effective date of the action.

# CHAPTER 5. RESPONSIBILITIES

1. **Chief Human Capital Officer** is responsible for:

   a. Administering the merit selection program in accordance with GAO Order 2335.8.

   b. Ensuring that panel members receive adequate information and training on the panel process.

   c. Ensuring that the panel is provided with all paperwork to be reviewed during the panel process.

   d. Ensuring that any extraneous materials are removed from an employee's application package before assessment.

   e. Ensuring that personnel decisions are made using merit principles.

   f. Issuing guidance, and other instructions, when needed, to clarify, update, and improve the program.

   g. Identifying those employees who requested assessment but who will not meet eligibility requirements by the announced effective date of the change to higher level or competitive placements.

   h. Periodically evaluating program operations and informing employees about program improvements brought about through the evaluations.

   i. Approving or disapproving requests for exceptions to provisions of GAO Order 2335.8, except where authority is officially granted to other officials.

2. **PANEL MEMBERS** are responsible for:

   a. Assessing the degree to which eligible applicants possess the competencies required for change to higher level or competitive placement.

   b. Considering only job-related information on employees assessed.

   c. Maintaining confidentiality with regard to applicant information.

   d. Arriving at their final scores without pressuring other panel members to change their scores.

   e. Disqualifying themselves if, for any reason, they believe they cannot serve with objectivity and fairness.

   f. Understanding the requirements and functions of the positions to be filled.

   g. Providing feedback to employees, if requested, about why they were not determined to be best qualified.

3. **PANEL CHAIRPERSONS** are responsible for:

   a. Chairing the panel in accordance with ch. 2 of this order, including such administrative matters as completing forms, enforcing rules, and completing the process on time.

   b. Directing the discussions to ensure that only job-related information is shared by panel members and

that the panel addresses significant differences in ranking.

c. Ensuring that total scores and changes in total scores are accurately recorded.

d. After ranked lists are developed, determining, in consultation with panels, how many names will be BQ'd.

e. Referring best qualified candidates to the selecting official based on management guidance and in consultation with the panel members.

4. **SELECTING OFFICIALS** are responsible for:

a. Choosing panel members, designating chairpersons, and providing them with the time and tools for carrying out their assessment responsibility within the time specified. (Selecting officials may not be members of the panel.)

b. Considering the qualifications of all candidates referred for change to higher level or competitive placement before making a selection.

c. Selecting and informing employees within the time specified.

d. Providing feedback to employees on the BQ list, if requested, about why they did not get selected.

5. **MANAGING DIRECTOR, OFFICE OF OPPORTUNITY AND INCLUSIVENESS** is responsible for:

a. Monitoring, evaluating and recommending changes if needed to the merit selection program to ensure that merit principles are followed.

b. Reviewing best-qualified list and promotion decisions to ensure compliance with merit principles.

**APPENDIX 1.  INTERVIEW GUIDELINES**

1.  **GENERAL.**

Interview questions must be job related and designed to assess each candidate's ability to perform successfully in the position to be filled.  A structured interview ensures that all candidates are asked the same questions.

2.  **"DO'S" OF THE INTERVIEW PROCESS.**

   a. Review the description of the job to be filled before conducting any interviews.  Identify the Competencies needed for successful performance that can be measured in an interview and that can differentiate among referred candidates.  Establish the criteria for evaluating candidates' responses.

   b. Plan the interview carefully.

   c. Design job-related questions to assess job requirements that are:

      (1) Needed at entry into the job.

      (2) Significant in terms of importance and the amount of time spent on them.

      (3) Will be used for all candidates being interviewed.

   d. Ask open-ended questions.

   e. Ask situational questions, such as "What would you do if one of your employees repeatedly missed milestone dates?"

   f. Treat candidates consistently.  Try to see that interview conditions are the same for each applicant.

   g. Let the applicant do most of the talking.  This enhances the ability to collect job-related information about the applicant.

