## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **James D. Moses** )<br>     **For himself and** )<br>     **All others similarly situated** )<br>                                              )<br>     **Plaintiffs** )<br>                                              )<br>     **v.** )<br>                                              )<br>**DAVID M. WALKER** )<br>**Comptroller General of the United States,** )<br>**Government Accountability Office (GAO)** )<br>     **and** )<br>**Michael Doheny, Chair** )<br>**The Personnel Appeals Board of the GAO,** )<br>     **Defendants.** )<br>                                              ) | **Case No.    1:06 CV 01712  (JGP)** |

### MOTION TO ALLOW ONE WITNESS TO BE SUBPOENAED
### AND TO TESTIFY AT THE HEARING FOR INJUNCTIVE RELIEF
### (Pursuant to Federal Rule Evid. 403 as Applied in L.Civ.R. 65.1)

Comes now James D. Moses through counsel and requests that additional evidence, material in nature and crucial to plaintiff's case in chief, be permitted to be Subpoenaed (See Exhibit 1) and presented as a witness at the pending, but yet unscheduled hearing on injunctive relief in this case.  That testimony is relevant if not determinative on the pending Motion for Injunctive Relief, and is also critical to all pending motions and plaintiff's case in chief.  GAO has consistently and incorrectly denied the existence of the evidence requested.  GAO's position will be shown to be untrue by this witness and will demonstrate plaintiff's entitlement to injunctive relief on the merits.

The witness to be subpoenaed and to testify at the Injunction hearing (with the permission of the Court), William (Bob) Mowbray has been directed to bring with him documentation which will establish the existence of files, data and systems which GAO has

incorrectly asserted to this court do not exist.

Mowbray's testimony is expected to be that throughout his career at GAO, beginning in the late 1980s he personally has been in charge of creating and maintaining comprehensive personal data base (SAS) systems. Those systems are associated with a series of data bases, a separate data set for each year since 1986. From that system and associated data (virtually) any and all desired management information, professional employee ratings and profiles, and race, ethnicity, age and sex whether by groups, departments and locations can and routinely has been extracted and delivered to GAO upper level management. Upper level management at GAO consists of about 5 persons on the executive committee, and about 30 other managers.

That data and systems capability is such that all relevant data may be accessed, and, in the space of two days, Mr. Mowbray can, and has, extracted virtually any required analysis of GAO's professional employee personnel profiles (Exhibit 2, pg. 24, L 6-14). Norms and statistics can be computed from which an exact and 100% inclusive profile of GAO staff in terms of any type of alleged employment discrimination can be statistically verified or alternatively refuted. This information is therefore, highly relevant to the issues now before this Court in the injunction hearing and as a matter of substantive proof of plaintiff's case in chief.

The data fields consist of between 60 and 90 data elements (Exhibit 2, pg 11, L 22-23). Those elements include race, gender, age, national origin and essentially all other performance and ratings data necessary (for each year as a separate data base) for a full analysis of each person's status in relation to departmental, location, or overall norms (See-Exhibit 2, 13 pages of Mowbray prior testimony in a related case).

**RELEVANCE TO INJUNCTIVE RELIEF:**

It is therefore obvious that this information, if and when disclosed, is highly probative

evidence and may very well be determinative of the truth or falsity of the substantive positions of each of the adverse parties to this lawsuit.

More importantly, however, in the overall litigation and in the injunction hearing, this evidence is relevant as to the credibility of the GAO and its counsel in their advertant or inadvertent misrepresentations to this Court. Defendant has stated repeatedly, even under direct questioning by the Court, that such data and such systems simply do not exist. That statement is false, as the witness will establish beyond all doubt.

**CONCLUSION:**

For all of the above reasons, the subpoena issued on May 31, 2007 upon William (Bob) Mowbray should be allowed, its service of process upon the GAO which occurred on Monday June 4th, deemed in accordance with the rules of procedure, and Mr. Mowbray allowed to appear and testify at the hearing on injunctive relief requested as scheduled by this Court. This Court is requested to admonish the defendant's and their counsel not to interfere in any way with the full compliance with the subpoena served upon the defendant GAO, including the full production of all materials requested in that subpoena (Exhibit 1 hereto). An Order accomplishing these objectives is submitted for the Court's review.

The Court's attention is respectfully directed to the accompanying statement of points and authorities in support of this Motion with attachments thereto.

