# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES D. MOSES** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-1712 (EGS)** |
| | ) |
| **GENE L. DODARO, Acting** | ) |
| **Comptroller General of the United States** | ) |
| **Government Accountability Office (GAO), et al.** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' PARTIAL MOTION TO DISMISS

Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, defendants, through counsel, respectfully move this Court to dismiss all but one of the plaintiff's claims for failure to state a claim upon which relief can be granted. In support of this motion, defendants respectfully refer the Court to the attached memorandum of points and authorities. A proposed order is attached hereto.

Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
HEATHER GRAHAM-OLIVER,
Assistant United States Attorney

Civil Division
555 4TH Street, N.W.
Room 4808
Washington, D.C.  20530
(202) 305-1334


Of Counsel:
WESLEY DUNN
Government Accountability Office
Senior Staff Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JAMES D. MOSES** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1712 (EGS)** |
| | ) | |
| **GENE L. DODARO, Acting Comptroller** | ) | |
| **General of the United States** | ) | |
| **Government Accountability Office (GAO), <u>et al.</u>** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS

The defendants, Gene L. Dodaro[1], Acting Comptroller General of the United States,

Government Accountability Office (GAO) *et al.*, through counsel, hereby move this Court to

dismiss in part the instant complaint.  With the exception of plaintiff's allegation concerning age

discrimination in the restructuring of employees at his Band II level, the complaint must be

dismissed pursuant to Fed. Civ. R. P. 12(b)(6) for failure to state a claim upon which relief can

be granted.

## INTRODUCTION

Plaintiff James D. Moses commenced this action under the Age Discrimination in

Employment Act of 1964 (ADEA), 29 U.S.C. § 633a (2006), the U.S. Constitution and the Equal

---

[1]  Gene L. Dodaro is automatically substituted for his predecessor, David M. Walker, as acting Comptroller General.  Fed. R. Civ. P. 25(d)(1); <u>Network Project v. Corp. for Pub. Broad.,</u> 398 F.Supp. 1332, 1336 (D.D.C. 1975) (explaining that "[s]ubstitution is appropriate when the original officer is replaced by an acting officer").

Pay Act.[2]  Plaintiff is alleging age discrimination dating back to the 1980's in performance appraisals, advancements, pay, and terminations.  Claims regarding plaintiff's 2000 and 2001 performance appraisals must be dismissed because the appraisals do not constitute adverse employment actions.  With the exception of plaintiff's claim regarding his placement during a restructuring that took place for employees at his band level, plaintiff's age discrimination allegations must be dismissed.

Plaintiff's other age discrimination claims must be dismissed due to his (1) untimeliness in failing to file a Notice of Intent to Sue within 180 days of the alleged discriminatory employment practice; and (2) waiting longer than 90 days after filing his Notices of Intent to Sue to file the instant Complaint.

The plaintiff's Equal Pay Act claim must be dismissed because that statute does not cover age-based discrimination.  In addition, the Court should dismiss the claims against the PAB because it is well-settled that claims based on the handling of a discrimination complaint are not cognizable.  Finally, plaintiff's jury demand must be stricken because the ADEA does not permit jury trials for federal employees.  See, e.g., Lehman v. Nakshian, 453 U.S. 156 (1981) (federal employees man not demand a jury trial for ADEA claims); Al-Harazi v. City of New York, 70 BNA FEP Cas 444 (S.D.N.Y. 1996)(no entitlement to jury trial in ADEA cases).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently employed as an analyst in GAO's Los Angeles field office.  Compl.

---

[2]  In the Complaint, plaintiff stated that he "is contemporaneously filing a motion for a preliminary injunction and a motion for class certification under Rule 23.  The allegations in those motions are incorporated by this reference."  Compl. at p. 13.  Defendants believe that class certification is premature at this stage of the litigation and have filed a motion to stay class certification until the Court has made a decision on the motion to dismiss.

at 14. He is 66 years of age and alleges that GAO has discriminated against him on the basis of age with regard to all aspects of his employment, including performance appraisals, advancements, pay, and termination.[3] Compl. at 8. Plaintiff alleges the following: (1) that discriminatory personnel decisions have taken place for over 20 years, and that these actions constitute continuing violations; (Compl. at 9, 8) (2) that GAO's Band II restructuring was based on age discrimination; (Compl. at 12-13) and (3) that he was denied a COLA on February 16, 2006, when he received his paycheck and that the discriminatory pay has continued each pay period since that time. Compl. at 13.

Plaintiff further claims that GAO's administrative board, the PAB, has failed to investigate or correct allegations of age discrimination, resulting in his being deprived of due process and equal protection in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. Compl. at 3-5.

With regard to procedural matters, the complaint alleges that plaintiff has filed three Notices of Intent to Sue with GAO under the ADEA. He claims that the first Notice was filed in 2000. Compl. at 11. However, GAO has no record of this Notice of Intent to Sue and plaintiff does not specify a particular month or day.

Plaintiff filed the second Notice on April 6, 2005. Compl. at 11.[4] Id. The 2005 Notice

---

[3] Plaintiff is still employed at GAO; therefore he has no cognizable claim with regard to termination.

[4] This 2005 Notice set forth the intent of plaintiff's counsel to file a class action age discrimination suit. Exh. 1. It also provided that the plaintiff intended to file a suit individually or to join an existing case, Chennareddy v. Walker, Civ. Act. No. 87-3538. While plaintiff's instant complaint contains class action allegations, the 2005 Notice of Intent to Sue is the only Notice referencing his intent to file a class action. As discussed further herein this Notice of Intent to Sue is untimely with regard to any class action issues.

alleges no specific instances of discrimination.  Id.

