## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**James D. Moses, for himself**    )
  **and all others similarly situated** )
             )
 **PLAINTIFFS,**      )
             )  **CASE NO: 06 1712 (EJS)**
**DAVID M. WALKER**     )    **Mag. (DAR)**
**Comptroller General of the**   )
**United States c/o United States Government** )
**Accountability Office (GAO)**   )
  **and**        )
**Michael Wolf, Chairman**    )
**United States Government Accountability Office** )
**Personnel Appeals Board (PAB)**  )
 **DEFENDANTS.**     )
             )

### MOTION TO INTERVENE
(Of right, pursuant to F.R. Civ. P. 24(a)(2))

   Comes now, Robert W. Wagner, Jr, (Wagner) a former Band II employee of the Defendant GAO, who was demoted to Band IIA,, for himself and all others similarly situated, and moves to intervene in this case. Wagner seeks to intervene for himself, and to represent all others similarly situated with him. Wagner's intervention is deemed necessary to protect his own interests as a class member and the interests of about 60 similarly situated class members who, like himself, retired rather than suffer the indignity of a demotion and cost of living denials.

   The decisions of GAO management leading to the demotions (the adverse employment decisions) and cost of living denials are the "transactions"[1] which are common to both of the complainants and the class they seek to represent. Some of the more recent allegations supplement recent facts. Those facts are the result of testimony in recent Congressional

---

[1] Federal Rule of Civil Procedure 24 (a).
(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: ... (2) claims an interest related to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

committee hearings[2]. That testimony, in sum, supports Wagner's position that his intervention is necessary to prevent a forfeiture of relief for himself and the class he seeks to represent. This is because although Congress is presently processing a bill to grant full relief to those of the plaintiffs and class *who remain employed at GAO, no provision has been made for persons like Wagner, and the class he seeks to represent,* who retired subsequent to the demotions and denials of rights which are the subject of his claims.

Attachment 1 hereto is the Complaint of Mr. Moses which has been adopted in all respects by Mr. Wagner, and a member of the putative class. Under the rules and cases, no administrative exhaustion is required of an intervenor.

Intervention should be granted by the Court under Rule 24(a), intervention of right is applicable to this situation, which is based upon an identity of transactions satisfying the requirements of Federal Rule of Civil Procedure 24(a)(2).

The Court's attention is respectfully directed to the accompanying statement of points and authorities and draft Order.

Respectfully submitted,

/s/ ***charltonw2428***

Walter T. Charlton, Attorney for Plaintiffs
D.C. Bar # 186940
Walter T. Charlton & Associates
213 Morgan Street, N.W.
Washington D.C., 20001
Phone 410 571 8764, Fax 410 897 0471
charltonwt@comcast.net

---

[2] The latest hearing was held on March 13, 2008. Counsel for the plaintiffs attended that hearing. Transcripts of those hearing are, on information and belief, due to be published about May 13, 2008. The subject matter of the hearings are the identical complaints as in this case. That testimony is known to contain evidence in the form of admissions relevant to matters and issues now before this court.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| James D. Moses, for himself and all others similarly situated ) ) ) | |
| PLAINTIFFS, ) ) | CASE NO: 06 1712 (EJS) |
| DAVID M. WALKER<br>Comptroller General of the<br>United States c/o United States Government<br>Accountability Office (GAO)<br>and<br>Michael Wolf, Chairman<br>United States Government Accountability Office<br>Personnel Appeals Board (PAB)<br>DEFENDANTS. ) ) ) ) ) ) ) ) ) ) | Maj (DAR) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION TO INTERVENE**
(Of right, pursuant to F.R. Civ. P. 24(a)(2))

Comes now, Robert W. Wagner, Jr, (Wagner) a former Band II employee, who was demoted to Band IIA, of the Defendant GAO, for himself and all others similarly situated, and moves to intervene in this case. Wagner seeks to intervene for himself, and to represent all others similarly situated with him, employees who resigned or retired as a result of the facts contained in the allegations of the complaint herein.

**STATEMENT OF FACTS SUPPORTING WAGNER'S INTERVENTION:**

The facts constituting the "transactions" of this case are adverse employment decisions. Those facts as pertaining to Mr. Wagner are the same as those pertaining to Mr. Moses and all other members of the putative class. Mr. Moses complaint (Attachment 1) is attached hereto and is adopted by Mr. Wagner as his own. The class definition as set out in Moses complaint is adopted by Wagner as his own. Mr. Wagner fits that definition of a class member[3].

---

[3]    The class which this Plaintiff seeks to represent is:

Those employees of the United State Government Accountability Office (GAO) who worked for GAO during a part or all of the period of time from January 18, 1996 to date, (a date three years preceding the date this plaintiff [Moses] initially complained to this Court) who were or are employed in positions in GS Grades 11, 12, 13, 14, or 15, or the equivalent "band" at GAO, in Bands I, II, or III, who were at least 40 years of age during a part or all of the time period of their employment at GAO who were denied A. promotions, and/or B. denied correct "pay for performance", and/or C. denied fair employment ratings, and/or D. denied high visibility assignments, and/or E. *actually or constructively discharged, and/or suffered de facto demotions and/or denial of cost of living increases, in favor of younger equally or lessor qualified persons as the result of the unfair, biased and discriminatory employee rating system using age*, and/or a combination of age and race as a determining factor, and/or the integral "quota system" favoring

3

Mr. Wagner began his employment at GAO in 1980.  He is now 56 years old.  His own work history is typical of those older, experienced employees who are members of the putative class.  Wagner always performed more than adequately, held leadership positions as evaluator-In-Charge of jobs, but nevertheless was demoted and denied his cost of living increase.  Over the years Wagner suffered several instances of non-selection for promotions, once he reached a mature age (over 43).  However, he was never aware of any specific cause, although the selectees uniformly appeared to be younger persons than himself.

However, the non-selection as a Band IIB, and the resulting placement in Band IIA came as a great shock, both personal and professional.  This shock became even more so when he was told that his leadership duties would continue unchanged, and his pay and status changed (for the worse).

Wagner's employment skills remained unchanged and fully satisfactory at the time of his demotion.  After his demotion, he was still requested, and implicitly required, to continue to run jobs as the EIC, (evaluator in charge), albeit at a reduced status and salary.  On information and belief, supported by the statistics developed from the ages of the selectees and non-selectees for the Band IIB posiitons, the age of applicants was a primary selection criteria in violation of ADEA.  (See Attachment 2, Chennareddy Declaration, August 5, 2006.  Chennareddy's conclusion is that it was a virtual certainty that age was a determining factor in the selection process (Exhibit 2, page 9).  Dr Chennareddy's states:

**"In other words, the confidence in the conclusion that intentional age discrimination is clearly exhibited in GAO, by statistical evidence, is practically one hundred percent."**

Wagner has been informed of the obvious statistical bias represented by the statistical opinion, based upon the ages of the applicants for Band IIB previously entered in this case, and adopts that set of facts as his own. Prior to the time of his demotion, Wagner was a highly regarded professional Evaluator in Charge (EIC) with 27 years of loyal and successful service to the agency.

---

younger applicants for positions and/or advancements and/or any combination thereof, in effect at GAO during the time frame of his/her employment as an evaluator or evaluator support person at GAO.

Upon contacting counsel and learning of the measured and significant age bias Wagner's personal understanding of what had happened to him became complete. Wagner therefore adopts the Moses statement of facts as his own for all purposes. Wagner is now aware that Mr. Moses, and about 100 other persons who remained at GAO have been granted substantial relief from the matters complained about by Wagner.

Two circumstances have recently motivated Mr. Wagner to file this Motion requesting intervention. Those circumstances are:

(1) The reevaluation of abut 100 persons who remained at GAO and the granting of the Band IIB status. For those persons this is a de-facto recision of the demotion for those persons.

(2) The recent Congressional sub-committee actions which have been stated shall "make whole" those persons who originally suffered the indignities, loss of professional status, lower wages than similarly situated government employees, and loss of cost of living increases. Congressional action to correct those inequities appear to be happening-right now. But not for Mr. Wagner or the about 60 other non-selected senior persons who chose to leave GAO because of these prohibited practices.

The Moses class action therefore appears to be the only avenue of relief available to Mr. Wagner and the about 60 similarly situated persons he seeks to represent.

## ARGUMENT

### I. F.R.Civ. 24(a) Applies to this Situation:

The transactional facts pertaining to Mr. Wagner are the same as those applicable to Mr. Moses with respect to the wrongs alleged, and violations of federal law each allege. Mr. Wagner fits the definition of the class as previously set forth by Moses in his complaint. Because of the relief already granted to Mr. Moses, and the fact that no other class representative is available to represent Mr. Wagner and the class of about 60 similarly situated persons, there is a danger of not just inconsistent results, but absolute forfeiture of all of these aggrieved persons claims.

In this situation, F.R.Civ. P. 24(a) clearly applies. The Motion should be granted.

**II.  Whether or Not Moses Prevails in His Claims, Wagner's Status Is Representative of the 60 Employees Who Left GAO; Wagner is Similarly Situated to Those Separated Employees in Order to Provide them Representation:**

Testimony by the General Counsel of the United States Government Accountability Office Personnel Appeals Board at the March 13, 2008 Congressional Joint subcommittee session was clear.  That office has not taken steps to insure any coverage at all for persons situated like Wagner (having left GAO) but whose rights were denied.  In the event Moses is found to be fully compensated for his claimed grievances, no one is left to represent these employees.

The delays in processing their claims are through no fault of Moses, nor any fault of his counsel.  In fact the delays are the responsibility of the PAB, and the PAB General Counsel.  But that counsel stated at the March 13th, hearing that no class action is contemplated.

Under these circumstances, a forfeiture of rights is a very real possibility.


**III.  A Headless Class Situation, Given the Delays Caused by the Defendant Would be a Miscarriage of Justice:**

In the event that the plaintiff Mr. James D. Moses (Moses), is held to have been granted relief and is thus, no longer an aggrieved person, a headless class situation will be created Wagner may also be deemed necessary to represent himself and a class of persons who retired rather than continue at GAO after he was demoted.  About 60 persons are believed to be in that situation, similarly situated to Wagner.

Moses has recently been "promoted" back to the status from which he was demoted, and therefore, Moses has already received substantial relief.  In the event Moses is eliminated as class leader, and this intervention is not allowed, Wagner and the putative class of about 60 similarly situated and demoted employees run the danger of being denied relief through no representation resulting from the creation of a "headless class".


**IV.  THE CENTRAL LEGAL ISSUES ARE THE SAME FOR MOSES AND WAGNER:**

**The Central Legal Issues Before the Court are**:

**I.  Whether the GAO has a policy of discrimination using age as an adverse determinative factor in lowered ratings of its older professional employees?**

That policy is properly and appropriately subject to challenge under applicable ADEA law[4].  For each of the demotions and COLA denials about which this both Moses and Wagner complain the essential facts are the same.  The GAO performance ratings herein for plaintiff Moses and the class he seeks to represent caused his demotion in status and rank, and his and their denial of a Congressionally mandated cost of living increase.  (Or to about 340 other persons over the age of 40).

Whether justice is done or not in this case should not depend upon vagaries and manipulation of who is in fact deemed to receive full relief or not.  That determination properly is maintained by this Court in applying the Rule 23 class considerations.  The only way that can happen is to grant this Motion.


**II.  Whether that discriminatory policy is reflected in performance ratings based upon illusory, or false or irrelevant factors designed to carry out its intentional policy of age discrimination against its older professional employees?**

The Court's attention is respectfully directed to the accompanying statistical opinion of Dr Chennareddy, Attachment 2, filed previously in the related case of Davis, Moses, and Gilbert, case NO 06- 1002 (EGS), (DAR).  The information in that opinion is fully relevant to this case also.  Given the delays to date, and the nature of the available evidence, full representation of the aggrieved employees should be considered paramount to the interests of justice.

