UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES D. MOSES | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1712 (EGS) |
| | ) |
| GENE L. DODARO, Acting | ) |
| Comptroller General of the United States | ) |
| Government Accountability Office (GAO), et al. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO ROBERT W. WAGNER'S
MOTION TO INTERVENE OF RIGHT PURSUANT TO RULE 24(a)(2)**

Mr. Robert W. Wagner, Jr., has moved pursuant to Fed. R. Civ. P. 24(a)(2) to intervene of right into the instant lawsuit that was filed nearly two years ago on October 4, 2006.[1]  See Moses Complaint (Compl).  Wagner argues that he should be permitted to intervene as of right because "it is . . . necessary to protect his own interests as a class member and the interests of 60 similarly situated class members who, like himself, retired" rather than remain in the agency after

---

[1] Rule 24(a)(2) permits persons to intervene as a matter of right under certain conditions:

> Upon timely application anyone shall be permitted to intervene in an action. . .(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  This rule has been interpreted to require that a party seeking intervention of right to demonstrate that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.  Worlds v. Dept. of Health and Rehab. Servs., 929 F.2d 591, 593 (11th Cir. 1991).

the Band II restructuring. See Motion to Intervene, p. 1. This statement is perplexing as the instant case is not a class action. There has never been a certification of any class, nor is there a motion for class certification pending. This case, as presently constituted, involves a single plaintiff, Mr. Moses, and his various claims against the named defendants.[2] Mr. Wagner is seeking to bring his individual claims (and possibly the claims of others) into this suit, which should not be allowed. Indeed, we can only guess as to the scope of these claims, as he has neglected to file his own complaint. See Fed. R. Civ. P. 24 (c). Thus, the motion should more properly be a motion to intervene under Fed. R. Civ. P. 24 (b), i.e., permissive intervention.[3] In any event, the would-be intervenor's motion should be denied because he has failed to exhaust his administrative remedies under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the statute of limitations has passed.

The Band II Restructuring, at issue in this action, was accomplished in December 2005/January 2006, more than two years prior to the filing of this motion.[4] See Compl. ¶ 21. While it is true that on August 9, 2006, the Plaintiff Moses, filed his notice of intent to sue as a

---

[2] On April 29, 2001, defendants moved this court for a partial dismissal of Mr. Moses' claims. See PACER DKT # 51.

[3] Under Fed. R. Civ. P. 24(a), there is an implicit allowance for intervention as of right in a certified class if an individual has an interest in the transaction but is not being adequately represented by the named class representative. " [T]he general purpose of original Rule 24(a)(2) was to entitle an absentee, purportedly represented by a party, to intervene in the action if he could establish with fair probability that the representation was inadequate. . . . .similarly, a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court." See Notes to Fed. R. Civ. P. 24(a).

[4] The Band II restructuring became effective on January 8, 2006. See Attachment A, to Complaint, Moses Declaration § II A., p. 2.

class under the ADEA, the agency was never notified of the would-be intervenor's claims as he neither filed a notice of intent to sue nor exhausted his claim administratively. See Declaration of Moses, Attachment A to Complaint, § 14, p. 4.[5] Rather, one year and nine months after Mr. Moses filed his intent to sue, Wagner seeks to intervene in this action with no explanation for the delay. Whatever the unexplained reasons are for having slept on his rights for so long, the motion is made far too late. The putative intervenor no longer has any interest in the transaction that is the subject of this action. See Fed. R. Civ. P. 24(a)(2)&(b). Any claim he may have had to challenge the claimed action at issue here - the Band II Restructuring that occurred more than two years before his motion was filed - is barred by his failure to file a notice of intent to sue (or to exhaust his claim administratively) that is a statutory prerequisite for a civil action.

   **1.**  **Wagner Failed to Comply With Any ADEA Exhaustion Requirement.**

   **Notice of Intent**

The provisions of the ADEA applicable to federal workers, 29 U.S.C. § 633a, provide two avenues for asserting claims. One is through the filing of an EEO claim followed by suit if the case is not resolved administratively. There is no question, that Mr. Wagner did not take advantage of this administrative procedure. Affidavit of Dolores Crawford, ¶ 2, Exh. 1. However, the ADEA also allows for federal employees to file a complaint directly with a United

---

[5] Mr. Wagner claims that his interests differ from the Plaintiff because he retired from the Agency and therefore, he should be allowed to intervene to protect the rights of all those who were a part of the Band II Restructuring but who have since left the Agency. See Motion to Intervene, p. 1-2. It is doubtful whether he could be a named representative for this group, even had a motion to certify the class been before the Court, because a representative of each category of plaintiffs must have served notice or properly exhausted the claim through the administrative process. Alliotta v. Gruenberg, 237 F.R.D. 4, 9 (D.D.C. 2006).

