**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| James D. Moses ) | |
|     For himself and ) | Case No.    1:06 CV 01712 (EGS, DAR) |
|     All others similarly situated ) | |
| ) | |
|     Plaintiffs ) | |
|         V. ) | |
| ) | |
| Gene Dodaro, Acting ) | |
| Comptroller General of the United States, ) | |
| Government Accountability Office (GAO) ) | |
|     and ) | |
| Paul M. Coran, Chair ) | |
| The Personnel Appeals Board ) | |
|     of the GAO, (PAB) ) | |
|     Defendants. ) | |

| | |
|---|---|
| Arthur L. Davis, et al ) | |
|     For himself and ) | Case No.    1:06 CV 01002 (EGS, DAR) |
|     All others similarly situated ) | |
| ) | |
|     Plaintiffs ) | |
|         V. ) | |
| ) | |
| Gene Dodaro, Acting ) | |
| Comptroller General of the United States, ) | |
| Government Accountability Office (GAO) ) | |
|     and ) | |
| Paul M. Coran, Chair ) | |
| The Personnel Appeals Board ) | |
|     of the GAO, (PAB) ) | |
|     Defendants. ) | |

| | |
|---|---|
| Venkareddy Chennareddy, et al ) | |
|     For himself and ) | Case No.    1:87 CV 03538 (EGS, DAR) |
|     All others similarly situated ) | |
| ) | |
|     Plaintiffs ) | |
|         V. ) | |
| ) | |
| Gene Dodaro, Acting ) | |
| Comptroller General of the United States, ) | |
| Government Accountability Office (GAO) ) | |
| ) | |
|     Defendant. ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO APPEAL**
**OF MAGISTRATE'S ORDER DENYING INTERVENTION–AND**
**OBJECTION TO CONTINUING BAD FAITH CONDUCT OF DEFENDANT**

1

## I.  PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

**Equitable Estoppel and Equitable Tolling:**

Before addressing the substantive content of this reply, plaintiffs are compelled to Object. Plaintiffs hereby request a continuing objection, in each of these related cases to the inequitable and bad faith actions in withholding evidence by the GAO.  That conduct is inimical to the interests of justice in these discrimination cases.  The subject of this objection is of overriding importance to all claims being litigated herein.  A comment by the Magistrate judge indicated that the Magistrate and the Court may be largely unaware of this aspect of these cases[1].  This objection is intended to focus attention upon disputed facts obscured by the failure of GAO to conduct good faith discovery.  The Court was misled as to the purported non-existence by GAO of facts well known to exist and never yet produced.  This material, contained in electronic files is expected to be, when produced determinative of these pending motions, and quite possibly the entirety of these related cases.

The effect of these allegations, if proven, as to equitable estoppel, and equitable tolling is believed to be important, if not determinative to all subsequent decisions of the Court.  The materials withheld is evidence of universal bias amounting to a hostile work environment.  That evidence has been denied to exist and has been withheld during the entire prior history of these cases.  Those facts are the nature of the actions/transactions complained about by all of the plaintiffs and all of the intervenors.  Under applicable law, the evidence sought is relevant, even determinative of intervention.  If the situation and transactions are similar, or as here,  identical, intervention of right under F.R.Civ P. 24(a)(2) must be granted. Plaintiffs aver and allege that the transactions and situation are the same, and defendants deny that determinative fact.  More importantly, in terms of equitable tolling or estoppel, defendants deny that such evidence even exists, and deny access or production of those well known to exist electronic files containing that

---

[1]  The Honorable Magistrate Judge asked "Where in your motion [to intervene] did you raise an issue regarding equitable tolling?"  (See, transcript, case # 87-0358, Docket entry 388-2, pg 24 L 1,2).  Undersigned counsel's response was " Well, it certainly was discussed in our complaint". (Pg 25, L 11-13 of the same document).

evidence.  This withholding and denial is the essence of bad faith under the Federal Rules of Civil procedure, Rule 26 et seq.

Importantly, that set of facts is determinative of the subject of these motion, "intervention of right" under F.R.Civ. P. 24(a)(2) and applicable law in this Circuit.

Defendants' brief in opposition to plaintiffs intervention omitted any reference to the GAO's failure to produce the evidence of the identity of transactions applicable to plaintiffs and applicant intervenors.  However GAO argued to the Magistrate that  "But there's been no evidence presented to that, and in fact, none exists."(Transcript of Magistrate's hearing, Docket # 388-2, at page 21).  The "in fact none exists" is quite simply a false statement.  GAO's employee maintaining these electronic files, Mr. William Mowbray (Mowbray) has described the content in detail.  The evidence and information has been requested, but GAO still denies they exist (once again, with the above false argument).  But the files do in fact exist.

This false and obstructionist posture continues in the face of admissions to the contrary by the witness (Mowbray) having first hand knowledge of these facts because he built the electronic files (in 1989) still denied to exist.  Therefore, the omission of that information from the defendants's briefs in opposition to intervention is telling in effect.  But in the interim, more inequitable conduct has occurred, while the delays resulting from the pending motions, including this one, are being considered by the Court.  Those matters are:

(1)  GAO is (right now) taking actions designed to eviscerate the class by settling claims of (Moses) class members for pennies on the dollar.  Those actions were initiated without prior notice to undersigned counsel, notice to the Court, the opportunity to notify class members or to object.

(2) No discovery has as of yet been Ordered or approved by the this Court.  However, with the agreement of counsel, one deposition was taken, on May 16th, 2008, of the afore-mentioned Mr. William Mowbray.  That deposition confirmed the fact that GAO has possessed, all of the 20+ year time frame of these cases, a centralized computerized

statistical data system, written and maintained in Statistical Analysis System (SAS) language.  Those electronic files contain virtually all of the relevant data elements for all professional personnel for all years of these cases.  This evidence allows a detailed pattern and practice analysis relevant to the instant issues of the multitude of transactions applicable to all plaintiffs, all intervenors, and all putative class members.  And it is readily available.

(3) The withholding of this evidence is a situation that is inimical to the interests of justice and should be corrected immediately.

(4)  Only then can the merits of these motions to intervene requiring transactional identity, and/or situation identity be adequately addressed.  Therefore, the Court should order forthwith full disclosure of the information contained in the withheld personnel files.

(5) The Magistrate Judge declined to consider equitable tolling and its effect upon these pending motions.  (See Transcript, Docket Document 388-2, Pg. 23-25, with specific references to the fact that plaintiffs failed to specifically re-raise the issue in the motion to intervene.  Under the standards applicable to Motions to Intervene,

> Motions to intervene are usually evaluated on the basis of well pleaded matters in the motion, the complaint, and any responses of opponents to intervention.  ***Stadin v. Union Electric Co.***, 303 F.2d 912, 917 (8th Cir. 1962).

The basis for equitable tolling in this case has been raised multiple times, including in the latest Amended Complaint and a separate objection on only this subject.  But these troublesome allegations have never been squarely addressed by the Court.  Therefore, given the complexity of this case, plaintiffs deemed it necessary to raise this issue once again in the context of these pending motions to intervene.  Certainly, the withheld materials are relevant evidence at this time and for these motions.

