**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | ) | |
|---|---|---|
| JAMES D. MOSES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06-cv-01712 (RCL) |
| | ) | |
| GENE L. DODARO,[1] | ) | |
| Acting Comptroller General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

This case comes before the Court on the defendant's renewed motion [126] to dismiss the plaintiff's first amended complaint [94] or, in the alternative, motion for summary judgment. Also before the Court are the plaintiff's cross-motion for reconsideration of various discovery motions, cross-motion to strike the declaration of the defendant's expert witness testimony [135], motion [137] for leave to file a sur-reply[2], and motion [142] for hearing on the status of the case. Upon consideration of the filings, the entire record herein and the relevant law, the Court will

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Dodaro, in his official capacity as Acting Comptroller General of the United States, is automatically substituted as the named defendant.

[2] The plaintiff's motion for leave to file a sur-reply will be denied. Sur-replies are rarely permitted, and only "when a party is 'unable to contest matters presented to the court for the first time' in the last scheduled pleading." *Ben–Kotel v. Howard Univ.,* 319 F.3d 532, 536 (D.C. Cir. 2003). The plaintiff states that his sur-reply is justified because the defendant's reply contains material misstatements of both fact and law. Pl.'s Mot. for Sur-Reply at 2. In arguing this point, the plaintiff states that "plaintiff's claims are entirely based upon 'systematic disparate treatment'" and not a disparate impact theory of recovery. *Id.* at 5. Because the only claims remaining for the plaintiff to litigate at the time of this filing *were* his disparate impact claims, the Court denies this motion for leave to file a sur-reply as the plaintiff's disparate treatment claims were dismissed with prejudice in Judge Sullivan's March 2011 Memorandum Opinion [117].

GRANT the defendant's motion for summary judgment and DENY the plaintiff's cross-motion for reconsideration and motion for leave to file a sur-reply. Plaintiff's cross-motion to strike and motion for hearing on the status of the case are DISMISSED as moot.

## II.     PROCEDURAL POSTURE

Plaintiff James Moses filed this action on October 4, 2006 against the Comptroller General of the United States, the head of the Government Accountability Office ("GAO") alleging, among other things, that the agency discriminated on the basis of age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 *et seq.* ("ADEA"). Plaintiff seeks to represent a class of approximately 300 GAO auditors. In a December 2009 Memorandum Opinion [90], the Court (per Judge Sullivan) concluded that the plaintiff had sufficiently stated a cause of action under the ADEA with respect to "two specific, discrete allegedly discriminatory actions[.]" Mem. Op. at 48, Dec. 18, 2009. These claims alleged that (1) the plaintiff and others were discriminatorily denied increases in cost of living allowances ("COLA"), and (2) the GAO discriminatorily split the "Band II" employee pay classification into two separate categories.

After the plaintiff filed an amended complaint, the defendant filed a renewed motion to dismiss and/or for summary judgment [101]. In a March 2011 Memorandum Opinion [117], the Court (Judge Sullivan) granted the defendant's motion for summary judgment insofar as it related to the plaintiff's disparate treatment claim of discrimination; however, the Court concluded that the "plaintiff's claim of discrimination based upon a disparate impact theory of recovery, to the extent he intended to assert one, remains intact." Mem. Op. at 14, Mar. 31, 2011. The Court also denied both the plaintiff's request for discovery and the plaintiff's motion for a continuance to seek discovery.

### III. BACKGROUND

The plaintiff was employed by the GAO from 1967 until his retirement in January 2010. For purposes of determining pay ranges, the GAO classifies its employees according to a "Band" system. At the time of his retirement, and at all times relevant to this litigation, the plaintiff was employed as a "Band II" analyst.

In November 2005, the GAO restructured the Band II analyst and specialist workforce into two distinct categories, Band IIA and Band IIB. To be eligible for the band with a higher compensation cap (Band IIB), employees had to meet certain requirements with respect to their time in Band II and recent performance appraisals. Def.'s Renewed Mot. to Dismiss 3-4 ("Def.'s Renewed Mot."). The plaintiff applied for placement into Band IIB, but his application was subsequently denied. *Id.* at 6.

The parties disagree as to why the GAO restructured its Band II employees. The plaintiff alleges that the objective was to "reshape the staff profile to eliminate a surplus of Senior Band II GAO analysts and specialists." Pl.'s Opp'n to Def.'s Renewed Mot. 4 ("Pl.'s Opp'n"); *see also* Am. Compl. ¶ 8 ("[T]he manipulation of the 'band system' has been used by management to purportedly justify announced de-facto demotions of persons over 50."). The defendant asserts that the restructuring was (1) intended to make clear that not all Band II employees perform the same roles and responsibilities, (2) to ensure that all Band II employees receive equal pay for work and equal value over time, and (3) to make sure that its pay system is consistent with private employer's compensation levels. Def.'s Renewed Mot. at 3.