3.  **"DON'TS" OF THE INTERVIEW PROCESS.**

   a. Don't ask questions or make comments on race, color, national origin, religion, sex, marital status, sexual orientation, birthplace, age, disabilities, or political affiliation.

   b. Don't pry into personal matters that do not relate to the job.  For example, do not discuss the following:

      (1) Marital plans.

      (2) Information concerning spouses, their job, how the spouse feels about their employment, etc.

      (3) Plans concerning children or child-rearing responsibilities.

   c. Don't bring personal bias into the evaluation process.

17

## APPENDIX 2. BAND IIB ANALYST AND SPECIALIST ROLES AND RESPONSIBILITIES

1. BAND IIB ANALYST ROLES AND RESPONSIBILITIES.  With minimal supervision, senior analysts in the Band IIB pay range are expected to:

   a.  Frequently lead engagements or major sections of financial statement audits by managing all aspects of design, data collection and analysis, message development, and report writing, and ensure the quality and value of all related products for the full range of engagements to include large, complex, highly matrixed, and high-risk engagements.

   b.  Demonstrate a mastery of audit, analysis, and evaluation related methods and techniques, as well as insight, experience and judgment in planning and managing all aspects of work to maximize team effectiveness.

   c.  Lead by example, demonstrate initiative, creativity, and flexibility in conducting work, and anticipating and dealing effectively with obstacles.

   d.  Recognize and seek out needed resources to accomplish goals and effectively utilize engagement resources.

   e.  Develop highly productive relationships with internal and external parties, fostering teamwork, collaboration, coordination, and matrixing.

   f.  Supervise staff, recognizing and leveraging their knowledge, skills and abilities; consistently provide appropriate direction, guidance and opportunities; motivate and teach others to achieve high quality results in a timely manner.

   g.  Assist Designated Performance Manager in coaching and mentoring staff, providing input to performance appraisals, recognizing high performance, addressing performance problems, providing feedback, and recommending developmental opportunities.

   h.  As a collateral duty or a temporary dedicated duty, some senior Analysts in the IIB pay range provide leadership by managing strategic planning efforts, quality assurance activities, team staffing, and related activities, and/or manage and monitor a large number of PDP staff.

   i.  Ensure work is conducted in accordance with professional standards and GAO's core values and policies.

   j.  Provide constructive input and promote and support organizational policies and change efforts after related decisions are made.

2. BAND IIB SPECIALIST ROLES AND RESPONSIBILITIES.  With minimal supervision, senior specialists in the IIB pay range are expected to:

   a.  Independently and consistently provide a high level of technical and/or subject matter leadership to a full range of multiple engagements, particularly complex, highly matrixed, sensitive, and/or high risk engagements involving sophisticated methodological or analytical work.

18

b. Demonstrate insight, experience, and judgment in providing highly effective guidance and specialized planning and implementation on complex engagements, considering the needs of the broader engagement/body of work to help shape how technical knowledge fits into the product.

c. Lead by example, demonstrating initiative, creativity, and flexibility in conducting work, and anticipating and dealing effectively with obstacles.

d. Leverage and share knowledge across the organization, effectively advising engagement teams on the use of technical approaches by identifying strengths and weaknesses of alternative approaches, and adapting and customizing knowledge to a wide range of situations, resulting in a more efficient use of resources.

e. Clearly communicate technical and/or subject matter issues, both orally and in writing, to a wide variety of engagement staff at multiple levels of the organization, effectively influencing and persuading staff to accomplish high-quality outcomes. In conjunction with the engagement team, determine the specialist/subject matter expert's contributions to the written product/audit documentation, and as appropriate, draft/review technical or in-depth subject matter section of the product/audit documentation, producing reviews that are technically authoritative.

f. Possess a mastery of his/her specialty and keep current in the latest developments. Is routinely relied upon to creatively apply the expertise to difficult technical questions, and is consulted by others on complex problems within the area of expertise. Identify the need for changes and persuade others of the need for changes. Ensure that work is conducted in accordance with professional standards, GAO's core values and policies, and is generally accepted without substantive change.