Respectfully submitted,

*Charlton w 2428*

Walter T. Charlton,
D.C. Bar # 186940
Telephone 410-571 8764
1156 15th, Street N.W.. LL 10
Attorney for Plaintiff and the putative class of
about 309 persons he seeks to represent

Certificate of Service

I hereby certify that I filed via the ECF system on June 4, 2007, a copy of this notice of subpoena for evidence for use at the hearing on a preliminary and permanent injunctions with the expectation that a copy thereof will be automatically electronically delivered to:

Andrea McBarnette, AUSA
555 Fourth Street, N.W
Washington, D.C.
20530

_CharltonW 2428_
Walter T. Charlton, D.C. Bar # 186940

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **James D. Moses** )<br>    **For himself and** )<br>    **All others similarly situated** )<br>         )<br>    **Plaintiffs** )<br>         )<br>      **v.** )<br>         )<br>**DAVID M. WALKER** )<br>**Comptroller General of the United States,** )<br>**Government Accountability Office (GAO)** )<br>    **and** )<br>**Michael Doheny, Chair** )<br>**The Personnel Appeals Board of the GAO,** )<br>    **Defendants.** )<br>         ) | **Case No.    1:06 CV 01712  (JGP)** |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION TO ALLOW ONE WITNESS TO BE SUBPOENAED**
**AND TO TESTIFY AT THE HEARING FOR INJUNCTIVE RELIEF**
**(Pursuant to Federal Rule Evid. 403 as Applied in L.Civ.R. 65.1)**

Comes now James D. Moses through counsel and requests permission to present critical and succinct evidence crucial to plaintiffs request for injunctive relief, and case in chief to be presented through a "live" witness.

**1.  The evidence to be presented:**

The evidence to be presented, is live testimony of William (Bob) Mowbray.  Mr. Mowbray is the former IRS employee, who has been employed at GAO since about 1989.  Mr. Mowbray was charged with the responsibility for building and maintaining the data bases system which is centrally maintained by him.  It contains between 60 and 90 data elements for each professional employee in a record consisting in total of about 300 characters (Exhibit 2, Page 22, L 21-25).

2.  That data base may be accessed and analyzed for any of its variable data fields with such efficiency that for any 20 or so elements analyzed, a turn around may be obtained (and is done as

a matter of routine) in about two days.

3.  The existence of this system is well known by the top 35 or so GAO managers, who have used it as a matter of personnel routine, including ratings and promotions since its inception in 1986.  The data covers all time periods since 1986, it having been created retroactively for the first several years.

4.  GAO has consistently denied the existence of any such system to the plaintiff herein, and to the plaintiffs in all related cases.  Thus, not only is this witness essential to the instant motion, to prove the likelihood of plaintiff prevailing, but it is damning in the implications, if not actual proof of GAO's obstruction of justice and misinforming the Court.

5.  In that respect, Mr. Mowbray's testimony is fully expected to create the likelihood of the Court finding in favor of plaintiff as to the other matters for which injunctive relief is requested, but finding that the GAO, and the PAB both knew about this system, and the substantive results of the statistics contained therein.

6.  If Mr. Mowbray testifies, as he is expected to do, that his reports are in wide distribution, and to the PAB as well, then plaintiff's allegations of a widespread conspiracy to deprive professional employees of their civil rights will be proven for purposes of this preliminary injunction hearing, and also would furnish proof of a variety of sanctionable events, in sum amounting to a massive obstruction of justice.

7.  Mr.  Mowbray's testimony, once the documents subpoenaed are furnished, and identified several days prior to the hearing, is expected to be very short, and possibly might even be stipulated.  No lengthy hearing is expected, all that is needed is the documents and system described in the subpoena.  No more than one hour would be expected, most likely merely showing up with the documents will be sufficient to enable a clear concise presentation to the

court of the information critical to this case.

8. That information is that the data and system exist, have existed since 1986, were centrally maintained since that time, and data from the system were distributed as requested by many management parties, including the PAB chairman, and/or General Counsel.

9. The damning nature of the statistics contained herein, which is expected to show age, race and gender bias, for the entire time frame of the statistics, is the reason why GAO has been so adamant not to disclose the existence of the materials to any person outside the select group of high management officials.

10. Thus, the information sought is highly determinative in nature, and easy to get. There will be an enormous benefit to judicial economy by the "live" witness procedure herein requested.