Plaintiff filed the third Notice of Intent to Sue, on August 14, 2006.[5]  Compl. at 11.  This Notice alleged that GAO's Band II restructuring and the agency's denial of a COLA was based on age discrimination and violated the Equal Pay Act.  Exh. 2.  Plaintiff filed the instant lawsuit on October 4, 2006.

## ARGUMENT

### I.  Standard of Review under Motion to Dismiss

This Court may dismiss the Complaint pursuant to Rule 12(b)(6) if the plaintiff has failed to plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007); In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly).  Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support the plaintiff's claims for relief.  In deciding a motion to dismiss, "the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations."  Sullivan-Obst v. Powell, 300 F. Supp.2d 85, 91 (D.D.C. 2004).  In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice."  EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).

### II.  Plaintiff Failed to Comply with the ADEA Notice Requirements.

#### A.    Notice of Intent

The ADEA permits federal employees to file a complaint directly with a United States

---

[5]  The Third Notice was dated August 9, 2006.

District Court.[6]  *See* 29 U.S.C. § 633a(c); Lex K. Larson, 8 Employment Discrimination (2d ed.) § 140.08, at 140-32 (1998).  However, the aggrieved employee must first file a Notice of Intent to Sue with the GAO's Office of Opportunity and Inclusiveness.[7]  See 29 U.S.C. § 633a(c)-(d).  The employee must file this Notice within 180 days after the alleged discriminatory practice occurred.  Id.; see also Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991).  The failure to file the Notice within 180 days precludes a suit in federal court.  Id.  As the GAO demonstrates below, the plaintiff's ADEA claims are barred because he did not file a Notice of Intent to Sue within 180 days of an alleged discriminatory practice.

The 180-day period for filing a Notice of Intent to Sue is a key requirement.  The purpose of requiring that the employee file a Notice of Intent to Sue within 180 days is twofold.  First, it provides the EEOC or the employing agency with an opportunity to attempt to conciliate the complaint while it is still fresh.  Second, it provides early notice to the employer of a possible lawsuit, thereby promoting both the preservation of evidence and good faith negotiation on the part of the employer during the conciliation period.  Cf. Lex K. Larson, 8 Employment Discrimination (2d ed.) § 140.01, at 140-3 (1998).

The 180-day filing period for providing written Notice of Intent to Sue is a statutory prerequisite to suit.  29 U.S.C. § 633a(d).  Thus, the Notice constitutes an integral part of the

---

[6] Alternatively, employees may pursue administrative remedies by filing an EEO claim with the agency.  Plaintiff alleges that he has filed two complaints with GAO's EEO office in 2002 and March 2006.  Compl. at 11.  The 2002 complaint alleged that GAO discriminated against Plaintiff based on his age, and retaliated against him for his attempts to intervene in a class action age discrimination lawsuit, by giving him low performance appraisals for the years 2000 and 2001.  Exh. 3.

[7] Most federal employees would file the notice with the Equal Employment Opportunity Commission.

waiver of sovereign immunity that permits an employee to bring an age discrimination claim

against a federal agency.  The notice requirements protect employers from defending claims

arising from employment decisions that are long past.  See Ledbetter v. Goodyear Tire & Rubber

Co., 127 S. Ct. 2162, 2170 (2007).  The exhaustion requirements recognize that discrimination

claims frequently involve a "subtle determination" as to an employer's intent, the evidence of

which "may fade quickly with time."  Id. at 2170-71.

**B.     ADEA CLAIMS ARE UNTIMELY BECAUSE PLAINTIFF DID NOT FILE HIS COMPLAINT WITHIN 90 DAYS OF SUBMITTING HIS NOTICE OF INTENT TO SUE**

Plaintiff's ADEA claims are also time-barred because he did not file his complaint within

90 days of submitting his Notices of Intent to Sue.  Although the ADEA does not contain a

specific limitations period, see 29 U.S.C. § 633a, the Supreme Court has held that "Congress

intended to impose an appropriate period borrowed from either a state statute or from an

analogous federal one."[8]  Stevens, 500 U.S. at 7.  A majority of circuit courts to consider the

issue have concluded that the 90-day limitations period prescribed in Title VII is the most

analogous statute to the ADEA, and therefore Title VII provides the most appropriate statute

from which to borrow a limitations period.  See e.g., Edwards v. Shalala, 64 F.3d 601, 605-06

(11th Cir. 1995); Long v. Frank, 22 F.3d 54 (2d Cir. 1994); Lavery v. Marsh, 918 F.2d 1022, 1025

(1st Cir. 1990).  But see Rossiter v. Potter, 357 F.3d 26, 35 (1st Cir. 2004) (finding 2 year statute

of limitations in the Fair Labor Standards Act to be more appropriate than Title VII).  These

courts recognize that § 633 is patterned directly after the corresponding provision under Title VII

and that both Title VII and the ADEA share the same purpose:  eliminating discrimination in the

---

[8] In Stevens, the Supreme Court did not expressly decide which limitations period applies.

workplace.  Id.