---

[4] See the recent landmark case of ***Equal Employment Opportunity Commission, Plaintiff(s), vs. Allstate Insurance Company, Defendants(s)***, Case No. 4:04CV01359 ERW, USDC, ED Missouri, 2006 U.S. Dist. LEXIS 76096, ***October 19, 2006***, citing Supreme Court rulings, and holding that a Plaintiff must articulate specific policies causing an adverse impact measured for the plaintiffs and the class.  This is the first large age case wherein an adverse impact theory was approved by a court.

Here, Moses and each other plaintiff in their respective case , have indeed articulated specific policies and practices which violate ADEA and cause the adverse impact measured.  GAO has yet to articulate any legitimate reason for the *huge* discrepancies in ratings and promotions observed.  GAO also has failed (in every related case) to articulate reasons why the discriminatory conduct is "reasonable" or has a legitimate business or other valid non-discriminatory reason for degrading older employees as distinguished from the younger employees.  In other words GAO has failed to articulate a "meritorious defense" to these charges as required by federal case law

**III.  Whether the mandatory administrative complaint process for GAO employees is meaningless, defective and violates GAO employee's rights to a meaningful administrative processing of complaints?**

**IV.  Whether the PAB, and/or the PAB General Counsel failed to follow its Mandatory Duty to Investigate Respect to Demonstrated Age Discrimination In the Federal Workplace?**

It is unquestioned that all indicia of earnings, advancements, status and retention at GAO is based upon the purported merit ratings system in place.  That same ratings system, slightly modified, has been in place for the entire term of the employment of Mr. Wagner, Mr. Moses and the entire class they both seek to represent.  Therefore, the same class of parties, the same transactional factual issues, and the same legal issues are present with respect to Wagner, Moses and the entire class they seek to represent.

Mr. Wagner alleges that the class definition contained in Mr. Moses Complaint is the same as he also alleges.  That definition is adopted by this reference.

**CONCLUSION:**

Accordingly, this to Motion to Intervene should be Granted.

A draft Order accomplishing this objective is Attached.

Respectfully submitted,

Signed, *charltonw2428*

Walter T. Charlton, Attorney for Plaintiffs
D.C. Bar # 186940
Walter T. Charlton & Associates
213 Morgan Street, N.W.
Washington D.C., 20001
Phone 410 571 8764, Fax 410 897 0471
charltonwt@comcast.net

8

**CERTIFICATE OF SERVICE**

I hereby certify that I filed, with the expectation of electronic delivery, a copy of the accompanying Renewal of the Motion to Intervene and Consolidate to:

Heather Graham-Oliver, AUSA
555 4th Street, N.W. Room 10-818
Washington, D.C.
20530

on this 29th  day of April,  2008

Charltonw 2428

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **James D. Moses** )<br>    **For himself and** )<br>    **All others similarly situated** )<br> )<br>    **Plaintiffs** )<br> )<br>                **v.** )<br> )<br>**DAVID M. WALKER,** )<br>    **Comptroller General (GAO)** )<br> )<br>    **and** )<br> )<br>**Michael Doheny, Chair** )<br>**The Personnel Appeals Board of the GAO,** )<br>    **(PAB)** )<br> )<br>**Defendants.** )<br>_____ ) | **Case No.  1:06 CV 01712  (EJS)**<br>**Mag. (DAR)** |

### ORDER

Upon consideration of plaintiff James D. Moses, and applicant intervenor Robert W. Wagner, Jr.'s Motion to Allow their Motion to Intervene, and it appearing that the issues, facts and transactions upon which the Court must consider and rule are identical, and it further appearing that there may be a danger of forfeiture of claims and a likelihood of  inconsistent results if intervention is not granted, now therefore the intervention of Robert W. Wagner, Jr. to this case is hereby GRANTED.  Mr. Wagner shall be included in this case class for all purposes hereafter.

_____
United States District Court
Emmet J. Sullivan, Judge
Deborah A. Robinson, Magistrate Judge

1

ATTACHMENT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| James D. Moses, et al | ) | |
| | ) | |
|     For themselves and | ) | |
|     All others similarly situated | ) | |
| | ) | |
|     Plaintiffs | ) | |
| | ) | |
|     v. | ) | Case No.  06-1712 (EGS) |
| | ) |       (Mag. DAR) |
| DAVID M. WALKER | ) | |
| Comptroller General of the United States, | ) | |
| Government Accountability Office (GAO) | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| Michael Doheny, Chair | ) | |
| The Personnel Appeals Board of the GAO, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

**COMPLAINT**
**(For Injunctive Relief from Employment Discrimination**
**by Violation of the Age Discrimination in Employment Act, ADEA;**
**Equal Pay Act and Equal Access to the Law)**

**Nature of this Case and Parties:**

1      This is an class action, by the Complainant James D. Moses (Moses), for himself and all

other similarly situated employees, who were downgraded and/or denied cost of living increases

by action of the GAO management effective on February 16th, 2006.  Moses is a citizen of the

United States who is employed by defendant as a career professional auditor, analyst, or

evaluator.  On information and belief, Moses and each and every person he seeks to represent

received satisfactory or better evaluations, or should have received such evaluations had the

process been fair, but nevertheless were discriminated against by downgrading and denials of

their congressionally approved cost of living increases (COLAS).

      Moses brings this action for himself and all similarly situated "evaluators and evaluator

support persons" who are classified as being in the newly designated "Band IIA", and/or those upper level Band I analysts, who were downgraded and/or denied cost of living increases (COLAs) which denials of pay increases were effective in their paychecks on or about February 16th, 2006.  He also brings this action as a long-term employee who has been discriminated against because of his age for more than 20 years.  He brings this action alleging a number of prohibited personnel practices and denials of rights in sum amounting to age discrimination in employment in violation of the Age Discrimination in Employment Act (ADEA), and equal treatment under the law against the employer, the United States Government Accountability Office (GAO), through its chief executive, David M. Walker, Comptroller General of the United States.

He alleges that GAO, and the subservient agency the PAB have denied him and all others similarly situated persons equal rights based upon a number of related factors which are readily available for complete scientific analysis as a result of recent disclosures of a hitherto secret statistical data base system maintained by GAO for the past 20 years.  He alleges that this system was used to deprive himself and persons similarly situated on an across the board basis of equal treatment under the laws, and to measure and create methodology to achieve the unequal treatment of some employees based upon their race, age, and gender.  Most importantly, the GAO falsely informed the Court that no such system existed denying access to that information. Those denials amounted to an illegal obstruction of justice.

**2.  Another Necessary Party Defendant, the PAB:**

A second necessary party defendant is The United States Government Accountability Office Personnel Appeals Board (PAB). PAB has the statutory duty to investigate, and correct violations which deprive GAO employees of equal protection of the laws and in particular, age discrimination.  Historically, for many years, and continuing, it has not performed its statutory duty.

For example, information in the hands of the PAB for many years strongly indicated a universal bias against older workers.  Nevertheless, it failed to perform its statutory function to investigate, follow up and prosecute to correct age discrimination violations which it well knew existed.  It also has failed to follow up results of its own infrequent investigations, and failed to insure that GAO's administrative process conforms to the law.  In fact many violations of GAO's administrative process exist as ongoing procedural deficiencies with no investigation or corrective action ever even contemplated by the PAB or its general counsel.  All of these functions are the Statutory responsibility of the PAB.  It simply fails to perform any of those functions in a meaningful manner.  Each and every GAO employee who perceives a violation is therefore deprived of his statutory rights to enter into a meaningful administrative process.

The reason for this is quite simple, GAO totally controls the budget of the PAB, the Board membership of the PAB, and through pressure upon those Board members, all policies of the PAB.

And GAO would not tolerate any such investigation or correction.  Management of GAO perceived the necessity for age discrimination as a matter of its own national personnel policy.  GAO's own procedures are sufficiently deficient, that on July 10th, 2006, unknown to any plaintiff, in on-going EEO cases, or potential cases or its counselors, GAO substituted an entirely new version of its operative Order, Order # 2713.2.

That order which governs all filings and processing of civil rights complaints.  No comments were solicited, and no one was notified.  Moreover, the administrative procedures to which the plaintiff herein, (Moses) was subjected, were not followed, either in the earlier or later versions of that operative order.  The GAO administrative process is sufficiently broken that GAO does not even follow it own mandatory administrative procedures.  Moses demands relief in the form of a Writ of Mandamus against the GAO to make it follow the mandatory administrative processes as to notice, confidentiality and relief required by its own operative regulations.  To the extent that those regulations differ from the Federal Code, for example as to

3

confidentiality of the initial complaints (which are routinely violated) GAO should be required to follow that law also via the mandamus action.

Moses sues the GAO personnel oversight agency, the United States Government Accountability Office Personnel Appeals Board (The PAB) for its own failure to carry out its mission established by Congress when it created the PAB and its office of general counsel in the GAO personnel act of 1980.  GAO employees were guaranteed equal rights to other federal agency employees when the PAB was created.  This has not happened.

For example, while it is known that about 14 GAO employees have recently sought the advice and power of the PAB, and its offices of the PAB general counsel seeking administrative relief of these cola denials, the actions of the PAB have been, on information and belief, woefully deficient even negligent, in seeking relief for employees seeking their aid.  On information and belief, no employee was advised of their right to complain for the class, and no employee was advised to make a complaint of age discrimination, although those actions are supported by the facts of the case.  Those facts indicate that nearly all, if not all, of the entire class of about 400 persons are over the protected age of 40, and the pattern is nearly universally a denial of rights to the older persons in the group re-evaluated leading to the denials.

The deficiencies in action by the PAB are not mere accident or happenstance.  The PAB is entirely in the thrall of the GAO in that GAO controls the budgetary process of the PAB, its board and its appointments to the office of general counsel.  That process is entirely controlled by GAO, and not the GAO oversight agency as intended by Congress when it set up the oversight agency in order to insure that GAO maintained its independence while auditing other federal agencies..  These violations also involve the failure of GAO's own personnel oversight agency, the PAB, and the general counsel of that agency, to perform their statutory oversight functions.

The PAB, and its office of PAB General Counsel, is charged with the responsibility to

4

investigate *on its own*[1] alleged violations of law by the GAO, on information and belief, has been ordered not to press investigation on allegations of age discrimination. Thus, to the extent such interference has occurred, and the complainant so alleges, the PAB, and/or its office of General Counsel, is an accomplice in the wrongdoings and violations of law and complainant's rights complained of herein.

Mr. Moses seeks to become a class representative for a class or classes of employees similarly situated to his own complaints. He invokes the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*. ("ADEA") and seek to make it a class action under the provisions of Federal Rule of Civil Procedure 23, and federal employment law decisions in this Circuit allowing such class actions under the rule of **Moysey v. Andrus,** 481 F. Supp. 850, 21 FEP 836 (D.D.C. 1979).

Moses also alleges violations of federal regulations and the Constitution to the extent he, and the class he seeks to represent were denied equal protection of the laws and due process of their frustrated complaints by a dysfunctional administrative process. The entire operation of that process, on an across the board basis, is in violation of law and GAO's own regulations to such an extent that the administrative relief process is entirely non-functional and a sham. As an example of the non-functional nature of the oversight agency administrative complaints recently filed by the PAB office of general counsel on behalf of those 14 persons, again on information and belief, never mention ADEA or age discrimination (the strongest complaint) and never requested a class action on behalf of about 400 affected and damaged employees and former employees who resigned to avoid the stigma of the downgrade.

The public interest and outrageous nature of these actions are evidenced by the letter recently sent to the Comptroller General by nine members of congress (Attachment 1, incorporated by this reference). It appears from the letter that the Comptroller General not only

---

[1] The investigative power of the PAB Office of General Counsel is, as set out by Congress similar to the power of the EEOC general counsel which furnished the model of the PAB's structure when Congress created the PAB in the United States General Accounting Office Personnel Act of 1980.

5

violated the law, but misled congress in the process of doing so.

**3. Relationship to Previous Cases:**

This new lawsuit is somewhat duplicative of the facts as stated in the case filed earlier this year by Mr. Moses with two former GAO employees. However, exhaustion of the administrative process on the new violations (downgrades and cola denials) have happened since the filing of the previous case. New facts have been discovered since that time, necessitating this filing. This has been done since GAO may allege the COLA denials and down grading are discrete and separate events from the patterns and practices complained of in that earlier lawsuit.