States District Court.[6]  *See* 29 U.S.C. § 633a(c); Lex K. Larson, 8 Employment Discrimination (2d Ed.) § 140.08, at 140-32 (1998).  However, the aggrieved employee must first file a Notice of Intent to Sue with the GAO's Office of Opportunity and Inclusiveness.[7]  See 29 U.S.C. § 633a(c)-(d).  The employee must file this Notice within 180 days after the alleged discriminatory practice occurred.  Id.; see also Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991).  The failure to file the Notice within 180 days precludes a suit in federal court.  Id.  Thus, Mr. Wagner's ADEA claims are barred because he failed to file a Notice of Intent to Sue within 180 days of the alleged discriminatory practice.  The Agency was never notified of Mr. Wagner's individual claims and it is not enough for Mr. Wagner to state that exhaustion of administrative remedies is not required of him as an intervenor.  See Motion to intervene, p. 2.  In fact, this statement is contrary to a recent district court decision holding that the movants were not entitled to join suit under Rule 24 because they failed to meet the filing deadline for bringing ADEA claims.  Breen v. Peters, 529 F.Supp. 2d 24 (D.D.C. 2008).

Absent administrative exhaustion, the 180-day period for filing a Notice of Intent to Sue is a key requirement.  The purpose of requiring that the employee file a Notice of Intent to Sue within 180 days is twofold.  First, it provides the EEOC or the employing agency with an opportunity to attempt to conciliate the complaint while it is still fresh.  Second, it provides early notice to the employer of a possible lawsuit, thereby promoting both the preservation of evidence

---

[6] Alternatively, employees may pursue administrative remedies by filing an EEO claim with the agency's Office of Opportunity and Inclusiveness (O&I).  This would-be intervenor failed to file an EEO claim with O&I.  Affidavit of Dolores Crawford, ¶ 2, Exh. 1.

[7] Most federal employees would file the notice with the Equal Employment Opportunity Commission.

and good faith negotiation on the part of the employer during the conciliation period.  Cf. Lex K. Larson, 8 Employment Discrimination (2d ed.) § 140.01, at 140-3 (1998).

The 180-day filing period for providing written Notice of Intent to Sue is a statutory prerequisite to suit.  29 U.S.C. § 633a(d).  Thus, the Notice constitutes an integral part of the waiver of sovereign immunity that permits an employee to bring an age discrimination claim against a federal agency.  The notice requirements protect employers from defending claims arising from employment decisions that are long past.  See Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2170 (2007).  The exhaustion requirements recognize that discrimination claims frequently involve a "subtle determination" as to an employer's intent, the evidence of which "may fade quickly with time."  Id. at 2170-71.

Moreover, when the suit is against the federal government, as is this one, a statutory limitations period is a condition to the waiver of sovereign immunity and thus must be strictly construed.  Breen, 529 F.Supp. 2d at 27; Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 94; and Felter v. Norton, 412 F. Supp. 2d 118, 123 & n.1 (D.D.C. 2006).  Therefore, a Court should only use its equitable powers to toll a statutory deadline in extraordinary and carefully circumscribed circumstances.  Breen, 529 F.Supp. 2d at 27.

> The Supreme Court has suggested. . .that courts may properly allow tolling where a claimant has received inadequate notice, . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, . . where the court has led the plaintiff to believe that she had done everything required of her, . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.  In particular, failure to meet a statutory deadline may be excused if it is the result of justifiable reliance on the advice of [a] government officer.

Breen, 529 F.Supp.2d at 27 (citations omitted).  A party requesting that a statutory deadline be equitably tolled bears the burden of persuasion.  Id.; Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992); Saltz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982).  Wagner has failed to identify any of these factors as attendant in the instant case.  See Motion to Intervene.  Wagner has failed to explain why he merely sat on his rights while the filing deadline passed, a situation that would not entitle him to equitable tolling.  Instead, he has merely asserted that as an intervenor, he does not have to exhaust administrative remedies.  See Motion to intervene, p. 2.

There is no record of Robert Wagner, Jr., ever having filed either an EEO Complaint or a Notice of Intent to Sue[8]; therefore, the plain language of the statute mandates that "[n]o civil action may be commenced" by this putative intervenor.  Rann v. Chao, 346 F.3d 192, 198-99 (D.C. Cir. 2003).

    2.    **Wagner's ADEA Claims Are Untimely And Barred By the Statute Of Limitations**

That Wagner's claims are barred by the statute of limitations is an appropriate basis on which to deny intervention.  See Bridges v. Maryland State Police, 441 F.3d 197, 209, 213 (4th Cir. 2006); Southern Calif. Fed. Savings & Loan Ass'n v. United States, 51 Fed. Cl. 114 (2001): Abrams v. Communications Workers, 1992 WL 88038 (D.D.C.).  Wagner's claims are time-barred because he did not file his complaint until more than two years after the date of the Band II Restructuring.