(6) As of this date, GAO continues to withhold the statistical data which undoubtedly shows a statistically significant universal and uniform bias against older workers, a bar to

4

promotions and a hostile work environment.  It also will show the exclusions of those

workers from fair ratings, promotions and retention.

(7) Most importantly, GAO, through its counsel, continues to lead the Court astray by

denying and relying upon the very conditions-the absence of evidence- which GAO created by its

bad faith actions.  Counsel argued (Document 388-2, at page 21 ¶ 2, Mag. Hearing, July 22,

2008).

> But just the fact that two sets of plaintiffs both allege age discrimination
> on the part of a single defendant doesn't mean that there are common questions of
> law or fact.  In fact, the intervenors and the Chennareddy plaintiffs were employed
> in different GAO field offices at different times and are presumably, therefore,
> challenging the decisions made by different GAO managers.  Therefore, there's
> not a commonality of questions of law or fact, there's no allegation of – there's a
> conclusory allegation of a common GAO-wide practice of discrimination, but
> there's been no evidence presented to that, and in fact, none such exists.

(8) The Court is requested to note that GAO argues on one hand, that plaintiffs should not

get discovery, and on the other hand that the evidence (known to exist now by all parties,

as the result of Mr. Mowbray's deposition) does not exist.  If indeed, the pattern of

universal bias and hostility exists, and is proven as a mathematical certainty, which

plaintiffs allege is the case, GAO's position, and representations to this Court will be

demonstrated as false.

For these reasons this matter should be considered by the Court in conjunction to these

pending motions and discovery allowed forthwith, to resolve these determinative factual

differences.  If that does not occur, the facts of this case must be taken to most favor the plaintiffs

as alleged in the several complaints.  Those complaints uniformly allege an identity of situation

and transactions as between plaintiffs and applicant intervenors.


**REPLY ARGUMENT**


**I.  The "Order" of the Magistrate, In These Circumstances, With Pending Motions to
Certify Is a Final Determinative Denial of All Rights, of Wagner and Class Members; as
Such it is Ultra Vires and Void:**

The Appeal of the Magistrate's Order effectively dismisses all recent claims of applicant intervenor Mr. Wagner. It also dismisses the claims of the older long-term claims of intervenors Messrs. Moses, Davis and Gilbert (and the several hundred putative class members each of the above seek to represent). If, for example Wagner, and the about 200 putative class members he seeks to represent are denied intervention, all rights to relief are gone. This result is a de-facto dismissal of all claims.

Entry an Order dismissing claims is a violation of the referral order itself. The District Judge's Order of reference clearly states the referral is "for a Report and Recommendation on dispositive motions. (Docket 04/15/2008. Signed by Judge Emmet G. Sullivan on April 15, 2008)". The Order of the Magistrate also violates the rules of this Court. Both the Federal Rule governing the duties of Magistrates, F.R.Civ P. 72(b) and Local Rule LCv72.3(a)(3) require the Magistrate to make a report with findings of fact, and recommendation to the Court for entry. LCv72.3 specifically denies the power to a magistrate to enter an order having the effect of the instant Order. The local rules provide, when read together, as they must be:

The Magistrate Judge did not issue a report and recommendation on intervention as was the extent of her authority pursuant to the Order of Referral. (See **Minute Order** of 04/15/08- "referring Moses v. Walker, Civil Action No. 06-1712, to Magistrate Judge Deborah A. Robinson for *a report and recommendation on dispositive motions*". (Emphasis added)(Similar Minute Order entered on 4/15/08 in each of the three cases captioned above).

The Federal Rules of Civil Procedure[2] do not allow for a Magistrate Judge to issue the equivalent of a judgment of dismissal, as here.

The local rules of this Court provide:

 (LCvR 72.2 (a)) At the request of the district judge .... a magistrate judge may hear and determine any pretrial or matter ***other then those specified in LCvR 72.3*** *of these Rules*, and may conduct proceedings and ***enter orders***...
[emphasis added].

---

[2]  See, Rule 72(a)-Non-Dispositive Motions; Rule 72 (b)-Dispositive Motions

However, LCvR 72.3 (a) provides at (3) the exceptions to the authority of the Magistrate Judge to enter an order on her own authority.  That rule states, when read in conjunction with 72.2(a) that the Magistrate Judge *may **not** enter on her own authority*:

> "...(3) motions for judgment on the pleadings, for *summary judgment, to dismiss* or to *permit maintenance of a class action*, to dismiss for failure to state a claim upon which relief can be granted, or otherwise to *dismiss an action involuntarily*;" [emphasis added].

Here, the Magistrate Judge erred in ruling and entering a Minute Order denying intervention.  The Magistrate ruled, over plaintiffs objection

> "Now as the Court indicated at the outset, the Court has determined that the three motions as to which we have heard argument are motions that this Court can determine in accordance with local Civil Rule 72.2 (a).".  (See, Ex. # 1, Transcript of Mag. Ruling, pg.1, Line 1).

However, plaintiffs contend that the matters before the Court, when denied, resulted in a de facto judgment on the pleadings against all intervenors, and all class members they seek to represent.  When viewed in that light, which is the correct view, the Order(s) denying intervention clearly falls within the exception contained in LCvR 72.3(a)(3) which states:

> "(3) motions for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or otherwise to dismiss an action involuntarily;" (Exhibit 1, pg. 1 paragraph 1, line 1)

The Honorable Magistrate found, as a prerequisite to the Order entered that dismissing the several motions to intervene were not a determinative of the rights of the petitioners.  That decision was clearly erroneous.  Counsel for the plaintiffs/intervenors objected to the Magistrate's determination that the Orders denying intervention was not a "disposition of" LCvR 72.3(a) matters.  As a factual matter, which must be taken to most favor the plaintiffs at this stage of the proceeding, the denial of intervention was the death knell for the rights of all of Mr. Wagner's rights.  It was also a death knell for the rights of those of the class or classes he seeks to represent as a class representative attempting to protect his interests in a long overdue class

certification action.

The Magistrate did not make any findings of fact except the conclusory finding that the requirements of the rule were not met.  In fact, none of the requirements of this Circuit appearing in **Foster v. Gueory**, et al v Local 2311 et al, 655 F.2d 1319 (D.C. Cir 1981) were addressed, although all of the requirements were in fact met.

The Court should vacate the Magistrate's Order and treat the proceedings as recommendations with all findings decided de-novo by the District Judge.  The Court, in its ultimate decision should follow the criterial set out in Foster, and rule that intervention should be allowed as to all four applicant intervenors.  If the Court, subsequent to discovery determines that the transactional or other prerequisites have not been met as to any one of those intervenors, summary judgment at a later date would be the appropriate remedy for that unforseen situation.

**II.  All Plaintiffs in All Cases, Individually Timely Exhausted Administrative Remedies (Despite GAO's Pending Motions to the Contrary); Putative Class Members Who Are Applicant Intervenors are Not Required to Exhaust Administrative Remedies (or to Give a 30 day Notice of Intent To Sue:**

**A.  Moses Exhausted Administrative Remedies (two ways):**

First, Moses timely filed his notice of intent to sue over the latest round of discriminatory actions by GAO management (the band II split and demotions).  The Court's attention is directed to Docket Entry # 15, with seven attachments.  Although GAO continues to argue (generally, without giving specifics) that Moses has not met the requirements for intervention, and his complaint is subject to dismissal (via the "live" motion to dismiss in that case) this argument is untrue.