The defendant asserts that the GAO determined whether an employee would be placed into Band IIA or Band IIB on three "assessment factors."[3]  *Id.* at 4.  These assessment factors included (1) roles and responsibilities, (2) past performance, and (3) performance potential.  *Id.*  An employee could not be selected for Band IIB unless he/she satisfied all three categories.  *Id.*  In support of this assertion, the defendant has submitted the affidavits of the two individuals who were responsible for making the final decision on whether an employee would be placed into Band IIA or Band IIB, Gene Dorado, GAO's Chief Operating Officer at the time, and Sallyanne Harper, GAO's Administrative Officer/Chief Financial Officer.  *Id.*

Concurrent with the Band II restructuring, the GAO set a new scale of pay ranges for the entire Band system.  *Id.* at 8.  Because the salary maximum for Band IIA was lower than the previous maximum for Band II, some employees placed into Band IIA, including the plaintiff, received a higher salary than the applicable maximum after the restructure.  *Id.*  No employees' salaries were reduced as a result of this discrepancy, however, the GAO denied these employees, again including the plaintiff, the 2006 COLA that was provided to a majority of the other GAO employees.[4]  *Id.*

On April 4, 2006 the plaintiff filed a Complaint of Discrimination with the GAO's Office of Opportunity and Inclusiveness that challenged his placement into Band IIB on the basis of age and race but did not contain any reference to his denial of a COLA.  *Id.* Ex. 14.  The plaintiff subsequently filed the instant action on October 4, 2006.  *Id.* at 9.  Additionally, some of the harms complained by the plaintiff with respect to his salary have been rectified in the time

---

[3] The GAO's process of placing employees into either Band began with each employee submitting an application explaining why he or she should be placed into Band IIB not Band IIA, followed by a review and recommendation made by team directors.  Def.'s Renewed Mot. at 4.

[4] The COLA denied to the plaintiff amounted to a 2.6 percent increase in pay.  The plaintiff was similarly denied his 2007 COLA but has not asserted a claim based upon this denial.

between the initial filing and present day. First, in March 2007, the plaintiff was promoted to the Band IIB category. Second, Congress enacted the Government Accountability Act of 2008 in September 2008, which directed the GAO to raise the salaries of employees who had been denied their COLA in 2006 and 2007 to the level they would have been receiving had they been granted the initial COLAs. Pub. L. No. 110-323, 122 Stat. 3539 § 3(c) (Sept. 22, 2008). Further, Congress directed the GAO to award those same employees a lump sum payment equal to the sum of money (plus 4 percent) they would have received had they been granted the COLAs when they were effectuated. *See id.* § 3(d). The plaintiff's salary was subsequently increased by $3,323, and he received a lump sum payment of $9,751.87.

## IV.   ANALYSIS

### A.  Defendant's Motion for Summary Judgment

The plaintiff alleges that the GAO's Band II restructuring resulted in a disproportionate number of older employees being placed in Band IIA while favoring younger employees, and additionally resulted in older employees being denied their 2006 COLA in violation of the ADEA. *See* Am. Compl. ¶ 63. The defendant asserts that the Court lacks jurisdiction to hear this claim because the ADEA does not permit suits brought under the theory of disparate impact against federal employers. Def.'s Renewed Mot. at 15. The defendant additionally asserts the affirmative defense that the alleged adverse impact, if present, was the result of reasonable factors other than age. *Id.* at 21.

The ADEA makes it unlawful for an employer to discriminate against any employee or potential employee on the basis of age except "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). The

Supreme Court has fashioned two separate models whereby an aggrieved individual may seek to redress a claim of discrimination—the disparate treatment and the disparate impact theories of liability. A disparate treatment claim will lie when an individual is treated differently by an employer on the basis of a protected characteristic. *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335-36 (1977). In contrast, a disparate impact claim exists when an employment practice, though neutral on its face in its treatment of different groups, falls more harshly on one group than another and cannot be justified by business necessity. Unlike a disparate treatment claim, plaintiffs asserting a disparate impact claim need not establish a discriminatory motive on the part of the employer. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993).

The availability of disparate treatment claims under the ADEA is well settled, *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), as well as disparate impact claims against non-federal employers pursuant to 29 U.S.C. § 623(f)(1)*, see Smith v. City of Jackson*, 544 U.S. 228 (2005); however neither the Supreme Court nor the D.C. Circuit has addressed the issue of whether the ADEA authorizes disparate impact claims against the federal government. *Koger v. Reno,* 98 F.3d 631, 639 n.2 (D.C. Cir. 1996) (declining to decide whether a disparate impact claim brought against the federal government under the ADEA was legally cognizable because the evidence presented failed to support a prima facie case of disparate impact); *Arnold v. United States Postal Serv.,* 863 F.2d 994, 995-96 (D.C. Cir. 1988).