g. Develop highly productive relationships with internal and external parties, proactively fostering teamwork, collaboration, coordination, and matrixing. Is internally customer-focused, sensitive to engagement deadlines, aware of the context of GAO culture, and skilled at work through difficult circumstances to deliver a high-quality, on-time product. Proactively and effectively represent GAO as a technical and/or subject matter expert to clients, agencies, or other audiences (such as professional or academic conferences).

h. Demonstrate strategic vision in setting priorities/timelines and negotiate these factors with customers or clients while working on multiple engagements concurrently. Recognize and effectively utilize resources to accomplish goals, leveraging the knowledge, skills, and abilities of staff.

i. Frequently and effectively coach, advise, teach, mentor, and/or oversee staff to optimize the value of engagements and achieve high-quality results. When appropriate, assist the Designated Performance Manager by providing input to performance appraisals, recognizing high performance, addressing performance problems, providing feedback, and recommending developmental opportunities.

j. Provide constructive input and promote and support organizational policies and change efforts after related decisions are made.

## APPENDIX 3.  RATING CANDIDATES FOR COMPETITIVE PLACEMENT TO BAND IIB

The following sets forth the work activities and standards to be used in rating candidates for competitive placement to Band IIB.

**Achieving Results –**
Continually focuses on achieving results in support of Congress and the American people and holds self and other team members accountable for achieving results.

| Work Activity | Performance Standards | |
| --- | --- | --- |
| | Meets Expectations | Role Model |
| Identifies and leverages the resources needed to achieve goals, and takes full advantage of available internal and external resources; prioritizes and manages use of resources to increase GAO's collective effectiveness. (From former Investing Resources competency) | Is generally aware of available resources within own work and makes well-reasoned decisions about resource use; uses resources that he/she controls in a reasonable manner and does not waste resources. | Is fully aware of resources that are within own work unit and is generally aware of resources available outside the work unit; monitors and manages resources to ensure that resources are used wisely and in the most effective manner possible. |

**Collaborating with Others –**
Collaborates and communicates openly and effectively within, outside, and across GAO organizational boundaries to facilitate the achievement of goals.

| Work Activity | Performance Standards | |
| --- | --- | --- |
| | Meets Expectations | Role Model |
| Shares resources with others, willingly making the right resources available to get the job done. (From former Investing Resources competency) | Willingly shares resources with others when there is a need. | Seeks opportunities to share resources with other members of own or other teams to maximize effectiveness. |

20

**Developing People –**
Provides relevant learning experiences and feedback, on an equal opportunity basis, to enhance individual and team performance.

| Work Activity | Performance Standards | |
| --- | --- | --- |
| | **Meets Expectations** | **Role Model** |
| Coaches and mentors staff in a fair manner. | Effectively coaches and mentors staff; encourages staff to stretch and try new approaches; offers guidance on an equal opportunity basis. Takes time to discuss and understand career goals and to identify potential development steps with assigned staff. | Effectively coaches and mentors staff; not only encourages staff to stretch and try new approaches, but directly facilitates the acquisition of skills and competencies; offers guidance on an equal opportunity basis; and initiates and follows-up on career oriented discussion with assigned staff. |
| Provides feedback and addresses performance problems. | Offers well founded and constructive feedback related to improving the quality of services and work products, in accordance with GAO's vision, core values, and relevant performance standards; helps staff understand own relative strengths and developmental areas. Assists supervisors to understand and effectively address issues of ineffective performance, in part, through effective understanding and application of GAO's performance management system. | Seeks opportunities to provide timely, direct, and constructive feedback that helps others improve the quality of services and work products, as well as understand their relative strengths and developmental areas; along with feedback, suggests useful developmental resources; considers GAO's vision, core values, and relevant performance standards in offering feedback and developmental guidance. Identifies impediments to effective performance and actively works (with supervisors as necessary) to address performance problems, in part, through effective understanding and application of GAO's performance management system. |
| Recognizes and rewards staff members' contributions on an equal opportunity | Seeks to recognize high levels of employee performance. | Effectively recognizes excellent employee performance. |