Wherefore, for all of the above reasons, permission for the plaintiffs to subpoena Mr. William (Bob) Mowbray as a "live witness" to the injunction hearing, and for him to furnish, 5 days before the hearing date, the entire system descriptions and definitions, descriptions of reports generated, and all data bases for all years should be furnished, along with operating instructions applicable to operation of that system, with all of its related components.

The Court's attention is also respectfully directed to the accompanying Motion to supplement the record of this case to include evidence contained in the record(s) of related cases. The Court is also requested to note that there is pending Plaintiffs' Motion in this case to consolidate all of the related cases. That motion, if granted, would moot the necessity for the accompanying motion to supplement the record evidence. However, in the interests fo caution and for purposes of this Motion, and the pending Motion for injunctive relief, only small parts of the record of the related cases need be considered as relevant to the instant Motion for Injunctive

Relief.

For the convenience of the Court those parts have been summarized and included in the accompanying **Motion to Supplement the Evidentiary Record for Purposes of the Pending Hearing on Injunctive Relief.**  That motion attempts to summarize all evidence necessary to be considered by this Court to correctly determine the outcome of plaintiff's Motion for Injunctive Relief in accordance with the requirements of F.R.Civ P. 65, and L.Civ.R 65.1.


## CONCLUSION

For all of the above reasons, the request for permission to subpoena one witness for the hearing on the preliminary and permanent injunctions, and for that witness, Mr. Mowbray to furnish his system descriptions and data in complete detail five days before that should be Granted.


Respectfully submitted,

*Charlton w 2428*

Walter T. Charlton,
D.C. Bar # 186940
Telephone 410-571 8764
1156 15th, Street N.W.. LL 10
Attorney for Plaintiff and the putative class
of about 309 persons he seeks to represent

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **James D. Moses** ) | |
|     **For himself and** ) | |
|     **All others similarly situated** ) | |
| ) | |
|     **Plaintiffs** ) | |
| ) | |
|       **v.** ) | **Case No.    1:06 CV 01712  (JGP)** |
| ) | |
| **DAVID M. WALKER** ) | |
| **Comptroller General of the United States,** ) | |
| **Government Accountability Office (GAO)** ) | |
|     **and** ) | |
| **Michael Doheny, Chair** ) | |
| **The Personnel Appeals Board of the GAO,** ) | |
|     **Defendants.** ) | |

**ORDER**

Upon consideration of Plaintiffs' Motion for Leave to Present One Live Witness and Hearing on the Motion for Preliminary Injunction, and it appearing that the interests of justice will be well served by this procedure, and it further appearing that the witness will not be needed for more than one half a day, and likely far less than that, now therefore the Motion is Granted.

The subpoena to Mr. Mowbray shall be honored by the Defendant GAO, and Mr. Mowbray shall bring with him, and deliver to counsel for the Plaintiff, at least five working days prior to the hearing, all of the materials describing the data bases system described in his deposition of June 27, 2002, along with copies of all programs, and all data for each year since 1986, or whenever the system began.  If the descriptions as contained in the subpoena upon Mr. Mowbray are incomplete or incorrect in any way, Mr. Mowbray shall correct such descriptions and furnish the complete documentation to the best of his information, knowledge and belief.

If he is unable to do any part of the foregoing for one reason or another, he shall give a

complete and accurate description of the missing information, and the reason that it is not

produced.

_____
John Garrett Penn, Senior Judge
United States District Court

**Exhibit 1**

AO 88 (Rev 1/94) Subpoena in a Civil Case

Issued by the

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

James D. Moses, et. al.,
            Plaintiff,
        V.
David M. Walker
Comptroller General of the
United States Government Accountability
Office,
            Defendant

### SUBPOENA  IN  A  CIVIL CASE

Civil Action No: 1:06-01712  JGP


TO: UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE ,

Attn Person receiving subpoenas, FOR FORWARDING TO ➔

### TO: MR. WILLIAM (BOB) MOWBRAY

■**YOU ARE COMMANDED to appear in the United States District Court at the place, and time specified below to testify in the above case.**

| PLACE OF TESTIMONY United States District Court, Courtroom of the Honorable Judge John G. Penn at the date set by the Court for a hearing on Plaintiff's Motion for a Preliminary Injunction. | COURTROOM  TO BE SET |
|---|---|
| | DATE AND TIME TO BE SET |