In Price v. Bernake, 470 F.3d 384, 388-89 (D.C. Cir. 2006), the D.C. Circuit held that "when federal employees bring a civil action after pursuing administrative remedies under the ADEA, the action must be brought within 90 days of final agency action, the time period allowed for similar suits under Title VII."  In reaching this conclusion, the D.C. Circuit specifically found that Title VII is the most analogous statute to the ADEA.  Id.  When a federal employee receives a Right to Sue letter, he is authorized to assert his age discrimination in federal court.  An employee who foregoes the administrative process is similarly able to file his age claim in federal court after he submits a Notice of Intent to Sue.  An employee who chooses to proceed directly in federal court should be required to do precisely that within the same amount of time as employees who receive a Right to Sue letter.

The Court could conclude that the 90-day period does not begin to run until after the 30-day period for the GAO to address the complaint expires.  See 29 U.S.C. § 633a(c)-(d). However, even if the Court adopts this view, the plaintiff's claims would still be untimely.  He alleges that he filed the Notices of Intent to Sue in 2000 and April 2005, but the instant complaint was not filed until October 4, 2006.  The 2000 and April 2005 claims are, accordingly, time-barred.

## C.    THE APPLICATION TO THE FACTS

Plaintiff claims to have filed three Notices of Intent to Sue, the first at some unspecified time in 2000, the second on April 6, 2005, and the third on August 14, 2006.  To be timely, plaintiff would have had to file his Notices no later than 180 days (approximately 6 months) after any alleged discriminatory practice occurred.

7

As to the year 2000 Notice, it is difficult to discern the appropriate filing date because the complaint contains no month or day and GAO has no record of the Notice.  Nonetheless, the alleged discriminatory events covered by the 2000 Notice would have had to occur at the earliest by July 1999 and at the latest by July 2000.[9]  Plaintiff does not identify any unlawful individual practices occurring between July 1999 and July 2000, the possible appropriate time frames of the year 2000 Notice.  See Complaint.  Therefore, his general claims of age discrimination in performance appraisals, advancements, pay, and terminations should be dismissed.  Compl. At 8. Additionally, even if plaintiff filed a Notice of Intent in 2000, that Notice would still be untimely because the underlying claim was not filed with this Court within 90 days of submitting the Notice of Intent to Sue.  This lawsuit was not filed until October 4, 2006.

As to the April 6, 2005 Notice, plaintiff alleges no discriminatory events from October 6, 2004 through April 6, 2005, the only appropriate time frame for the 2005 Notice.  See Complaint.  Nor does the April 6, 2005 Notice itself refer to any specific incidents of discrimination.  Exh. 1.  Thus, there is no basis on which to find that the April 6, 2005 Notice was timely filed.  Moreover, the 2005 Notice would also be untimely because the underlying claim was not filed with this Court within 90 days of submitting the Notice of Intent to Sue.

The third Notice of Intent to Sue was received by GAO on August 14, 2006.  This Notice pertained to the Band II restructuring and the denial of the annual adjustment.   However, an analysis of the relevant dates reveals that plaintiff's 2006 Notice of Intent to Sue was filed too late.  Plaintiff was notified of his placement in Band IIA in December 2005 and was placed in

---

[9]  If the Notice were filed as early as January 1, 2000, the events it covered would have had to occur on or after July 5. 1999.  If the Notice were filed as late as December 31, 2000, the events it covered would have had to occur on or after July 5, 2000.

Band IIA during the first week of January 2006. Compl. at 16. Even using the latest January date, plaintiff's 2006 Notice would still be outside of the 180 day deadline. The Notice was received at least 222 days after he was placed into Band IIA.[10]

The effective date of the determination regarding whether plaintiff was eligible for an annual COLA adjustment was January 22, 2006. Anderson Aff. 6. Plaintiff was notified of this pay determination on January 25, 2006. Anderson Aff. 6. Plaintiff's third Notice of Intent to Sue was received by GAO on August 14, 2006, 204 days after the annual COLA adjustment determination.

Therefore, the third Notice of Intent to Sue is untimely. Since the three Notices of Intent to Sue were untimely, plaintiff cannot assert that he has met the timeliness requirement for filing an ADEA suit directly in district court.[11]

### III. The Continuing Violation Theory Does Not Apply to Plaintiff's ADEA Claims.

Plaintiff, however, submits that his ADEA claims are timely because the claims constitute continuing violations. Compl. at 8. Plaintiff's complaint does not fit within the continuing violation theory. First, the holding in National Railroad Passenger Corp. v. Morgan, 536 U.S.

---

[10] Plaintiff claims that he was placed in Band IIA during the first week of January 2006, of which the last business day was Friday, January 5, 2006, 222 days before August 14, 2006, the day that the Notice of Intent was received by GAO.

[11] However, plaintiff filed an EEO complaint on March 30, 2006. The 2006 EEO complaint alleged age discrimination during GAO's restructuring of its Band II pay scale, which occurred in late 2005 and early 2006. Exh.4. One hundred eighty days have passed since he filed his EEO complaint and the agency has not issued a final decision. Therefore Plaintiff has properly exhausted his administrative remedies and is timely in bringing his claim regarding the Band II placement claim before the court. Crawford Aff. at 12. Significantly, the March 30, 2006, EEO claim did not mention the COLA annual adjustment. Accordingly, plaintiff cannot argue that he filed a timely EEO claim regarding the loss of a COLA due to the restructuring.

9

101 (2002), makes clear that discrete events of the type alleged in the complaint are not subject to the continuing violation doctrine.  Compl. at 18-19.  Occurrences such as terminations or the failure to be promoted constitute separate actions for which individual and timely EEO charges (or, in the case of ADEA, Notices of Intent to Sue) must be filed.  Morgan, 536 U.S. at 114.  The alleged constructive discharges and the Band II placement also would meet the court's definition of discrete events, as they occurred on a date certain and were readily identifiable.