That suit is ***Davis, Moses and Gilbert, et al, v. Walker***, case no **06 1002 (JGP).** This case is filed in the interest of caution in the event the Court determines that the new events are indeed discrete events and not a part of the original pattern in that earlier case.

Because the facts and events complained of are duplicative and redundant this case is filed as a related case to the previous filing. Mr. Moses would have no objection to consolidation of the two cases.

**4. Injunctive Relief Requested:**

By motion accompanying this filing, Mr. Moses requests injunctive relief for himself and all similarly situated employees. Immediate and irreparable harm is continuing by reason of the cola denials, downgrading, and denials of fair and due process by the failures of processing of administrative complaints in accordance with statutory requirements and GAO's own regulations. The Court's attention is respectfully directed to the accompanying motion for injunctive relief.

**5. The Substance of this Complaint:**

These plaintiffs seek to remedy (GAO's) intentional unlawful actions of the use of age of its professional auditors of 45 years of age and older as a determinative detrimental factor in personnel decisions. As a matter of unwritten GAO policy and practice, age is, and has been for

many years, used by GAO as an adverse determinative factor in all aspects of professional level employment on an across-the-board basis affecting ratings, advancements, pay scale and terminations.  This policy and practice is a continuing violation of ADEA and other federal law.

6.  This complaint seeks preliminary and permanent injunctive relief for a number of matters.  These are:

(1) A writ of mandamus against the PAB, and the PAB's office of general counsel to require it to adequately perform its statutory function of investigation and stamping out any and all illegal discrimination which occurs at GAO and to cease and desist from all subservient actions to the GAO management in derogation of those duties.

(2) A writ of mandamus against the GAO to cease and desist from budgetary or any other control over the statutory activities and duties of the PAB, including but not limited to:

a.  Divestiture of the budgetary control of the PAB by GAO.

b.  A mandatory change in the appointment process of PAB members and the office of general counsel of the PAB by the Comptroller General, by a declaration that the actions of the GAO in appointment of those persons is a violation of the civil rights of all GAO employees in that they are thereby deprived of equal treatment of the law.  Such control renders the entire administrative process envisioned by Congress when it established the PAB and its Office of General Counsel suspect if not outright subservient.

c.  Immediate restoration of the COLA denials on a retroactive basis to the complainant and all persons similarly situated.

d.  Cancellation of the "Band II split" personnel action as discriminatory in nature, and effective primarily to deny raises to older protected persons in violation of ADEA.

e.  A declaratory judgment that all persons who resigned or retired or were terminated within one year previous to the effective date of the "band II split" may reapply for reinstatement at their former grade with associated in-grade or other increases restored for all purposes.

f.  An Order, requiring GAO to disclose fully and completely, pursuant to F.R.Civ. P.

26(a)(1) the contents and details of its hitherto secret personnel statistical system, and each and every use thereof, since 1985, as withheld in obstruction of justice and misleading statements to this Court with full expenses thereof, including costs and attorney's fees of the complainant and counsel to be bourne by the GAO.

g.  A declaratory judgment that the GAO and the PAB have acted in concert to deprive all affected GAO employees of equal treatment of the laws, age discrimination, veterans' rights and discrimination based upon race and color to the extent disclosed by the withheld statistical system since 1985.

**7.  Evidentiary Foundation for the Allegations Herein:**

The allegations herein are in part based upon personal observations of the three plaintiffs in the earlier filed case, and by Mr. Moses in the instant violations.  To the extent that the allegations of a pattern and practice has existed since 1985, the previous statistical filings, tables and opinions of Dr. Richard Lurito, Dr. Chennareddy, and the hand compilations by William D. Mullen, former GAO human resources officer filed in case No. 87-3538 in April of 1994 and April of 1995, are incorporated by this reference.

Moses and previous complainants have coined the phrase the "Band II Split and Colas" denials to describe this process.  The plaintiff herein and the class Moses seeks to represent each were denied colas and/or downgrades by GAO's recent actions termed the "Band II Split and Colas".  These persons are or were "evaluators" or "analysts" the term used at GAO to describe its staff auditors and investigators which comprise the bulk of GAO's professional staff.

The putative class representative, and persons available for witnesses bring to this complaint many man years of observed examples of actual complaints of hostility and discrimination against older protected workers based upon age.  In addition they have a combined observation of hundreds of examples of the very type of complaint that ultimately affected their own employment status (once they themselves reached the disfavored age).  The statistics

8

submitted in prior related cases disclose a universal pattern.  That pattern, Moses alleges will be

corroborated by GAO's own statistical system, if and when the Court requires disgorgement of

that data in accordance with applicable rules of law.  In the meantime, the pattern disclosed by

the existing data is unrefuted as the best evidence available as to the age bias at the GAO.

Most recently, the manipulation of the "band system" has been used by management to

purportedly justify announced de-facto demotions of persons over 50.  The pattern of demotions

and dismissals of persons over the age of 50 is consistent and without material exception, also on

an across the board basis.  Mr. Moses allegations detail those violations of ADEA and its effect

upon him.

Attachment 2 is Mr. Moses Declaration.

Attachment 3 is Mr. Davis Affidavit.

Attachment 4 is Dr. Chennareddy's affidavit.

The facts set forth in these affidavits and declaration are incorporated as if fully set forth

herein.

## 8.  EXHAUSTION OF ADMINISTRATIVE REMEDIES--
### 2002 and 2006 COMPLAINTS-CONTINUING VIOLATIONS:

Moses has given GAO a timely 30 day notice of intent to sue as to these specific

violations. However, he avers that the instant violations are a continuation of the same pattern

and practice complained of in his previous complaint, ***Davis, Moses and Gilbert, et al, v.***

***Walker***, case no **06 1002 (JGP)** and attempts to intervene into the related case of ***Chennareddy***

***et al v. Walker***, USDC DC case No 87-3538 JGP.  That notice was mailed to the GAO office of

opportunity and inclusiveness (OOI).

Also Moses filed an administrative complaint in 2002 and in March of 2006.  Both of

those administrative complaints were subjected to an administrative complaint process with a

formal investigation but never completed by GAO as required by its own regulations.  More than

180 days have expired from his complaint filing in both instances leading to his right to sue

despite the failure of the GAO to timely complete its administrative process as required by its

own regulations.

**TIMELY NOTICE OF INTENT TO SUE:**

9.      Exhaustion of Administrative Remedies for ADEA cases is not required.  However, a 30

day notice of intent to sue is required by ADEA and GAO regulations.  The named Plaintiff has

filed three notices of intent to sue.  The first was filed in the year 2000 more than 30 days prior to

their attempt to intervene in the related case.  The second was served on Defendant on April 6th,

2005 in a letter addressed by their counsel to OOI.  The third, the instant notice was mailed on

August 9th, 2006 and received by GAO on August 14th, 2006.  Thus, more than thirty days has

expired since that notice to the filing of this case.  Moses complained on March 26th, 2006 as to

the COLA denials, and thus, as of the date of filing this complaint, more than 180 days have

elapsed without the mandatory completion by GAO of the administrative process.  The result, is

the complainants right to sue.

10.     The procedures followed by OOI do not afford GAO employees with an adequate or

normal administrative process.  GAO does not follow its own regulations and has recently

changed the operative Order, Order # 2713.2, effective July 10th, 2006 without notice to any

employee or counselor (Moses is a former counselor).  For example, Mr. Moses filed

administrative complaints in 2002 and on March 30th, 2006.  Neither have been completed in

accordance with the dictates of GAO's own order requiring completion and notification of

GAO's final decision within 180 days of the complaint.  As of the date of filing this complaint,

more than 180 days have expired, but no results from the investigation has been received, and

GAO has not ruled upon the merits of Moses's complaints, as required by law.  On information

and belief the failures to process Mr. Moses's claims are typical of those applied to the class he

seeks to represent.

**11.  JURISDICTION:**

At the time of the occurrences complained of herein, plaintiff and the class he seeks to

represent were all over the age of 40 and paid within GAO's "Band II", or the higher ranks of Band I, as professional evaluators and auditors. All persons similarly situated are also victims of the pattern of across the board continuing violations against older professional level auditors and evaluators. Those similarly situated persons are, on information and belief all over the age of 40, and some, about 300, have been or are about to be demoted into the lower strata of "band 2" at the GAO and/or denied colas. That lower strata, or division, is designated Band IIA. In addition there are, on information and belief, about 40 "Band I" analysts who have also been denied Colas. The denials of colas began on February 16th, 2006 for Moses and the class he seeks to represent and has proceeded each payday since that time for himself and all others similarly situated.

12. On information and belief, based upon the pattern and practices observed, about 340 persons either have been recently terminated for reasons involving their age, or are about to be terminated because of the overt and blatant bias against older employees which is a part of the policy at the GAO to lower the median age of its work force for discriminatory reasons.

13. Defendant is an employer within the meaning of the ADEA, 29 U.S.C. § 633a(a). The defendant, David M. Walker, is the Comptroller General of the United States and the chief executive of the United States Government Accountability Office (GAO).

14. Jurisdiction of this Court is founded on 29 U.S.C. § 633a (c). Jurisdiction is also founded upon the Equal Pay Act and the due process and equal protection of the law clauses of the fifth and fourteenth amendments to the Constitution of the United States of America. On information and belief, jurisdiction will also be found to exist under Title VII, 42 U.S.C. Sec 2000 e, et seq., as amended as reprisals for protected activities of this plaintiff and many if not all of those persons similarly situated. The plaintiffs are contemporaneously filing a motion for a preliminary injunction and a motion for class certification under Rule 23. The allegations in those motions are incorporated by this reference.

15. As to the jurisdictional amount of plaintiffs claims, although presently inapplicable as a

11

bar because of federal question jurisdiction, the amount of damages for the plaintiff as

demanded, and as demanded for each class member is $300,000 per person.

**16. VENUE**

The District of Columbia is the proper venue for this matter pursuant to 28 U.S.C. §

1391(e).  The centralized actions of the GAO giving rise to the discrimination took place for the

most part in the District of Columbia.  The main office of GAO is in the District of Columbia.

The main office of the PAB is in the District of Columbia.


**17.  STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S CLAIMS:**

The foregoing paragraphs are hereby incorporated into this statement of facts:

**The Named Plaintiff:**

18.  **Mr. Moses**.

Mr. James D. Moses (Moses) is an African American evaluator over the age of 40 in the

Los Angeles office of GAO.  Moses always received highly favorable ratings (the foundation for

advancement and promotions in GAO) and was a high level group leader on multiple projects

until he reached his mid 50's.  His leadership and accomplishments led to his final promotion, to

GS-14, the second highest line manager position in the field at that time (1984).  Not only was

Moses the group manager for a major issue area with 10 people reporting to him, he was also the

Civil Rights Counselor, and Grievance Examiner for the Los Angeles Office.  In that position, he

to has observed the age discrimination in process as applied to many persons he has counseled.

19.    Moses was performing assigned tasks, receiving high ratings and was generally viewed

by management and his co-workers as a model professional level evaluator.  However, with the

passage of time he automatically, with no change in performance, became a member of the

disfavored age group.  Then, and only then, did his rating fall.  Moses was relegated in job

assignments to reporting to younger staff.  He along with two other African American colleagues

attempted to intervene into an ongoing related case alleging age discrimination, ***Chennareddy et***

*al v. Walker*, USDC DC 87-3538. No relief was ever granted in that case. Intervention was heretofore denied.

20.    Frustrated, angered, and damaged by further actions of his superiors, and continuation of the demeaning and intentional mis-treatment, designed to cause his resignation, Mr. Moses filed a discrimination complaint with GAO's civil rights office (now the office of opportunity and inclusiveness). That internal complaint was filed on 1/18/02 on the basis of age and race. In addition he alleged retaliation for having attempted to intervene in the afore-cited *Chennareddy v. GAO* case. Investigation of the complaint revealed that Mr. Moses was not treated fairly. The complaint was never resolved and GAO has never issued a final decision. The discrimination continued.