Although the ADEA does not contain a specific limitations period, see 29 U.S.C. § 633a, the Supreme Court has held that "Congress intended to impose an appropriate period borrowed

---

[8] Affidavit of Dolores Crawford, ¶ 6.

from either a state statute or from an analogous federal one."[9] Stevens, 500 U.S. at 7.  A majority of circuit courts to consider the issue have concluded that the 90-day limitations period prescribed in Title VII is the most analogous statute to the ADEA, and therefore Title VII provides the most appropriate statute from which to borrow a limitations period.  See e.g., Edwards v. Shalala, 64 F.3d 601, 605-06 (11th Cir. 1995); Long v. Frank, 22 F.3d 54 (2d Cir. 1994); Lavery v. Marsh, 918 F.2d 1022, 1025 (1st Cir. 1990).  But see Rossiter v. Potter, 357 F.3d 26, 35 (1st Cir. 2004) (finding 2 year statute of limitations in the Fair Labor Standards Act to be more appropriate than Title VII).  These courts recognize that § 633 is patterned directly after the corresponding provision under Title VII and that both Title VII and the ADEA share the same purpose:  eliminating discrimination in the workplace.  Id.

In Price v. Bernake, 470 F.3d 384, 388-89 (D.C. Cir. 2006), the D.C. Circuit held that "when federal employees bring a civil action after pursuing administrative remedies under the ADEA, the action must be brought within 90 days of final agency action, the time period allowed for similar suits under Title VII."  In reaching this conclusion, the D.C. Circuit specifically found that Title VII is the most analogous statute to the ADEA.  Id.  When a federal employee files an EEO Complaint and receives a Right to Sue letter, he is authorized to assert his age discrimination in federal court.  Alternatively, an employee who foregoes the administrative process is similarly able to file his age claim in federal court after he submits a Notice of Intent to Sue.  An employee who chooses to proceed directly in federal court should be required to do precisely that within the same amount of time as employees who receive a Right to Sue letter.

---

[9] In Stevens, the Supreme Court did not expressly decide which limitations period applies.

The Court could conclude that the 90-day period does not begin to run until after the 30-day period for the GAO to address the complaint expires. See 29 U.S.C. § 633a(c)-(d). However, even if the Court adopts this view, Wagner's claims would still be untimely. Instead of filing his own complaint along with a Motion to intervene, Mr. Wagner has adopted the allegations in the plaintiff's complaint.[10] Motion to Intervene, p. 2. The Band II Restructuring, purportedly at issue in this action, was accomplished in December 2005/January 2006, more than two years prior to the filing of this motion. See Compl. ¶ 21, 22. His claims are, accordingly, time-barred under any approach.

### 3. Conclusion

For the foregoing reasons, the defendants request that the Court deny Wagner's Motion to Intervene.

Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

---

[10] The motion to intervene must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought. See Fed. R. Civ. P. 24 (c).

/s/
_____
HEATHER GRAHAM-OLIVER,
Assistant United States Attorney
Civil Division
555 4TH Street, N.W.
Room 4808
Washington, D.C.  20530
(202) 305-1334


Of Counsel:
WESLEY DUNN
Government Accountability Office
Senior Staff Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES D. MOSES,                )<br>                                              )<br>                    Plaintiff,        )<br>           v.                            )<br>                                              )<br>GENE L. DODARO         )<br>Acting Comptroller General of the )<br>U.S. Government Accountability Office, )<br>et al.                                      )<br>                                              )<br>                    Defendants.   )<br>_____) | Case No: 06-01712 (JGP) |

**AFFIDAVIT OF DOLORES CRAWFORD**

I, Dolores Crawford, depose and state as follows:

1.     I am presently employed as a Mediation Program Manager & EEO Counselor in the Office of Opportunity and Inclusiveness (O&I), formerly known as the Civil Rights Office, at the Government Accountability Office (GAO). In that capacity, I have the responsibility for the receipt and processing of individual and class complaints of discrimination, as well as Notices of Intent to Sue under the Age Discrimination in Employment Act (ADEA). I have served in that capacity since approximately 1991.

2.     When O&I receives a formal Complaint of Discrimination, O&I creates a file and places it in a filing cabinet located in O&I, then begins processing the complaint.

3.     When O&I receives a Notice of Intent to Sue under the ADEA, O&I either places the Notice in an existing O&I file, or creates a new file and places it in the O&I file cabinet.

4.     O&I has two files: one containing active complaints, and one containing old complaints. O&I's files date back to approximately 1990. The O&I filing system is organized alphabetically by the complainant's name.

5.     On or about April 30, 2008, I performed a search of the O&I files to ascertain whether O&I had received a Complaint of Discrimination or Notice of Intent to Sue from Robert W. Wagner, Jr.

6.     There is no record of Robert W. Wagner Jr. having filed a Complaint of

Discrimination or Notice of Intent to Sue with O&I.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

_____          _____
Dolores Crawford                                                   Date   22 May 08