For the convenience of the Court the key Attachments contained in the record of case # 06-01712, Docket Entry # 15 are included with this reply for the Court's convenience.  (See Exhibit # 2, Moses 30 day Notice and Re-Notice of intent to sue, August 9th, 2006 containing the

history of Moses and Davis et al Notices in prior attempts to obtain relief beginning in 1999. See also Exhibit # 3, US Post Office Return Receipt, signed by Elaine B. Wise, GAO Office Of Opportunity and Inclusiveness, and Exhibit 4- Certificate of Delivery, US Postal Service, August 14, 2006.

Therefore, there cannot be any serious question that Mr. Moses has timely presented his 30 day notice of intent to sue in the latest case in this series of attempts, he having met all timeliness requirements

The Court is also requested to note that Mr. Moses letter states on page 1,

> "He [Moses] give (sic) notice for himself *and all others similarly situated* pursuant to GAO Order number 2713.2, Chapter 3, 9, page 12 (Age Discrimination in Employment Act) ADEA), Chapter 3, 10 (Equal Pay Act, Section 16(b) of the Fair Labor Standards Act) and Chapter 4, (Class Complaints)." [emphasis added].

The importance of this Notice is that under the principle of ***Foster, et al v. Gueory***, 655 F.2d 1319, 26 Fair Empl. Prac.Cas. 7, 26 Empl. Prac. Dec. P 31,899 (D.C. Cir. 1981) even where a class has not been certified, person similarly or identically situated with the plaintiff exhausting the administrative remedies may intervene, as a matter of intervention of right, if the transactions or the situation is similar.

Second, as a matter of administrative exhaustion (in addition to the notices of intent to sue) over the many years of these complaints, Mr. Moses, Mr. Davis, and Dr. Chennareddy have repeatedly given notices to the OOI which have never been acted upon in a timely fashion. The record is replete with the notices given which were never acted upon by the defendant GAO, through its Office of Inclusiveness. Therefore, any notice that any member of the putative class could have given would have been a vain task.

### B. Wagner, a Member of the Class, Is not Required to Exhaust Administrative Remedies, Wagner, However, Additionally, Gave Notice Thorough Moses:

Wagner alleges in his Motion that his claims are similar if not identical to those of Moses.

Moses gave timely notice for himself and the class.  Therefore, under the authority of *Foster v. Gurory*, 655 F.2d 1319 (D.C. Cir. 1981) has been applied with equal force to federal employers (*Artis v. Greenspan*, 474 F.Supp.2d 2 (D.D.C., 2007;*Moore v. Chertoff*, 437 F. Supp. 2d 156 (D.D.C., 2006);*Delgado v. Ashcroft*, 368 F. Supp.2d 3 (D.D.C., 2004), any further notice of intent to sue, or identical complaints would have been

> "Requiring that each class member file a separate charge might drown agency [EEOC] and employer alike by touching off a multitude of fruitless negotiations" (*Horton v. Jackson County Bd. Of County Com'Rs.*, 343 F.3d 897 (7th, Cir., 2003).

**C.  The Original Plaintiffs Prevailed in Their Appeal; It Cannot Now be Argued that they Failed to Exhaust Administrative Remedies as a Matter of The Law of that Case:**

GAO took the incorrect position that the Original complainants had failed to exhaust administrative remedies.  The Court of Appeals in *Chennareddy v. Bowsher*, 935 F3d 315 (D.C. Cir 1991).  The case was reversed and remanded with an admonition that the agency had a duty to bring all of its applicable regulations to the Court's attention, which it failed to do in that case.  Therefore, as a matter of the law of the case, administrative exhaustion has occurred as to those plaintiffs.

**III.  Once Plaintiffs Have Exhausted Administrative Remedies, for the Class, Additional Putative Class Members Are not Required to Exhaust Administrative Remedies, Whether the Class Is Certified or Not.  Here Wagner Meets the Requirements of Rule 24(a)(2).**

This case presents several troublesome "which came first, the chicken or the egg" problems which apparently have confused both the Honorable Magistrate Judge as well as opposing counsel.  Fortunately, the law on this subject is well settled in this Circuit.  For the convenience of the Court the leading case on this subject, with hundreds of citations, including federal agency application, is *Foster v. Gueory, et al v Local 2311 et al*, 655 F.2d 1319 (D.C. Cir 1981).  That case is attached as Exhibit 1.

The requirements of F.R.Civ. P. 24(a)(2) are simple and self-explanatory.  The problems

come in application of the facts.

> Rule 24(a) Intervention of Right.  On timely motion, the court must permit anyone to intervene who:
>
> (1)  .......
>
> (2). claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**Application of the Facts of this Case to the Law contained in *Foster, supra*.:**

> *Foster*, provides four criterial for intervention of right.  The first is timeliness.

**A.  Applications for Intervention Were Timely.  The GAO is Incorrect in Its Recitation of Law Applicable to All Intervenors:**

All four applicants for intervention were timely.  Under the rule of ***Foster, supra***, in a putative class action, where no Motion to Certify a class has been finally denied, and thereby the rights of a putative class member put in jeopardy, it is not possible to be untimely (late).  Here, no one of the putative class members has as of yet been finally dispossessed of their rights.  They are all in jeopardy but it simply hasn't happened yet.  This is because all class certification motions have simply not been ruled upon by the Court.  The latest attempt for a Moses class certification has not been ruled upon.  The latest Motion for the Chennareddy class has been denied, but without prejudice to renew.  And the same is true for Davis, Moses and Gilbert. With inaction by the Court, under Foster, the clock has not yet begun to run.

With the lack of certainty, each one of these intervenors, and each one of the putative class members fear of being stripped of their rights is entirely appropriate.  To illustrate this situation, each of the four criterial required to intervene in this Circuit has been analyzed for Mr.

Wagner.  The others, Davis, Moses and Gilbert, all exhausted administrative remedies by filing multiple complaints, and each filed one or more 30 day notices of intent to sue.  Therefore, the only criteria remaining in question is whether the transactional events contained in the hidden data base will support their position.  These applicant intervenors all aver that it will, that the transactions and situation are identical one to the other when comparing plaintiffs, applicant intervenors and putative class members.  That is because there is simply only one pattern and practice, a hostile work environment to older workers complained about by all of these analysts.

The analysis as to Wagner following the Foster criteria follows:

*Foster* held as to the <u>First</u> of these criteria:

> ..appellants satisfied the timeliness requirement when their motion was made little more than on month after the district court denied the original plaintiffs' motion for class certification.  Until that denial appellants might have reasonably believed they could secure relief as members of a plaintiff class. (At Pg 1324)

Here, Wagner moved to intervene into the Moses class on April 29, 2008 (Docket entry 54).  On the same day, Mr. Moses, the only class representative, moved for a declaratory judgment that he has substantially prevailed.  October 4th, 2006 Moses filed his case as a class action requesting injunctive relief.  No action had been taken by the Court.  On May 21, 2007 Moses moved for immediate certification of the class.  No action was taken by the Court.  That motion remains unresolved at this time.