Assuming *arguendo* that a disparate impact claim is legally cognizable against a federal employer,[5] the plaintiff has not met the standard for bringing such a claim. A claim that a

---

[5] The D.C. District Court is divided on whether the ADEA authorizes disparate impact claims against the federal government. *See, e.g., Silver v. Leavitt*, 2006 WL 626928 (D.D.C. 2006) (Bates, J.) (holding that Congress has not waived sovereign immunity for disparate impact claims against federal employers given that *Smith* specifically limited its holding to disparate impact claims comparable to *Griggs*—a non-federal employer—and the Supreme Court's acknowledgement that the ADEA varies distinctively from Title VII); *but see Breen v. Peters*, 474 F. Supp. 2d 1, 6 (D.D.C. 2007) (Roberts, J.) (stating that "the plain

facially neutral employment practice disproportionately imposed an injury on older employees may raise a rebuttable inference of disparate impact, but it is not enough to prevail. *Breen v. Mineta,* 2005 WL 3276163 at *7 n.6 (D.D.C. Sept. 30, 2005) (Roberts, J.). The defendant has the opportunity to assert the affirmative defense that the alleged adverse impact was attributable to a reasonable factor other than age. *City of Jackson*, 544 U.S. at 241. The burden of persuasion for this affirmative defense falls on the employer. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 128 (2008). A plaintiff then has the opportunity to rebut the reasonable factor other than age by demonstrating that the factors offered by the defendant are unreasonable. *See e.g., City of Jackson*, 544 U.S. at 243 (noting that the reasonable factors other than age defense does not permit a rebuttal that other reasonable methods not resulting in a disparate impact were available).

Here, the record shows that the defendant put forth specific reasons for restructuring the Band II pay scale. The defendant additionally submitted factors such as length of time in the position, roles and responsibilities of the employee, past performance, and potential performance as reasonable factors other than age for deciding which employees were placed into Band IIB. Further, the defendant asserts that the GAO relied on these factors when deciding which employees would receive a COLA in 2006 by stating that "providing a COLA to these employees would undercut the purpose of the Band II restructuring . . . which was to ensure that employees were paid at market rates." Plaintiff does not respond to these arguments, and it is not the Court's duty to supply these arguments in the plaintiff's stead and then rule on them. In his opposition to the defendant's motion for summary judgment, plaintiff merely argues that no discovery has been permitted, and additionally, that the statistical data submitted by the

---

language of § 633a(a) does not support the distinction between disparate treatment and disparate impact[,]" and Congress has waived sovereign immunity).

defendant's expert witness arguing that no adverse impact occurred is faulty. Because the plaintiff does not address the affirmative defense in his response, the Court will treat it as conceded. *Ray v. F.B.I.*, 2007 WL 1404445 *2 (D.D.C. May 10, 2007) (Lamberth, J.) ("When a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citations omitted). Defendant's motion for summary judgment will therefore be granted, and an Order consistent with this Memorandum Opinion will be issued separately. In light of the Court's decision on the defendant's motion for summary judgment, the plaintiff's Motion to Strike the defendant's expert witness is moot.

### B. Plaintiff's Motion for Reconsideration

The plaintiff also requests that the Court reconsider its decision denying him discovery in the previously dismissed disparate treatment claims. The plaintiff argues that "[t]his case is bereft of discovery, from its beginning, in 2006, until now." Pl.'s Opp'n at 9. To clarify, the plaintiff has not—as to the current summary judgment motion—complied with Rule 56(d) and has only argued for discovery that goes to the disparate treatment claims, not the disparate impact claims.

A district court may revise its own interlocutory rulings "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. Civ. P. 54(b). The standard of review for interlocutory orders differs from the standard of review for final judgments under Federal Rules of Civil Procedure 59(e) and 60. *See, e.g., Campbell v. United States Dept. of Justice,* 231 F.Supp.2d 1, 7 (D.D.C. 2002) (citing cases). The primary reasons for amending an interlocutory ruling pursuant to Rule 59(e) are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice." *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation omitted). The Court may reconsider any interlocutory ruling "as justice requires." *Childers v. Slater,* 197 F.R.D. 185, 190 (D.D.C. 2000) (quoting Fed. R. Civ. P. 60(b) Advisory Comm. Notes). Motions for reconsideration "are not simply an opportunity to reargue facts and theories upon which a court has already ruled." *Black v. Tomlinson,* 235 F.R.D. 532, 533 (D.D.C. 2006) (internal quotations omitted).

The Court previously denied the plaintiff's requests for discovery stating, "[p]laintiff has failed to demonstrate the necessity of discovery to oppose defendant's motion . . . . He merely asserts that disclosure of various information 'would furnish evidence determinative of the relevant facts at issue in this action.'" Mem. Op. at 14, Mar. 31, 2011. The Court finds that the arguments made by the plaintiff in support of the current motion are merely rehashing previous arguments already rejected by this Court. Additionally, the plaintiff identifies no intervening change of controlling law and no new evidence that was previously unavailable. Accordingly, the plaintiff's motion for reconsideration is DENIED.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the defendant's motion [126] for summary judgment and DENIES the plaintiff's cross-motion [135] for reconsideration and motion [137] for leave to file a sur-reply. The Court additionally DISMISSES the plaintiff's cross-motion [135] to strike and motion [142] for hearing on the status of the case as moot.

Signed by Royce C. Lamberth, Chief Judge, on January 12, 2012.