☐ **YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

■ **YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):**

| ENTER DOCUMENT DESCRIPTION(S) HERE (10 pt) (PLEASE SEE ATTACHMENT # 1 | |
|---|---|
| PLACE: Please send the requested documents to Mr. Charlton's office, at address provided below at least five (5) days prior to the date scheduled for the hearing. | DATE AND TIME **Five (5) days prior to hearing.** |

■ **YOU ARE COMMANDED to permit inspection of the following documents and materials at the date and time specified below.**

| PLACE: See Attachment 1 | DATE AND TIME **Five (5) days prior to hearing.** |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _____CharltonW 2428_____  ____  Attorney for Plaintiff, and the Class he seeks to represent <br> Walter T. Charlton, D.C Bar # 186940 | May 31, 2007 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER <br> Walter T. Charlton, Esq.; D.C Bar # 186940, 1156 15th Street, N.W. LL 10, Washington, D.C. 20005. Telephone 410 571 8764, Email charltonwt@comcast.net |
|---|

**SEE ATTACHMENT # 1 FOR DOCUMENTS TO BE INSPECTED AND FURNISHED**

PAGE 2, SUBPOENA TO MR. WILLIAM (BOB) MOWBRAY

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] **If action is pending in district other than district of issuance, state district under case number**

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | Date | PLACE |
|---|---|---|
| **SERVED** | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                     SIGNATURE OF SERVER

ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(I) fails to allow reasonable time for compliance;

(Ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) B (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(Iv)  subjects a person to undue burden.

(B)  If a subpoena

(I)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(Ii)  requires disclosure of an unrestrained expert's opinion or information not describing specific events or occurrences in dispute and resulting in the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued sows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, things not produced that is sufficient to enable the demanding party to contest the claim

### LIST OF DOCUMENTS TO BE FURNISHED IN RESPONSE TO THIS SUBPOENA

The following materials and information shall be furnished for inspection and copying.

(1) All system instructions, definitions, or other materials describing in complete detail the United States Government Accountability Office database management system (SAS) previously described by GAO employee William (Bob) Mowbray On Thursday, June 27, 2002, in his deposition in the United States District Court For the District of Columbia, Case of Vant Leven et al. v. Walker, Civil No. 00-2686 (JGP); the system descriptions of the contents of the data fields contained therein, all report programs, operating programs and any other system descriptions or other materials which describe the contents and functioning of the afore identified system, and any other materials or descriptions necessary for a reader to understand the workings and data available to that system from any and all sources.

(2)  All of the logs, calendars, lists, or other materials prepared by the users or operators of the afore identified system in existence or known to exist for data contained in that system for any period since January 1, 1986.  If any of the operating logs, distribution lists, or other materials known to be in existence have been destroyed please list to the best of the knowledge of the recipient of this subpoena and/or the records of GAO of which the recipient has any present knowledge, or recollection of a prior existence of this information the manner of the destruction, who destroyed the document, and upon whose order.

(3) All data files available which were or may have been used as input to the system(s) as described above, or as would have been described if such descriptions would be if a correct and complete definitions and descriptions of the entire system which were available to Mr. Mobray,  from the inception of the system, described in Mr. Mobray's deposition as beginning in 1986, for each year separately, to date.

(4) The distribution records of the persons who received the personnel data from the Subpoenaed System for the years 2005-2007.  It is alleged that the persons rating employees pursuant to the Band II split (about which Moses complains) and also GAO upper management all received information from the hitherto secret system.  If no such records survive, give the manner of the destruction who ordered the destruction, and what information was contained in the destroyed distribution list or other record, and whether or not the PAB was aware of the existence of that system or ever received any output from that system.


 Note A: Undersigned member of the Bar of this Court believes after due consideration and from the testimony of the recipient on June 27, 2002, that the afore-described materials are, or should be, readily available.  This subpoena attempts to describe a full disclosure of the entire system, with all of its components, and all data available pertaining to how the system works, the work product of the system, and who received that work product since its inception, with emphasis on the years of the happenings of this particular complaint.
     Counsel for the Defendants is requested to contact undersigned counsel immediately in the event there is any impediment to timely production of these important materials, or any other arrangement necessary to reasonably accommodate the production of this evidence.  Please telephone 410 571 8764, between 9 and 5 M-F.  Fax number is 410 897 0471, email charltonwt@comcast.net.