Second, even were the claims to be cognizable as continuing violations, one alleged discriminatory action must occur during the timely-filing period, in this case 180 days prior to the Notice of Intent to Sue.  Morgan; 29 U.S.C. § 633a(d).  There are no such specific events alleged in the complaint, nor in the Notices of Intent to Sue.  Thus, the continuing violation theory does not save plaintiff's ADEA allegations.

### IV.  Plaintiff's "Pay Accrual" Argument Fails.

Plaintiff also contends that the alleged discrimination behind his placement in Band IIA turns each subsequent paycheck into a new incident of age discrimination, essentially entitling him to file a new action each pay period.  See Compl. at 17-18.  The Supreme Court recently rejected this argument in similar circumstances in Ledbetter v. Goodyear Tire & Rubber Co., 127 S.Ct. 2162 (2007).

The plaintiff in Ledbetter alleged that she had received a discriminatory performance evaluation based on her sex, in violation of Title VII.  Ledbetter, 127 S.Ct. at 2165.  She argued that, because of the continuing impact of this original discriminatory act, each subsequent paycheck was a new incident of sex discrimination, even if the paychecks themselves were not issued with discriminatory intent.  Id. at 2172.  The Court disagreed, holding that "a new Title

VII violation does not occur and a new charging period is not triggered when an employer issues paychecks pursuant to a system that is 'facially nondiscriminatory and neutrally applied.'" Id. at 2174 (quoting Lorance v. AT & T Technologies, Inc., 490 U.S. 900, 911 (1989)).  Only "'when an employer adopts a facially discriminatory pay structure that puts some employees on a lower scale because of [their membership in a protected class, such as race], [does] the employer engage in intentional discrimination whenever it issues a check to one of these disfavored employees.'" Id. at 2173 (quoting Bazemore v. Friday, 478 U.S. 385, 395 (1986)).

Because the plaintiff in Ledbetter could not show that her employer adopted its pay system in order to discriminate on the basis of sex, the only discriminatory act of which she could complain was her original performance evaluation.  Id. at 2174.  Even if the plaintiff could prove discriminatory intent in her performance evaluation, the fact that such "discrimination adversely affects the calculation of a neutral factor . . . that is used in determining future pay does not mean each new paycheck constitutes a new violation." Id.

Plaintiff has not produced any evidence that GAO's pay structure is anything but a "facially nondiscriminatory and neutrally applied" system.  Thus, under Ledbetter, he may not treat each subsequent paycheck as a discrete discriminatory event.

### V.  Plaintiff's Performance Rating Claims Must Fail.

Plaintiff has failed to establish a prima facie case under the ADEA for the following claims: (1) whether the plaintiff was discriminated against in his performance ratings for 2000 and 2001 on the basis of age; and (2) whether plaintiff was retaliated against in his performance ratings for 2000 and 2001.  Exh. 3.

The ADEA requires that "[a]ll personnel actions affecting employees or applicants for

employment who are at least 40 years of age . . . in [the GAO] . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a).  The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973), governs the analysis of plaintiff's discrimination claims.  Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000); see also Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (explaining that the McDonnell Douglas framework applies to ADEA claims).  Under McDonnell Douglas, a plaintiff bears the initial burden of establishing a prima facie case, meaning he must prove by a preponderance of the evidence "that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).   Plaintiff cannot establish the second of these prima facie elements (adverse action) in regard to the 2002 EEO complaint.

To establish an adverse employment action in the absence of a diminution in pay or benefits, a plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." Brown, 199 F.3d at 457; see also Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001) (recognizing "the objective tangible harm' requirement, which guards against both judicial micro management of business practices, and frivolous suits over insignificant slights) (internal quotation omitted).

Plaintiff has failed to allege that he suffered an adverse employment action with regard to his 2000 and 2001 performance appraisals.  The plaintiff has not suffered any "objectively tangible harm," nor has he alleged any type of materially adverse consequence affecting the terms, conditions or privileges of his employment with regard to these two performance appraisals.  Plaintiff does not claim that the lowered appraisals resulted in a loss of salary or

grade.  In fact, in his 2002 complaint of discrimination, plaintiff stated that there probably would

not be any monetary increases for him in the next merit pay category because of "where he was

[at the top of] the salary scale."  Exh. 3.

A lowered performance evaluation, absent an effect on the employee's salary or grade, is

not sufficient to constitute an adverse employment action under the ADEA.  In Brown, the D.C.

Circuit held that the lowering of an employee's performance evaluation was not an adverse

employment action because, while the evaluation may have been lower than normal, it did not

affect the employee's grade or salary.  199 F.3d at 458 (noting the "thick body of precedent" that

"refutes the notion that formal criticism or poor performance evaluations are necessarily adverse

actions"); Easton v. Snow, No. 04-02038, 2006 WL 1774552, at *4 (D.D.C. June 26, 2006)

(holding that a lowered appraisal was not "intrinsically adverse enough to trigger ADEA

protections absent some indication of objective or tangible harm").

Thus, plaintiff has not established an adverse employment action with regard to his claim

that he was discriminated and retaliated against in his performance ratings for 2000 and 2001 on

the basis of age.  Plaintiff has failed to state a prima facie case with regard to these claims and

they must be dismissed.