21.    In December 2005 and January 2006, GAO adopted a new series of actions designed to eliminate older persons from the staff. These actions were named "Band II Restructuring". This new plan worked as follows. Band II's were split into two groups, Band II B (the highest) and Band II A. The determining criteria were stated by management using the standard terminology for subjective ratings of personnel with the added factor being considered most important, that of "role model". Since GAO's ongoing policy was to downgrade all older employees, and Moses had been continually subjected to being downgraded in leadership roles to a subservient position (along with all older persons similarly situated) it was inevitable that Moses would be downgraded into the lower category.

22.    In accordance with the intent of the scheme, in December 2005, he was notified that he had been placed in Band II A, the lower group. Moses appealed to David M. Walker, Comptroller General about being placed in this lower category and asked the Comptroller General (CG) to reconsider his decision. On 2/7/06, he received the CG's decision not to change his position of placing Moses in Band II A.

23.    Moses next asked Mr. Walker for a meeting in person to discuss his position on this issue. Mr. Walker did not grant the personal meeting but spoke to Moses by telephone on

2/16/06.  During this 45 minutes telephone meeting, Moses informed Mr. Walker that he believed that he had been treated wrong in being placed in II A.

24.    Moses informed the CG of his history of satisfactory employment and undiminished ability.  Walker was informed that Moses had achieved a GS-14 level prior to being grouped into Band II with younger and less experienced GS-13's; that he was treated wrong then, and, again, unfairly and incorrectly with the split and further downgrading .  Moses stated that he felt hostility, embarrassment and hurt by the demotion, and was psychologically devastated.

25.    With no positive results from Mr. Walker, and knowing he had no chance of relief in normal complaint channels, and knowing that the GAO's own personnel system is dysfunctional, he filed a discrimination complaint with the office of opportunity and inclusiveness on 2/17/05 on the basis on age and race.

26.    Moses alleges based upon his own information and knowledge that the Band II split has had negative impact on him and about 400 hundred others who were and are similarly situated with him on the band II split demotion.  All of those persons are 50 years old or older.  Not only have virtually all of those older workers been embarrassed, demoted, and psychologically hurt, they were also denied a cost of living increase.  That denial, standing alone is a denial of equal treatment of the law and, he believes, a discriminatory event.  But the entire continuing process is one that has been of long standing and represents nothing less that overt intentional discrimination based upon age.

27.    Mr. Moses, on information and belief, and his own observations, alleges that the hostility against older employees is uniform among his co-workers, and the extent of the bias is nearly 100%.  He believes that available statistics will confirm the universal bias he has personally observed since he reached the age of about 45.  Mr. Moses is also aware of the flawed process of GAO's internal personnel oversight agency which has refused to investigate the age discrimination pattern and practices herein alleged as is its statutory duty.

**28.  Other Facts:**

Recently, the use of age as a determining factor has been and is being escalated and applied in a scheme to further downgrade virtually all older employees who remain on the staff. The comptroller general has stated in numerous recorded statements his policy, expressed as a necessity, reduce the average age of persons in Band 2. This statement, standing alone, demonstrates age bias. This is true because in plaintiff's profession, auditors, experience, knowledge of the workplace, and judgment is far more important than youthful physical vigor. Thus, age has no bearing upon the actual work performance of these plaintiffs, or the class they seek to represent. Yet that factor has been used as the most important factor in the rating process.

29.    The methodology of discrimination starts by lowering ratings of older employees, then based upon lower ratings, denying advancements, followed by failure to promote, then denial of adequate performance, followed by sanctions. Sanctions include denial of cost of living increases, forced retirement and/or termination. This process happens only to the older employees.

**30. Continuing Violations of ADEA:**

In the fall of 2005, upper management of GAO decided to separate the band II employees into groups. Purportedly these groups were to be reevaluated based upon performance, but in reality the separation was just another method of attempting to intimidate older employees into leaving. Evaluations were biased against older employees, and the resulting separation was to place virtually all older employees into a lower designation "band IIA". Those persons, and also those band I's who had reached the upper limits of their pay scale were placed into a "Hold" position as to raises.

This failure to pay colas included any statutory cost of living increases granted by Congress as to the entire federal government workforce. This had the effect of unequal protection of the laws as to the predominately older Band I's and Band II's selected for this special discriminatory treatment. The failure to pay colas began in Moses's paycheck of

15

February 16th, 2006 as did, on information and belief, each other putative class member. Each new paycheck written contains an element of damage to Moses and each person he seeks to represent.

31.     These new practices are but a continuation and overt escalation of the ongoing overall bias against older, more experienced professional level auditors and evaluators has been ongoing for over 20 years. The impact of these policies and practices has created a hostile work environment, well known to exist in application to all of these plaintiffs and the putative class. The sole exception to these allegations is those employees who were selected earlier in their careers for upper management level at GAO, the Senior Executive Service (SES). Using age as a determinative factor violates ADEA as well as federal rules and regulations involving equal employment rights and prohibited employment practices.

32.     Through the denial of effective redress to the PAB, a key component of the GAO Personnel Act of 1980, these plaintiffs have been denied equal status with their counterparts in the Executive Branch in their rights to appeal perceived discriminatory actions of management. They have also been denied their constitutional right to equal application of the laws, equal pay, and veteran's preference rights in promotions and retention. Administrative denial of appeal rights occurs because the PAB, the purportedly independent appellate agency for GAO personnel oversight is in fact totally controlled to the point where it is not allowed to question administrative actions of GAO designed to thwart equal employment of older employees. This denial is by the use of a number of different mechanisms of control over the PAB. Those mechanisms include admitted budgetary control and historical failure to appoint administrative judges who question GAO's discriminatory actions. At one time the PAB was allowed to whither on the vine, with no quorum for any activity at all.

## 33. GAO's SECRET STATISTICAL SYSTEM:

Age discrimination in employment has been intentionally and routinely measured,

controlled and enforced by GAO management for more than 20 years. This aspect of the discriminatory mechanism is a hitherto secret centralized statistical measuring system for GAO's personnel. That personnel system contains hardware, data and software systems for measuring results of classification of employees by age group, race, sex, disability, veteran's status, and all necessary elements to define and measure any and all employees personnel profile data. It can be and has been used to measure and plan resulting personnel actions by management, like those complained of herein based upon age as a determinative factor.

The very existence of that system and its use in the ratings, promotion, and retention process resulting in the age discrimination here alleged was is hidden from all but select high level management officials. Intentional misinformation of the non-existence of any such system was given to the courts by GAO's counsel in related cases. That false information was designed to thwart class certification in order to stall the case. That strategy worked. The defendant's own personnel oversight agency was denied access to the data in order to hide the availability and use of these powerful tools of discrimination from disclosure, or use to shine the light of truth upon GAO's discriminatory actions.

The foregoing facts and false information have impacted the rights of this plaintiff this plaintiff and two other similarly situated persons six years earlier through the denial of their intervention into the related case, as well as class certification much earlier when they were, or would have been but for the actions of GAO, class members.

The United States Department of Justice has been misled, and this Court has relied upon this false testimony to deny relief based upon the false denials of the existence of existing comparative data older protected employees. GAO's own oversight agency, the PAB, has at least passively complicity in the GAO's denials of the very existence of damning statistical files.

34.     All of these actions are illegal and overt denials of the equal employment rights of these plaintiffs and the class they seek to represent, as well as equal access to the laws, equal treatment under the law and due process of law.

35.     A further part of the scheme to deprive older employees of equal access to the law requiring equal treatment regardless of age involves the control of GAO's sister agency, the United States Government Accountability Office Personnel Appeals Board (PAB).  Access of that agency to the secret system was prevented.  When age discrimination was suggested from an independent analysis by PAB, GAO denied the truth contained in its own (secret and hidden) statistics.  Because of utter control of the PAB in appointments and budget by GAO, it has become an utterly ineffective agency, most particularly in processing age and veteran's claims.

36.     Recent developments in splitting the band system with a stated policy of lowering the average age of the professional level employees, de facto demotions, forced retirements and constructive discharges are now ongoing and continuing.

37.     The result if these policies continue is immediate and irreparable harm for which injunctive relief is not only appropriate but essential to achieve meaningful relief.  Most egregious is the fact that defendant has not been candid either with its own oversight agency or federal courts.

38.     The most recent manifestation of those policies, the band splitting leading to demotions and termination affects about 300 staff members over the age of 50.

39.     The express intent of Congress to afford equal treatment to all GAO employees when it created the independent personnel oversight system (the PAB) for GAO employees has been intentionally evaded and obstructed by the matters outlined foregoing and the continuing pattern and practices complained of herein.

40.     This case is a related case to another case before this Court, ***Chennareddy et al v. David Walker***, Case No 87-3538 (JGP) in that Plaintiffs herein have previously complained of the same continuing violations, filed notices of intent to sue with the GAO, and moved to intervene in that case.  Remedial action by the District Court has been frustrated by GAO's obstructionist actions in that case and in continuing control of the PAB which deprives all aggrieved GAO employees of equal access to the law.  Intervention by these three plaintiffs was denied necessitating this

18

lawsuit.

41.    Plaintiffs are entitled to file a class action in this case in that the amount in controversy is over the lower limit set for class actions (in excess of $ 100,000 for each named plaintiff) and federal agency employees may file class actions pursuant to Rule 23 in this court involving federal questions, and in particular ADEA under the authority of ***Moysey v. Andrus,*** 481 F. Supp. 850, 21 FEP 836 (D.D.C. 1979), and later citing cases.

42.    Plaintiffs seek, for themselves and all others similarly situated, immediate injunctive relief stopping the discriminatory process of splitting band 2 into two discriminatory subdivisions using age as a determinative factor, back pay, front pay, revisions of the discriminatory practices complained of herein, and meaningful relief in the form of a writ of mandamus to the PAB and GAO to enjoin the denial of equal access to the law for themselves and all similarly situated persons.

43.    Plaintiffs also seek relief in the form of retroactive damages for denial of relief previously requested by these three plaintiffs and all similarly situated persons who were denied relief by the federal court many years ago because of reliance upon GAO's false pleadings and representations to this Court.  Those misrepresentations  denied existence of the scheme of discrimination based upon age, and the practical means to prove the results of that scheme, thought to be nearly 100 bias, the personnel data and statistical systems to measure those results.

44.    Plaintiffs also seek a merger with existing the on-going complaint in ***Chennareddy et al v. Walker***, USDC DC No 87-3538 at the appropriate juncture in this litigation.

45.    Plaintiffs also seek costs and attorney's fees as appropriate and as found by a court or jury to be in the interests of justice under the general powers of this Court and Rule 11, Federal Rules of Civil Procedure.

46.    Typical of each plaintiff's experience during the later years of his employment was the fact that employees who received choice assignments, and ultimately advancements and promotions were disproportionately much younger and much less-qualified than Plaintiffs.

Plaintiffs each suffered degradation in their performance ratings because age was used as an important if not determinative factor in all of the important personnel decisions, starting with ratings.

47.  On information and belief, the GAO at all relevant times possessed individual data on age of persons rated, and used that data in satisfying management's goals in reducing the average age of the staff.

48.    Promotion panels at GAO are uniformly chaired by an Senior Executive Service person who has access, whenever the chair wishes, to age and years of service data on all applicants. The use of that data explains the hitherto inexplicable nearly 100% bias against older (45-55) employees.  In addition, the chair of each panel has control over other panel members in that the chair is always senior in regular rank (as an SES member) to the other non-SES members. Therefore, what the chair wants, the chair dominates to get.  This process is how, using the age statistics, the discriminatory process is the 100 % effective process that it has become during the time these plaintiffs have served this employer and the public interest as federal employees.