Wagner has therefore moved *before* any action has been taken by the Court which irrevocably and finally takes his rights.  But the standard is not that.  Rather the rule reads that [the movant] is so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Here, Wagner's interest as an applicant intervenor depends entirely upon the status of Moses.  If Moses' class action is not certified, or if Moses is deemed not be an adequate class representative, simply because he has substantially prevailed, Wagner's interests will be impaired

or lost.  Certainly, in either event his interest *may* be lost.

      Therefore, in an abundance of caution Mr. Wagner elected to move to intervene.  As a matter of timeliness, he therefore is possibly earlier than need be, but he certainly, under the holding of **Foster**, is not late.  Under these circumstances Wagner's Motion to Intervene was timely under the criteria of **Foster**.

      Second, **Foster** held that:

suit is

      ... (pg. 1324) intervenors are indeed concerned persons who involvement in the compatible with efficiency and due process.  Appellants are person who allege that they have suffered injury from the same or very similar wrongful acts as those complained of by the original plaintiffs, (pg 1325) and appellants' claims for relief are founded on the same statutory rights as are the claims of the plaintiffs.  While the individual actions of discrimination suffered by the plaintiffs and the appellants may differ, they each assert their claims as a result of the same "significantly protectable interest" Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed2d 580 (1970, in being free of racial discrimination in employment.

      Here, Wagner has adopted the complaint of Moses in all respects.  That complaint is cast as a pattern and practice resulting in a hostile work environment for all older employees.  Therefore, the interests complained about by Wagner and Moses are identical.

      Third, Foster held (at pg 1325) that the applicant intervenor have the

      burden of showing that their interests may be practically impaired or impeded by the disposition of the plaintiff's suit.

      Here, there can be no doubt that if Moses is dismissed from the suit because he substantially prevailed, or the class certification is denied, Wagner's lawsuit will be untimely.  Wagner admits that the only right he has to relief is through his participation as a member of the putative class.  Therefore, there is no doubt that his interests *may* be impaired.

      Fourth and finally, Foster held (at pg. 1325) that intervenors

      show that their interests are not adequately represented by the existing parties.  This burden is minimal and is met if appellants show that representation of their

interest "may" be inadequate.  Trbovich v. United Mine Workers of America, 404 U.S. 528, 538,n.10, 92 S.Ct. 630, 636, n.10, 20 L.Ed.2d 686 (1972).

Here, if Moses fails for either reason to carry his burden of class certification, Wagner's rights are lost.  Moreover, Wagner resigned rather than suffer the indignity of demotion.  Moses persevered.  Thus, their posture at the workplace was slightly different as to the complaint of discrimination.

Therefore, Wagner has met his burden of all four criteria and his intervention must be allowed.  The same logic applies to Wagner's right to permissive intervention.

### B.  Transactional Identity of Situation Exists, GAO Falsely Denies It Does Not, and Keeps Hidden the Determinative Evidence Disproving GAO's Position:

GAO continues to deny the transactional identity which may be easily proven by candid disgorgement of the hidden electronic personnel data.  Any argument that there is no transactional identity or similarity is simply a false ploy to delay resolution of these cases and mislead the Court.  And that is what has been done in the instant arguments before the Magistrate Judge.

Denial of access to that evidence, and then, as above (argument quoted above (item (4) stating "there's been no evidence presented on that, and in fact, none such exists" is simply false, as attested to by Mr. Mowbray in his deposition.  Therefore, relying upon the lack of such evidence on one hand, and failing to produce what has been described in detail is no more and no less than a basically disingenuous argument to the Court.  (See transcript, pg 21, argument of Mr. Harwood arguing that there are no common questions of law or fact as between plaintiffs and applicant intervenors.

Identity or striking similarity of transactions and situation is precisely what will be shown if GAO is required to disclose the evidence[3] hidden and denied to exist for 20 years.  Plaintiffs

---

[3] That evidence is electronic personnel data on all employees, including the plaintiffs and intervenors, meets the criterial of *Meacham Et Al v. Knolls Atomic Power Laboratory, A.KA. KAPL, Inc* , No. 06-1505, ___ U.S ____, June 19, 2008 (Pp. 5-17)(the burden of production and persuasion of Electronic Data showing a Bona-fide

can state this with confidence based upon the partial statistics laboriously gathered in prior years. Therefore, plaintiffs allege that this evidence will prove beyond any reasonable doubt that identity of transactions and situation exists as between plaintiffs and intervenors. That element is the main element required by Rule 24(a)(2)[4]. If true (or if plaintiffs/intervenors allegations must be taken as such, these motions to intervene must be granted.

Plaintiffs hereby object, and requests a forthwith order that GAO make full disclosure of the Mowbray data, and related management systems (by which top GAO management controls promotions and advancement) *before* this Court rules thereby adopting the GAO's incorrect and dishonest position as its own. This procedure will, plaintiffs aver, greatly expedite resolution of these cases.

Plaintiffs herein have alleged an identity of transactions and situation. Those allegations cannot be refuted absent the discovery requested. Plaintiffs and intervenor's allegation must at this stage of the proceeding be taken as true. Therefore the Motions to Intervene should be allowed as intervention of right, subject however, to later summary judgment subsequent tot he completion of discovery on the identity of transactions/situation issue.

### C. The Intervention of Davis, Moses and Gilbert Should be Granted:

As to Moses, Davis and Gilbert, the denial of intervention was effectively a final dismissal of a part of each of those petitioners' claims. The order entered is also a denial of the rights of any putative class members for those persons whose rights were identical rights to those of Davis, Moses, and Gilbert, so dismissed[5]. These Orders are therefore, clearly excluded from

---

business purpose excusing bias is upon the employer).

[4] See discussion and argument above of the landmark case of *Joseph Foster, et al, v. Albert Gueory, et al v. Local 2311 of the United Brotherhood of Carpenters and Joiners of America, et al*, 655 F.2d 1319, 26 Fair Empl.Prac.Cas.7, 211 U.S. App. D.C. 89 (D.C. Cir. 1981)

[5] The rights of Moses, Davis and Gilbert date, at least, to 1999, when they first attempted to intervene. Intervention was denied. However, plaintiffs allege that the denials of class certification and intervention were (both) the result of failures of GAO to make good faith discovery. Those failures were GAO's denial of the existence of determinative electronic evidence demonstrating the bias herein alleged. GAO falsely denied the

the authority of the Magistrate Judge by LCvR 72.3 (3).  During the hearing before entry of the Minute Order by the Magistrate counsel for the plaintiffs timely objected to the ruling on the grounds (See Transcript, page 55 of 61, Line 8-22) Hearing of July 22, 2008)[6].

Therefore, the Magistrate erred as a matter of law when the Judge determined that the Orders entered in each of the three cases were not "for the disposition of" (a matter contained in Rule 72.3(a)(3).

## Conclusion

For the above reasons, and as further outlined following the Appeal should be allowed. Intervention should be granted as to all four applicant intervenors.