 Note B: A copy of this subpoena is being filed as an attachment to Plaintiff's Motions to supplement the record of this case for purposes of the Injunction hearing which is expected to be scheduled for hearing during June, 2007.  These Motions are to be filed on or about June 4, 2007.  Defendants counsel was therefore served by that copy delivered by the ECF system.

Note C: The contents of Mr. Mowbray's Deposition of June 27, 2002 wherein his testimony describes in detail the above described evidence, in Mr. Mowbray's full deposition now before this Court in at least two related cases.  Those cases are Civil Number 00-2686, and 87-3538.  That deposition and all exhibits thereto are hereby incorporated by this reference for purposes of describing the materials sought by this subpoena.

      Charltonw 2428

_____

Walter T. Charlton, D.C. Bar # 186940

**EXHIBIT 2**

# ORIGINAL

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____
)
JANET MARIE VANT LEVEN, <u>et al</u>,   )
                                   )
Plaintiff,                 )                    Civil No. 00-2686 JGP
v.                       )                          MJ DAR
                                   )
DAVID M. WALKER,          )
Comptroller General of the    )
United States              )
General Accounting Office,    )
_____)

Thursday, June 27, 2002

       The deposition of William Mowbray, called for examination by counsel for the Plaintiff in the above-captioned matter, pursuant to notice, at the offices of the U.S. General Accounting Office, 441 G Street, Northwest, Room 7172, Washington, D.C. 20548, in the presence of Stan Ruddie, Court Reporter, commencing at 10:15 a.m.

(703) 548-3334       Court Reporting Services, Inc.     1-800-848-4007
                201 North Fairfax Street, Suite 21
                  Alexandria, Virginia 22314

3

1    Q       Okay. What did your work consist of there?

2    A       Quantitative --

3    Q       At that time?

4    A       At that time, quantitative methods such as review

5    of cost/benefit analyses, queuing network models of large-

6    scale computer systems like the IRS.

7    Q       Like the IRS what?

8    A       The IRS computer systems. We did modeling of the

9    IRS computer systems to determine their capacity and when

10   they would run out of capacity.

11   Q       If they didn't get quicker, huh? Okay.  How long

12    did that last?

13   A       I worked there until November of 1989.

14   Q       Were you doing during that period of time, from

15   '85 to '89, were you doing any administrative modeling or

16   work analysis for GAO itself?

17   A       Administrative?

18   Q       I mean, I understand the IRS modeling.  That's

19   doing something for the IRS system.  Did you do anything

20    for GAO during that period, that is, pertaining to GAO

21    personnel management?

22   A       Personnel management? Yes, I did.  I worked

23   part-time.  I mean, I did some work for Steve Medlin, who

24   was -- I don't know his title.  He worked in -- I'm trying

25   to even think of the office, what the office name was. He

4

1    worked for Joan McCabe at the time, who later became Joan

2    Dodaro.  They had be build a database of the applicants for

3    the 1986 and 1987 Merit Selection Process.

4         Q       Actually, that was essentially the start of GAO's

5    personnel system, wasn't it?

6         A       I don't--

7         Q       I mean insofar as you were concerned.

8         A       Oh, it was my introduction to it, yes.

9         Q       All right, at the time you got your introduction

10   to it, was there an existing system?

11        A       There has always been a personnel system, and all

12   I did was create two databases for them from a bunch of

13   smaller databases.

14        Q       What were those two databases?

15        A       They consisted of information on applicants for

16   Merit Selection Promotions, who made the Best Qualified

17   List and who was selected for various announcements, job

18   announcements.

19        Q       Was that all-encompassing?  That is to cover

20   all--

21        A       It covered all assessments during that annual

22   cycle.  It would not include any promotions that occur out

23   of cycle or any promotions that were not competitive MSP

24   promotions. They were --

25        Q       So that's 1986-87 cycle started your involvement

1      with personnel?

2            A      Yes.  Actually, it's the 1986 cycle and the 1987

3      cycle.

4            Q      So there's two years there?

5            A      Two cycles, correct.

6            Q      Two years.   All right, and the databases you

7      created were what?

8            A      They were applicant-by-applicant -- or for each

9      announcement, I should say, for each announcement they gave

10     for each applicant whether the applicant made Best

11     Qualified List or the applicant was selected.

12           Q      Okay. Is that one database?

13           A      I believe it's two, one for each year.

14           Q      Oh, so it was one database for the applicants and

15     announcements for each year?