## VI.  The Court Should Dismiss Plaintiff's Equal Pay Act Claims.

Plaintiff seeks relief under the Equal Pay Act (EPA).  Compl. at 3, 13, 38.  Plaintiff

cannot maintain an EPA claim in this Court because a) he alleges age discrimination and not sex

discrimination and b) he seeks relief exceeding the $10,000 jurisdictional amount.  The Equal

Pay Act "prohibits payment of unequal wages for equal work on grounds of sex [.]" 29 U.S.C. §

206 (d).  Here, plaintiff alleges age discrimination and does not allege any discrimination based

13

on gender.  Thus he cannot seek relief under the EPA and his claims must be dismissed under Fed. R. Civ. P. 12(b)(6).

In addition to solely concerning gender discrimination, claims brought pursuant to the Equal Pay Act must satisfy the jurisdictional requirements of the Tucker Act.  28 U.S.C. § 1491. See e.g., Barnes v. Levitt, 118 F.2d 404, 410 (5th Cir. 1997) cert denied, 523 U.S. 1136 (1998) ("[A] plaintiff asserting an EPA cause of action must bring the action in the Court of Federal Claims if the claim, including the fees sought, exceeds $10,000.").  Section 1346(a)(2), commonly referred to as the "Little Tucker Act," expressly limits the jurisdiction of this Court to any non-tort civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress."  28 U.S.C. § 1346(a)(2).  See, e.g., Doe v. Dep't of Justice, 753 F.2d 1092, 1101 (D.C. Cir. 1985); Wiggins v. Powell, No. Civ.A.02-1774, 2005 WL 555417, * 11 (D.D.C. Mar. 7, 2005); Schrader v. Tomlinson, 311 F. Supp.2d 21, 25 (D.D.C. 2004)("it is well established that claims brought pursuant to the Equal Pay Act must satisfy the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491") (internal quotations and citation omitted).  Plaintiff seeks damages of "a sum not less than $300,000".  Compl. at 33.  This amount exceeds the jurisdictional amount of the Little Tucker Act.  Assuming his claims can be heard at all, they must be brought before the Court of Federal Claims.  Therefore, the Court should dismiss plaintiff's EPA claim.

**VII.  Plaintiff's Claims Against the PAB Fail.**

    **A.  The Court Has No Subject Matter Jurisdiction over ADEA Claims Against the PAB**.

Federal Courts are courts of limited jurisdiction and may hear a case only if authorized to

do so by a congressional grant of jurisdiction.  Ins. Corp. of Ireland v. Compagnie des Bauxites

de Guiness, 456 U.S. 694, 702 (1982); Aldinger v. Howard, 427 U.S. 1 (1976).  Congress has not

created a right of action against the EEOC or any other agency based upon the handling of an

administrative complaint of discrimination.  Thus an alleged failure to process an administrative

claim properly is not actionable under the ADEA.  E.g., Storey v. Rubin, 976 F. Supp. 1478,

1483-84 (N.D. Ga. 1997) (finding ADEA does not confer jurisdiction over an action "challenging

any aspect of the administrative processes (or any application of  that process) by which

complaints of discrimination are investigated and resolved"); Oxford Medical Group v.

Vossoughian, 154 F. Supp.2d 782, 785 (S.D.N.Y. 2001) (ADEA does not provide for a claim to

be brought against the EEOC ); see also Packer v. Garrett, 735 F. Supp. 8, 9-10 (D.D.C. 1990)

(only "right" Title VII establishes is to be free of discrimination; this right is served even if errors

are made in processing the charge, by the right to a trial de novo), aff'd, 959 F.2d 1102 (D.C.

Cir.) (table), cert. denied, 506 U.S. 1036 (1992); Young v. Sullivan, 733 F. Supp. 131, 132

(D.D.C. 1990) ("Title VII creates only a cause of action for discrimination.  It does not create an

independent cause of action for the mishandling of an employee's discrimination complaints."),

aff'd, 946 F.2d 1568 (D.C. Cir. 1991) (table), cert. denied, 503 U.S. 918 (1992); Anthony v.

Bowen, 848 F.2d 1278 (D.C. Cir. 1988) (denying claim for attorney's fees under Title VII where

fees were incurred to challenge processing of EEO complaint), cert. denied, 489 U.S. 1011

(1989).

        In Storey, the Court analyzed the remedial scheme of the ADEA and concluded that the

Federal Courts lacked subject matter jurisdiction to hear claims regarding the mishandling of an

employee's discrimination complaint during the administrative process:

15

While federal courts generally have subject matter jurisdiction over claims arising under Title VII and the ADEA, this subject matter jurisdiction typically arises from one of the five specific code sections in these two remedial schemes through which Congress explicitly created rights of action, namely:  (1) 42 U.S.C. § 2000e-5(f)(3) (Title VII) (authorizing the EEOC, Attorney General, and aggrieved employees to bring civil actions in federal court);  (2) 42 U.S.C. § 2000e-6(b) (Title VII) (authorizing three judge district courts for pattern and practice cases of general importance brought by the Attorney General or the EEOC); (3) 42 U.S.C. § 2000e-16 (Title VII) (authorizing federal employees or applicants to bring civil actions); (4) 29 U.S.C. § 626 (ADEA) (authorizing aggrieved employees and applicants to bring a cause of action);  (5) 29 U.S.C. § 633a (authorizing federal employees and applicants to bring a cause of action).  None of these five sections creates a right or action or confers on this Court jurisdiction over a claim by a federal employee against the EEOC, or any other agency, challenging any aspect of the administrative processes (or any application of that process) by which complaints of discrimination are investigated and resolved.[2]

Storey, 976 F. Supp. at 1483-84.