49.  **GAO's Disinformation and Cover-Up of the Existence of Personnel Data Base Systems:**

The GAO, in litigation in on-going related cases before this Court, has denied the existence of data and systems to utilize that data containing employee demographic information, including age, of all of its professional level employees for the relevant period of time.  The data base system was denied to exist in statements to this federal Court and to GAO's own personnel oversight agency, the PAB.  Thus, GAO has been materially disingenuous as to ( both) the existence of the data base system, and the substantive content of the discrimination which would be stark and obvious from the data contained in that system.

50.    The result of GAO's disinformation campaign was to intentionally obstruct the flow of information to complainants and its own agency to enable it to continue to violate the ADEA. The matters complained of by these three complainants, for themselves and the class they seek to represent was the direct result of that disinformation and obstruction in that these matters have

never been corrected and are on-going for over 20 years.

51.     If age had not been a determinative factor in ratings, by itself a violation of ADEA, these plaintiffs and all others similarly situated would have had qualifications superior or equal to the younger employees who were selected for choice assignments, advancements and promotions. If the available statistics are disclosed those statistics will demonstrate that terminated employees, who were constructively discharged, represented to a large part employees over the age of 50 at a significantly disproportionately greater rate than those under 40 or in their early 40s.

52.     GAO has engaged in prohibited personnel practices, including the use of age as a determining factor by furnishing the panel chairman a list of ages of applicants when conducting ratings panels, promotion panels, and terminations during RIF's.  Those practices included ignoring veterans rights and targeting younger employees for "fast track" preferential treatment as compared to older more experienced employees.

53.     As a result of defendant's unlawful conduct, Plaintiffs have lost salary, pension benefits, health insurance coverage and other benefits of employment because of defendant's unlawful conduct.


## 54.  Class Action Allegations (Under L. Civ. R 23.1):

(1)[2] This case is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 (a)(1)-(4) and 23 (b)(1)-(3), and *Moysey v. Andrus*, 481 F. Supp. 850, 21 FEP 836 (D.D.C. 1979) and subsequent cases citing *Moysey* as precedent.

(2) (i) This class action is brought on behalf of 300 +  members of the putative class of employees in professional level positions at the GAO.  That number has been derived by a count of similarly situated persons over 40 who have been adversely affected by the GAO's plan to restructure and/or demote and/or terminate band II employees as described foregoing.  Each new

---

[2]  Numbers correspond to numbers in the local rule, L.Civ.R 23.1.

paycheck written under the improper denial of cola increases is a new violation of equal protection of the laws, the equal pay act and has been deemed to present a viable claims of a prohibited personnel practice by the PAB office of general counsel, without being barred by either the PAB or its office of general counsel.  On information and belief, no steps have been taken by the PAB as would be appropriate to prohibit the taking of rights and property of older employees by this illegal scheme of age discrimination by GAO.

This is yet another example of the PAB's failure to act to protect the rights of GAO employees as is its statutory duty.

**55.  Class Definitions and Allegations Pursuant to Rule 23, F. R. Civ. P.:**

**Proposed Class Definition:**

The class which this Plaintiff seeks to represent is:

Those employees of the United State Government Accountability Office (GAO) who worked for GAO during a part or all of the period of time from January 18, 1996 to date, (a date three years preceding the date this plaintiffs initially complained to this Court) who were or are employed in positions in GS Grades 11, 12, 13, 14, or 15, or the equivalent "band" at GAO, in Bands I, II, or III, who were at least 40 years of age during a part or all of the time period of their employment at GAO who were denied A. promotions, and/or B. denied correct "pay for performance", and/or C. denied fair employment ratings, and/or D. denied high visibility assignments, and/or E. actually or constructively discharged, and/or suffered *de facto* demotions and/or denial of cost of living increases, in favor of younger equally or lessor qualified persons as the result of the unfair, biased and discriminatory employee rating system using age, and/or a combination of age and race as a determining factor, and/or the integral "quota system" favoring younger applicants for positions and/or advancements and/or any combination thereof, in effect at GAO during the time frame of his/her employment as an evaluator or evaluator support person at GAO.

22

(ii) **The Plaintiff is an Adequate Representative of the Class (or Classes):**

The Plaintiff, James D. Moses, is a member of the protected age group, i.e., over 40, and has been passed over, or denied fair ratings, and the resulting higher "pay for performance" using age or age and race combined, in the promotion and ratings process in favor of younger, less qualified and far less experienced employees of the United States Government Accountability Office. Plaintiff Moses has been harmed by both the acts of disparate treatment complained of herein and the adverse impact of the GAO promotion system. He has been denied a statutory right to a cost of living increase granted by Congress, since February 16th, 2006. The statute of limitations has not expired on any of these claims.

The Plaintiffs and their counsel have demonstrated by their persistence and patience over the 7 year, period of time from when they first sought to intervene in the related case their dedication to the truth and validity of their claims. Their counsel has been litigating this case and the related putative class action for more than 20 years. Large expenditures of funds have been required, in large part resulting from GAO's stonewalling of truthful reporting of its known age discriminatory policies and failure to candidly provide statistics which would long ago have proven these plaintiffs allegations.

These three plaintiffs essentially challenge all aspects of the ratings and promotion system at GAO as biased and unfair and in violation of ADEA. To undertake such a challenge standing alone demonstrates the adequacy of their representation. They have pledged to adequately protect the interests of the class, as has their counsel.

(iii) All of the questions of law and fact as claimed in this lawsuit are indeed common to the class. The detailed allegations contained throughout this complaint are incorporated by the reference, and in addition those questions are summarized herein as follows:

a. Whether the GAO maintained a ratings system and policy applicable in hiring, promotion, forced retirement and retention or termination in reduction in force situations for its professional level employees that created a pervasive pattern and practice of discrimination

against persons over 40, and particularly those initially over 43, who are now over 50, by setting quotas for promotion based upon prohibited age, or age and race factors, in favor of younger persons; whether the "goals and timetables" system is in reality a "quota" system illegal based upon criteria that are prohibited by Federal Code, Existing Regulations applicable to the GAO and the PAB, and prohibited by Supreme Court precedent?

b.  Whether the GAO's mandated adherence to that system resulted in the exclusion from high profile tasks, the reduction of scores on performance reports, the elimination or reduction of promotions and earnings, or loss of tenure and retirement benefits in favor of young persons via the "PFP" system for the Plaintiffs and members of the class resulting in inequality in opportunity solely because of the acts complained of, and the system in effect complained of in this case?

c.  Whether the GAO maintained a quota system designed to favor a class or classes of preferred employees, said preferences based on illegal criteria, age, sex and race?

d.  Whether the discriminatory system in effect was known to be illegal, and whether that discrimination based upon age was intentional?

e.  Whether the PAB participated in the design and/or maintenance of that illegal quota system, for a part or all of the time period covered by this complaint (1983 to date)?

f.  Whether the mandate of Congress for the PAB to furnish oversight on GAO's activities  and the failure of the PAB to enforce adherence by GAO to equal employment opportunity law for protected older persons creates an actionable right by members of the class enforceable by this Court and for which relief is appropriate?

g.  Whether the recent split in the band system, and denials of cost of living increases is part and parcel of the continuing violations by GAO of equal rights of employment of its older employees represented by these three plaintiffs and the class or classes they seek to represent.

**(iv) A CLASS ACTION IS SUPERIOR TO OTHER FORMS OF ACTION THAT**

**THIS CASE MAY TAKE, QUESTIONS OF LAW AND FACT (BOTH) PREDOMINATE OVER QUESTIONS AFFECTING ONLY THE INDIVIDUAL PLAINTIFFS:**

56.    Plaintiffs, for themselves and the class(es) allege that the practices resulting in the depriving of their right to equal employment opportunity, and to be free of discrimination based upon their age  was, for the entire time frame of this complaint universal in application.  It is an observed fact, based upon a 100% analysis of the promotions for the bulk of the time frame for the class, and well published comments by GAO management, that older persons just did not and do not get promoted, at the GAO.  The statistical principle of  "the inexorable zero" is believed to be applicable to the extent of the exclusionary process for older persons at GAO in all of the positive attributes of employment.  That is virtually none (zero) get promoted or get equal treatment under the applicable policy and rules at their employment at GAO.

57.    The root cause of this universal exclusionary process has been discovered.  It was the maintenance and mandatory enforcement of a centrally controlled system of setting quotas for promotions, hiring and advancement in order for each SES person to comply with the directives of GAO management to increase representation of minorities and females at all levels at GAO. The result of that system was the total exclusion from any meaningful consideration for high profile tasks, and for promotions to management positions of all persons over the age of 45-50. Now the extension of those policies have resulted in a new manifestation of the discrimination, the band split with de factor demotions to each older (over 50) employee considered.

58.    Plaintiffs herein allege that (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact common to the class; and (3) the representative parties will fairly and adequately protect the interests of the class.  The common questions of law and fact are consistent and universal to each of the Plaintiffs and the other members of the class.  The homogeneity of data and facts is such that the only practical handling of this case is via a class action.

59.    Plaintiffs hereby incorporate by reference the additional allegations contained in the contemporaneously filed Motion for Preliminary and Permanent Injunctive Relief, and Motion to

Certify the Class.

## STATEMENT OF CLAIMS

### COUNT I
**(Injunctive Relief Halting Promotions and Terminations
At GAO Pending Correction of the System)**

60.     Each and every preceding allegation of this is hereby incorporated by this reference.

61.  The maintenance of a biased promotion and retention system acting as a *de facto* bar to the advancement, promotion, denial of cost of living increases, and pressures resulting in early terminations  of all employees over 45 during the time period of this complaint violates ADEA, 4 CFR parts 2 and 29, and constitutes a prohibited personnel practice in violation of GAO's entire scheme of purported adherence to Merit System principles and equal pay for equal performance at GAO.

63.  The denial of equal protection of the laws to GAO's older employees by the failure of the PAB to adhere to its statutory duties, and be subverted by GAO's budgetary control over its operations violates Constitutional Principles subsumed into Title VII.

**Relief Requested:**

64.     Plaintiffs herein request that a preliminary and permanent injunction be issued enjoining the United States Government Accountability Office from hiring, promoting any employee, or transferring any employee under the age of 40 in order to evade the applicable Reduction in Force regulation in GS grades11 through 15, or equivalent bands, I through III, inclusive, as being in violation of the individual rights of each of the class members herein.

Further, any further denial of cost of living increases to any member of this putative class, or the class when certified should be prohibited.  Cost of living denials to date should be forthwith repaid to the deprived employee or former employee.  Said injunction should continue until such time as the practices complained of cease and are rectified as to future promotions, and cessation of forced retirement and termination of older persons in favor of young persons.  In addition, a preliminary and permanent injunction should be issued to each and every office of the

United States Government Accountability Office enjoining that agency from promoting any employee under age 40 of the United States Government Accountability Office or terminating any employee over 40, as being in violation of the civil rights of any member of the afore-described putative class until such time as the entire promotion and ratings system, and the quota system creating bias in promotions is corrected to the satisfaction of this Court with discrimination based upon age, race, failure to honor veterans's preferences fully and completely eliminated.

## COUNT II
**(Declaratory and Injunctive Relief, a Finding of Violations of ADEA, for the plaintiff and the class or classes he seeks to represent, with a Factual Finding of Intentional Discrimination Based Upon Age, Bad Faith in Litigation and an Award of Attorney's Fees and Costs)**

Each of the preceding allegations is incorporated by this reference.
The facts contained in paragraphs preceding are hereby incorporated by this reference..

65.    The pattern and practice of age discrimination has been an on-going pattern and practice for many years, and continues even today.

66.    The most current scheme by GAO to downgrade and terminate older employees involves a splitting of "Band 2", the most numerous evaluator band into two sub-groups.  Those rated lower (which by illegal policy includes disproportionately the older employees) are not given cost of living increases, and are on the road out-the-door at GAO.  Thus, the policies and practices complained about in the earliest complaint of these three senior workers continues and increases.

67.    Because of defendant's actions, the plaintiff, and all persons similarly situated have suffered and continue to suffer major economic injury in that they were downgraded in their positions at GAO, and lost pay and other benefits.  Many similarly situated have opted to retire rather than suffer the shame of downgrades and reductions in pay represented by failure to give the statutory increases set by Congress because of the alleged, but untrue, poor ratings which gave rise to the classification at the lower grade level, Band IIA.