Respectfully submitted,

CharltonW 2428

Walter T. Charlton, D.C. Bar 186940
410 571 8764
230 Kirkley Road, Annapolis, Maryland
Attorney for Plaintiffs, Applicant
Intervenors, and all others similarly situated.
Email, charltonwt@comcast.net

---

existence of evidence subject to F.R.Civ. P. Rule 26(a)(1) discovery on the striking uniformity of the transactions and environment demonstrating a hostile work environment.  Plaintiffs allege the new evidence, is still being withheld in contravention of **F.R.Civ. P. 26(a)(1)** and the recent ruling of ***Meacham, et al  v. Knolls, et al***, decided June 19, No. 06-1505. 2008 (in an age case, the employer bears the burden of production and burden of persuasion of a bona-fide business reason for the statistical bias observed.  That evidence (if the Court ever orders it produced) is alleged to be clear and convincing in determinative effect upon a finding of prohibited bias against all older employees amounting to a hostile work environment.  Innumerable requests for production and Motions to Compel have to date proved fruitless.

[6] Counsel objected as follows:  "Mr. Charlton: Yes, Your Honor.  I would just like to note that we would respectfully disagree with your conclusion that this not a dispositive motion.  It certainly is or potentially is in terms of at least Mr. Wagner."

16

CERTIFICATE OF SERVICE

I hereby certify that I filed, in the ECF system of the United States District Court, on the 3rd day of September, 2008, this reply memorandum in each of the afore-captioned cases, with the expectation that it would be forwarded electronically to the following counsel of record:

Christopher B. Harwood,
AUSA 555 Fourth St., N.W.
Washington, D.C. 20530

Heather Graham-Oliver, AUSA
555 4th, Street, N.W. , Room 4808
Washington, D.C. 20530

Harry B. Roback, AUSA
501 Third Street, N.W.
Washington, D.C. 20530

<u>/s/ charltonw 2428</u>

17

INDEX OF EXHIBITS

Exhibit 1        Foster v. Gueory v. Local 23211, United Brotherhood of
                 Carpenters and Joiners of America, et al
                 655 F. 2d 1319 (D.C. Cir. 1981)


Exhibit 2        James D. Moses, 30 day Notice and Re-Notice of Intent to Sue
                 August 9, 2006.


Exhibit 3        Postal Return Receipt, signed by Elaine B. Wise-GAO
                 Office of Opportunity and Inclusiveness


Exhibit 4        Certificate of Delivery, US Postal Service 8/14/06

Page 1319

655 F.2d 1319

26 Fair Empl.Prac.Cas. 7, 26 Empl. Prac. Dec.

P 31,899,

211 U.S.App.D.C. 89

Joseph FOSTER, et al.

v.

Albert GUEORY, Ronald Dorsey, and Rudolph J. Thornton, Appellants,

v.

LOCAL 2311 of the UNITED BROTHERHOOD OF CARPENTERS and
JOINERS of AMERICA, et al.

No. 79-2266.

United States Court of Appeals,

District of Columbia Circuit.

Argued Feb. 3, 1981.

Decided June 19, 1981.

Gerald B. Wetlaufer, Washington, D. C., with whom Donald T. Bucklin and Gilbert E. Hardy, Washington, D. C., were on the brief for appellants.

Joel A. Smith, Baltimore, Md., with whom Anthony Abato, Jr., Lutherville, Md., and Alan D. Eisenberg, Arlington, Va., were on the brief for appellee, Carpenters' District Council of Washington, D. C. and vicinity.

Ronald Rosenberg and Charles R. Both, Washington, D. C., were on the brief for appellee, Local 2311.

Mozart G. Ratner, Washington, D. C., entered an appearance for appellees, United Brotherhood of Carpenters, et al.

Gary L. Lieber and John A. McGuinn, Washington, D. C., entered appearances for appellee, Construction Contractors Council, etc.

Before JOHN W. PECK *, United States Senior Circuit Judge for the Sixth Circuit,

Page 1321

MacKINNON and WILKEY, Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge JOHN W. PECK.

JOHN W. PECK, Senior Circuit Judge:

Appellants are three persons whose motion to intervene as plaintiffs in a pending employment discrimination suit was denied by the district court. The complaint that initiated the suit in which appellants now seek to intervene alleged racial discrimination by labor organizations and employers in matters relating to employment as pile drivers. The complained of discrimination was alleged to violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. The plaintiffs who filed that complaint were four members of a defendant labor union. One of the plaintiffs had received a Notice of a Right to Sue from the Equal Employment Opportunity Commission (EEOC), pursuant to 42 U.S.C. § 2000e-5(f)(1) (Supp. V 1975).

The complaint recited that the action was brought on behalf of the plaintiffs and of all others similarly situated. The plaintiffs moved, pursuant to Fed.R.Civ.Pro. 23, to have the action certified as a class action on behalf of all black or other minority persons who have been or who may in the future be discriminated against on the basis of race or color with respect to employment as pile drivers. The district court

denied class certification on the grounds that the plaintiffs had not shown that the class that they sought to represent was sufficiently numerous to justify certification or that declaratory and injunctive relief would not adequately provide most of the relief sought.

Appellants, none of whom were members of the defendant union, moved to intervene pursuant to Fed.R.Civ.Pro. 24. Appellants alleged that they had suffered the "same kinds of discrimination as the original plaintiffs," and that their experiences differed from the original plaintiffs only in that the plaintiffs were members of the defendant union while appellants had been unable to obtain union membership or apprenticeship training due to racial discrimination. Appellants' motion sought intervention of right under Fed.R.Civ.Pro. 24(a)(2), and in the alternative, permissive intervention under Fed.R.Civ.Pro. 24(b).

The district court denied the motion to intervene on the grounds that the appellants and the plaintiffs in the pending suit were not members of a class under Fed.R.Civ.Pro. 23, and that appellants had not exhausted their administrative remedies. On appeal, appellants argue that this is not a valid reason for denying their motion, that they met the criteria of Fed.R.Civ.Pro. 24(a)(2), and that the district court thus erred in not permitting intervention of right. Alternatively, appellants contend that the district court failed to consider appellants' motion for permissive intervention under Fed.R.Civ.Pro. 24(b) and that this was an abuse of discretion.

It is well settled, and appellants concede, that a party seeking relief under Title VII must file timely charges of employment discrimination with the EEOC before that party may seek judicial relief. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); Love v. Pullman Co., 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972); Evans v. Sheraton Park Hotel, 503 F.2d 177, 183 (D.C.Cir.1974). Appellants filed no charges of discrimination with EEOC, but contend that they may nonetheless intervene as plaintiffs because the Title VII prerequisite of filing charges with EEOC was met by one of the original plaintiffs.

Appellants rely on a line of cases which establish that each individual plaintiff in a Title VII class action suit need not individually file an EEOC complaint, but that it is sufficient if at least one member of the plaintiff class has met the filing prerequisite. E. g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 414 n.8, 95 S.Ct. 2362, 2370 n.8, 45 L.Ed.2d 280 (1975); Romasanta v. United Airlines, Inc., 537 F.2d 915, 918 (7th Cir. 1976); Dodge v. Giant Food, Inc., 488 F.2d 1333 n.1 (D.C.Cir.1973); Macklin v. Spector Freight Systems, Inc., 478 F.2d 979, 985

Page 1322

n.11 (D.C.Cir.1973). The rationale of this line of cases was explained by Judge Griffin Bell:

It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume that the next one would be successful. (Emphasis added.)

Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir. 1968). In class actions this rationale is invariably applicable, for the very fact that the suit is a class action means that the plaintiffs' claims not only share common questions of law and fact, but those claims are such that representative plaintiffs will fairly and adequately protect the interests of all plaintiffs of the class. Fed.R.Civ.Pro. 23(a)(3) & (4).