16           A      Correct.

17           Q      And that's your two databases you were talking

18     about?

19           A      Correct.

20           Q      All right. What form did these databases take?

21           A      What --

22           Q      What magnetic media form or system?

23           A      They're on a mainframe computer.

24           Q      In tape form?

25           A      I think they're probably stored on disk. I don't

1    someone did not formally apply for a job, they would not be

2    part of your database for '86 --

3              A        Correct.

4              Q        -- '87?

S              A        That's correct.

6              Q        Now was this structure, the database structure,

7    in '89  different from that?

8              A        The structure was different, but in 1989 now this

9    is a database for Pay for Performance.  So it's all staff

10   who were assessed for Pay for Performance, which is

11   essentially all Banded staff, all Band I, I-F, Band II, and

12   Band III staff at GAO.

13             Q        All right.  Now you just used the term "Banded."

14             A        That's correct.

15             Q        Is that when Bands started, in 1989?

16             A        1989 was the first assessment year for which

17   there were Bands, and it was the first year for Pay for

18   Performance.

19             Q        At that time Mr. Bowsher was the Comptroller

20   General, was he not?

21             A        Yes, he was.

22             Q        Okay.  So you built this database. Is there a

23   description somewhere of the elements in that database?

24             A        There's not a written one.

25             Q        Not anywhere?  There must be some kind of system

1    definition --

2        A      Yes.

3        Q      -- as to what the fields are?

4        A      Well, yes, I can run -- it's a SAS database. I

5    can run contents at anytime, and it will tell me precisely

6    which variables exist in the database.

7        Q      Okay. Has that database remained roughly

8    consistent from the beginning until now?

9        A      Yes.

10       Q      I presume that you made some modifications and

11   changes to it from time to time?

12       A      Not to the 1989 data. Or do you mean the

13   structure of the database?

14       Q      The structure of the database itself.

15       A      The structure has probably changed. I can't say

16   for sure. I think it probably has.

17       Q      Okay. Is each year maintained as a separate

18   database?

19       A      Yes.

20       Q      So there is a separate database for each year,

21   starting in 1989?

22       A      That's correct.

23       Q      Okay. Now how is the database accessed? If it

24   changed slightly over the years, obviously, you have to

25   have a little bit different access program to go in and

1    grab stuff and analyze it, is that correct?

2         A    Well, with a SAS program or with a SAS data --

3         Q    What does SAS mean?

4         A    SAS is Statistical Analysis System.  It's a

5    programming language.

6         Q    Okay. It's a programming language of its own?

7         A    Yes.

8         Q    Okay.

9         A    And where were we going with this?

10        **Q**    My question was, do you have a slightly different

11    program for each year?

12        A    Obviously, any program which requests some

13    analysis of variables from that dataset, we have to name

14    what those variables are.  So, to the extent that there may

15    be slightly different variable names from year to year,

16    then the access program would differ slightly.

17        Q    Okay.

18        A    Yes.

19        Q    So if anyone requested you to perform an analysis

20    on any particular year, I presume you would have to use the

21    program for that year?

22        A    Or modify another program.

23        Q    Are they easily done?

24        A    It's not difficult.

25        Q    What is the formal name for the GAO personnel

1    database?

2          A       We've kind of changed topics here.  The GAO

3    personnel database is kept at the National Finance Center.

4          Q       Okay.  I don't want to get off of this.

5          A       All right.

6          Q       That's a different subject?

7          A       That's a different topic.

8          **Q**       Okay.  All right, now hold that one for me.  All

9    right, just let me keep going. You just make notes,

10   please.

11                 Is this database maintained even as we speak?

12         A       Yes, it exists.

13         Q       And it is still under your maintenance and

14   control?

15         A       That's correct.

16         Q       Do you have people working for you?

17         A       No.

18         Q       You do it all alone?

19         A       Yes, I do.

20         Q       Wow, okay.  Now do you recall approximately how

21   many variables there are in this database?

22         A       I would have to guess.  I would say maybe 60 to

23   90; I don't know, something like that.

24         Q       Could you give me examples of what the variables

25   are, like important ones, ones that we would recognize in

1    Handbook.

2        Q    I guess when you finish running all those cross-

3    checks, you're pretty well assured that at least most

4    everything is right, right?