**B.  Plaintiff Has Neither Express Nor Implied Cause of Action Against the PAB**.

Even assuming arguendo that the court has subject-matter jurisdiction over the plaintiff's complaint, the court would have to dismiss the complaint under Rule 12(b)(6) because the D.C. Circuit and circuits across the county have held that Congress has not authorized, either expressly or impliedly, a cause of action for the alleged negligence or other malfeasance in processing an employment discrimination charge.  See e.g., Smith v. Casellas, 119 F.3d 33, 34 (D.C. Cir. 1997);  Baba v. Japan Travel Bureau Int'l. Inc., 111 F.3d 2, 4 (2d Cir. 1997); Scheerer v. Rose State College, 950 F.2d 661, 663 (10th Cir. 1991); McCottrell v. Equal Employment Opportunity Comm'n, 726 F.2d 350, 351 (7th Cir. 1994); Uberoi, 180 F. Supp.2d 42, 45 (D.D.C. 2001);

---

[2]  In Storey, the Court noted that "the remedial scheme of the ADEA parallels the remedial scheme of Title VII.  Thus, the analysis of plaintiffs' claims under these statutes is identical." 976 F. Supp. at 1483.  Further, assuming arguendo that this Court did have subject matter jurisdiction and plaintiff's Complaint did state a claim, the head of the agency involved (here, defendant Walker) is the only appropriate defendant.  Storey, 976 F. Supp. at 1484.

16

Storey, 976 F. Supp. at 1484 ("[i]t is well settled that charging parties do not have an implied remedy against the EEOC or any other agency arising from the handling of a charge or a decision."). Thus, the Court should dismiss plaintiff's claims against the PAB for improper processing of their discrimination claims.

### C.    Plaintiff Does Not State a Claim for Due Process Violation Against the PAB.

Assuming arguendo that plaintiff's due process claims were not precluded by the ADEA or barred by sovereign immunity, these claims would still fail. The plaintiff alleges that the manner in which defendants conducted the administrative processes violated plaintiff's due process rights.[4] However, courts have routinely rejected such efforts to couch claims of inadequate processing of claims as due process violations supporting an implied damage remedy. See Stewart, 611 F.2d at 681-82 & n.2 (no implied right of action under Fifth Amendment for Commission's processing of charges); Francis-Sobel v. University of Maine, 597 F.2d 15, 18 (1st Cir. 1979) ("even arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party [do not] transgress[] the Due Process Clause in a way that would support the implication of a damage remedy"); Storey, 976 F. Supp. at 1485 ("plaintiff cannot bring a Fifth Amendment due process claim against the EEOC ... based on its investigation or resolution of a claim of discrimination").

The Supreme Court has recognized that federal agencies may be liable for due process

---

[4]  The Court should construe plaintiff's due process and equal protection rights claims for relief under the Fifth Amendment to the United States Constitution. See Rutherford v. United States, 702 F.2d 580, 582 and n.4 (5th Cir. 1983) (holding that the Fourteenth Amendment's restrictions on the powers of the states do not apply to the federal government, but that analogous limitations on federal action are embodied in the Fifth Amendment); Storey, 976 F. Supp. at 1486;  U.S. Const. amend. XIV.

violations committed in the course of performing their functions if those functions are adjudicatory.  See Hannach v. Larche, 363 U.S. 420, 442 (1960).  Here, plaintiff cannot state a claim against the PAB for denial of due process because the PAB's actions were not adjudicative and did not ultimately affect plaintiff's rights.  None of the PAB's actions are binding and the plaintiff may seek (and is seeking) a de novo review of his claims of discrimination in federal district court.  Chandler v. Roudebush, 425 U.S. 840, 861 (1976).  For this reason, numerous courts have determined that a plaintiff cannot bring a Fifth Amendment due process claim against the EEOC or any other agency based on its investigation or resolution of a claim of discrimination.  See e.g., Francis-Sobel, 597 F.2d at 18 ("There remains to be considered any interest appellant may have lost which proper EEOC processing might have provided.  Because a determination of reasonable cause is non binding and non final, investigative and not adjudicative, we cannot say that the failure to receive such a determination represents any loss that implicates the Due Process Clause.");  McCottrell v. E.E.O.C., 726 F.2d 351, n1 (7th Cir 1983) ("Plaintiff has no right under the Constitution to challenge the EEOC's adverse determination").  Therefore, the Court should dismiss the plaintiff's claim of due process violations.

**D.  Plaintiff Does Not State a Claim for Equal Protection Violation Against the PAB**.

Plaintiff cannot establish an equal protection violation by the PAB because plaintiff has not alleged that the PAB treated his claim any differently than it treats those of other, similarly situated complainants.  Storey, 976 F. Supp. at 1485; Mitchell v. EEOC, 888 F. Supp. 710, 713 (E.D. Pa 1995); see Dowling v. Commonwealth of Pa. Liquor Control Bd., No. 88 Civ. 7568,

18

1992 WL 328840, at *6 (E.D. Pa Oct. 27, 1992) (equal protection claim requires proof of
purposeful discrimination, which entails demonstration that plaintiff "received 'different
treatment from that received by other individuals similarly situated.' ") quoting <u>Andrews v. City
of Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990).  Here, plaintiff claims that "GAO's
administrative process is "deficient even negligent, in seeking relief for employees seeking their
aid." Compl. at p. 5.  However, even if the PAB's processing of complaints were "deficient even
negligent, in seeking relief for employees seeking their aid" that alone would not violate
plaintiff's equal protection rights.  Plaintiff does not allege that the PAB treated other similarly
situated GAO employees differently.  For example, plaintiff has not alleged that the PAB treated
GAO employees who complained of race, gender, disability or national origin discrimination
differently than PAB treated the plaintiff.  Consequently, plaintiff does not state a claim for equal
protection violation against the PAB.