68.    Those damages also involve a bar to advancement, failures to promote on a par with younger similarly situated employees who were not subjected to the discriminatory conduct and

bias suffered by the older protected employees.

69.    GAO's in house statistical system, which has existed for the entire term of these employees employment at GAO would show, and may be used to determine the extent of the bias over the entire term of employment of plaintiffs and the class they seek to represent.  Disclosure of the results of data in that system has been requested in normal discovery in related cases, but GAO has refused, and even denied falsely that the date even exist.  GAO has the duty to disclose that data pursuant to Federal Rule of Civil Procedure 26(a)(1).  On information and belief, that data if disclosed would render false a material part of GAO's representations to the courts and Congress for many years, and verify the correctness of the allegations of discrimination contained herein.

70.    On information and belief damages to each named plaintiff herein is at least $ 300,000 over accruing over the term of their employment and thereafter as increased retirement benefits.

71.    The bad faith by GAO in misleading the PAB, denying the administrative appeal rights of each employee, and misleading the United States District Court as to the non-existence of facts and methods to present those facts constitutes bad faith litigation for which sanction are warranted in the interests of justice.

72.    Plaintiffs hereby request this Court consider sanctions pursuant to the rules of court as deemed appropriate.

73. **DEMAND FOR RELIEF**

    Plaintiffs hereby request a declaratory judgment be entered making each plaintiff herein and each class member whole.  That relief to include a finding of discriminatory conduct by the Defendant herein and his predecessor, a finding of bad faith conduct in previous litigation as between these parties and each member of the class, damages to each plaintiff and each member of the class individually as is appropriate, just and proper.  Those damages should include back pay, front pay, increases in retirement to compensate for failure to promote, and damages for emotional and psychological harm for those counts and those persons where such damages are

available as relief in such sum as the Court or a jury finds just and proper.  Relief should also

include interest for the cola denials and deficiencies resulting from failure to advance or promote

as appropriate in a sum not less than $250,000 each for a long term, 30 year, employee member

of the class.

A sum not less than $ 75,000,000 plus costs and attorneys's fees as deemed just and

proper or such greater sum as the facts disclosed by the GAO's own statistical system would be

just and proper for the approximately 300 persons who have just been denied colas and were

denied proper advancements over the term of their employment at GAO.


### COUNT III
**(Injunctive Relief Against the PAB, A Writ of Mandamus Requiring That Agency To Perform the Analysis and Its Functions Required by the Statute Forming that Agency)**

Each and every foregoing factual allegation is incorporated by this reference.

74.  The PAB has failed to fulfill its statutory duties to monitor, investigate and follow up

instances of discrimination, including age discrimination.  The PAB has allowed an improper and

dysfunctional administrative process to bar relief to all complaining GAO employees, those in

this class definition in particular.

75.  Monetary relief is not sufficient to guard against similar instances or omissions in the future.

76.  The PAB is totally dominated by the GAO in all aspects of its operation.  This domination

absolutely bars any good faith functioning by the PAB as to its statutory function.

77.  Therefore, the GAO and the PAB must be ordered to separate their budgetary entanglement,

forthwith, and to eliminate any appearance of control in the appointment of Board members, and

General Counsel of GAO by appropriate and control free  means.  This total reorganization

should be Ordered to be accomplished within a six month period of divestiture of control and

interests.

Wherefore, Plaintiffs request that this Court issue an Order:

(1).  Requiring the PAB to perform a scientific statistical analysis for each and every year since

29

1983 of GAO personnel files, and to do such data analysis as is necessary to obtain machine manipulable data from which such a scientific analysis can be accomplished, and to determine the validity or non-validity of the existing procedures of the present promotion system, or factors within that system which give the discriminatory results reported upon by the Plaintiffs herein, and which Plaintiffs allege will be verified Agency wide by GAO's own hitherto secret statistical system.

It is notable that those results were confirmed for the partial years study performed by the PAB; and further verified by the laborious hand compilations performed by members of the class in related cases.  The PAB should be required to further perform such analysis as is necessary to determine by logical groupings the actual damages to each and every Plaintiff and putative class member as alleged by the Plaintiffs herein and confirmed by the partial analysis of the PAB.

(2).  To undertake forthwith, a study as to the reorganization of its management and staff to accomplish the true independence envisioned by Congress when it established the PAB.

(3).  To furnish to this Court or such person as is appointed to fulfill that function a verified report of accomplishments in completion of its duties as to this complainant and the class he seeks to represent.

## COUNT IV.
### (Denial of Due Process, Equal Protection of the Laws and Equal Access to the Law)

Each and every allegation contained foregoing is incorporated by this reference.

78.  The actions of GAO in denial of a process of equal access to the law for its employees, is a violation of the essence of the intent of Congress when it enacted the GAO Personnel Act of 1980, et seq.  Congress expressed the specific intent to not diminish its employees access to equal treatment under the law with all other federal employees.

79.     GAO, in its actions controlling its puppet the PAB has for over 20 years taken the most basic rights of appeal from its employees.  The actions resulting in that control were overt, invasive of employees constitutional rights of due process and equal protection of the laws.  66.

When belatedly, the PAB prepared a report from its own data, relevant data having been withheld by GAO in contravention of its duties under Title VII to fairly report and maintain statistics, GAO quashed dissent (see allegations of Davis, infra) and intentionally misinformed the Federal Court in related cases that no relevant employee statistics or systems to make those data understandable existed.

80.    Injunctive relief is appropriate to correct this manifest injustice and further damage to the plaintiff herein and each member of the class.  Injunctive relief is necessary to prohibit such activities in the future by denial of these plaintiffs equal protection of the laws and due process as to their appellate rights which were and are being denied by the malfunction of the PAB created by GAO's interference with that Agency's functions.

81.    Plaintiffs request a finding of bad faith where appropriate, and request attorney's fees and costs incurred in the prosecution of this lawsuit, along with such other relief as this Honorable Court or a jury may deem just and proper.

WHEREFORE, plaintiffs request that the Court grant the following relief:

(a) Enter judgment for each individual plaintiff and the class they seek to represent, and against defendant on their claim of age discrimination in violation of the ADEA in the amount demanded in the amount of  $ 300,000 per plaintiff and each member of the class they seek to represent;

(b) Award Plaintiffs and the class they seek to represent monetary damages, including back pay, and interest under the Back Pay Act, in an amount to be determined at trial to compensate them for the economic losses they suffered because of the Defendant's discriminatory actions;

(c) To the extent practical, Order defendant to place each plaintiff illegally terminated into positions of Auditor, Evaluator and/or Evaluator-related positions, comparable to the position each Plaintiff held at the time of termination, retroactive to the date of termination, with all appropriate back pay, benefits and other emoluments of the positions; for those for whom such relief is impractical, make them whole by monetary relief commensurate with the damages found

to exist.

(d) Enter a finding of intentional violations of ADEA for the time frame of the actual violations found to have occurred; and to the extent these plaintiffs have suffered from GAO's bad faith pleading in this Court, and civil obstruction of justice to the extent supported at a trial or other resolution of this case, including intentional violation of ADEA, and award plaintiffs the costs of maintaining and bringing this action, including attorney's fees and expert witness fees under the ADEA and the Back Pay Act; and;

(e) Provide such other and further relief as the Court deems just and proper.

## 82.  DEMAND FOR A JURY TRIAL:

Plaintiffs hereby demand a jury trial for each and every factual allegation for which they have that right under the law, either Title VII; or the Constitution of the United States; the Equal Pay Act, or if then available under ADEA, pursuant to the applicable statute or constitutional right for which a violation herein is alleged.

Respectfully submitted,

Signed, *charltonw2428*

Walter T. Charlton, Attorney for Plaintiffs
D.C. Bar # 186940
Walter T. Charlton & Associates
213 Morgan Street, N.W.
Washington D.C., 20001
Phone 410 571 8764, Fax 410 897 0471
charltonwt@comcast.net
Counsel for Plaintiffs and the Putative Class

ATTACHMENT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Arthur Davis and James Moses  et al** | ) | |
| **and all others similarly situated** | ) | |
| **PLAINTIFFS,** | ) | **CASE NO: 06 1002 (JGP)** |
| | ) | |
| **DAVID M. WALKER** | ) | |
| **Comptroller General of the** | ) | |
| **United States c/o United States General** | ) | |
| **Accountability Office (GAO)** | ) | |
| **and** | ) | |
| **Michael Doheny, Chair** | ) | |
| **United States Government Accountability Office** | ) | |
| **Personnel Appeals Board (PAB)** | ) | |
| **DEFENDANTS.** | ) | |
| _____ | ) | |

### AFFIDAVIT OF VENKAREDDY CHENNAREDDY

After first being duly sworn in accordance with law, I make this affidavit, as given below, under the penalties of perjury.

I have received data from counsel purporting to be print-*outs from GAO's official* personnel records.  No names or social security numbers were associated with that data. The data purports to be a list of all persons over or equal to the age of 49.0 years subject to the Band II split related process. The data used for this opinion are given in the attachment A

### STATISTICAL OPINION OF VENKAREDDY CHENNAREDDY IN THE CASE OF SELECTION TO BAND II-B (II-B BEING HIGHER THAN II-A) IN GAO

### INTRODUCTION

I, Venkareddy Chennareddy, Ph.D (Experienced as an Economist as well as a Statistician), am a retired employee of GAO, presently living in Colorado Springs.  I was

requested by Mr. Walter Charlton, the Counsel for the putative Age Class Action case to give my

statistical opinion based on data furnished to me.  I analyzed the data—purported to be the ages

of all staff members considered for selection and either selected or not selected to GAO Band II-

B.  My statistical methodology for analyzing the data is given below.  That methodology is well

accepted as correct under the facts of the case as presented to me.

## METHODOLOGY

I estimated a Logit model, which is a more accurate statistical model according to the references

given in the end of my opinion.  The model is given below.

**Log [P/(1-P)]  =  A  + B\*AGE + C\*TOTALSER + D\*APRATING + E\*EDUCTN + e**

Where
P                                   =  1   if a staff member was selected for Band II-B
                                         0    if a staff member was placed in Band II-A
                                               (Band II-A is lower than Band II-B)
AGE                           =       Age in years of the staff member in Band II, who was placed in
                                            Band II-A and Band II-B after abolishing Band II
TOTALSER          =      Total years of service of the staff member
APRATING         =       Average supervisory performance ratings for the staff member
EDUCTN             =       Years of education of the staff member
A, B, C, D, E are the regression coefficients and e is the random error term.

**Assumptions**:  Years of education or the equivalent for a staff member (EDUCTN) is a constant

for most of the staff members and, therefore, there is no significant variation in this variable.

Also, according to my knowledge of  GAO personnel procedures, there are no points for

*education of a staff member in panel members' consideration for rating the applicants* for

arriving the best qualified list and for consideration of the selecting official for final selection for

promotions. This is also based on my personal knowledge of panel procedures and final

selections in GAO for the last 25 years in GAO. Since there is little variation in the years of education of the staff members and no points are given for education in promotion selections, the *correlation between a staff member's selection to Band II*-A and Band II-B and the years of education of that staff member would be consistently extremely low. Therefore, the regression coefficient of the years of education (E) would not be statistically significantly different from zero. Therefore, this variable (the years of education), is not included in the model. Moreover, data for this variable is unavailable.

It is hypothesized that the average supervisory performance ratings (APRATING) for a staff member is negatively associated with the age in years of that staff member. If this hypothesis is statistically accepted in the sense that the regression coefficient of the average supervisory ratings (APRATING) in a regression model with the average supervisory performance ratings as the dependent variable and the age in years as an independent variable **is** negative and statistically significantly different from zero, then it provides statistically significant evidence for age discrimination in supervisory performance ratings for staff members in GAO. If the regression coefficient of the age in years for a regression model for average supervisory performance ratings is **not** statistically significantly different from zero, then non-inclusion of average supervisory performance ratings in the Logit model, as given above, is not an error. If the regression coefficient of the age in years for a regression model for average supervisory performance ratings is positive and statistically significantly different from zero, then the average supervisory performance ratings is an indication of merit with the age in GAO. If that is the case, probability of selection to Band II-B should be positively related to the age in

3

years and therefore, any negative statistically significant relationship between the probability of selection to Band II-B and the age in years indicates a very strong statistical evidence for intentional age discrimination in selection to Band II-B in GAO. Therefore, non-inclusion of average supervisory ratings for staff members in the Logit model, as given above, is not an error.