The rationale of the above cases has been extended to situations where no class action had been certified, but where the court was nonetheless able to treat as a class a plaintiff who had satisfied the EEOC filing requirement and one or more plaintiffs who had not satisfied that requirement. 1 For example, in Allen v. Amalgamated Transit Union Local 788, 554 F.2d 876 (8th Cir. 1977), fifteen plaintiffs joined in a Title VII suit alleging racial discrimination. No attempt was made to certify the suit as a class action, and only two of the plaintiffs had filed EEOC charges. The Eighth Circuit held that Title VII relief could not be denied to the thirteen plaintiffs who had not pursued administrative remedies. In reaching that result, the court noted that these plaintiffs had "alleged



facts demonstrating they were similarly situated and had received the same discriminatory treatment" as had the two plaintiffs who had filed EEOC charges. Id. at 882. Under these circumstances, the court determined that, "it would be nonsensical to require each of the plaintiffs to individually file administrative charges with the EEOC," id. at 883, thus reaffirming Judge Bell's reasoning in Oatis.

In circumstances more similar to those of the present case, the Fifth Circuit in Wheeler v. American Home Products Corp., 563 F.2d 1233 (1977), permitted intervenors in a class action to maintain their Title VII claims after the class action status had been denied, even though the intervenors had not themselves pursued administrative remedies. The court determined that the intervenors and the original plaintiffs, who had filed EEOC charges, were "members of the same class." Id. at 1239. In reaching this result, the court stated that the reasoning of Oatis should apply, "wherever similarly situated persons intervene in an action and one or more of the original plaintiffs had satisfied the jurisdictional requisites." Id.

It thus appears that the critical factor in determining whether an individual Title VII plaintiff must file an EEOC charge, or whether he may escape this requirement by joining with another plaintiff who has filed such a charge, is the similarity of the two plaintiffs' complaints. Where the two claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges, then it would be "wasteful, if not vain," 398 F.2d at 498, to require separate EEOC filings. However, where the two complaints differ to the extent that there is a real possibility that one of the claims might be administratively settled while the other can be resolved only by the courts, then the rationale of Oatis does not apply. In such a case each plaintiff should be required to separately file an EEOC charge in order to effectuate the purpose of Title VII's provisions for administrative relief.

In the present case, appellants have alleged that they and the original plaintiffs are victims of the same discriminatory practices. In their memorandum in support of their motion to intervene, the appellants asserted that their claims were "essentially identical" to those of the original plaintiffs, stating that their experience differed only in that the plaintiffs had been able to obtain

Page 1323

membership in a defendant labor union prior to initiating this lawsuit, while none of the appellants had obtained membership until after they attempted to intervene. Consistent with the appellants' contention that their claims are nearly identical to plaintiffs', the original plaintiffs filed an amended complaint that incorporates the complaints of the appellants.

We conclude that the appellants have asserted claims of racial discrimination that are so similar to those asserted by the original plaintiffs that no purpose would be served by requiring appellants to file independent racial discrimination charges with EEOC. In their motion to intervene, the appellants "alleged facts demonstrating they were similarly situated and had received the same discriminatory treatment," 554 F.2d at 882, as the original plaintiffs. This discriminatory treatment constitutes the basis for both appellants' and the original plaintiffs' Title VII claim for relief. This being so, the EEOC charge filed by one of the original plaintiffs served the principal functions of the EEOC filing requirement, enabling the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation. See Shehadeh v. Chesapeake & Potomac Tel. Co., 595 F.2d 711, 727 (D.C.Cir.1978). If it was impossible for the EEOC to effectuate a settlement of the original plaintiffs' claims, there is no reason to believe that the EEOC would be successful in settling appellants' claims. Consequently, it was error for the district court to deny appellants' motion to intervene as to the Title VII cause of action for the reason that the action had not been certified as a class action and appellants had not filed charges with EEOC.

In denying appellants' motion to intervene for failure to exhaust administrative remedies, the district court also denied appellants the right to intervene in the § 1981 cause of action recited in the complaint. In Macklin v. Spector Freight Systems, Inc., 478 F.2d 979, 996 (D.C.Cir.1973), we rejected the proposition that



Foster v. Gueory, 655 F.2d 1319 (C.A.D.C., 1981)

a plaintiff must file a charge with EEOC or plead an excuse for not doing so before he can bring an action under § 1981. In reaching that result, we noted that § 1981 and Title VII provide radically different schemes of enforcement and differ so widely in their scopes that the courts' customary duty to accommodate conflicting legislation is inapplicable. Rather than concluding that Title VII creates any procedural barriers to the application of § 1981, we concluded that the two statutes provide independent, if overlapping, actions for racial discrimination in employment, and that the EEOC filing requirement of Title VII cannot be applied to § 1981, which itself contains no such requirement. In addition, the Supreme Court in Johnson v. Railway Express Agency, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975) concluded that the remedies of § 1981 and Title VII are separate and distinct and that Congress did not expect a plaintiff to complete Title VII procedures prior to initiating a § 1981 suit. Accordingly, we conclude that the district court erred in denying appellants' motion to intervene in the plaintiffs' § 1981 action on the grounds that appellants had not exhausted administrative remedies.

Since we have concluded that the district court inappropriately applied a requirement of exhaustion of administrative remedies to deny appellants' motion to intervene, we now turn to a consideration of appellants' motion under the appropriate criteria. 2 Those criteria are supplied by Fed.R.Civ.Pro. 24, which establishes two categories of intervention, intervention of right and permissive intervention. Appellants' motion seeks intervention under each of these sections in the alternative. Because we conclude

Page 1324

that appellants are entitled to intervene of right, we do not consider the alternative question of permissive intervention.

Preliminarily, we have determined that it is proper for this Court to rule on appellants' motion rather than to remand to the district court for that decision. We are well aware that in the usual circumstances of an appeal from a denial of a motion to intervene the district court has already evaluated the motion according to the

criteria of Rule 24. In those cases the appellate court's review is directed to an examination of the district court's decision to determine whether the denial of intervention of right was clearly erroneous or whether a denial of permissive intervention was an abuse of discretion. See, Hodgson v. United Mine Workers of America, 473 F.2d 118, 127 n.40 (D.C.Cir.1972). In contrast, in the present case the district court has not attempted to apply Rule 24 to appellants' motion. However, there is no requirement that the district court make findings of fact and conclusions of law in ruling on a motion to intervene, Edmondson v. State of Nebraska, 383 F.2d 123, 126 n.1 (8th Cir. 1967), and motions to intervene are usually evaluated on the basis of well pleaded matters in the motion, the complaint, and any responses of opponents to intervention. Stadin v. Union Electric Co., 309 F.2d 912, 917 (8th Cir. 1962). Since those materials are presently before this Court, judicial economy is better served by this Court deciding whether appellants have made a sufficient showing under Rule 24 to be entitled to intervene than by remanding to the district court for that decision.