5        A    That's correct.

6        Q    Of course, you could have a key entry error of

7    some kind, but it would have to be minor or one of these

8    checks would catch it, right?

9        A    One would think so.  The major data elements must

10    be correct.

11        Q    Okay.

12        A    And much of the information comes from the NFC

13    database, which is also very reliable.

14        Q    Now what is that?

15        A    That is the database that is at the National

16    Finance Center.

17        Q    So are you saying that your system gets input

18    from that as part --

19        A    That's correct.  The system I create gets input

20    from that.

21        Q    So you get input from that database -- you get

22    other input also?

23        A    Exactly.

24        Q    What is your other input?

25        A    All of the demographic data such as race, gender,

1     org. code, date of birth, any demographic-type data is not

2     in the diskettes that come from the individual units from

3     the PFPCS database.  But what is in there is a Social

4     Security number of each person.  So by merging that, those

5     files, with files from the NFC system, which do have all

6     that demographic data, I can combine those two and add in

7     those variants.

8          MR. CHARLT0N:     Okay.  I want to just take a 30-

9     second break here or something, one minute.

10          MS. BRASWELL:     Sure.

11          MR. CHARLTON:     I need to talk to my folks and see

2     if  we've covered everything.

13          MS. BRASWELL:     Do you want us to step outside?

14          [Discussion held off the record.]

15          MR. CHARLTON:     On the record.

16          I just have a couple of cleanup questions here.

17          BY MR. CHARLTON:

18          Q     What is the official name of your -- everybody

19     here says it's called, "Bob's database."

20          [Laughter.]

21          What is the official name of the databases, each

22     year's database that you maintain that we've been talking

23     about?

24          A     There is no official name. Maybe "Bob's

25     database" is it.

1          [Laughter.]

2          Q       There is no official name?

3          A       There is no official name.

4          Q       So if we asked for something from Marina here,

5     Mrs. Braswell, we say, "Bob's database"?

6          A       You would ask for, for instance, the 1989 PFP

7      database, or whatever.

8          MS. BRASWELL:     Not that one. It's not relevant,

9     but you could ask for a database, I assume, that is

10    maintained by Mr. Mowbray.

11         MR. CHARLTON:     All right, well, we know what to

12     ask for. Of course, the judge decides what's relevant and

13    what isn't, and we will see what we will see.

14         BY MR. CHARLTON:

15         Q       Now the size of this database is approximately

16     what for each year?

17         A       Since it's stored on a mainframe, I really don't

18    know. It's not overly large. I mean, if it were to be

19    written to fixed length records, a record would probably --

20    this is the PFP database again now -- a record would

21    probably not exceed 300 characters, and there are probably

22    3,000 to 3,500 observations per record. So that would give

23    you an indication of the size.

24         Q       Three thousand times 300?

25         A       Did I say -- yes, 300 is about, I guess, what a

1        Q     Do you understand the question?

2        A     Well, you'd like an indication of how long it

3 would take, but, as our former President said, that depends

4 on what the definition of "it" is.

5             [Laughter.]

6        Q     Of course. But I'm saying, I ask you, I'm the

7 comptroller General and I ask you to give me an analysis of

8 something that has 20 variables in it and I want it for all

9 years.

10       A     For all years?

11       Q     All years from '89 forward.

12       A     I would turn it around in a couple of days.

13       Q     Okay, that's what I wanted to know. Thank you.

14       A     Okay.

15       Q     Now did there come a time when you became aware

16 of something called the Lateral Reassignment Program or

17 Panel?

18       A     I don't recall it being called a program or a

19 panel, but I do recall there being a Lateral Reassignment

20 process of some kind.

21       Q     Okay, that's what I'm getting at. When was that?

22       A     It would have been in.:the spring of 2000.

23       Q     How did you become aware of it?

24       A     I would have been asked probably to look at some

25 results or for Some information by either Tom Brew or by

# C E R T I F I C A T E

THE UNITED STATES OF AMERICA

IN THE DISTRICT OF COLUMBIA


I, Stanley Ruddie, Court Reporter, do hereby certify that the foregoing proceedings were recorded by me and thereafter reduced to typewritten form; that the transcript is a true record of the proceedings; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding occurs; and further, that I am not a relative of or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.



Stanley Ruddie

Court Reporter