### VIII.  <u>The Court Should Deny Plaintiff's Request for a Writ of Mandamus</u>.

Under 31 U.S.C. §§ 751-55, the PAB is the administrative body that handles complaints
of employees of the GAO and provides oversight on EEO issues at GAO.  Plaintiff alleges that
the PAB failed to investigate and correct age discrimination at GAO.  Plaintiff seeks a writ of
mandamus compelling the PAB and the PAB's Office of General Counsel to perform its duties of
investigation and elimination of discrimination, and to cease being subservient to GAO
management.  Compl. at p. 8.  Plaintiff also seeks a writ of mandamus against GAO requiring
that it end its alleged control over the PAB.  Compl. at p. 8.  The Court should dismiss claims
under either the Mandamus and Venue Act or the Administrative Procedure Act ("APA").

### A.    The Court should dismiss any claims under the Mandamus and Venue Act.

Under the Mandamus and Venue Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The remedy of mandamus is considered a drastic one that should be awarded only in extraordinary situations. See Mallard v. United States District Court, 490 U.S. 296 (1989); Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980); Cartier v. Secretary of State, 506 F.2d 191, 199-200, n.8 (D.C. Cir. 1974). To be entitled to mandamus, a plaintiff must demonstrate (1) a clear right to the relief he requests, (2) a clear, non-discretionary duty in the respondent/defendant to perform the action sought, and (3) the absence of an adequate alternative remedy. Mallard, 490 U.S. at 309; see also Cartier, 506 F.2d at 199-200. The burden of showing each element is on the plaintiff. This case does not present the extraordinary situation that warrants mandamus relief. Notably, plaintiff cannot demonstrate that he has a clear legal right to the relief he requests and lacks an adequate alternative remedy. Previous discussion has illustrated that he has no clear legal right to constitutional relief. Additionally, plaintiff has a right to a de novo review of his claims in federal district court. See Storey, 976 F. Supp. at 1482. "One critical consideration in determining the propriety of resort to a writ of mandamus is the question of alternative remedies; the writ is usually denied when such alternatives exist." Cartier, 506 F.2d at 199-200. Here, plaintiff is currently pursuing his alternative remedy with the present lawsuit; thus, mandamus relief is not warranted. The Court should deny plaintiff's request for a writ of mandamus.

**B.    The Court Should Dismiss Any Claims under the Administrative Procedure Act.**

**1.  Defendants Are Not Covered under the APA.**

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., provides an express waiver of sovereign immunity for suits seeking relief, other than money damages, based on allegedly improper actions of a federal "agency."  5 U.S.C. § 702.  GAO is not an agency under the APA pursuant to 5 U.S.C. § 701, which provides the following definition of "agency": "(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include-(A) the Congress".  GAO is a part of the legislative branch, and accordingly, exempt from the APA.  See Bowsher v. Synar, 478 U.S. 714, 730 (1986) (Congress created the GAO in 1921 in the belief that it "needed an officer, responsible to it alone, to check upon the application of public funds in accordance with appropriation").  The Court of Appeals for the D.C. Circuit has held that the exclusion of Congress in the APA itself applies to arms of Congress.  Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405, 1416 n. 15. (D.C. Cir. 1985) (holding statutory exemption for "Congress" extends to the Library of Congress because it is a component of the legislative branch of government); see also Washington Legal Foundation v. United States Sentencing Commission, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (concluding that the APA exemption for "the Congress" meant the entire legislative branch); cf. Mayo v. U.S. Gov't Printing Office, 839 F. Supp. 697, 700 (N.D. Cal. 1992) (finding that because the Freedom of Information Act declares that its definition of agency does not include the Congress, the entire legislative branch is exempted from the Freedom of Information Act).  The PAB, as GAO's administrative board, is

21

likewise exempt from the APA.  Therefore, plaintiff may not bring claims under the APA against the defendants.

### 2.  The Court Has No Jurisdiction under the APA.

Even assuming arguendo that the APA did apply to the defendants, the Court would still have no jurisdiction under the APA.  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Yet, not all agency action comes within the scope of the APA.  ITT Corp. v. Local 134, IBEW, 419 U.S. 428, 443-44 (1975).  Only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C.§ 702. Here, the Court has no jurisdiction under the APA because plaintiff can seek a de novo review of his claims in federal district court and such is an "adequate remedy in a court."  5 U.S.C. § 702. Plaintiff can seek and is seeking a review of his claims in federal district court.  Because plaintiff has an adequate remedy in this Court, the Court should dismiss any claim under the APA for lack of subject matter jurisdiction and deny plaintiff's request for injunctive relief.

### <u>CONCLUSION</u>

In sum, the only allegation properly before the Court is plaintiff's ADEA claim concerning his placement during GAO's Band II restructuring.  Therefore, defendants request that the Court dismiss all of the plaintiff's ADEA claims except that single claim.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610

22

United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney




___/s/_____
HEATHER GRAHAM-OLIVER,
Assistant United States Attorney
Civil Division
555 4TH Street, N.W.
Room 4808
Washington, D.C.  20530
(202) 305-1334

Of Counsel:
WESLEY DUNN
Government Accountability Office
Senior Staff Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| James D. Moses, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-01712 (JGP) |
| | ) | |
| DAVID M. WALKER, et al. | ) | |
| Comptroller General of the | ) | |
| U.S. Government Accountability Office | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF SHANNON ANDERSON

I, Shannon M. Anderson, depose and state as follows:

1. I am presently employed as a Human Capital Specialist in the Performance and Compensation Management Center of the Human Capital Office. In that capacity, I have the responsibility of verifying the calculations of pay increases for GAO employees pursuant to GAO's pay orders.