It is found that the total number of years of service of a staff member is positively correlated with the age in years of a staff member, which was the result expected. In the preliminary estimation of the Logit model, as given above, with the two variables, age in years (AGE) and total years of service (TOTALSER), the regression coefficient (C) for total years of service (TOTALSER) is negative and not statistically significantly different from zero, while as the regression coefficient of age in years (B), is negative and statistically significantly different from zero. Because of statistical insignificance of the coefficient for the total years of service (TOTALSER), this variable was excluded in the estimation of final model. Therefore, the Logit model, as given above, was chosen with only age in years (AGE) as an independent variable (Also, see Reagan, 2002, the Federal Judicial Center paper published in Jurimetrics). Therefore, the finally chosen Logit model for estimation for a statistical assessment of intentional age discrimination in selection to Band II-B, which is higher than Band II-A, is the one with only one independent variable, age in years (AGE). The empirical results from the estimated Logit model are given below.

### ESTIMATION

The chosen Logit model is estimated using the Maximum Likelihood estimation

4

procedure and Shazam Econometric Software.

## EMPIRICAL RESULTS

The estimated Logit model is given below.

**Logit [P/(1-P)]   =  A + B*AGE**

**A = 3.8959        T-Ratio  = 2.5594**

**B = -0.082499      T-Ratio = -3.0270**

**Elasticity at mean age = -3.1 (rounded off to one decimal)**

Elasticity is computed based on the basis of the result for change in probability, as given in  Pindyck, Robert S and Rubinfeld, Daniel L, 1993, p.299, last portion.   Sample size (N=419) is considered to be very large for reliable statistical inference (see Walpole, 1968, p. 157). Data *on staff members' ages (in years) range from  49*. years to about 70.6 years.  Models are not estimated for disaggregated data reducing data to offices, divisions, and regional offices because  detection of  the embedded true age discrimination in GAO organization gets blocked in small samples.  Mr. Wolf (Chair) of the  Personnel Appeals Board, the General Accounting Office, *wrote "*Unnecessary disaggregation  reduces the power of statistical tests, thereby making it difficult to distinguish genuine effects from sampling error. In plain words, breaking up the data into little subsets reduces the *chance of finding disparities if they do exit."  In other words, PAB*, which has the oversight responsibility, of GAO, argued against analysis at each little subset of data (see Wolf, 1999, p. 36, last paragraph).

The Likelihood  ratio for the model = 9.73908 with 1 D.F    P-Value = 0.0018.

*The regression coefficient (B) of the variable "age in years (AGE)" is negative and*

statistically significantly different from zero at far less than 1-percent probability (it is 0.001293)

level of significance.  The elasticity of probability of selection to Band II-B with respect to age of

 a staff member at mean age is -3.1, which indicates that a 10-percent increase in the age of a

staff member applicant  leads to 31-percent decrease in the probability of selection to Band II-B.

This leads to a statistical inference that intentional age discrimination (disparate treatment of

older professionals) is clearly evident in the selection process for Band II-B in GAO  Based on

one-tail test (discrimination is indicated only by negative sign), the chance of this conclusion

being wrong is practically zero (.001293) or 1 out of 773. In other words, the confidence in this

statistical inference of intentional age discrimination in the selection process for Band II-B  is

practically hundred percent.

## ESTIMATED PROBABILITY PERCENTS AT SELECTED AGES

The estimated probability percent of selection to Band II-B for a staff member with a

given years of age, as derived from the estimated Logit model, is given below.

**P   =   100*EXP(3.8959 – 0.082499*AGE)/[1+EXP(3.8959-0.082499*AGE)]**

Table 1 provides estimated probability percents at selected years of age of staff members.

The estimated probability percent of selection to Band II-B at the age of 49 years is 46.34

percent which is 3.26 times the estimated probability percent (14.23) of selection at the age of

69. The estimated probability percent of selection to Band II-B at the age of 54 years is 36.38

percent which is 2.56 times the estimated probability percent (14.23) of selection at the age of

69.

The estimated probability percent of selection to Band II-B at the age of 59 years is 27.46

percent which is 1.93 times the estimated probability percent (14.23) of selection at the age of 69.

Table 1.  Probability Percent of Selection to Band II-B in GAO at Selected Years of Age of  Staff Members

| Age in years  of a staff member | Probability percent of selection to Band II-B in percent |
|---|---|
| 49 | 46.34 |
| 54 | 36.38 |
| 59 | 27.46 |
| 65 | 20.04 |
| 69 | 14.23 |

Note: Probability percent is rounded off  to 2 decimal points

The estimated probability percent of selection to Band II-B at the age of 64 years is 20.04 percent which is about 1.41 times the estimated probability percent (14.23) of selection at the age of 69.

Figure 1 shows the steady down trend of the probability percent of selection to Band II-B in GAO  as the age in years of a staff member applicant  progresses.

7



# Figure 1. Probability Percent of Selection to Band II-B in GAO

## CONCLUSION

An inference of intentional age discrimination (or disparate treatment of older professionals) in the selections to Band II-B in GAO is drawn based on statistical testing using the selection data. The elasticity of probability of selection to Band II-B with respect to age of a staff member at mean age is -3.1, which indicates that a 10-percent increase in the age of a staff member applicant leads to 31-percent decrease in the probability of selection to Band II-B. Based on one-tail test (discrimination is indicated only by negative sign of the coefficient), the chance of this conclusion being wrong is practically zero (0.001293) or 1 out of 773. In other words, the confidence in the conclusion that intentional age discrimination is clearly exhibited in GAO, by statistical evidence, is practically one hundred percent.

## REFERENCES

1. *Reagan, Robert Timothy, "Federal Judicial center Statistical Examples* Software *Prototype: Age Discrimination Example", Jurimetrics,* 42, Spring 2002, pp. 281-372
2. Hosmer, David W and Lemeshow, Stanley*, Applied Logistic Regression,* John Wiley & Sons,Inc., New York, 1989
3. Pindyck, Robert S and Rubinfeld, Daniel L*, Econometric Models and Economic Forecasts, Second edition,* McGraw-Hill Book Company, New York, 1993
4. Whistler, Diana et al., *Shazam Econometrics Software, Version 10*, Northwest Econometrics, Ltd., Vancouver, B.C., Canada, 2004
5. SAS Institute, The Logistic Procedure (Chapter 27), *SAS Manual, Version 8*, North Carolina
6. Walpole, Ronald E, *Introduction to Statistics*, The Macmillan Compny, New York, 1968
7. Wolf, Michael, Wolf (Chair), *Promotions of Banded Employees (1991-1995)*, Personnel Appeals Board, U.S. general Accounting Office, Suite 560, Union Center Plaza II, Washington, D.C. 20548.

# Verification

I declare under the penalties of perjury that the information contained in this

Declaration is true and correct to the best of my knowledge, information and belief

Signed  /s/

Venkareddy Chennareddy, Phd   August 5, 2006

**ATTACHMENT  A**

Data provided by the Counsel for the AGE Class Action
_____

| Selected to Band II-B Or not (1,if selected 0, if not selected ) | Age in years | Total years of service |
|---|---|---|
| 0.000000 | 59.00000 | 34.60000 |
| 0.000000 | 53.40000 | 14.10000 |
| 0.000000 | 58.50000 | 43.10000 |
| 0.000000 | 52.50000 | 1.000000 |
| 0.000000 | 56.50000 | 7.400000 |
| 0.000000 | 52.70000 | 31.60000 |
| 0.000000 | 59.60000 | 34.40000 |
| 0.000000 | 51.70000 | 8.500000 |
| 0.000000 | 68.30000 | 34.20000 |
| 0.000000 | 56.80000 | 32.00000 |
| 0.000000 | 49.30000 | 26.60000 |
| 0.000000 | 58.80000 | 26.90000 |
| 0.000000 | 57.30000 | 27.60000 |
| 0.000000 | 60.50000 | 36.60000 |
| 0.000000 | 58.40000 | 29.30000 |
| 0.000000 | 57.50000 | 35.50000 |
| 0.000000 | 51.20000 | 24.70000 |
| 0.000000 | 57.40000 | 35.50000 |
| 0.000000 | 53.20000 | 26.10000 |
| 0.000000 | 58.80000 | 36.60000 |
| 0.000000 | 56.20000 | 17.10000 |
| 0.000000 | 59.50000 | 35.70000 |
| 0.000000 | 56.00000 | 33.80000 |
| 0.000000 | 57.50000 | 32.10000 |
| 0.000000 | 64.20000 | 27.50000 |
| 0.000000 | 51.60000 | 30.10000 |
| 0.000000 | 55.90000 | 19.80000 |
| 0.000000 | 53.80000 | 31.50000 |
| 0.000000 | 53.90000 | 26.40000 |

10

```
0.000000        55.20000        34.80000
0.000000        54.30000        21.20000
0.000000        57.90000        27.70000
0.000000        57.50000        22.30000
0.000000        57.50000        32.30000
0.000000        54.80000        18.70000
0.000000        58.50000        35.40000
0.000000        68.70000        16.00000
0.000000        51.90000        45.20000
0.000000        52.00000        29.70000
0.000000        57.00000        23.10000
0.000000        50.50000        27.60000
0.000000        52.30000        31.50000
0.000000        52.20000        27.60000
0.000000        57.80000        7.900000
0.000000        57.30000        25.50000
0.000000        55.60000        29.90000
0.000000        64.90000        39.80000
0.000000        55.10000        16.40000
0.000000        54.10000        32.90000
0.000000        62.60000        16.40000
0.000000        51.20000        21.50000
0.000000        55.20000        30.20000
0.000000        53.50000        16.60000
0.000000        59.30000        20.20000
0.000000        57.50000        21.10000
0.000000        62.00000        39.60000
0.000000        56.00000        2.800000
0.000000        53.40000        28.10000
0.000000        67.80000        34.60000
0.000000        61.30000        34.30000
0.000000        62.50000        38.30000
0.000000        54.00000        30.50000
0.000000        51.40000        27.30000
0.000000        51.60000        26.30000
0.000000        56.00000        25.90000
0.000000        51.20000        7.300000
0.000000        50.20000        27.60000
0.000000        56.40000        27.50000
0.000000        55.80000        25.70000
0.000000        64.90000        36.40000
0.000000        60.80000        38.50000
0.000000        55.30000        17.50000
0.000000        56.00000        33.60000
0.000000        66.60000        32.20000
0.000000        60.80000        31.70000
0.000000        52.80000        7.800000
0.000000        52.90000        30.70000
0.000000        58.20000        27.30000
0.000000        54.60000        26.30000
0.000000        57.40000        35.20000
0.000000        56.20000        29.60000
0.000000        57.60000        22.40000
0.000000        53.20000        27.90000
0.000000        58.30000        15.60000
0.000000        54.30000        29.60000
0.000000        57.60000        33.40000
0.000000        58.10000        28.60000
0.000000        67.30000        8.400000
```