Fed.R.Civ.Pro. 24(a)(2) provides four criteria for intervention of right. The first of these is that the motion to intervene must be timely made. Whether a motion to intervene is timely made is "to be determined from all the circumstances, including the purpose for which intervention is sought ... and the improbability of prejudice to those already in the case." Natural Resources Defense Council v. Costle, 561 F.2d 904, 907 (D.C.Cir.1977), citing Hodgson v. United Mine Workers of America, 473 F.2d 118, 129 (D.C.Cir.1972). See also, NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). In the present case appellants satisfied the timeliness requirement when their motion was made little more than one month after the district court denied the original plaintiffs' motion for class certification. Until that denial, appellants might have reasonably believed they could secure relief as members of a plaintiff class. Though the motion to intervene did not occur until approximately ten months after the filing of the complaint, it is improbable that the defendants would be prejudiced by



intervention at that time since the purpose of intervention was to permit appellants to join in the complaint rather than to assert different causes of action. Under these circumstances, appellants' motion to intervene was timely.

Fed.R.Civ.Pro. 24(a)(2) also requires that an intervenor of right claim an interest relating to the property or transaction which is the subject of the action, and that the intervenor be so situated that as a practical matter disposition of the action may impair or impede his ability to protect that interest. An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit, e. g., Atlantis Development v. United States, 379 F.2d 818 (5th Cir. 1967), but intervention of right is not limited to such situations. Rather, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967). 3 Applying the interest criterion as a "practical guide" in the present case, we conclude that intervenors are indeed concerned persons whose involvement in the suit is compatible with efficiency and due process. Appellants are persons who allege that they have suffered injury from the same or very similar wrongful acts as those complained of by the original plaintiffs,

Page 1325

and appellants' claims for relief are founded on the same statutory rights as are the claims of the plaintiffs. While the individual acts of discrimination suffered by the plaintiffs and the appellants may differ, they each assert their claims as a result of the same "significantly protectable interest," Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1970), in being free of racial discrimination in employment.

Appellants have also sustained their burden of showing that their interests may be practically impaired or impeded by the disposition of the plaintiffs' suit. Clearly, that disposition would have no binding effect on the appellants if they are not permitted to intervene. However, appellants and plaintiffs have each contended that their respective rights under Title VII and

under § 1981 have been violated by the same practices of the defendants. It is a possibility that trial of plaintiffs' claims could result in a determination that certain of these practices as a matter of law do not violate either Title VII or § 1981. In that event, appellants' ability to protect their interest could be impaired or impeded by the principle of stare decisis. This possibility is a sufficient showing to meet the Rule 24(a)(2) criterion. Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967).

Finally, intervention of right requires that the appellants show that their interests are not adequately represented by the existing parties. This burden is minimal and is met if appellants show that representation of their interests "may" be inadequate. Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10, 30 L.Ed.2d 686 (1972); Natural Resources Defense Council v. Costle, 561 F.2d 904, 911 (D.C.Cir.1977). While the interests of appellants and of plaintiffs in the present case have the same source in law and in fact, they are not identical. In addition to the alleged discrimination directly affecting both plaintiffs and appellants, the appellants are alleged to have suffered racial discrimination in their attempts to join the labor union. Plaintiffs, as members of the union, have little apparent reason to diligently pursue this particular allegation, in spite of the district court's conclusion that plaintiffs have standing to raise that issue. Furthermore, since the relief sought by both plaintiffs and appellants includes back pay, there is no way that plaintiffs could represent all of appellants' individual claims adequately. Accordingly, appellants have met the minimal necessary showing that their interests may not be adequately represented by the existing parties.

For the above reasons, we conclude that appellants have met their burden under Fed.R.Civ.Pro. 24(a)(2) and are entitled to intervene in the plaintiffs' suit. 4 Accordingly, the district court order denying appellants' motion is reversed, and the case is remanded for intervention of appellants.

---------------

* Sitting by designation pursuant to 28 U.S.C. § 294(d).



1 Contra, in Hodge v. McLean Trucking Co., 607 F.2d 1118 (1979), the Fifth Circuit, without discussing the similarity of the claims, refused to permit intervention in a Title VII suit because the intervenors had not filed an EEOC charge.

2 Though the district court's denial of class certification for lack of numerosity implies that joinder is a practical alternative to class certification, that finding does not assure the availability of joinder. The denial of certification for lack of numerosity simply means that if appellants are to be parties to the lawsuit, then joinder is a more appropriate means of adding them than certifying the suit as a class action. The appellants must still meet the joinder requirements, and there would be no anomaly if they were not only denied class certification for lack of numerosity but also were denied intervention for failure to meet the requirements of Fed.R.Civ.Pro. 24.

3 In Smuck v. Hobson, 408 F.2d 175 (D.C.Cir.1969) (en banc), we applied this "practical guide" in holding that parents of schoolchildren had sufficient "interest" to intervene of right when a board of education refused to appeal a desegregation decision.

4 Appellees have argued that permitting intervention in this case expands the court's subject matter jurisdiction both horizontally, by adding plaintiffs, and vertically, by extending all plaintiffs' claims back in time based on the date of the original complaint. This argument is without merit. So long as the original plaintiffs remain in the action and none of the original pleadings have been struck, the subject matter of the suit is fixed, and neither the nature of the claims being litigated nor the time periods to which they apply are affected by the addition of appellants-intervenors as plaintiffs.



# WALTER T. CHARLTON & ASSOCIATES

### Attorneys At Law, Washington, D.C.

--------

### 202 296 2975, 410 571 8764 (Phone)
### Mailing Address: 410 897 0471 (Fax)
### 230 Kirkley Road
### Annapolis, Maryland 21401

### August 9th, 2006

United States General Accounting Office (GAO)      **BY CERTIFIED MAIL**
Office of Opportunity and Inclusiveness             **RETURN RECEIPT REQUESTED**
451 G. Street, N.W.
Washington, D.C. 20548

*Re: Class Action(s) , Age Discrimination in Employment Notice and Re-Notice of Intent to Sue 300 COLA Denials (Pursuant to GAO Order # 2713.2, December 2, 1997)*

Ladies and Gentlemen:

This Notice is a New Notice of Intent to Sue by James D. Moses, presently a Band II A

analyst for GAO. He give this notice for himself and all others similarly situated pursuant to

GAO Order number 2713.2, Chapter 3, 9, page 12 (Age Discrimination in Employment

Act)(ADEA), Chapter 3, 10 (Equal Pay Act, Section 16(b) of the Fair Labor Standards Act) and

Chapter 4, (Class Complaints). This notice incorporates by this reference two previous notices of

intent to sue for the same pattern and practice of across-the-board age discrimination, and, in the

interest of caution, adds several recent discrete events which Mr. Moses alleges continue the

same pattern and practice. Those new matters result from the "Band II Restructuring" and cost of

living adjustment (COLA) denials which became effective in his paycheck on February 16th,

2006. Mr. Moses alleges that all of his complaints are timely, and the latest Notice is Timely

under Statute of Limitations contained in the Fair Labor Standards Act, as applicable to Federal

Employees, 29 U.S.C. § 631(a); 633(a) et seq, as amended. Mr. Moses alleges that GAO's Order

1

violates the existing statute of limitations of two years from the event, and three years if the

violation is intentional (as here). But in any event this Notice is timely for all matters contained

therein.