2. There are two types of possible pay increases for GAO employees. The first type is called an "across the board increase" or "annual adjustment." This type of pay increase consists of a predetermined percentage pay increase that is granted to all eligible employees to adjust for inflation. Employees sometimes refer to the annual adjustment as a Cost of Living Adjustment (COLA).

3. The second type of pay increase is called "performance-based compensation" (PBC). This type of pay increase may be in the form of a permanent pay increase, a lump sum bonus, or a combination of the two. An employee's PBC is determined using a formula that incorporates the employee's annual performance appraisal score.

4. If an employee is in excess of the salary range for his Band, he is not eligible for an annual adjustment or a permanent PBC pay increase. However, if the employee's performance appraisal score is in the top 20% of employees in the same Band in his team, he may receive a one-time lump-sum PBC bonus that year.

5. At the time of the 2006 pay increase calculations, James Moses's salary was in excess of the maximum salary rate for his band. Therefore, he could not receive an annual adjustment or a permanent PBC pay increase.

6. The effective date of the determination described in paragraph 5 was January 22, 2006. On January 25, 2006, employees were notified that they could view the

amount, if any, of their annual adjustment (and their PBC). This information was contained in GAO's on-line Competency Based Performance System (CBPS) database.

7.    In March 2006, Mr. Moses was notified that, based on his performance appraisal score, he would receive a PBC lump-sum bonus of $1000, which would be made retroactive to January 22, 2006.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Shannon Anderson          12-11-06
Shannon M. Anderson        Date

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

James D. Moses,                                   )
                                                  )
Plaintiff,                                        )
v.                                                )          Case No: 06-01712 (JGP)
                                                  )
DAVID M. WALKER, et al.                           )
Comptroller General of the                        )
U.S. Government Accountability Office             )
                                                  )
Defendants.                                       )
                                                  )

## AFFIDAVIT OF DOLORES CRAWFORD

I, Dolores Crawford, depose and state as follows:

1.      I am presently employed as a Mediation Program Manager & EEO Counselor in the Office of Opportunity and Inclusiveness (O&I), formerly known as the Civil Rights Office, at the Government Accountability Office (GAO). In that capacity, I have the responsibility for the receipt and processing of individual and class complaints of discrimination. I have served in that capacity since approximately 1991.

2.      Among other duties, O&I staff provides EEO counseling, mediation and complaint discrimination services to U.S. Government Accountability Office employees and applicants.

3.      When O&I receives a formal Complaint of Discrimination, O&I creates a file and places it in a filing cabinet located in O&I, then begins processing the complaint.

4.      O&I has two files: one containing active complaints, and one containing old complaints. O&I's files date back to approximately 1990. The O&I filing system is organized alphabetically by the complainant's name.

5.      On or about November 27, 2006, I performed a search of the O&I files to ascertain whether O&I had received Complaints of Discrimination from James Moses.

6.      O&I records reflect that on March 15, 2006 O&I notified Mr. Moses of his right to file a formal administrative discrimination complaint regarding his Band II restructuring claims within 15 days.

7.      I located two Complaints filed by Mr. Moses, dated January 18, 2002 and April 4, 2006. These Complaints have been identified as Defendants' Exhibits 1 and 2.

8.    O&I's file also contained a Complaint of Discrimination dated December 14, 2001; O&I records reflect that this complaint alleged the same violations as the one accepted on January 18, 2002.

9.    Defendants' Exhibit 3 is a letter O&I issued to Mr. Moses acknowledging receipt of his 2002 Complaint of Discrimination and identifying which claims O&I was accepting for investigation.

10.    Defendants' Exhibit 4 is a letter O&I issued to Mr. Moses acknowledging receipt of his 2006 Complaint of Discrimination and identifying which claims O&I was accepting for investigation.

11.    O&I's file indicates that on September 6, 2006, O&I acknowledged Mr. Moses' amendement of his 2006 complaint to include an additional allegation. O&I's letter to Mr. Moses identifying the amended claim is labeled as Defendants' Exhibit 5.

12.    There is no record of a final agency decision having been issued with regard to the Complaints identified in paragraphs 7 and 8 above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

_Dolores A Crawford_    _28 Nov. 06_
Dolores Crawford      Date

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES D. MOSES** | **)** |
| | **)** |
| | **)** |
| **Plaintiff,** | **)** |
| | **)** |
| **v.** | **) Civil Action No. 06-1712 (EGS)** |
| | **)** |
| **DAVID M. WALKER** | **)** |
| **Comptroller General of the United States** | **)** |
| **Government Accountability Office (GAO), et al.** | **)** |
| | **)** |
| **Defendants.** | **)** |

## <u>ORDER</u>

UPON CONSIDERATION of defendants' Partial Motion to Dismiss, the memorandum of points and authorities in support thereof, any opposition thereto, any reply, and the record herein, it is this _____ day of _____, 200__,

ORDERED, that Plaintiff's complaint be, and hereby is, partially DISMISSED WITH PREJUDICE.

_____
United States District Court Judge