11

```
0.000000        57.00000        31.00000
0.000000        57.60000        18.50000
0.000000        51.30000        27.00000
0.000000        62.90000        11.80000
0.000000        57.60000        22.90000
0.000000        57.00000        35.20000
0.000000        60.20000        38.40000
0.000000        57.00000        8.400000
0.000000        51.20000        26.60000
0.000000        53.10000        18.80000
0.000000        57.70000        13.00000
0.000000        54.40000        11.10000
0.000000        56.10000        22.20000
0.000000        55.10000        15.40000
0.000000        53.50000        11.60000
0.000000        53.50000        23.30000
0.000000        66.50000        36.20000
0.000000        58.00000        35.50000
0.000000        62.90000        30.20000
0.000000        55.40000        31.50000
0.000000        55.40000        32.60000
0.000000        54.90000        29.70000
0.000000        56.10000        14.30000
0.000000        53.00000        31.60000
0.000000        55.40000        19.00000
0.000000        59.00000        16.00000
0.000000        57.10000        29.90000
0.000000        54.20000        34.80000
0.000000        53.60000        17.40000
0.000000        54.20000        30.90000
0.000000        56.60000        33.90000
0.000000        50.40000        25.20000
0.000000        50.70000        24.70000
0.000000        57.90000        32.70000
0.000000        51.60000        27.00000
0.000000        56.50000        36.40000
0.000000        58.70000        19.50000
0.000000        53.90000        30.00000
0.000000        57.80000        35.50000
0.000000        60.40000        29.60000
0.000000        60.90000        31.80000
0.000000        58.50000        32.40000
0.000000        55.50000        27.30000
0.000000        51.70000        28.20000
0.000000        61.30000        39.20000
0.000000        56.10000        32.60000
0.000000        51.30000        25.90000
0.000000        62.40000        37.70000
0.000000        55.50000        31.50000
0.000000        50.20000        17.80000
0.000000        50.80000        5.500000
0.000000        59.20000        25.70000
0.000000        60.50000        36.50000
0.000000        65.30000        16.90000
0.000000        53.60000        26.60000
0.000000        52.50000        22.80000
0.000000        55.10000        2.400000
0.000000        50.30000        14.30000
0.000000        53.40000        35.50000
```

12

```
0.000000          52.80000          23.50000
0.000000          53.50000          17.00000
0.000000          65.70000          37.60000
0.000000          54.60000          21.00000
0.000000          50.90000          28.60000
0.000000          51.10000          25.60000
0.000000          53.60000          31.70000
0.000000          51.90000          3.300000
0.000000          63.30000          39.60000
0.000000          52.00000          29.60000
0.000000          57.90000          38.80000
0.000000          62.20000          32.70000
0.000000          64.10000          29.60000
0.000000          66.80000          31.60000
0.000000          60.90000          35.60000
0.000000          57.30000          31.00000
0.000000          56.30000          31.60000
0.000000          54.10000          7.200000
0.000000          60.00000          33.90000
0.000000          64.10000          39.80000
0.000000          55.80000          32.70000
0.000000          59.10000          8.100000
0.000000          58.50000          23.90000
0.000000          52.30000          28.50000
0.000000          54.30000          29.50000
0.000000          61.60000          34.90000
0.000000          60.30000          21.60000
0.000000          54.30000          22.60000
0.000000          55.30000          31.30000
0.000000          52.70000          23.20000
0.000000          56.90000          30.50000
0.000000          61.80000          34.80000
0.000000          54.90000          35.00000
0.000000          53.10000          29.40000
0.000000          53.40000          31.30000
0.000000          65.10000          25.70000
0.000000          54.10000          15.30000
0.000000          52.40000          3.300000
0.000000          56.10000          30.70000
0.000000          56.30000          34.00000
0.000000          54.30000          31.20000
0.000000          59.50000          24.30000
0.000000          62.60000          22.70000
0.000000          53.50000          5.500000
0.000000          58.20000          21.50000
0.000000          52.20000          27.00000
0.000000          53.30000          31.40000
0.000000          60.70000          27.40000
0.000000          60.90000          25.30000
0.000000          70.60000          44.80000
0.000000          53.80000          25.10000
0.000000          51.60000          36.00000
0.000000          56.60000          31.50000
0.000000          57.70000          15.00000
0.000000          52.90000          30.60000
0.000000          55.50000          15.60000
0.000000          58.50000          25.80000
0.000000          50.70000          29.50000
0.000000          55.90000          29.30000
```

13

```
0.000000        52.80000        28.50000
0.000000        58.30000        34.40000
0.000000        56.40000        31.20000
0.000000        53.60000        31.60000
0.000000        58.80000        30.50000
0.000000        55.40000        30.20000
0.000000        53.60000        15.40000
0.000000        53.50000        21.10000
0.000000        51.50000        27.20000
0.000000        65.20000        42.30000
0.000000        51.40000        26.00000
0.000000        59.50000        19.10000
0.000000        60.50000        36.90000
0.000000        53.00000        6.300000
0.000000        56.20000        31.50000
0.000000        63.50000        35.90000
0.000000        50.30000        6.300000
0.000000        61.40000        20.40000
0.000000        61.70000        15.40000
0.000000        53.30000        16.70000
0.000000        58.80000        21.20000
0.000000        55.40000        33.00000
0.000000        52.20000        28.70000
0.000000        52.60000        26.30000
0.000000        64.90000        32.50000
0.000000        58.90000        24.60000
0.000000        56.10000        31.70000
0.000000        58.30000        25.20000
0.000000        57.80000        24.50000
0.000000        59.70000        18.30000
0.000000        59.50000        24.80000
0.000000        54.40000        29.80000
0.000000        55.30000        32.50000
0.000000        57.80000        20.30000
0.000000        58.80000        33.30000
0.000000        66.60000        20.00000
0.000000        62.50000        29.90000
0.000000        50.30000        29.10000
0.000000        51.30000        29.30000
0.000000        58.40000        24.00000
0.000000        66.00000        33.30000
0.000000        53.70000        16.10000
0.000000        58.20000        36.60000
0.000000        57.70000        27.60000
0.000000        54.80000        32.50000
0.000000        54.10000        24.20000
0.000000        65.10000        27.60000
0.000000        56.60000        33.50000
0.000000        52.50000        25.90000
0.000000        52.20000        19.00000
0.000000        54.20000        24.30000
0.000000        54.00000        18.00000
0.000000        61.70000        21.60000
0.000000        64.00000        29.90000
0.000000        51.20000        25.90000
0.000000        52.80000        30.90000
0.000000        52.80000        29.60000
0.000000        58.80000        27.60000
0.000000        57.00000        28.60000
```

14

```
0.000000      50.00000      26.60000
0.000000      61.50000      17.60000
0.000000      54.50000      25.90000
0.000000      56.40000      33.40000
0.000000      55.20000      29.50000
0.000000      62.10000      32.70000
0.000000      51.30000      25.90000
0.000000      58.90000      33.90000
0.000000      53.60000      17.50000
0.000000      60.10000      14.60000
0.000000      54.00000      23.90000
0.000000      51.40000      7.400000
0.000000      51.30000      26.60000
0.000000      54.50000      16.70000
0.000000      59.30000      4.100000
0.000000      58.00000      33.90000
0.000000      61.10000      5.700000
1.000000      53.30000      16.30000
1.000000      55.30000      18.10000
1.000000      51.00000      8.700000
1.000000      54.20000      31.50000
1.000000      52.70000      26.50000
1.000000      51.60000      21.10000
1.000000      59.10000      25.90000
1.000000      55.70000      33.50000
1.000000      61.50000      14.50000
1.000000      51.00000      18.00000
1.000000      59.70000      27.30000
1.000000      56.80000      34.50000
1.000000      53.50000      32.00000
1.000000      52.80000      29.60000
1.000000      56.70000      27.90000
1.000000      54.10000      26.10000
1.000000      52.10000      20.80000
1.000000      50.70000      20.50000
1.000000      56.60000      22.70000
1.000000      54.50000      32.70000
1.000000      55.20000      21.70000
1.000000      50.70000      24.90000
1.000000      51.60000      23.50000
1.000000      57.70000      29.50000
1.000000      59.10000      31.60000
1.000000      57.70000      31.50000
1.000000      56.70000      34.50000
1.000000      60.90000      9.300000
1.000000      54.30000      17.10000
1.000000      52.60000      25.60000
1.000000      51.20000      27.00000
1.000000      49.20000      21.40000
1.000000      61.90000      28.90000
1.000000      63.10000      27.90000
1.000000      59.20000      15.50000
1.000000      57.60000      31.60000
1.000000      65.80000      20.20000
1.000000      53.70000      29.50000
1.000000      53.70000      17.40000
1.000000      57.60000      35.50000
1.000000      61.10000      36.50000
1.000000      50.40000      29.20000
```

15

```
1.000000      50.40000       5.000000
1.000000      58.50000      16.80000
1.000000      52.10000      18.50000
1.000000      61.50000      20.30000
1.000000      51.40000      29.60000
1.000000      51.60000      24.90000
1.000000      53.10000      31.80000
1.000000      57.00000      27.30000
1.000000      52.20000      20.00000
1.000000      53.00000       8.900000
1.000000      52.30000      28.30000
1.000000      57.80000      21.10000
1.000000      56.20000      33.50000
1.000000      59.80000      33.30000
1.000000      59.00000      36.00000
1.000000      50.10000       7.200000
1.000000      52.10000      21.50000
1.000000      57.90000      28.80000
1.000000      54.40000      35.80000
1.000000      54.00000      27.50000
1.000000      50.30000      27.60000
1.000000      59.30000      36.60000
1.000000      50.40000      28.00000
1.000000      50.30000      28.20000
1.000000      60.20000       7.500000
1.000000      52.50000      21.10000
1.000000      58.50000      18.20000
1.000000      60.70000      20.20000
1.000000      50.50000      10.80000
1.000000      62.80000      30.80000
1.000000      56.10000      33.50000
1.000000      52.30000      17.80000
1.000000      56.20000      31.50000
1.000000      50.20000       3.700000
1.000000      51.30000      14.80000
1.000000      57.50000      22.20000
1.000000      55.90000      18.80000
1.000000      64.10000      39.50000
1.000000      54.30000      25.30000
1.000000      56.00000      34.50000
1.000000      55.90000      35.60000
1.000000      51.80000      31.50000
1.000000      59.90000      19.00000
1.000000      50.90000      26.70000
1.000000      53.50000      31.20000
1.000000      55.20000      30.80000
1.000000      59.00000      18.70000
1.000000      53.50000      32.00000
1.000000      50.40000      24.40000
1.000000      59.90000       0.1000000*
1.000000      50.50000      13.30000
1.000000      61.40000      21.00000
1.000000      54.80000      33.80000
1.000000      55.80000      33.60000
1.000000      58.00000      34.80000
1.000000      54.50000      33.70000
1.000000      51.60000      29.60000
1.000000      55.60000      26.50000
1.000000      55.20000      25.40000
```

16

```
1.000000          53.80000          31.60000
1.000000          50.50000          25.90000
1.000000          54.50000          21.50000
1.000000          55.70000          22.90000
1.000000          56.30000          34.20000
1.000000          53.80000          26.30000
1.000000          51.20000          15.80000
1.000000          51.00000          29.60000
1.000000          51.50000          16.50000
1.000000          56.40000          34.80000
1.000000          53.80000          30.00000
1.000000          56.70000          36.50000
1.000000          63.20000          40.10000
1.000000          53.30000          29.90000
1.000000          51.70000          26.40000
1.000000          52.00000          30.70000
1.000000          57.80000          13.80000
1.000000          55.10000          18.50000
1.000000          57.10000          21.70000
1.000000          60.10000          11.10000
1.000000          55.50000          22.00000
1.000000          49.00000          26.10000
1.000000          57.00000          26.40000
1.000000          52.50000          21.50000
1.000000          60.50000          33.00000
1.000000          52.50000          7.300000
1.000000          51.30000          24.80000
1.000000          59.30000          35.80000
1.000000          52.80000          21.50000
1.000000          57.80000          17.30000
1.000000          59.70000          15.00000
1.000000          57.30000          29.90000
1.000000          57.10000          29.40000
1.000000          64.30000          32.60000
1.000000          57.20000          30.60000
1.000000          57.50000          18.40000

Total number of observations = 419
```

*This item appears to be a typographical or data entry error by GAO. Because of statistical insignificance of the regression coefficient of this variable, total years of experience, in the estimation of preliminary model, this variable was excluded in the estimation of final model.  Therefore, this error in this data point did not affect the estimation of the final model chosen and the results from that model for my opinion.

18