Mr. Moses notices his intent to sue as a class complaint for himself and about 300 other

similarly situated employees affected adversely by the "Band II Restructuring", or "Band II Split"

and denials of Cost of Living Increases (COLAs) which became effective with the pay check of

February 16, 2006. Mr. Moses has previously complained of these actions and received

counseling by GAO's Office of Inclusiveness, but no resolution has occurred.

Although Mr. Moses for years has been a regular counselor for employees, neither he nor

any employee he is aware of has received timely written or other notice of deadlines for

notification or filing applicable to age discrimination cases. Under federal civil rights law

principles, notice to employees of their rights in employment disputes is an important duty of the

GAO Office of Opportunity and Inclusiveness. That has simply not happened here.

Mr. Moses and his counsel recently became aware of the existence of GAO Order

Number 2713.2, effective December 2, 1997, through their own research. Chapters 3 and 4, of

that Order, if interpreted literally, mean that he must complain within 180 days of the occurrence

of the discrete events about which he complains. It is fortuitous that this fact became known

before the unnoticed deadline expired. However, as foregoing noted, Mr. Moses argues that all

of these events are part and parcel of the same discriminatory pattern and practice.

This letter is that notice, purportedly required by GAO Order # 2713.2 in the event the

"Band II Split" is found to be a discrete event and not a part, as Mr. Moses claims, of the overall

pattern of age discrimination at the GAO.

2

Mr. Moses alleges that the first payday that this occurrence became effective was on February 16, 2006, and that the harm is repeated effective on each payday thereafter, each one a separate violation of law. He alleges that about 300 persons are similarly situated in that they are over 40 years of age and have been effectively demoted in rank and denied COLAs while performing satisfactorily in their jobs.

As per this Notice, Mr. Moses intends to file an amendment to his existing class action lawsuit, or if it becomes necessary to file a new class action in the event the Court determines that the "Band II Split" and resulting actions by GAO are discrete events and not a part of the on-going overall pattern and practice of illegal age discrimination which he, and others have alleged previously in United States District Court Case numbers 87-3538 and 06 1002. Both of those cases allege essentially the same pattern and practice of across-the-board discrimination. Those cases are now "live" before the Honorable Judge John G. Penn, Senior Judge of the United States District Court for the District of Columbia.

Although unnecessary to file a separate notice under existing law, Mr. Moses also alleges that GAO's actions violate the Equal Pay Act. To the extent that act affords relief, no separate notification of the GAO is necessary under the existing GAO Order, 2713.2, chapter 2, # 10.

This Notice also memorializes Mr. Moses's actions in previously complaining to the Civil Rights Office, or as newly named the Office of Opportunity and Inclusiveness, for himself and all others similarly situated, in complaining about the discriminatory effect of the "Band II Split" events, occurrences and related decision to deny COLAs for himself and all others similarly situated.

In no way is this new notice to be construed as an admission of any failure to previously

3

complain, since in fact Mr. Moses has consistently been timely in accordance with all GAO

regulations of which he is and had been made aware.  You will please note that Mr. Moses

served as a counselor, and therefore purportedly at least, received all instructions appropriate

from GAO to perform in that capacity including regulations and GAO Orders which have been

brought to his attention by the Office of Opportunity and Inclusiveness or in conversations with

the Officials of the GAO with whom he has spoken and been counseled.

This Notice also incorporates by this reference his previous notices which Mr. Moses

alleges are part of the on-going pattern and practices of discrimination about which he complains.

Those are:

By letter of June 10, 1999 a Notice of Intent to Sue was given by letter, a copy of which

was directed to the Comptroller General, Mr. David M. Walker. A copy of that letter is

incorporated by this reference. That letter noticed and re-noticed intent to sue for a class action

for age discrimination for 15 employees specifically named persons and 151 unnamed persons all

of whom were then employees or former employees of the GAO. All of the specifically named

persons had previously given the required notice of intent to sue as a part of the on-going case of

V. Chennareddy et al v. David Walker, Case No. 87-3538 JGP.

By letter of April 6 , 2005 Mr. Moses again gave notice of intent to sue alleging

continuing violations of (ADEA) alleging the same pattern and practice.  When the intervention

by Messrs. Moses, Davis and Gilbert was denied by the United States District Court, they filed a

lawsuit to preserve their remedies.  That lawsuit, Case No 06 1002 (JGP) resulted.

Both of the foregoing cases, and the claims of all of the present persons who seek to

become class representatives in this case are presently pending before the Honorable Senior

4

United States District Judge, John G. Penn of the United States District Court for the District of Columbia.

No part of this new Notice of Intent to Sue is to be considered an admission that any previous notice of continuing violations is either abandoned or ineffective as to the new violations herein alleged, nor does this new notice constitute any waiver of or admission to any rights contained in the previous notices of intent to sue by Mr. Moses or any other party now before the United States District Court.

The undersigned firm represents all of those individuals named in the previous lawsuits as well as Mr. Moses for purposes of the contemplated lawsuit(s) and/or in any of the on-going cases as prospective intervenors.

Counsel for Mr. Moses hereby requests that any notification of actions required by Mr. Moses pursuant to GAO regulations or orders, including any counseling required for individual or class complaints, interviews or investigations, be Noticed to this office, and in addition to Mr. Moses.

All correspondence should be directed to this office at:

Walter T. Charlton, D.C. Bar # 186940
230 Kirkley Road,
Annapolis, Maryland 21401
Phone 410 571 8764
email, charltonwt@comcast.net

APPROVED:

_____/s/_____
JAMES D. MOSES

5

Sincerely,

/s/ charltonw 2428
Walter T. Charlton
Counsel for Mr. Moses and the
class or classes he seeks to represent

CC:
Jimmie Gilbert
7251 S. Vernon Ave.
Chicago,
ILL. 60619

James David Moses
1662 Cyrene Drive
Carson, CA 90746

Arthur Davis
194 Carnival Court
Vallejo, CA 94589

The Honorable David M. Walker
Comptroller General of the United States
of America
451 G. Street, N.W.
Washington, DC 20548

Is your **RETURN ADDRESS** completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

UNITED STATES OF GENERAL
ACCOUNTABILITY OFFICE
OFFICE OF INFORMATION &
INCLUSIVENESS
441 G. STREET, N.W.
WASHINGTON DC. 20548

4a. Article Number

7005 3110 0001 4015 5920

4b. Service Type
☐ Registered        ☒ Certified
☐ Express Mail      ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery

5. Received By: (Print Name)
Elaine B. Wise

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)
X Elaine B. Wise

PS Form **3811**, December 1994        Domestic Return Receipt

Thank you for using Return Receipt Service.

EXHIBIT
4



**UNITED STATES POSTAL SERVICE**

### Track/Confirm - Intranet Item Inquiry
### Item Number: 7005 3110 0001 4015 5920

**The item(s) you queried are summarized below. If you would like to request a delivery record check the box in the "Select" column to the right of the item (if available). Learn more about Restore.**

| Detail | Item | Origin | Destination | Firm | Recipient | Event/Image Info | Date | Time | Sele |
|--------|------|--------|-------------|------|-----------|------------------|------|------|------|
| Archived | 70053110000140155920 | | 20548 | | | DELIVERED | 08/14/2006 | 10:59 | ☐ |

Request Delivery Record for Selected Items

Enter Request Type and Item Number:

Quick Search ⦿     Extensive Search ○

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

EXHIBIT 3